PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
VANESSA RAE YOUNG (SBN 352693)
vyoungviniegra@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br><br>     Plaintiffs,<br><br> v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security,<br><br>     Defendants. | Case No. 5:26-cv-00322-SSS-RAO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT CLASS ACTION**<br><br>**Date:** April 10, 2026<br>**Time:** 2:00 p.m.<br>**Ctrm:** 2, 2nd Floor<br>   3470 12th Street<br>   Riverside, CA 92501 |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 10, 2026, at 2:00 p.m., or soon thereafter as may be heard before the Honorable Sunshine Sykes in Courtroom 2 of the United States Courthouse for the Central District of California, 3470 Twelfth St., Riverside, CA 92501, Plaintiffs L.T., Sevak Mesrobian, Jose Mauro Salazar Garza, and J.M., on behalf of themselves and the class they seek to represent, along with Plaintiff the Coalition for Humane Immigrant Rights ("CHIRLA") (collectively "Plaintiffs") hereby move the Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction against Defendants: the U.S. Immigration and Customs Enforcement ("ICE"); Todd M. Lyons in his official capacity as Acting Director of ICE; Jaime Rios in his official capacity as Acting Director of the Los Angeles Field Office, Enforcement and Removal Operations of ICE; the U.S. Department of Homeland Security, and Kristi Noem in her official capacity as Secretary of the Department of Homeland Security; and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them.

Plaintiffs respectfully move the Court to enter a preliminary injunction to remedy ongoing violations of the Rehabilitation Act, the Administrative Procedure Act ("APA") and constitutional rights of Plaintiffs and the putative class. A [Proposed] Order is attached to this Motion.

This motion is based on this Notice of Motion and Motion for Preliminary Injunction, the Memorandum of Points and Authorities, and the accompanying supporting declarations and exhibits thereto, including:

1. Expert Declarations
   a. Declaration of William Adams ("Adams Decl.")
   b. Declaration of Dr. Altaf Saadi, M.D. ("Saadi Decl.")

2. Declarations of Detained or Formerly Detained People

    a. Declaration of A.A. ("A.A. Decl.")

    b. Declaration of A.A.A.A. ("A.A.A.A. Decl.")

    c. Declaration of Jorge Aguilar ("Aguilar Decl.")

    d. Declaration of A.K. ("A.K. Decl.")

    e. Declaration of Gilbert Anthony Arnold ("Arnold Decl.")

    f. Declaration of Xiaoman Ding ("Ding Decl.")

    g. Declaration of E.M. ("E.M. Decl.")

    h. Declaration of Jose Flores ("Flores Decl.")

    i. Declaration of Julius Omene Fredrick ("Fredrick Decl.")

    j. Declaration of J.M. ("J.M. Decl.")

    k. Declaration of Andrei Vladimirovich Karamychev ("Karamychev Decl.")

    l. Declaration of Fernando A. Lopez ("Lopez Decl.")

    m. Declaration of L.T. ("L.T. Decl.")

    n. Declaration of Sevak Mesrobian ("Mesrobian Decl.")

    o. Declaration of Josue Jeison Pereira Amaya ("Pereira-Amaya Decl.")

    p. Declaration of Olga Beatriz Rodriguez Arzola ("Rodriguez-Arzola Decl.")

    q. Declaration of Elmer "Manuel" Ruiz Escobar ("Ruiz-Escobar Decl.")

    r. Declaration of Jose Mauro Salazar Garza ("Salazar-Garza Decl.")

    s. Declaration of Saddam Samaan Daoud Samaan ("Samaan Decl.")

    t. Declaration of Alton George Smith ("Smith Decl.")

    u. Declaration of Philip Winfield ("Winfield Decl.")

3. Declarations of Non-Detained Entities and Persons

    a. Declaration of Coalition for Humane Immigrant Rights ("CHIRLA Decl.")

    b. Declaration of Amanda Schuft ("Shuft Decl.")

    c. Declaration of Dr. Alexander R. Sapin, M.D. ("Sapin Decl.")

ii

d.  Declaration of Nicolás Thompson-Lleras ("Thompson-Lleras Decl.")

4.  Declaration of Outside Counsel and Exhibit 1

a.  Declaration of Stephen Henrick and Exhibit 1 attached thereto—a summary exhibit created for the Court's convenience, which categorizes and presents key quotations in the fact declarations listed above.

This motion is also supported by the Complaint, Dkt. No. 1, Plaintiff's Request for Judicial Notice in Support of Motion for Preliminary Injunction ("RJN") and accompanying exhibits, as well as Plaintiffs' Motion for Class Certification and the supporting papers, which are forthcoming.

Dated:  March 6, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:  */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim

PUBLIC COUNSEL

By:  */s/ Rebecca Brown*
Rebecca Brown
Sophia Wrench
Amelia Piazza
Vanessa Rae Young
Elizabeth Hercules-Paez

IMMIGRANT DEFENDER LAW CENTER

By:  */s/ Alvaro M. Huerta*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE
IMMIGRANTS RIGHTS

By:    */s/ Carl Bergquist*
       Carl Bergquist
       Adam Reese

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS ...................................................................................................... 2

      A.    The PBNDS ..................................................................................... 2

      B.    Conditions ....................................................................................... 2

      C.    Medical Care ................................................................................... 5

            1.    The Intake Process ................................................................. 5

            2.    Wait Times ............................................................................. 6

            3.    Substandard Care ................................................................... 6

      D.    Disability Accommodations ............................................................ 7

      E.    September 2025 Inspection .............................................................. 7

III.  LEGAL STANDARD ................................................................................ 8

IV.   ARGUMENT ............................................................................................. 8

      A.    Plaintiffs are likely to succeed on the merits of their claims. ........ 8

            1.    Adelanto's punitive conditions violate the Fifth Amendment. ..... 8

                  a.    Under Ninth Circuit case law, the conditions at Adelanto are presumptively punitive. ................................... 9

                  b.    No legitimate interests justify the conditions at Adelanto. 12

                  c.    Even if Defendants can rebut the *Jones* presumption, conditions at Adelanto are unconstitutionally punitive. ..... 13

            2.    Adelanto's inadequate medical care violates the Fifth Amendment. ........................................................................... 15

            3.    Defendants' conduct violates the Rehabilitation Act. ........... 17

            4.    Defendants' conduct violates the Administrative Procedure Act. ........................................................................................ 18

                  a.    Awarding Adelanto a "Good" Rating Is a Final Agency Action. ........................................................................ 19

                  b.    Awarding Adelanto a "Good" Rating Is Arbitrary and Capricious. ........................................................................ 20

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

c.    Defendants' Continued Non-Compliance with the PBNDS is Contrary to the Constitution. ........................................ 22

B.    Plaintiffs have established that they are suffering irreparable harm...... 22

C.    The balance of hardships and public interest favor an injunction. ........ 22

V.    CONCLUSION ................................................................................. 23

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*United States ex. rel. Accardi v. Shaughnessy,*
   347 U.S. 260 (1954)..................................................................................20, 22

5

*Bell v. Wolfish,*
   441 U.S. 520 (1979)......................................................................................8, 13

6

7

*Bennett v. Spear,*
   520 U.S. 154 (1997).............................................................................................19

8

*Castillo v. Barr,*
   449 F. Supp. 3d 915 (C.D. Cal. 2020) ..............................................................9, 17

9

10

*Castro v. Cnty. of L.A.,*
   833 F.3d 1060 (9th Cir. 2016) ...........................................................................16

11

*Cmty. Legal Services in E. Palo Alto v. U.S. Dep't of Health & Human Servs.,*
   780 F. Supp. 3d 897 (N.D. Cal. 2025) ...............................................................20

12

13

*Csutoras v. Paradise High School,*
   12 F.4th 960 (9th Cir. 2021) ..............................................................................17

14

15

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
   489 U.S. 189 (1989)......................................................................................9, 15

16

*Doe v. Becerra,*
   732 F. Supp. 3d 1071 (N.D. Cal. 2024) ...............................................................9

17

18

*Doe v. Kelly,*
   878 F.3d 710 (9th Cir. 2017) .............................................................................15

