UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security,<br><br>Defendants. | Case No. 5:26-cv-00322-SSS-RAO<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**CLASS ACTION**<br><br>**Date:** April 10, 2026<br>**Time:** 2:00 p.m.<br>**Ctrm:** 2, 2nd Floor<br>3470 12th Street<br>Riverside, CA 92501 |

On March 6, 2026, Plaintiffs L.T., Sevak Mesrobian, Jose Mauro Salazar Garza, and J.M., on behalf of themselves and the class they seek to represent, along with Plaintiff the Coalition for Humane Immigrant Rights ("CHIRLA") (collectively, "Plaintiffs"), filed a motion for a preliminary injunction ("Motion").

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs seek a preliminary injunction to remedy the unconstitutional conditions at the Adelanto ICE Processing Center ("Adelanto"). Plaintiffs contend that they have demonstrated a likelihood of success on the merits of their claims that:

1. Defendants have violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution by imposing punitive conditions of confinement on Plaintiffs and the putative class;
2. Defendants have violated the Due Process Clause of Fifth Amendment through its practice of failing to provide adequate medical care to Plaintiffs and the putative class;
3. Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as to the Subclass Plaintiffs and the proposed subclass of Plaintiffs with disabilities by failing to assess disability accommodation needs and provide reasonable accommodations; and
4. Defendants have violated the Administrative Procedure Act, 5 U.S.C. § 706(2), by failing to comply with their own detention standards—specifically, by repopulating Adelanto without adequate staffing and awarding the facility a "good" rating in September 2025.

Plaintiffs further contend that they will suffer irreparable harm if the Court does not issue relief, that the balance of equities tips in their favor, and that the public interest lies in issuing a preliminary injunction.

The Court, having considered Plaintiffs' Motion and its accompanying papers, finds that Plaintiffs have demonstrated that they are likely to prevail on the merits of their claims; that they will suffer irreparable harm if the Court does not issue relief;

that the balance of equities tips in their favor; and that the public interest lies in issuing a preliminary injunction. Accordingly, the Court hereby GRANTS Plaintiffs' Motion and ORDERS as follows:

1) With respect to medical care, Defendants are ordered to:

a. Ensure adequate health care staffing to timely meet the needs of individuals detained at Adelanto, including ensuring the Health Services Administrator position is filled;

b. Conduct comprehensive, documented medical and mental health intake screening, performed by a Registered Nurse (RN) or other qualified medical provider, for all arriving individuals within 12 hours of arrival. Screening will be sufficient to identify and begin necessary treatment of those with mental or physical illness or injury; to provide continuity of care for individuals suffering from chronic health conditions; to provide timely access to prescription medication without interruption; to recognize, segregate, and treat those with communicable diseases; to provide medically necessary special diets; and to recognize and provide necessary services to individuals with disabilities;

c. Between the hours of 7:00 a.m. and 9:30 p.m., provide prompt access to medical care, including urgent care, at Adelanto when requested and provide necessary and timely access to medical specialists off-site;

d. Respond appropriately, within 24 hours, to urgent medical issues;

e. Respond appropriately, within a week, to non-urgent, non-emergency medical issues. Symptomatic individuals should receive timely responses;

f. Respond immediately to medical emergencies and provide access to emergency medical care at all times;

g. Provide continuity of care and adequate follow-up for medical and mental health, such as adequate monitoring of chronic conditions, post-hospitalization care, post-operative care, wound care, and provider appointments;

h. Ensure consistent and appropriate provision of medication at reasonable hours and without lapses in administration and systems to ensure proper and timely administration of prescription medications;

i. Develop a responsive medical request system that ensures detained individuals receive timely responses to their requests based on whether it is a routine medical request, an urgent medical need, or an emergency. Require Defendants to create classifications for such requests;

