PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
VANESSA RAE YOUNG (SBN 352693)
vyoungviniegra@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security,<br><br>Defendants. | Case No. 5:26-cv-00322-SSS-RAO<br><br>**DECLARATION OF AMANDA SCHUFT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**CLASS ACTION** |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

**DECLARATION OF AMANDA SHUFT - LEGAL SERVICES DIRECTOR FOR IMMIGRANT DEFENDERS LAW CENTER**

I, Amanda Schuft, make the following statements on behalf of myself and Immigrant Defenders Law Center ("ImmDef") in my capacity as Director of Legal Services at ImmDef.

1. My name is Amanda Schuft and I am Director of Legal Services at Immigrant Defenders Law Center ("ImmDef"), where I have worked for ten years. I make this declaration based on personal knowledge and a review of records related to my position.

2. ImmDef is a non-profit organization headquartered in Los Angeles, California, with additional offices in Riverside, Santa Ana, and San Diego. It is the largest removal defense nonprofit in Southern California. ImmDef's mission and vision is that no immigrant should have to face deportation proceedings alone. We believe that every person facing removal deserves to have zealous, competent counsel at their side. In 2024, ImmDef represented nearly 3,400 noncitizens in their removal proceedings. In 2025, ImmDef represented nearly 4,000 noncitizens in their removal proceedings, and provided other legal services to approximately 33,000 additional noncitizens. We provide pro bono representation and other legal services to unaccompanied minor children, indigent detained adults, individuals deemed mentally incompetent to represent themselves, deported veterans, and families separated at the border, among others.

3. ImmDef attorneys provide full-scope legal representation to our clients, including those who are detained at the Adelanto ICE Processing Center ("Adelanto"). This includes removal defense in their immigration proceedings, bond hearings, habeas petitions in federal district court, and other forms of immigration relief, such as applications before the United States Citizenship and Immigration Services ("USCIS"). ImmDef also provides legal representation to the most vulnerable people in ICE detention through the National Qualified Representative

Program ("NQRP"), which entitles noncitizens with serious mental disorders that render them unable to represent themselves to court-appointed counsel. In 2024, ImmDef launched the Rapid Response Program to respond to local ICE enforcements and raids. This team coordinates real-time responses to enforcement actions and helps detainees' loved ones locate them after they have been taken by ICE, often after they are transferred to Adelanto.

4. Since the current administration ramped up its sweeping ICE raids in the Los Angeles area in June 2025, ImmDef attorneys have witnessed an abrupt increase in the number of individuals detained at Adelanto. The ImmDef Rapid Response team has fielded over 3,600 calls from individuals whose loved ones have disappeared after being taken by ICE, many of whom have been taken to Adelanto. From June 2025 to present, ImmDef attorneys have visited at least 70 people detained at Adelanto to provide legal consultations and help connect them to full scope representation.

5. Many ImmDef clients have been denied the opportunity to have a bond hearing or, when they are granted a hearing, they have been denied bond in an unprecedented manner based on arbitrary factors. For example, Immigration Judges have recently denied bond to ImmDef clients finding that working without authorization constitutes a flight risk, whereas in the past it was viewed as gainful employment to financially support a family, negating flight risk. ImmDef clients are also denied bond based on minor criminal history.

6. ImmDef attorneys have represented clients detained at Adelanto for years. However, the facility was largely empty before June 2025. Since the current administration began ramping up its immigration detention and deportation efforts in June 2025, ImmDef attorneys have been on the ground at Adelanto visiting both current and prospective clients multiple times a week. ImmDef attorneys have witnessed the large influx of detained people at Adelanto that has led to deteriorating conditions.

## I. ImmDef Clients Lack Basic Food, Water, Clothing, and Living Arrangements at Adelanto

7. ImmDef's clients have been suffering alarming conditions at Adelanto for years, but since the increase in ICE arrests and detentions starting in June 2025, conditions have deteriorated exponentially. Detained people are subjected to harsh living conditions and are denied basic rights like decent food, clean water, clean and warm clothing, and adequate sleeping arrangements.

8. Adelanto constantly runs the air conditioning, keeps the facility freezing cold, and does not provide detained people with warm enough clothing. Detained people only receive a thin sweatshirt, a t-shirt, and sweatpants. Family members are not allowed to bring warmer clothes to detained people during visits, forcing detainees to spend money at the commissary to buy sufficient clothing to stay warm. Detainees are allowed to spend $100 per week at commissary, and often spend their money buying clothes like sweatshirts, sweatpants, or thermals so that they can stay warm in the cold of the facility. Detainees have been stuck in the same outfits for days without the opportunity to launder their clothes.

9. Detainees are also subject to strict and arbitrary sleeping arrangements. For example, older detainees who are not able to easily move around are often assigned to sleep in top bunks. When other detainees who are more physically agile and assigned to a lower bunk attempt to swap beds, they are disciplined. Adelanto detainees protested because of this, and detainees reported that they were subsequently punished, including with tear gas.

