PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
VANESSA RAE YOUNG (SBN 352693)
vyoungviniegra@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, <br><br> Defendants. | Case No. 5:26-cv-00322-SSS-RAO <br><br> **DECLARATION OF** ▇▇▇▇ <br> ▇▇▇▇▇▇▇ <br><br> **[A.K.] IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> **CLASS ACTION** <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

## DECLARATION OF A.K.

I, A.K., declare that:

1. I have personal knowledge of the facts set forth below, and if called to testify, I could and would do so competently.

2. I was born in ███████████████████████████████████.

**I.    Background**

3. I was detained at Adelanto ICE Processing Center ("Adelanto") from ███████████████████████████ and was housed in Adelanto East.

4. I entered the United States in November 2022. I was paroled into the United States to pursue my asylum case. I have lived in the United States since then. I live in ███████ with my partner. We are expecting a child; I am about 13 weeks pregnant. We were working on building our lives here.

5. On ███████████████████, I was detained by masked agents outside my home. That day, I left my home and got into my car, which was parked on the street. My partner called me via video phone call to chat about something.

6. An unmarked car approached and masked agents got out of their car, and surrounded my car. My partner was still on a video call with me, so he was able to observe all these events as they unfolded. The agents told me they were immigration agents, and they were asking me questions in English, which I did not understand very well. I was afraid and confused. I tried to tell them right away that I was pregnant. I communicated that message in Spanish, and at least one agent responded to me, in Spanish: "ok, we will verify that later."

7. From inside the car, I pulled out my copy of the ultrasound and tried to show the agents, and they did not respond at all. I told them that I had not done anything wrong.

8. I was scared, so I turned on the car, and the agents almost immediately broke my car window. My partner was still on the call, so he saw them break my window. We were then disconnected because my phone fell.

- 1 -

9. The agents dragged me out of my car, handcuffed me and placed me in their car. I was so scared. I didn't know where they were taking me or who they really were.

10. The agents took me to a local hospital in Camarillo, CA to verify my pregnancy, and then they took me to their immigration office, which I believe was also in Camarillo. Around 11 pm, the officers took me to 300 N. Los Angeles Street in Los Angeles, California. I remember that we entered through the basement, and they took me to an office where they reviewed my property. The officers saw some of my medical records that I had with me and noticed that I was pregnant. The officer asked me if I was pregnant, and I responded affirmatively.

11. The officers took me to a room, where I slept on something that appeared to be a yoga mat. They gave me a metallic blanket. It was a large room that could fit many people, and it had a sink and toilet. In the morning, I talked to another officer, and shared that I was pregnant, and they gave me another mat to sleep on. I was able to call my family and give them an update on where I was and how I was being treated. To eat, they gave me some cereal and juice. I was there for only one night.

12. I was then transferred to the California City Detention Facility ("CAL CITY"), sometime in the afternoon on Sunday, February 22, 2026. We arrived at CAL CITY around 6 pm in the evening. I was there for most of the following day. When I arrived at CAL CITY, the officers who brought me from Los Angeles immediately shared that I was pregnant. The officers had me sit in another cold room while waiting. The medical staff came by to conduct some medical checks, including another pregnancy test. I took a video call with a woman who asked me about my pregnancy. I told them about the medicines I had been taking. During the call, the medical staff told me they needed to administer a vaccine to me, and they told me that it was to prevent a disease. I asked several times if that vaccine would be bad for my baby, and they told me that it should not affect my baby. The medical staff told me they were just checking to see if I had certain bacteria in my lungs. I told them that it was ok to

- 2 -

proceed with the vaccine, and I trusted them that it would not affect my baby. When they injected the vaccine, they verified that I did not have the bacteria and they were able to clear me to enter the room with the rest of the detainees.