19

*Fromer v. Cnty. of Riverside,*
   2025 WL 819719 (C.D. Cal. Feb. 4, 2025).........................................................17

20

21

*Gonzalez v. Noem,*
   2025 WL 3170784 (N.D. Ill. Nov. 5, 2025) .........................................................2

22

23

*Guel v. Cnty. of San Bernardino,*
   2024 WL 5185331 (C.D. Cal. Oct. 23, 2024)...............................................16, 17

24

*Gutierrez-Lopez v. Figueroa,*
   462 F. Supp. 3d 973 (D. Ariz. 2020) .................................................................16

25

26

*Hernandez v. Cnty. of Monterey,*
   110 F. Supp. 3d 929 (N.D. Cal. 2015) ...............................................................22

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ...................................................................22

*Jensen v. Shinn*,
  609 F. Supp. 3d 789 (D. Ariz. 2022) .....................................................16

*Jones v. Blanas*,
  393 F.3d 918 (9th Cir. 2004) ........................................................ *passim*

*Kansas v. Crane*,
  534 U.S. 407 (2002).................................................................................13

*King v. Cnty. of L.A.*,
  885 F.3d 548 (9th Cir. 2018) ...................................................................12

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ...................................................................22

*Mercado v. Noem*,
  800 F. Supp. 3d 526 (S.D.N.Y. 2025)...........................................2, 12, 22

*Otilio B.F. v. Andrews*,
  2025 WL 3152480 (E.D. Cal. Nov. 11, 2025)..........................................23

*Pablo Sequen v. Albarran*,
  2025 WL 3283283 (N.D. Cal. Nov. 25, 2025) .....................................1, 10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ...................................................................16

*Pierce v. District of Columbia*,
  128 F. Supp. 3d 250 (D.C. Cir. 2015)......................................................18

*R.I.L.-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ...........................................................13

*Roe v. Critchfield*,
  137 F.4th 912 (9th Cir. 2025) ..................................................................22

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) .............................................................15, 17

*Ruiz v. U.S. Immigr. & Customs Enf't.*,
  2026 WL 391924 (N.D. Cal. Feb. 10, 2026) .............................................1

*Russell v. Lumitap*,
  31 F.4th 729 (9th Cir. 2022) ....................................................................16

*Sandoval v. Cnty. of San Diego*,
  985 F.3d 657 (9th Cir. 2021) ...................................................................16

viii

*Thakur v. Trump*,
 787 F. Supp. 3d 955 (N.D. Cal. 2025) ..................................................22

*Torres v. U.S. Dep't of Homeland Sec.*,
 411 F. Supp. 3d 1036 (C.D. Cal. 2019) ..............................................9, 19, 22

*Tyson v. City of San Bernardino*, EDCV 23-015939 TJH, 2024 WL 3468832, at *8 (C.D. Cal. Jan.
 12, 2024) .........................................................................23

*Ward v. Cnty. of San Diego*,
 2025 WL 319250 (S.D. Cal. Jan. 28, 2025)...........................................16, 17

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ...................................................................8

*Youngberg v. Romeo*,
 457 U.S. 307 (1982) .................................................................8

*Zadvydas v. Davis*,
 533 U.S. 678 (2001) .................................................................8

**Statutes**

5 U.S.C. § 704 ........................................................................19

5 U.S.C. § 706(2)(A)-(B) .............................................................18

6 U.S.C. § 205(b) ......................................................................8

29 U.S.C. § 794(a) ...................................................................17

Cal. Code Regs. tit. 15, §§ 1061, 3210 ..............................................4, 11

Cal. Code Regs. tit. 15, §§ 3030, 3031 ...............................................9

Cal. Code Regs. tit. 15, § 3170.1 .....................................................3

Cal. Code Regs. tit. 15, §§ 3335, 3343, 3348(i).......................................11

Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Div. F, Tit. II, § 215(b) (Dec. 27,
 2020), 134 Stat. 1457 ..............................................................8

Pub. L. No. 110-329, Div. D, Tit. II (Sep. 30, 2008), 122 Stat. 3574...................19

Rehabilitation Act section 504 .....................................................17, 18

**Other Authorities**

*Adelanto Correctional Facility*, Dep't of Homeland Sec. Off. for C.R. & C.L., 25 (Nov. 16, 2017),
https://embed.documentcloud.org/documents/6278922-HQ-Part2-Copy/?mode=text&embed=1;
...........................................................................................................................................11

*Adelanto ICE Facility, Demanding Accountability and Answers*, U.S. Congresswoman Judy Chu
(June 17, 2025), https://chu.house.gov/media-center/press-releases/reps-chu-sanchez-takano-
kamlager-dove-and-rivas-successfully-gain .................................................................................3

*'Alligator Alcatraz'*, The Guardian, Jul. 1, 2025, https://www.theguardian.com/us-
news/2025/jul/01/trump-alligator-alcatraz-immigration-florida?CMP=share_btn_url ...........12

*California Town's Immigration Jail*, Det. Watch Network 4, 12 (Oct. 2015),
*https://www.detentionwatchnetwork.org/sites/default/files/
reports/CIVIC%20DWN%20Adelanto%20Report.pdf - 10* .....................................................10

Homeland Sec. Off. Inspector Gen., *Management Alert—Issues Requiring Action at the Adelanto
ICE Processing Center in Adelanto, California* (Sept. 27, 2018),
https://www.oig.dhs.gov/sites/default/files/assets/2018-10/OIG-18-86-Sep18.pdf; ...............11

ICE's Inspections & Monitoring, Off. of Inspector Gen.,
https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf (June 26,
2018) ..........................................................................................................................................19

*Incarcerated*, CDCR (Mar. 1, 2021), https://www.cdcr.ca.gov/insidecdcr/2021/03/01/tablet-
project-enhances-communications-for-incarcerated-population/ .................................................4

Jenny Jarvie & Nathan Solis, *Moldy Food, Dirty Towels: Critics Warn of Inhumane Conditions at
California's Largest Detention Center* .......................................................................................10

L.A. Times (June 20, 2025), https://www.latimes.com/california/story/2025-06-20/unsanitary-
overcrowded-and-inhumane-red-flags-raised-about-conditions-in-adelanto-detention-center;10

*Report to Congress* (March 23, 2022), https://www.dhs.gov/sites/default/files/2022-05/ICE%20-
%20Office%20of%20Detention%20Oversight%20Inspections.pdf; .........................................7

*Solitary Confinement*, Project on Gov't Oversight (Sept. 12, 2019),
https://www.pogo.org/investigates/confidential-report-warned-ice-of-inhumane-use-of-solitary-
confinement; ..............................................................................................................................11

U.S. Congresswoman Judy Chu, Reps. Chu, Sánchez, Takano, Kamlager-Dove, and Rivas
Successfully Gain Access to Adelanto ICE Facility, Demanding Accountability and Answers
(June 17, 2025), https://chu.house.gov/media-center/press-releases/reps-chu-sanchez-takano-
kamlager-dove-and-rivas-successfully-gain ..............................................................................10

U.S. Immigr. & Customs Enf't, ICE Detention Statistics FY 2026 YTD (Sept. 24, 2025), available
at https://www.ice.gov/detain/detention-management.........................................................4, 11

U.S. Immigr. & Customs Enf't, Self-Deportation (July 16, 2025), https://www.ice.gov/self-deportation ................................................................................................................12

*Urge Self-Deportation, Noem Says*, Associated Press, Sept. 3, 2025, https://apnews.com/article/louisiana-immigration-detention-noem-trump-682793a4db4757649cb78b0ea3aa051d?utm_source=copy&utm_medium=share .................12

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Since beginning their immigration raids, Defendants have detained thousands, holding them for months in squalid conditions.  At the Adelanto ICE Processing Center ("Adelanto"), disease and illness are rampant, mold grows on the walls, food is unsanitary, water is undrinkable, and medical care is largely nonexistent.  These conditions are objectively worse than prison and violate the Fifth Amendment, the Rehabilitation Act, and the APA.  Plaintiffs seek a preliminary injunction ordering Defendants to rectify these conditions and provide conditions compliant with the Constitution and Defendants' own standards, the 2011 Performance-Based National Detention Standards ("PBNDS") and the American Correctional Association Standards ("ACAS").