j. Provide detained individuals with information regarding how to request and access medical and mental health care, including routine care, specialty care, urgent care, and emergency care through orientation materials and posted bulletins. Provide those with limited English proficiency with written materials in their primary language outlining the process for requesting medical attention. If a detained person is illiterate, or speaks a language in which written material has not been translated, Defendants will provide in-person or telephonic oral translation of the process for requesting medical attention;

k. To ensure timely and adequate responses to medical requests and urgent medical needs, provide staff training on how to triage received medical requests and ensure proper and timely follow-up, particularly where urgent care is required. Require the staff training to include a certification that staff understands the importance of providing timely access to medical care for medical requests;

l. To ensure immediate response to medical emergencies, all staff, including guards, should be trained on how to identify medical emergencies and how to respond quickly to medical emergencies. Require the training to include a certification that staff understands the what constitutes a medical emergency and what responses are required for a medical emergency;

m. Provide detained individuals with information about their health, including about diagnoses and testing results, information during and after their hospitalization, access to their medical records, and responses to questions about their health; and

n. If authorized or requested by a detained individual, provide prompt notice to their families and attorney should hospitalization occur; and

o. Provide written notice in English and Spanish to all detained individuals at Adelanto, within one day of their arrival, informing them of their right to the provisions noted herein. Provide those with limited English proficiency with written materials in their primary language outlining their rights. If a detained person is illiterate, or speaks a language in which written material has not been translated, Defendants will provide in-person or telephonic oral translation informing them of their rights.

2) Defendants are expected to take immediate steps to comply with Paragraph (1). To ensure compliance with Paragraph (1) and the provision of constitutionally adequate health care, Defendants are also ordered to develop and submit to the Court and Plaintiffs, within 14 calendar days, a plan to ensure adequate medical and mental healthcare (hereinafter “Medical Plan”) at Adelanto as described in Paragraph (1).

3) With respect to disability accommodations, Defendants are ordered to:

a. Establish a comprehensive, documented disability intake screening process to screen individuals with disabilities upon arrival, assess disability needs, and identify reasonable accommodations;

b. Issue expedited orders following disability intake screening and ensure the prompt issuance of disability accommodations, including a prompt follow-up evaluation by medical professionals and the issuance of interim accommodations as needed before then;

c. Take steps to ensure accessibility issues are addressed proactively on a facility-wide basis, such as by placing elderly individuals and those with mobility issues on lower bunks;

d. Timely provide reasonable accommodations to disabled individuals;

e. Ensure pregnant people receive adequate nutrition and access to their medications;

f. Establish a comprehensive, documented system for tracking disability needs, including accessible housing accommodations;

g. Provide equal access to programs, services, and activities at Adelanto for detained people with disabilities, such as by ensuring accessible showers, and provide help to those with mobility needs;

h. Provide disability-specific orientation materials, translated as appropriate (*see* Paragraph (1.o)), for all detained people that inform them of their right to request reasonable accommodations; and

i. Provide disability training to ensure staff learn about different disability needs.

4) Defendants are expected to take immediate steps to comply with Paragraph (3). To ensure compliance with Paragraph (3) and the provision of reasonable accommodations as required by Section 504 of the Rehabilitation Act, Defendants are further ordered to develop and submit to Plaintiffs and the Court,

within 14 calendar days, a plan to ensure reasonable disability accommodations at Adelanto ("Disability Plan").

a. In addition, Defendants shall employ a dedicated Disability Compliance Coordinator, separate from the Health Services Administrator, whose principal responsibility will be ensuring that disability needs are tracked and appropriately accommodated, and who will have sufficient command authority to carry out such duties.