## II. ImmDef Clients Suffer from Medical Neglect at Adelanto

10. Adelanto does not have an adequate system in place for detainees to request medical care. After this litigation was filed, ImmDef attorneys heard that Adelanto increased access to nurses at the facility and began scheduling doctor appointments that had been pending for months. Before that, many detainees described that their medical requests would not be responded to, with no way to

follow up if their requests were ignored, as they often were. Detainees are often given only Tylenol or ibuprofen for conditions that require treatment in addition to pain management.

11. Numerous ImmDef attorneys have observed systemic and widespread medical neglect and suffering at Adelanto. One ImmDef client was bitten on his hand by a poisonous spider, believed to be a desert recluse, while showering at Adelanto. His hand continued to swell for days until he was eventually taken to an offsite hospital and received surgery. He did not receive adequate follow-up care and is now in constant pain. He is concerned that his finger is infected and that he will lose his finger.

12. Another ImmDef client has been detained at Adelanto since January 2023 and has suffered stomach pain, indigestion, and chronic diarrhea up to eight times a day since then. While detained at Adelanto, doctors have given him conflicting information and diagnoses. Adelanto medical staff dismissed his symptoms as irritable bowel syndrome and blamed his physical symptoms on his unrelated mental illness until October 2024. In October 2024, Adelanto doctors diagnosed him with pancreatic insufficiency and prescribed him the medication Creon. In March 2025, he went to a gastroenterologist at an outside medical facility, and there, the doctor told him to stop taking Creon. That doctor did not have this individual's medical records because ICE did not provide them. He stopped taking Creon but a couple of days later, an Adelanto medical staff member told him to start taking it again. He did not want to start taking the Creon again because he did not know which doctor to believe. However, he did start taking Creon again, until around the end of 2025 or early 2026, when another doctor told him to stop taking Creon. Throughout his time at Adelanto, he has consistently made medical requests, including over twenty requests that have gone unanswered. After this litigation was filed, around the end of January or early February 2026, he was scheduled for a colonoscopy and an MRI. He has not received

the results of his colonoscopy. This ImmDef client has suffered through pain and confusion for years due to Adelanto's inadequate medical care.

13. Detainees often get rashes, and staph infections have run rampant in the facility. The showers are notoriously dirty, and the lack of hygiene also extends to food preparation. Detainees have found hair, bones, plastic, and worms in their food. Additionally, the water from the faucets sometimes will come out brown, especially after it has been raining.

14. At the start of the ICE raids in June 2025, Adelanto did not have the infrastructure to provide medication at the scheduled times, and most detainees did not receive their medication consistently for around one month. Even now, medications are prescribed in an inconsistent and haphazard manner, and detainees are deprived of the ability to provide informed consent to treatment. For example, one ImmDef attorney conducted a pre-representation consultation with a detained woman at Adelanto who was prescribed medication for high blood pressure. Prior to being detained, she had not taken that medication, so she did not feel comfortable taking it now. When she declined to take the medication, the medical provider told her that she would have her deported if she refused to take the medication. The woman reported that she started taking the medication out of fear of being deported and separated from her child who is currently in ORR custody. One day, the number of pills she was given increased from one pill to three pills. She was not told why. She is too scared to ask or not take the medication given the prior threat of deportation.

15. Other detainees at Adelanto suffer immensely because of inconsistent access to their medications. For example, one ImmDef client suffers from severe PTSD and schizophrenia. Since his detention at Adelanto, he has called his attorney numerous times stating that he either cannot see his psychiatrist or that the medications he is being given are not helping at all. He most recently stated that he has also tried to see a doctor about his diabetes without success.

16. One ImmDef client has been detained at Adelanto since on or around December 29, 2025, where he is actively suffering due to Adelanto's negligent and dangerous medical care. A few days after he arrived at Adelanto, he started getting headaches and a bump on the top of his head that he had believed to be a mole became painful and hurt to touch. He consistently complained about his pain, but the medical staff at Adelanto only gave him Tylenol. The medical staff at Adelanto then shaved his head, and when they did, they cut the bump. On or around January 19, 2026, he was taken to Victor Valley Global Medical Center where he received an MRI and was diagnosed with a severe staph infection. After conducting the MRI, doctors told this client that the bump on his head could become cancerous and they would need to operate. A medical student performed the operation. The ImmDef client was supposed to return to the hospital 8 days after his procedure for a follow-up appointment, but has not had an appointment. He was prescribed medication for his infection that has now run out, and he has not gotten a refill. On or around February 6, 2026, he started experiencing more serious symptoms, including severe headaches and vomiting. On February 11, 2026, he finished his prescription medication and never received a refill. He filed at least 8 medical requests to see a doctor. After returning to Adelanto from the hospital, he was worried that his infection would return and get worse because the wound was open and the facilities at Adelanto are unsanitary. He developed fungal blisters on his foot because of the mold in the showers and started having trouble walking. He had no choice but to use the facilities, despite being terrified of exposing his head wound to these unsanitary conditions. Officers accused him of being mentally ill and having suicidal ideation because of his requests to return to the hospital. A psychiatrist at Adelanto prescribed him medication for anxiety, but he was wary of taking the medication based on the negligent medical care he has received so far. He also began experiencing hearing and vision loss, which he never experienced before being detained at Adelanto. On March 1, 2026, he was admitted to Victor Valley Global Medical Center, where his fear of infection was confirmed as reality.