13. Once I was inside, some of the detainees told me that I could sign a voluntary departure to return to Colombia, and that I could get $2,600. I was afraid for the health of my baby and for my own health in detention, so I approached some officers, and explained the situation. They entered my A-number into a tablet, and then they produced various digital documents that I needed to review and sign. They did not translate the documents, and just provided a summary of each document. After I signed on the tablet, the officers printed out a page which they gave to me. They told me that they would get back to me within 8-10 days, to let me know if I qualified for voluntary departure. The officers told me that if I was approved, I would be able to access the funds once I returned to Colombia.

14. Late at night on Monday, February 23, 2026, the officers pulled me out of the main room, and moved me by myself to a cold room where I spent all night. I was sitting on a cement bench. They did not give me a blanket or anything. I was not able to sleep well in that room. In the early hours of Tuesday morning, another officer came and placed handcuffs around my arms and legs. I heard the officers talk about my pregnancy once again. They put me into a van and moved me to Adelanto. I arrived at Adelanto in the morning hours of Tuesday, February 24, 2026.

## II. Lack of Medical Care for UTI and Back Pain

15. Prior to my detention, I had been experiencing back pain and pain in my lower abdomen. I was worried about the pregnancy, so I scheduled an appointment with my doctor for March 5, 2026. I was also dealing with a UTI, so I was taking Cefalexin, an antibiotic, and prenatal vitamins. I also have a history of panic attacks, and I saw a psychologist here in the U.S. for treatment.

16. On the day I entered Adelanto, I shared my medical history and the pains I have been experiencing with the medical staff. They didn't give me any medication

- 3 -
DECLARATION OF A.K.
Case No. 5:26-cv-00322-SSS-RAO

that day, so I missed my dose of antibiotics. On February 25, 2026 the medical staff finally gave me some medicine, but didn't tell me what it was.

17. I was very anxious and worried about being at Adelanto. I felt claustrophobic there, and I was worried about getting panic attacks. Even though I am now released, I am worried for the baby. I am concerned about the emotional distress I experienced and worried about losing the pregnancy because of it. I am still in pain. I am worried about my health and the health of my baby.

**III.    Living at Adelanto**

18. When I arrived at Adelanto, as they were processing me, the staff had me sign some documents, but I never understood what they were. A staff person orally translated the documents for me, but they did not translate each line, they just provided a brief summary of the document. The staff told me that they covered the rules at Adelanto, the property I had, and that I was under custody of ICE. I asked them about my court case, but they said they could not help me or give me information. The officer responded rudely to my questions. Two times, I asked staff at Adelanto about signing a voluntary departure, so that I could leave. They told me that they could not help me.

19. Adelanto is horrible. It smells bad and the water is yellow. The water is far too hot. My hair started falling out after just a few days in those showers. Everything is cramped, and communicating with loved ones is very difficult. There are limited resources.

20. The other thing about Adelanto: it's a small space, and it became very hot. Where I was staying, there were about 20 beds. It was a small space, with no room to walk, and we only got one hour to spend outside. The space smelled bad, with lots of smells of sweat and other body odors.

21. The food was not good, and I was not able to eat well. My body was rejecting the food. I was worried that I was not eating enough to support me or the

- 4 -
DECLARATION OF A.K.
Case No. 5:26-cv-00322-SSS-RAO

baby. The food was very poor. The whole time that I was detained, I had loose stool. Now that I have returned home, my stomach is more regular.

**IV.   I Want My Personal Information to Be Private**

22.   I would like to remain anonymous in this case because I am afraid that the immigration officers will retaliate against me or my family for my participation in this case. I do not want other people to know about my personal life, including the reasons I fled my home country, and form their opinions about me based on those experiences. Other than with my attorneys and other trusted individuals, I have not publicly shared the reasons I fled to the United States, and I would not want that information publicly available to strangers.

23.   I am also afraid that disclosing my identity and immigration status could put me at risk. I fear that people in the United States who are against immigrants like me could harm me if they know my identity and know I am participating in this lawsuit. I also would not want the information about my immigration status to be available to the public and to define me for the rest of my life.

24.   I ask that this Court allow me to proceed under a pseudonym in this case.

25.   This declaration was read to me in my native language.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 3, 2026 in Oxnard, California.



A.K.

- 5 -