Injunctive relief is desperately needed.  Three individuals have died at Adelanto. People must live without access to medical care, soap, clean water, nutritious food, hygienic facilities, programming, and the outdoors.  Medical intake fails to identify and triage detainees with critical medical and disability needs.  Medical prescriptions are not provided, timely medical care is nonexistent, and emergencies are treated without urgency.  Detainees cannot protest the conditions or they risk solitary confinement, where they are locked in a small cell for twenty-three hours a day.

Extensive evidence shows Plaintiffs are likely to succeed on the merits of their claims that these conditions are unconstitutional, violate the Rehabilitation Act, and the APA.  Not only have Plaintiffs shown that the conditions are presumptively unconstitutional as they are *worse* than prison, *Jones v. Blanas*, 393 F.3d 918, 933-934 (9th Cir. 2004), they have shown Defendants' impose  these harsh conditions so that immigrants flee the United States.  Courts have consistently enjoined such conditions, *Pablo Sequen v. Albarran*, 2025 WL 3283283, at *23-*29 (N.D. Cal. Nov. 25, 2025) (granting preliminary injunction for comparable conditions); *Ruiz v. U.S. Immigr. & Customs Enf't.*, 2026 WL 391924, at *1 (N.D. Cal. Feb. 10, 2026) (same);

*Mercado v. Noem*, 800 F. Supp. 3d 526, 575-76 (S.D.N.Y. 2025) (same); *Gonzalez v. Noem*, 2025 WL 3170784, at *1 (N.D. Ill. Nov. 5, 2025) (same), and this Court should too.

## II.    FACTS

### A.    The PBNDS

Adelanto is the primary long-term immigration detention center in the Central District, and is run by the U.S. GEO Group ("GEO"), a for-profit detention company that Defendant ICE contracts with. GEO and Defendants are obligated to comply with the PBNDS and the ACAS.

Designed to "transform the immigration detention system," the PBNDS prescribe specific rules that Defendants must follow. RJN, Ex. A at i. Among other things, they require Defendants to exercise authority over detainees "in the most humane manner possible," not use "retaliatory" disciplinary action, and provide timely medical care; hot, nutritious, and sanitary meals; potable water; outdoor recreation time; soap; and clean clothing, bedding, and linens. *Id.* at i, 216, 232-35, 257, 328-30, 370-71. The ACAS have similar requirements. RJN, Ex. B at 131, 151-56, 170, 229.

### B.    Conditions

Defendants do not comply with these standards. The water is dirty and undrinkable; facilities are filthy; the kitchens serve spoiled, non-nutritious food; clothing and bedding are threadbare and dirty; soap is inconsistently available; there is no privacy for toilets or showers; mold grows on walls; and medical care and disability accommodations are not provided. A.A. Decl. ¶¶ 27-32; A.A.A.A. Decl. ¶¶ 14-15, 38, 38-46 (mattresses are thin and painful, water is "yellow and brownish," and soap runs out); Arnold Decl. ¶¶ 29-34; Ding Decl. ¶¶ 6, 13-14, 36-40 (medical care is denied, food is cold and half-cooked, and clothes and blankets are dirty); E.M. Decl. ¶¶ 13-16; Flores Decl. ¶¶ 18-21; Fredrick Decl. ¶¶ 8-14, 36-49 (detainees lack medical care and food and water are unsanitary); J.M. Decl. ¶¶ 25-32; Karamychev

Decl. ¶ 26 ("The water at Adelanto tastes … like sewage."); L.T. Decl. ¶¶ 23-29; Mesrobian Decl. ¶¶ 26, 40-68 (soap runs out, clothes are dirty and thin, and kitchens are unclean); Rodriguez-Arzola Decl. ¶¶ 24-30; Ruiz-Escobar Decl. ¶¶ 23-28; Samaan Decl. ¶¶ 14-15, 18-19; Salazar-Garza Decl. ¶¶ 23-25, 28; Schuft Decl. ¶¶ 7-8; Smith Decl. ¶¶ 23-28, 30 (forced to wear dirty clothes); Thompson-Lleras Decl. ¶¶ 7-8, 12-18; Winfield Decl. ¶¶ 6-7, 25-35.  In a June 2025 press release, members of Congress condemned the "inhumane" conditions at Adelanto.[1]

Detainees are also deprived of social interaction and stimulation.  Whereas criminal detainees can have long visits and hold their children and their visitor's hands, Adams Decl. ¶¶ 24, 95-104; Salazar-Garza Decl. ¶ 31; Cal. Code Regs. tit. 15, § 3170.1, Adelanto detainees are permitted one-hour limited-contact visits, where they may only hug and kiss their visitors (including children) twice, A.A.A.A. ¶¶ 47-48; Arnold Decl. ¶ 35; Fredrick Decl. ¶ 28; Salazar-Garza Decl. ¶ 31; Thompson-Lleras Decl. ¶ 11; RJN, Ex. C at *62 (putting a one-hour time limit on visits).  Likewise, while the PBNDS state detainees should receive four hours of outdoor recreation daily, RJN, Ex. A at 370, Adelanto detainees receive one hour of outdoor time,[2] if that, and are locked in their cells six times daily (at 6:30 a.m., 10:30 a.m., 6:30 p.m., 11 p.m., 1:00 a.m., and 3:00 a.m.) for headcounts that last over an hour, A.A.A.A. Decl. ¶ 20; Arnold Decl. ¶¶ 12, 27; Fredrick Decl. ¶ 40; Mesrobian Decl. ¶¶ 7, 69-70, 74-75; Salazar-Garza Decl. ¶¶ 22, 29-30; Samaan Decl. ¶¶ 16-17; Winfield Decl. ¶ 39.  During these counts, detainees cannot leave their cells, meaning they cannot access water, showers, food, or recreation.

---

[1] *Reps. Chu, Sánchez, Takano, Kamlager-Dove, and Rivas Successfully Gain Access to Adelanto ICE Facility, Demanding Accountability and Answers*, U.S. Congresswoman Judy Chu (June 17, 2025), https://chu.house.gov/media-center/press-releases/reps-chu-sanchez-takano-kamlager-dove-and-rivas-successfully-gain.

[2] Detainees are otherwise given access to a "mini-yard," a small area that is open above but enclosed by large concrete walls.  *E.g.*, Samaan Decl. ¶ 17.

Adelanto also lacks programs, Arnold Decl. ¶ 28, unlike prison.  Adams Decl. ¶¶ 123-36; Cal. Code Regs. tit. 15, §§ 1061, 3210.  Defendants also curtail access to online materials.  While CDCR inmates are individually provided tablets,[3] detainees must share a limited number of tablets.  Arnold Decl. ¶ 13; Fredrick Decl. ¶ 25; Salazar-Garza Decl. ¶ 31.

Staff are quick to use solitary confinement[4] to punish detainees who protest the conditions.  Fredrick Decl. ¶¶ 32, 43, 46-47, 51 (pepper-sprayed and endured solitary for requesting shower curtains); Karamychev Decl. ¶¶ 29-37 (received solitary for requesting detention information); Mesrobian Decl. ¶¶ 44-45 (received solitary for protesting broken showers); Salazar-Garza Decl. ¶¶ 32-34 (received solitary for protesting conditions); Samaan Decl. ¶ 20 (received solitary for advocating for law library access).  ICE's own data shows it subjected ninety-five people at Adelanto to solitary during November 2025, and eighty-nine during October 2025.[5]  Solitary confinement is more restrictive than prison:  Adelanto detainees cannot leave their small cells, except for thirty to sixty minutes to get water, warm food, make a phone call, shower, or go outside in a small, caged yard that smells like urine.  During this limited outdoor time, detainees cannot drink water or use the bathroom.  Fredrick Decl. ¶¶ 48-49; Karamychev Decl. ¶ 33; Salazar-Garza Decl. ¶ 32.  Detainees lack cleaning supplies, so cells remain dirty, Ding Decl. ¶ 26; Fredrick Decl. ¶ 50; Karamychev Decl. ¶ 35, and they cannot receive contact visits.  Arnold Decl. ¶ 36.