5) With respect to conditions, Defendants are ordered to comply with the standards articulated in both the most current version (Fifth Edition) of the American Correctional Association's Performance-Based Standards and Expected Practices for Adult Correctional Institutions and ICE's 2011 Performance Based National Detention Standards (as revised in December 2016), including but not limited to providing detained individuals with all of the following and/or taking the following actions (subject to exceptions only where necessary for individualized, documented security concerns):

a. Provide meals that contain a sufficient number of calories and are sufficiently nutritious and sanitary, served reasonably separated within the tray's slots, including reasonable accommodations for dietary restrictions, oversight of the food program from a qualified nutritionist or dietician, and procedures to ensure food is prepared and delivered in hygienic conditions;

b. Provide readily accessible, clean potable drinking water, including a plan to ensure the water is tested by an independent agency or company to ensure safety and to ensure that there is sufficient water supply for the needs of the detained population. This includes water available in containers and clean water from the tap;

c. Adequate sanitation throughout the facility and sufficient, regular cleaning, including procedures for the identification, treatment, and remediation of mold and distribution of soap and hygiene products;

d. Provide a reasonable number of temperature-appropriate items of clothing, sheets, and blankets per detained individual free of charge, including reasonable effective laundry service for clothes and linens and a reasonable number of sets of extra pairs of clothes (and extra sheets to avoid undue delay in having clean sets);

e. Provide serviceable mattresses, including mattress casings if an individual requests one;

f. Provide adequate protections for privacy in use of toilets and in showers, including modesty screens, consistent with the safety needs of the facility;

g. Permit family contact visits that allow for physical contact between parents and their children throughout the visit, that allow for detained individuals and visitors to hold hands throughout the visit, and that allow for opportunities for either detained individuals or their families to use the restroom during the visit without the visit being subject to automatic cancellation;

h. Permit visits that are available during the facility's business or operating hours (7:00 a.m. to 6:00 p.m.), that are not subject to arbitrary dress codes, to certain hours based on where a detained individual is housed, or to automatic time limits unless visitation rooms reach capacity, in which case visits shall be terminated after one hour on a first-in, first-out basis without prejudice to renewal if additional space later becomes available;

i. Dim the lights in the sleeping areas between 9:00 p.m. and 7:00 a.m. or at minimum, turn them off between 11:00 p.m. and 5:00 a.m.;

j. Ensure the facility remains at a reasonable, comfortable temperature and that detained individuals have access to blankets to keep them warm as necessary;

k. Maintain hold rooms at comfortable temperatures;

l. Conduct counts of the detained population in a manner and at times that minimize disruption to the operation of the facility. In the absence of specific, articulable evidence as to why different procedures are necessary, Defendants shall conduct no more than 2 counts between the hours of 9:00 a.m. and 8:00 p.m. Each of those counts may not last longer than 1 hour. Counts conducted outside of these hours shall be performed in a manner designed to minimize intrusion on detained individuals while they are sleeping. Unless there is a specific and documented security or other concern justifying a contrary practice, all counts are to be performed on an "out count" basis (meaning the detained population shall not be forced to return to their cells for each count);

m. Provide reasonable, consistent, and adequate access to adequate outdoor recreation spaces. In the absence of documented security or other reasons necessitating a contrary practice, this shall include access to the yard for at least four hours a day, weather permitting;

n. Provide access to educational opportunities, religious services, and other programming;

o. Forbid the use of solitary confinement or restrictive housing to penalize detained individuals that speak out about the conditions;

p. Ensure that those in any type of solitary confinement or restrictive housing have access to the outdoors, clean water, sanitary and nutritious hot food, visitation, clean cells, and are permitted to leave their cells for more than one hour per day; and

q. Ensure conditions are not designed to be so punitive that detained individuals are coerced into accepting their deportation or leaving the United States.

6) Defendants are expected to take immediate steps to comply with Paragraph (5). To ensure compliance with Paragraph (5), the provision of constitutionally adequate conditions, and compliance with Defendants' own detention standards, Defendants are further ordered to develop and submit to Plaintiffs and the Court, within 14 calendar days, a plan to ensure adequate provision of basic necessities and suitable conditions at Adelanto as outlined above ("Conditions of Confinement Plan").