To date, he remains at the hospital while the doctors attempt to control his infection. He is bleeding from the nose and has been unable to contact his attorney.

17. Detained people who were getting treatment for serious medical conditions before they were detained have had their treatment abruptly stopped when they arrive at Adelanto. ImmDef has received complaints of detained people who have not been given treatment, resulting in visibly swollen extremities, yet they are still denied medical attention.

18. Detainees suffering from mental health crises also do not receive adequate care. When a detainee expresses that they are feeling suicidal or have tendencies to self-harm, rather than provide mental health treatment, Adelanto staff may place these individuals in solitary confinement, exacerbating the mental health issues to which the punitive detention conditions have already contributed.

19. Alternatively, detainees who want to be housed in administrative segregation for their own safety may go ignored. In late 2025, one ImmDef client expressed fear that other detainees were plotting to take his life. This client was afraid to tell Adelanto staff about his fear because he did not want other detainees to see him talking to staff and think he was reporting them. His ImmDef attorney informed Adelanto staff that he was in fear of his life and the attorney was told he would be pulled aside and taken out of general population for his safety if needed. However, no action was taken. The next day, his ImmDef attorney called back and repeated the request that he be removed from the general population because of a threat to his life. She was told that when a detained person expresses a fear of danger to their life, it has to be addressed within 24 hours according to policy. However, by the time this client was finally pulled aside and placed in administrative segregation for his own safety, it had been more than 24 hours since his attorney first reported his fear. He was in extreme distress that he would be imminently attacked throughout this time until he was transferred to administrative segregation.

20. Recently, someone urinated on this client's door in administrative segregation. When he asked a staff member to investigate, they told him, "[w]e don't care about you" and that they would not investigate until ICE ordered them to. The detainee asked them to review video footage, but staff refused. Officers have refused to provide additional security measures for this detainee who is concerned about his safety every time he has to leave his cell and is in close proximity to detainees who may wish to harm him.

21. On or around February 9, 2026, one ImmDef client informed his attorney that Adelanto was no longer giving him Cogentin, a medication which prevents his muscles from stiffening. Since then, the client's condition has been deteriorating. First, he was unable to stand up straight or walk without hunching over. Then, on March 3, 2026, he was brought to his immigration court hearing in a wheelchair. His condition was so bad that the officer who brought the client into the courtroom stated that he needed to be taken to medical and could not proceed at the hearing. The client missed his hearing, and his attorney was not given any follow up information about his medical condition or where he was being taken for treatment.

## III. Fear of Retaliation

22. Detainees who have come forth and offered to share information about conditions at Adelanto are now fearful of retaliation from Adelanto staff. Staff have been sleuthing amongst the detainees, attempting to determine which unnamed plaintiffs have been assisting with litigation efforts to improve conditions at Adelanto. Detainees are afraid to speak freely on the phone or even in person with attorneys for fear of Adelanto staff listening in or overhearing. The attorney meeting rooms at Adelanto are not soundproof, making it all the more difficult to ensure confidentiality and ease detainees' fears of retaliation.

## IV. Conditions at Adelanto Impede Attorney Access

23. The lack of medical care and communication around detainees' care impedes attorney access and the ability to provide zealous representation. ImmDef

attorneys have appeared in immigration court only to be told that their client is unavailable because they have been taken to an offsite hospital, without any notice. It is not until later, once the detainee has returned and informed their counsel of what happened, that the attorneys know what happened to their client and where they were taken.

24. Other times, detainees are unable to attend court because they are under quarantine. In January 2026, an entire unit was under quarantine, believed to be because of COVID, and the entire unit was therefore not taken to court. One ImmDef client was a part of this quarantine. His attorney was not informed of this quarantine status and did not learn that her client was quarantined until she arrived at the court and the judge let her know. Adelanto staff do not inform detainees' immigration attorneys when their clients are unavailable because of illness or offsite medical appointments. Attorneys will arrive at Adelanto or appear virtually just to find out that their client is not there. This can result in months long continuances before the immigration court, delaying detainees' legal cases and prolonging their detention. This difficulty and unpredictability in meeting with clients also delay attorneys from preparing for hearings and meeting filing deadlines.

25. Adelanto also prejudices ImmDef clients by delaying requests for medical records or withholding medical records entirely. Requests for medical records are sent via email and usually require multiple follow-ups before receiving a response. One ImmDef paralegal requested medical records for a client in September 2025, and despite following up, has still not received those medical records. These delays harm our clients because they prevent attorneys from sending the medical records to psychologists to review for their psychological evaluations. In some instances, the lag from requesting medical records delays our clients' immigration court trial dates.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 5, 2026 in Los Angeles, California.

Amanda Schuft