---

[3] *See Tablet Project Enhances Communication for Incarcerated*, CDCR (Mar. 1, 2021), https://www.cdcr.ca.gov/insidecdcr/2021/03/01/tablet-project-enhances-communications-for-incarcerated-population/.

[4] At Adelanto, detainees may be placed in medical, administrative, or disciplinary segregation.  Regardless of the term used, each imposes complete isolation.  *E.g.*, Aguilar Decl. ¶ 10 (administrative segregation is "effectively solitary confinement"); Ding Decl. ¶¶ 25-26 (medical segregation is solitary confinement); Schuft Decl. ¶ 18.  Accordingly, Plaintiffs refer to segregation as "solitary confinement."

[5] U.S. Immigr. & Customs Enf't, ICE Detention Statistics FY 2026 YTD (Sept. 24, 2025), available at https://www.ice.gov/detain/detention-management.

These conditions are designed to coerce detainees into agreeing to deportation. Aguilar Decl. ¶ 13; A.K. Decl. ¶¶ 13, 18; Rodriguez-Arzola Decl. ¶ 30; Thompson-Lleras Decl. ¶¶ 22-27.  Defendants have expressly said so, *see infra* IV.A.1.b., and their punitive responses to peaceful protests prove as much, *see* Karamychev Decl. ¶ 37; Mesrobian Decl. ¶ 45; Salazar-Garza Decl. ¶ 32-34.

## C.    Medical Care

Adelanto's health care system is grossly inadequate.  Dr. Altaf Saadi, a board-certified neurologist with extensive experience evaluating the health conditions of detainees in ICE's custody, found that Defendants provide "inadequate" and "substandard" medical care that endangers detainees.  This care fails to adequately screen detainees, respond to medical care requests, provide access to specialty care, and has a "dangerously ineffective" system for administering medication. Saadi Decl. ¶ 12.

### 1.    The Intake Process

Comprehensive intake assessments are vital to identify detainees with urgent medical needs, mental health issues, infectious diseases, and disabilities.  *Id.* ¶¶ 17-18.  Intake assessments at Adelanto fail to identify detainees with these issues, exposing detainees to "serious harm." *Id.* ¶¶ 19-27.  Screenings are conducted in front of others, undermining medical history collection, and patients are not timely referred to providers, even when they have time-sensitive needs like diabetes or fractures. *Id.* ¶¶ 20-25.

This jeopardizes the health of all detainees at Adelanto and can cause serious complications. *Id.* ¶ 24.  For example, despite informing staff at arrival of a toe injury (which ended up being a fracture), Mr. Smith did not receive care for three months. Smith Decl. ¶¶ 17-19.  These delays can lead to "improper healing, chronic pain, long-term mobility issues, and … osteoarthritis." Saadi Decl. ¶ 22.  Likewise, A.K. missed her antibiotic despite informing staff of her prescription at intake and being pregnant.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

A.K. Decl. ¶¶ 15-16.  Adelanto's failure to identify continuity of care needs can be deadly.  Saadi Decl. ¶¶ 24-27.

### 2.    Wait Times

Those seeking care for serious, acute, and painful conditions receive responses weeks to months after their requests, or not at all.  *See* Saadi Decl. ¶¶ 32, 46; *see also* A.A.A.A. ¶¶ 14-15; Arnold Decl. ¶¶ 5-7; Flores Decl. ¶ 9; Ding Decl. ¶ 13; E.M. Decl. ¶ 9; Fredrick Decl. ¶¶ 9-13; Karamychev Decl. ¶ 22; Lopez Decl. ¶ 11; L.T. Decl. ¶ 15; Mesrobian Decl. ¶ 22; Pereira-Amaya Decl. ¶¶ 8-12; Winfield Decl. ¶¶ 5, 21-24.  Those who receive appointments find that their appointments have been cancelled. Arnold Decl. ¶ 5; J.M. Decl. ¶ 14; Samaan Decl. ¶ 9.  Without timely treatment, detainees have been hospitalized repeatedly or died waiting for medical care.  Lopez Decl. ¶¶ 11-36; Mesrobian Decl. ¶ 10; Rodriguez-Arzola Decl. ¶¶ 7-10, 17, 21; RJN, Exs. D-F.

Further, those suffering from medical crises are ignored.  Saadi Decl. ¶¶ 83-93; *see also* Arnold Decl. ¶ 9; Ding Decl. ¶¶ 22-23; Fredrick Decl. ¶ 12;  Mesrobian Decl. ¶¶ 9-10; Pereira-Amaya Decl. ¶ 13 (two hours to respond to bleeding head).  Mr. Mesrobian, for example, has been repeatedly hospitalized for epilepsy.  Staff took more than twenty minutes to respond to his seizure, leaving him choking and turning blue, Mesrobian Decl. ¶¶ 9, 13-14, 16-19, 23 and locked him in a medical holding tank alone after another seizure, *id.* ¶ 25.  He began seizing but did not receive medical treatment until staff found him during a security check.  *Id.*  It took Mr. Salazar-Garza months to see a doctor after he began experiencing severe pain in his hand.  Only after blood and black pus started seeping from his finger did he receive care, albeit a week later.  Salazar-Garza Decl. ¶¶ 10-11.

### 3.    Substandard Care

When care is provided, it is deficient.  Detainees are denied access to necessary medications because of the wait times, *supra* II.C.2., and do not consistently receive their medication, Saadi Decl. ¶¶ 59-71.  Detainees that require specialty care do not

receive it, *id.* ¶¶ 74-82, and chronic ailments are not timely or adequately treated, *id.* ¶¶ 46-56.  As just some examples, Mr. Lopez received delayed treatment for blood in his stool and critically low hemoglobin, which indicated life-threatening anemia and required blood transfusions, *id.* ¶ 90.; L.T. lacks consistent access to necessary epilepsy medication, *id.* ¶ 63; Mr. Salazar-Garza did not receive care for his finger, resulting in a serious infection, *id.* ¶ 75; Mr. Flores has suffered loss of limb control from the failure to treat his degenerative nerve disease, *id.* ¶ 77; and Ms. Ding had to wait months to receive necessary imaging for her pituitary brain tumor, *id.* ¶ 80. These, in addition to other instances of medical neglect—like failure to treat Ms. Rodriguez-Arzola's swollen legs and infection, Rodriguez-Arzola Decl. ¶¶ 7-15 and failure to treat Mr. Smith's broken toe and provide him cardiology care for abnormal EKGs and recurring chest pain, Smith Decl. ¶¶ 7-21—demonstrate that care at Adelanto is inadequate, Saadi Decl. ¶¶ 56, 71, 82, 93.  This includes mental health care. *Id.* ¶¶ 94-105.

### D.    Disability Accommodations

Defendants fail to accommodate disabilities despite being obligated to do so. RJN, Ex. A at 344-53.  Detainees with clear mobility issues are assigned top bunks and cells on the second floor.  Ding Decl. ¶¶ 18-19, 24; Karamychev Decl. ¶ 5; L.T. Decl. ¶ 10; Ruiz-Escobar Decl. ¶ 33.  L.T., who uses a cane, was put in ankle chains when going to court and doctors' appointments, risking a fall.  L.T. Decl. ¶ 13. Detainees must forgo specialty shoes, showers, assistive devices, and physical therapy.  Arnold Decl. ¶¶ 6-7; Karamychev Decl. ¶ 6; L.T. Decl. ¶¶ 12, 14-15.

### E.    September 2025 Inspection

Congress has mandated oversight of immigration detention facilities to ensure habitable conditions.  ICE's Office of Detention Oversight ("ODO") conducts inspections to assess compliance with the PBNDS.[6]  Following each inspection, ODO

---

[6] Off. of Detention Oversight Inspections, *Fiscal Year 2021 Report to Congress* at 1 (March 23, 2022), https://www.dhs.gov/sites/default/files/2022-05/ICE%20-

creates a Compliance Inspection Final Report, intended to be an independent assessment of deficiencies.