7) In addition, pursuant to Federal Rule of Evidence 706 and the Court's inherent power to fashion remedies, the Court will appoint two qualified, independent, third-party monitors ("Independent Monitors") to aid the Court in ensuring adequate plans are developed and in monitoring implementation of this Order. One Independent Monitor will inform the Medical Plan and Disability Plan, and the other will inform the Conditions of Confinement Plan. The Independent Monitors will:

a. be proposed by Plaintiffs, within 14 days of this order, and appointed by the Court;
b. review the Medical Plan, Disability Plan, and Conditions of Confinement Plan and provide feedback to the Court regarding the plans, 14 calendar days after their appointment or receipt of the respective plans, whichever is later;
c. be permitted to visit and inspect Adelanto, with reasonable access to facilities, records, staff and detained people, including remote access to Defendants' electronic health record system, for purposes of informing development of the plans, assessing their adequacy, and informing the Court of compliance with the plans;

d. provide feedback to the Court regarding the adequacy of the Medical Plan, Disability Plan, and Conditions of Confinement Plan;

e. assist the Court in ensuring this Order is implemented; and

f. perform other duties related to the implementation of this order as defined by the Court.

8) The Independent Monitors shall conduct unannounced, independent inspections of the facility to assess compliance with this Order. These unannounced inspections shall focus on assessing the provision of adequate medical care, clean drinking and tap water, proper food service, clean facilities, clean clothing, and clean bedding, among other things, and whether solitary confinement or other forms of retaliation are being used to punish those who speak out about conditions. These unannounced inspections may occur at any time and on any date. The Independent Monitors shall be provided unfettered access to the facility to assess compliance and shall be permitted to take photos and talk to detained individuals without interference from Defendants.

9) Following an unannounced inspection, the Independent Monitors shall prepare a report detailing their findings.

10) The Court will provide Plaintiffs 14 calendar days following receipt of each monitor's recommendations regarding the plans to meet and confer with Defendants, and if necessary, submit feedback to the Court and Defendants regarding the adequacy of the Medical Plan, Disability Plan, and Conditions of Confinement Plan.

11) A grievance system shall be created whereby detained individuals can submit complaints or comments directly to the Independent Monitors. Detained individuals must have free access to this system, meaning they should be able to submit complaints or comments via tablets or locked boxes, whereby written grievances can be submitted. Defendants must post information about this system through the facility in English and Spanish to ensure detained individuals are aware

of its existence. Posters should note that the complaints or comments go directly to the Independent Monitors.

12) Defendants are ordered to pay the Independent Monitors' reasonable rate for the services set forth above.

13) Defendants are enjoined from isolating people in the Special Housing Unit, Special Management Unit, or administrative segregation, absent a documented security concern that threatens the safety and security of the facility or staff or a request from a detainee to be placed in administrative segregation. Furthermore, any detainee placed in administrative segregation shall be given notice of why and an opportunity to contest the placement. Any segregation shall take into account the detained individual's mental and physical health and evaluate whether segregated housing is likely to worsen their health. If segregated housing would likely worsen the individual's mental and physical health, alternative remedies should be considered and segregated housing should only be used if absolutely necessary.

14) Plaintiffs' counsel may bring individual instances of non-compliance with this Order to the attention of counsel for Defendants and, as relevant, to the Court if the concern is urgent or raises a serious risk of injury or medical harm, or if a putative class member has already raised the issue with Defendants and Defendants have not appropriately responded after a reasonable amount of time. Defendants are ordered to issue a substantive, written response to Plaintiffs' counsel within 14 days of receiving notice of any alleged non-compliance.

15) Defendants are enjoined from retaliating in any form against the named Plaintiffs, any declarant, or any putative class member for complaining about any alleged violation of this Order, participating in this case, or otherwise asserting their constitutional or statutory rights with respect to medical care and conditions at Adelanto. Defendants may not harass, intimidate, or threaten any such individuals, whether at Adelanto, in their immigration proceedings or in any other capacity.

16) The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

**IT IS SO ORDERED.**

Dated:

____________________________________
HON. SUNSHINE S. SYKES
United States District Judge