ODO must focus inspections on standards significant to life, health, and safety, and should conduct a thorough, line-by-line assessment of each core standard. ODO failed to do this when it inspected Adelanto in September 2025. Instead—and despite repeated complaints of substandard medical care and inhumane conditions from detainees, journalists, and members of Congress—ICE awarded Adelanto a "good" rating, with no care deficiencies found. RJN, Ex. G at 8.

## III.  LEGAL STANDARD

A preliminary injunction must issue if Plaintiffs establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs readily satisfy this standard.

## IV.  ARGUMENT

### A.    Plaintiffs are likely to succeed on the merits of their claims.

#### 1.    Adelanto's punitive conditions violate the Fifth Amendment.

Because Defendants hold immigrants in "civil, not criminal" detention, the conditions of detained Plaintiffs' confinement must be "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Subjecting detained Plaintiffs to conditions that "amount to punishment" violates the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979); *see also Youngberg v. Romeo*, 457 U.S. 307,

---

%20Office%20of%20Detention%20Oversight%20Inspections.pdf; *see also* 6 U.S.C. § 205(b) (requiring that ODO conduct "unannounced inspections of detention facilities"; "[p]rovid[e] assistance to individuals affected by potential misconduct, excessive force, or violations of law or detention standards"; and "mak[e] recommendations to address concerns or violations of contract terms identified in reviews, audits, investigations, or detainee interviews regarding immigration detention facilities and services[.]"); Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Div. F, Tit. II, § 215(b) (Dec. 27, 2020), 134 Stat. 1457.

322 (1982) (civil detainees "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Conditions are punitive and thus unlawful where, as here, the challenged restrictions (1) are "expressly intended to punish," (2) serve a "non-punitive purpose" but are "excessive in relation to the … purpose," or (3) "are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones*, 393 F.3d at 932 (cleaned up). Conditions are presumed punitive where a civil detainee's conditions are "identical to, similar to, or more restrictive than, those in which his criminal counterparts are held." *Id.* Courts across the Ninth Circuit have consistently held that these rules apply "in the immigration context." *E.g.*, *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1080 n.2 (N.D. Cal. 2024); *Castillo v. Barr*, 449 F. Supp. 3d 915, 920-21 (C.D. Cal. 2020); *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1064 (C.D. Cal. 2019).

Detained Plaintiffs are subject to harsher conditions than prisoners, making the conditions presumptively unconstitutional. Plaintiffs have also demonstrated that these conditions are intended to punish, have no legitimate purpose, and are excessive.

### a. Under Ninth Circuit case law, the conditions at Adelanto are presumptively punitive.

The Fifth Amendment mandates that the government provide for the "basic human needs" of the people it detains, including their "food, clothing, shelter, [and] medical care…." *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). For this reason, California has specific regulations that mandate incarcerated persons be provided clean clothes, bed linens, and towels, Cal. Code Regs. tit. 15, §§ 3030, 3031; nutritious and sanitary food and drink, *id.* §§ 3050, 3052; access to soap, *id.* § 3061; and access to outdoor recreation, *id.* § 3044. In prisons, these regulations are generally followed, resulting in hygienic facilities with access to the outdoors, soap, potable water, clean food, clean and temperature-appropriate

9

clothing, bedding and linens, and privacy.  Adams Decl. ¶¶ 27, 36-38, 48-49, 62-66,
75-78, 83-94, 117.

In contrast, detained Plaintiffs experience conditions that are, as a whole, as
harsh or harsher than prison.  They receive only an hour of large, outdoor yard access;
lack access to clean drinking water, nutritious and sanitary food, clean clothing,
bedding, and linens; consistent access to soap; privacy curtains when they use the
toilet or shower; sanitary living conditions; and medical care.[7]  *Supra* II.B.-C.; *cf.*
*Pablo Sequen*, 2025 WL 3283283, at *25-26 (detainees have the right to personal
hygiene, clean cells, clean clothing, and medical care) (citation omitted).  Detained
Plaintiffs are also repeatedly locked in their cells for long headcounts without access
to water or programming.  *Supra* II.B.; *cf.* Adams Decl. ¶¶ 49, 109-110 (incarcerated
people have access to potable water during counts, which take 15-20 minutes and are
designed to minimize disruption).  Because of the late-hour headcounts (1:00 a.m.
and 3:00am), detainees experience disruptive sleep as lights are not turned down until
midnight.  Ding Decl. ¶ 35; Mesrobian Decl. ¶ 32; Ruiz-Escobar Decl. ¶ 10.  In
contrast, lights in prison are typically turned down around 9:00 p.m.  Adams Decl. ¶
110.

Detained Plaintiffs are also only allowed short, limited-contact visits, *supra*
II.B., while prisoners are allowed longer, contact visits, Adams Decl. ¶¶ 24, 98-99,
104.  And unlike state prisons, where detainees have tablets, at Adelanto, tablets are

---

[7] Christina Fialho & Victoria Mena, *Abuse in Adelanto: An Investigation into a California Town's Immigration Jail*, Det. Watch Network 4, 12 (Oct. 2015), https://www.detentionwatchnetwork.org/sites/default/files/reports/CIVIC%20DWN%20Adelanto%20Report.pdf (reporting deficient food, hygiene, and medical care at Adelanto); Jenny Jarvie & Nathan Solis, *Moldy Food, Dirty Towels: Critics Warn of Inhumane Conditions at California's Largest Detention Center*, L.A. Times (June 20, 2025), https://www.latimes.com/california/story/2025-06-20/unsanitary-overcrowded-and-inhumane-red-flags-raised-about-conditions-in-adelanto-detention-center; Press Release from U.S. Congresswoman Judy Chu, Reps. Chu, Sánchez, Takano, Kamlager-Dove, and Rivas Successfully Gain Access to Adelanto ICE Facility, Demanding Accountability and Answers (June 17, 2025), https://chu.house.gov/media-center/press-releases/reps-chu-sanchez-takano-kamlager-dove-and-rivas-successfully-gain.

scarce, limiting access to video calls, messaging, and programming.  Adams Decl. ¶¶ 127-32 (vocational training and self-help classes offered in prison); Arnold Decl. ¶ 13; Fredrick Decl. ¶ 25; Salazar-Garza Decl. ¶ 31. Further, unlike prisons, which have programming, Arnold Decl. ¶ 32; Cal. Code Regs. tit. 15, §§ 1061, 3210, there are no programs at Adelanto.

In addition, Defendants use pepper-spraying and solitary confinement to maintain an environment of fear and penalize those who speak out.[8]  *Supra* II.B. Prisons do not, and in fact *cannot*, use solitary confinement in this manner.  Adams Decl. ¶ 143 (restrictive housing not used to punish inmates for protesting); Cal. Code Regs. tit. 15, §§ 3335, 3343, 3348(i) (solitary confinement only permissible if person "presents an immediate threat to the safety of [others]" and can only be used in a limited manner).  And inmates in solitary have access to reading materials, phone calls, and the outdoors, while detainees at Adelanto are confined to small cells, by themselves, and may only exit for around an hour to get water, heat up food, shower, make a phone call, and access a small outdoor space that smells like urine.  *See supra* II.B.

Imposition of these conditions, which are harsher than prison, Adams Decl. ¶¶ 45, 57, 69, 82, 94, 104, 114, 122, 136, 149; Mesrobian Decl. ¶¶ 46, 55; Salazar-Garza Decl. ¶¶ 22, 29; Samaan Decl. ¶¶ 16, 19, violates the Fifth Amendment and triggers

---

[8] *Corrections Expert's Report on Adelanto Correctional Facility*, Dep't of Homeland Sec. Off. for C.R. & C.L., 25 (Nov. 16, 2017), https://embed.documentcloud.org/documents/6278922-HQ-Part2-Copy/?mode=text&embed=1; Dep't of Homeland Sec. Off. Inspector Gen., *Management Alert—Issues Requiring Action at the Adelanto ICE Processing Center in Adelanto, California* (Sept. 27, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-10/OIG-18-86-Sep18.pdf; *see also* Nick Schwellenbach, *Confidential Report Warned ICE of "Inhumane" Use of Solitary Confinement*, Project on Gov't Oversight (Sept. 12, 2019), https://www.pogo.org/investigates/confidential-report-warned-ice-of-inhumane-use-of-solitary-confinement; U.S. Immigr. & Customs Enf't, ICE Detention Statistics FY 2026 YTD (Sept. 24, 2025), available at https://www.ice.gov/detain/detention-management (Adelanto has one of the highest numbers and proportions of people in solitary confinement).

1    the presumption that detained Plaintiffs are subject to punitive conditions.  *Jones*, 393

2    F.3d at 934 (citing *Youngberg v. Romeo*, 457 U.S. 3307, 321-22 (1982)).

3          **b.    No legitimate interests justify the conditions at Adelanto.**

4          Under the applicable presumption, "the burden shifts to [Defendants] to show

5    (1) legitimate, non-punitive interests justifying the conditions of … confinement and

6    (2) that the restrictions imposed … [are] not excessive in relation to these interests."

7    *King v. Cnty. of L.A.*, 885 F.3d 548, 557 (9th Cir. 2018).  They can show neither.

8          *First*, Defendants have admitted the conditions are punitive and intended to

9    deter immigrants to leave and not enter.  Defendant ICE's own website warns:  "If

10   ICE arrests you because you didn't turn yourself in, the agency will detain and remove

11   you — and you may have to spend several months in detention while you're awaiting

12   removal."[9]  Standing alongside Defendant Noem while opening a detention facility in

13   Florida, Governor Ron DeSantis stated, "You'll have a lot of people who will deport

14   on their own because they don't want to end up in an Alligator Alcatraz, or some of

15   these other places."[10]  President Trump agreed, saying he "couldn't care less" about

16   the conditions in the facility, and praised the facility as a low-cost option with "a lot

17   of cops in the form of alligators."[11]  On another occasion, Defendant Noem explained

18   that the federal government "purposefully chose a notorious Louisiana prison to hold

19   immigration detainees … to encourage people … to self-deport."[12]  These statements,

20   among others, demonstrate "that harsh conditions of confinement are a deliberate

21   feature … intended to induce self-deportation and to deter illegal immigration."

22   *Mercado*, 800 F. Supp. 3d at 575-76.  Declarations similarly establish that conditions

23   _____

24   [9] *See* U.S. Immigr. & Customs Enf't, Self-Deportation (July 16, 2025),
     https://www.ice.gov/self-deportation.

25   [10] Richard Luscombe, *Trump Celebrates Harsh Conditions for Detainees on Visit to
     'Alligator Alcatraz'*, The Guardian, Jul. 1, 2025, https://www.theguardian.com/us-
26   news/2025/jul/01/trump-alligator-alcatraz-immigration-florida?CMP=share_btn_url.
     [11] *Id.*
27   [12] Sara Cline, *A Notorious Louisiana Prison was Chosen for Immigrant Detainees
     to Urge Self-Deportation, Noem Says*, Associated Press, Sept. 3, 2025,
28   https://apnews.com/article/louisiana-immigration-detention-noem-trump-
     682793a4db4757649cb78b0ea3aa051d?utm_source=copy&utm_medium=share.

at Adelanto have accomplished this "goal."  A.K. Decl. ¶¶ 13,18; Rodriguez-Arzola Decl. ¶ 30; Samaan Decl. ¶ 21; Thompson-Lleras Decl. ¶¶ 22-27.  Of course, imposing excessively punitive conditions for "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." *Bell*, 441 U.S. at 539, n.20; *see also Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil detention cannot be a "mechanism for retribution or general deterrence"); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 188-89 (D.D.C. 2015) (immigration detention "for the sake of sending a message of deterrence" is "out of line" with Supreme Court precedent).

*Second*, no legitimate or non-punitive interest justifies the conditions Plaintiffs challenge.  Expert testimony establishes the conditions are unnecessary, excessive, and harmful to the people who are detained there and have no legitimate purpose.  *See* Adams Decl. ¶¶ 45, 57, 69, 82, 94, 104, 114, 122, 136, 149 (no penological purpose for harsh conditions).  Said differently, depriving people of basic human necessities like water, medical care, food, and the outdoors, and caging them in unsanitary units where disease is rampant bears no reasonable relationship to any conceivable, legitimate goal of civil detention.

### c.    Even if Defendants can rebut the *Jones* presumption, conditions at Adelanto are unconstitutionally punitive.

Even if Defendants can rebut the *Jones* presumption, ample record evidence proves that conditions at Adelanto are unconstitutionally punitive because they are: (1) "intended to punish," (2) "excessive in relation to [their] non-punitive purpose," or (3) "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones*, 393 F.3d at 932.

*First*, Defendants have admitted that the conditions are "intended to punish." *See supra* IV.A.1.b.

*Second*, Defendants employ conditions at Adelanto that are excessive to any purported non-punitive purpose.  Defendants, for example, routinely use pepper-spray and solitary confinement to punish legitimate protests or individuals they deem

13

inconvenient. *E.g.*, Fredrick Decl. ¶ 51; J.M. Decl. ¶ 9; Karamychev Decl. ¶¶ 32-34; Salazar-Garza Decl. ¶¶ 32-33; Samaan Decl. ¶ 20; Thompson-Lleras Decl. ¶ 10. More generally, detainees are denied access to habitable conditions. As Mr. Adams explains, these harsh conditions have no security or penological purpose, Adams Decl. ¶¶ 45, 57, 69, 82, 94, 104, 114, 122, 136, 149, and, as such, are far excessive to the conditions criminal detainees experience, *Jones*, 393 F.3d at 932.

*Third*, to the extent the conditions are designed to achieve legitimate objectives—which is doubtful given Defendants' statements and the harsh conditions—the PBNDS provide alternative, less harsh methods to do so and, in fact, forbid the current practices at Adelanto. They expressly state:

- "Disciplinary action may not be capricious or retaliatory."
- "Staff may not impose or allow the imposition … deprivation of food services … ; deprivation of … items of personal hygiene; [or] deprivation of indoor or outdoor recreation."
- "Ordinarily detainees shall be served three [nutritious] meals every day, at least two of which shall be hot meals …."
- "Clean, potable drinking water must be available."
- "No staff member shall harass, discipline, punish, disclose sensitive information about, or otherwise retaliate against a detainee lodging a complaint or grievance."

*See* RJN, Ex. A at 215-16, 232, 420; *cf. supra* II.B.

Defendants' own standards demonstrate that the harsh conditions are unnecessary. Prisons operations also prove that less harsh methods exist and that the current conditions are unconstitutionally punitive. *See generally* Adams Decl. For these reasons, Plaintiffs are likely to succeed on the merits of their claim that the punitive conditions at Adelanto violate their Fifth Amendment rights.

## 2. Adelanto's inadequate medical care violates the Fifth Amendment.

The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody. *DeShaney*, 489 U.S. at 199-200; *see also Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017) ("There is no question that detainees are entitled to 'adequate medical care.'"). The government violates this duty when:

> (1) [It] made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the [government] did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the [government's] conduct obvious; and (4) by not taking such measures, the [government] caused the plaintiff's injuries.

*Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) (quoting *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)).

*First*, the record is replete with examples of Defendants intentionally depriving detainees of medical care. For example, Plaintiff Mesrobian reported at intake that he could not raise his arm because his shoulder was dislocated during his arrest. Despite repeatedly informing staff, he has never been offered medical treatment. Mesrobian Decl. ¶ 4. Guards also failed to give Mr. Mesrobian oxygen for twenty-five minutes following a seizure, causing him to turn purple, and emergency medical help did not arrive for forty-five minutes. *Id.* ¶ 19. As another example, Plaintiff Salazar-Garza complained repeatedly, including at intake, that he was experiencing severe pain in his hand following a prior amputation of his finger. His finger ultimately burst open with "blood and black pus." Salazar-Garza Decl. ¶¶ 8-10. He showed a guard but did not receive care for more than a week. *Id.* ¶¶ 9-11. Other examples abound, *e.g.*, A.A.A.A. Decl. ¶¶ 22-30 (lupus went untreated despite staff being aware of declining condition); Ding. Decl. ¶ 13 (submitted nearly 100 medical requests for medication); J.M. Decl. ¶ 20 (guards responded slowly to detainee lying

15

in pool of blood, saying, "Be happy, at least we come"); Lopez Decl. ¶¶ 12-39
(detailing hospital visits and Adelanto staff's failure to follow post-hospital care
instructions); Winfield Decl. ¶ 5 (has not received care for known conditions), each
demonstrating that Defendants have "consciously [taken] no action." *Castro v. Cnty.
of L.A.*, 833 F.3d 1060, 1071 n.4 (9th Cir. 2016); *see also Guel v. Cnty. of San
Bernardino*, 2024 WL 5185331, at *3 (C.D. Cal. Oct. 23, 2024) (intentional action
shown where the defendants "were aware of Plaintiff's injury and need for medical
attention, yet repeatedly chose inaction"); *Ward v. Cnty. of San Diego*, 2025 WL
319250, at *8 (S.D. Cal. Jan. 28, 2025) (failure to screen for and treat medical and
mental health care needs on arrival to jail constitute intentional decisions).

    *Second*, the record demonstrates that the conditions and Defendants' practice
of failing to respond to and treat detainees' medical needs exposes detainees to
substantial risk of serious harm. *Compare supra* II.B.-C., *with Parsons v. Ryan*, 754
F.3d 657, 678-80 (9th Cir. 2014) (broad harm established by generally deficient
medical care and conditions); *Russell v. Lumitap*, 31 F.4th 729, 739-40 (9th Cir. 2022)
(substantial risk of serious harm shown by defendants ignoring hyperventilation,
vomiting, dry heaving, difficulty breathing, severe chest pain, numbness in hands and
feet, and tachycardia); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 670 (9th Cir.
2021) ("There can be no debate that … an individual who is unresponsive and seizing
faces a substantial risk of suffering serious harm."). There is also insufficient medical
staff at Adelanto, *e.g.*, A.A.A.A. Decl. ¶¶ 22, 26 (short staffing caused medication
delays and required untrained guards to step into "medical roles"); Winfield Decl. ¶
5 (one doctor for 1,500 detainees), which separately satisfies this factor, *Jensen v.
Shinn*, 609 F. Supp. 3d 789, 865 (D. Ariz. 2022) ("Defendants' insufficient hiring and
retention of qualified staff create a substantial risk of serious harm to all class
members…."). Finally, Defendants' failure to provide proper cleaning in response to
skin disease, *supra* II.B.-C., separately establishes a substantial risk of serious harm.
*E.g.*, *Gutierrez-Lopez v. Figueroa*, 462 F. Supp. 3d 973, 986 (D. Ariz. 2020)

16

(unmitigated risk of COVID-19 transmissions in ICE detention facilities "yields a substantial risk of serious harm"); *Castillo*, 449 F. Supp. 3d at 922 (substantial risk of serious harm demonstrated by defendants ignoring COVID-19 risks).

*Third*, by repeatedly ignoring detainees' requests for medical care, *supra* II.C., Defendants have acted objectively unreasonable. *Ward*, 2025 WL 319250, at *8-9 (failure to order medications and take action despite obvious deterioration was objectively unreasonable); *Fromer v. Cnty. of Riverside*, 2025 WL 819719, at *6 (C.D. Cal. Feb. 4, 2025) (year-long delay in care despite multiple grievances was objectively unreasonable).

*Fourth*, Plaintiffs have shown the conditions and Defendants' conduct caused a "sufficiently imminent danger" to their health. *Supra* II.B.-C., *Roman*, 977 F.3d at 943; *Guel*, 2024 WL 5185331, at *5 (imminent danger established by worsening injury). The conditions are so atrocious that they caused three detainee deaths, RJN, Exs. D-F, making causation clear and present.

### 3. Defendants' conduct violates the Rehabilitation Act.

To succeed on a section 504 of the Rehabilitation Act claim, subclass Plaintiffs Mesrobian, L.T., Salazar-Garza and the putative disability subclass must show that they: (1) are "qualified individual[s] with a disability; (2) [were] denied a reasonable accommodation that they need in order to enjoy meaningful access to the benefits of public services;" and (3) the program is conducted by an executive agency. *Csutoras v. Paradise High School*, 12 F.4th 960, 968-69 (9th Cir. 2021) (cleaned up); 29 U.S.C. § 794(a).

Subclass Plaintiffs have qualifying disabilities, *e.g.*, Ding Decl. ¶ 9 (mobility issues from brain tumor); Flores Decl. ¶ 7 (mobility issues from nerve disease); L.T. Decl. ¶¶ 6, 9 (mobility issues from stroke); *see also* Ding Decl. ¶¶ 23-24 (detailing other detainees with disabilities); Ruiz-Escobar Decl. ¶ 33 (same), and Defendants Department of Homeland Security ("DHS") and ICE are executive agencies, 29 U.S.C. § 794(a).

17

Defendants have failed to provide reasonable accommodations and comply with their affirmative duty to "assess the potential accommodation needs of [detainees]." *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 272 (D.C. Cir. 2015).  People with mobility issues are assigned top bunks, placed in second floor units, and are often last in line for food or cannot access food.  *Supra* II.D.  Mobility-impaired detainees also only have one shower with a seat, creating long lines, and must use inaccessible bathrooms.  Flores Decl. ¶¶ 15-16; L.T. Decl. ¶ 12.  Other accommodations, like proper food for pregnancy, orthopedic and diabetic shoes to manage pain, are not provided.  A.K. ¶ 21; Rodriguez-Arzola Decl. ¶ 18; Salazar-Garza Decl. ¶ 20.

As a result, and unlike incarcerated people, Adams Decl. ¶¶ 150-56, subclass Plaintiffs cannot participate in the fundamentals of life at Adelanto.  *Pierce*, 128 F. Supp. 3d at 277.  To participate, subclass Plaintiffs need equal access to bathing, a separate food line or one that provides them equal access to hot food, bottom bunks and first floor accommodations, and special shoes.  Defendants' failure to provide accommodations violates section 504 and Plaintiffs are likely to succeed on the merits of this claim.

### 4.    Defendants' conduct violates the Administrative Procedure Act.

Under the APA, a "court shall … hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, … ; [or] (B) contrary to constitutional right…."  5 U.S.C. § 706(2)(A)-(B).  Just recently, and despite conditions that violate Defendants' own standards, Adelanto received a "good rating," demonstrating Defendant ICE's final view that Adelanto is compliant with the PBNDS (when it is not).  This is arbitrary and capricious and contrary to the Constitution, and it must be held unlawful and set aside.

1

2

### a.    Awarding Adelanto a "Good" Rating Is a Final Agency Action.

A final agency action "marks the consummation of the agency's decision-making process," from which "legal consequences … flow." *Bennett v. Spear*, 520 U.S. 154, 156 (1997).  Defendants' decision to award Adelanto a "good" rating satisfies this standard.

The PBNDS are contractually binding terms that Defendants are not following.[13]  *See infra* IV.A.4.b; *see supra* II.  Nonetheless, Defendants recently awarded Adelanto a "good" rating.  This rating, which is not subject to review, demonstrates that Defendants deem the conditions at Adelanto compliant with the PBNDS, which is a final action.  *Torres*, 411 F. Supp. 3d at 1069 ("any past or ongoing non-compliance [with the PBNDS] at Adelanto" represents a final agency action).  Legal consequences flow from this determination—courts assume the rights of detainees and obligations of Defendants flow from any agency action regarding PBNDS compliance, *Torres*, 411 F. Supp. 3d at 1069, meaning compliance would result in habitable conditions.  And absent a lower rating, Adelanto is able to remain open and has no obligation to alter its non-compliance.  *See* Pub. L. No. 110-329, Div. D, Tit. II (Sep. 30, 2008), 122 Stat. 3574 (detention funds cannot be used if "the two most recent overall performance evaluations received by the contracted facility are less than 'adequate'").  As such, Defendants' decision to award Adelanto a "good" rating is reviewable.  5 U.S.C. § 704.

---

[13] *See also* ICE's Inspections & Monitoring, Off. of Inspector Gen., https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf (June 26, 2018) (explaining ICE inspections "do not fully examine actual conditions or identify all deficiencies").

19

### b. Awarding Adelanto a "Good" Rating Is Arbitrary and Capricious.

An agency's failure to comply with its rules is "arbitrary, capricious" conduct violating the APA. *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). "To establish an APA claim under the *Accardi* doctrine, Plaintiffs must show both that (1) the Government violated its own regulations, and (2) [that they] suffer substantial prejudice as a result of that violation." *Cmty. Legal Services in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 3d 897, 921 (N.D. Cal. 2025). Plaintiffs easily satisfy this standard.

*First*, Defendants have violated the PBNDS.

- **Disability Identification, Assessment, and Accommodation.** Defendants must identify detainees with disabilities; ensure "detainees with disabilities [are] housed in the least restrictive and most integrated setting possible;" ensure detainees with disabilities are able to maintain "acceptable personal hygiene practices;" and provide "an equal opportunity to participate in or benefit from the facility's programs and activities." RJN, Ex. A at 62, 327, 344. Defendants ignore identifiable disability issues, like mobility issues, assign detainees with mobility issues to top bunks, and deprive detainees with mobility issues equal access to showers and meals. *Supra* II.D., IV.A.3.

- **Disciplinary Systems.** Defendants must ensure "disciplinary action [is] not [] … retaliatory" and that it is commensurate. RJN, Ex. A at 216. Defendants use extended solitary confinement to retaliate against those who protest the conditions and to house those they find inconvenient. *Supra* II.B.

- **Food & Water Service.** Defendants must provide sanitary, nutritious meals "at least two of which shall be hot meals," provide "[c]lean, potable drinking water," and ensure "a high level of sanitation." RJN, Ex. A at 232, 243. Detainees receive cold, unsanitary, and non-nutritious meals; dirty water; and must live in filthy conditions. *Supra* II.B.

20

- **Medical Care.** Defendants must provide "medically necessary and appropriate medical, … and pharmaceutical services;" provide "emergency care" and "specialty health care;" respond "timely" to "medical complaints;" send detainees with any acute or emergent medical conditions identified at intake for "evaluation to a qualified, licensed health care provider as quickly as possible, but in no later than two working days;" and process medical requests "within 24 hours" of receipt. RJN, Ex. A at 260, 266, 271. Detainees go without medical, emergency, and specialty care and must wait *months* after intake to see a qualified practitioner. *Supra* II.C. Likewise, medical grievances go unanswered for months, if they are answered at all. *Supra* II.C.

- **Personal Hygiene.** Defendants must provide detainees with soap and clean and suitable clothing and bedding. RJN, Ex. A at 327-30. Detainees often lack access to soap and are not provided clean and suitable clothing and bedding. *Supra* II.B.

- **Solitary Confinement ("Disciplinary Segregation").** Defendants typically may only confine detainees for "30 days per incident," and must provide "well ventilated, adequately lit, appropriately heated/cooled, [and sanitary]" cells and "three nutritionally adequate meals per day." RJN, Ex. A at 172, 181, 183. Detainees have been confined for longer than thirty days, Samaan Decl. ¶ 20, and are confined in unsanitary cells without adequate food, *supra* II.B.

- **Suicide Watch/Prevention.** Defendants must prevent "significant self-harm and suicides with appropriate sensitivity, supervision, medical and mental health referrals and emergency medical procedure." RJN, Ex. A at 331. Detainees suffering mental health crises are isolated in dirty units, which only worsens their symptoms. Saadi Decl. ¶¶ 94-104; Ding Decl. ¶¶ 25-28.

*Second*, these violations have caused detained Plaintiffs significant prejudice, as they must live in inhumane, non-compliant conditions. *Infra* IV.B; *Supra* II.B.-D.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

Defendants' decision to not comply with the PBNDS and provide Adelanto a "good rating" is arbitrary and capricious. *Torres*, 411 F. Supp. 3d at 1069 ("any past or ongoing non-compliance [with the PBNDS]" constitutes an *Accardi* violation). Additionally, Congress required ICE to conduct inspections to ensure detention facilities are safe and protect detainees. Defendant ICE's inspection failed to do this, separately making the inspection arbitrary and capricious. Plaintiffs are therefore likely to succeed in their argument that the agency action is arbitrary and capricious under section 706(2)(A).

### c. Defendants' Continued Non-Compliance with the PBNDS is Contrary to the Constitution.

Defendants' failure to comply with the PBNDS has resulted in unconstitutional conditions, *supra* IV.A.1., and should be set aside as contrary to the Constitution under section 706(2)(B).

### B. Plaintiffs have established that they are suffering irreparable harm.

The deprivation of constitutional rights itself "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Further, "subpar medical and psychiatric care in ICE detention facilities" constitute "irreparable harms" for detained immigrants like Plaintiffs. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Mercado*, 800 F. Supp. 3d at 566-67. Likewise, Defendants' failure to accommodate disabilities causes "irreparable harm through access exclusion." *Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 956 (N.D. Cal. 2015).

### C. The balance of hardships and public interest favor an injunction.

The third and fourth factors—the balance of hardships and the public interest—"merge when the Government is the opposing party." *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. And it is always in the public interest for the government to follow the law. *Thakur v. Trump*, 787 F.

Supp. 3d 955, 997 (N.D. Cal. 2025); *Otilio B.F. v. Andrews*, 2025 WL 3152480, at *11 (E.D. Cal. Nov. 11, 2025).   Moreover, those held in immigration detention "are members of the community, and their interests, too, must be included in assessing the public interest." *Tyson v. City of San Bernardino,* EDCV 23-015939 TJH, 2024 WL 3468832, at *8 (C.D. Cal. Jan. 12, 2024) (discussing people experiencing homelessness).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Plaintiffs' Motion for Preliminary Injunction, filed herewith.

Dated:  March 6, 2026                    Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:   */s/ Nicholas Reddick*
           Nicholas Reddick
           Stephen Henrick
           Alyxandra Vernon
           Jacob Karim

PUBLIC COUNSEL

By:   */s/ Rebecca Brown*
           Rebecca Brown
           Sophia Wrench
           Amelia Piazza
           Vanessa Rae Young
           Elizabeth Hercules-Paez

IMMIGRANT DEFENDER LAW CENTER

By:   */s/ Alvaro M. Huerta*
           Alvaro M. Huerta
           Carson Adrianna Scott
           Alison Steffel

23

1

2          COALITION FOR HUMANE
           IMMIGRANTS RIGHTS

3          By:   */s/ Carl Bergquist*_____

4                Carl Bergquist
                 Adam Reese
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO

# WORD COUNT CERTIFICATE

The undersigned counsel of record for Plaintiffs certified that this Memorandum of Points and Authorities contains 6,972 words, which complies with the word limit of L.R. 11-6.1.


Dated:  March 6, 2026                    Respectfully Submitted,

                                         WILLKIE FARR & GALLAGHER LLP

                                         By:   /s/ Nicholas Reddick
                                               Nicholas Reddick
                                               Stephen Henrick
                                               Alyxandra Vernon
                                               Jacob Karim

                                         PUBLIC COUNSEL

                                         By:   /s/ Rebecca Brown
                                               Rebecca Brown
                                               Sophia Wrench
                                               Amelia Piazza
                                               Vanessa Rae Young
                                               Elizabeth Hercules-Paez

                                         IMMIGRANT DEFENDER LAW CENTER

                                         By:   /s/ Alvaro M. Huerta
                                               Alvaro M. Huerta
                                               Carson Adrianna Scott
                                               Alison Steffel

                                         COALITION FOR HUMANE
                                         IMMIGRANTS RIGHTS

                                         By:   /s/ Carl Bergquist
                                               Carl Bergquist
                                               Adam Reese

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-RAO