PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
VANESSA RAE YOUNG (SBN 352693)
vyoungviniegra@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
610 S. Ardmore Avenue
Los Angeles, California 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, <br><br> Defendants. | Case No. 5:26-cv-00322-SSS-RAO <br><br> **DECLARATION OF** ███████ ████████████ **[E.M.] IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> **CLASS ACTION** <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

DECLARATION OF E.M.
Case No. 5:26-cv-00322-SSS-RAO

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*Pro Hac Vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush St., 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

DECLARATION OF E.M.
Case No. 5:26-cv-00322-SSS-RAO

## DECLARATION OF E.M.

I, E.M., declare that:

1.      I have personal knowledge of the facts set forth below, and if called to testify, I could and would do so competently.

**I.      Background**

2.      I am ▇ years old.  I have been detained at Adelanto ICE Processing Center ("Adelanto") since late August 2025.  I am currently housed in Adelanto East.

3.      I came to the United States with my family in ▇.  We had to leave our native Guatemala to seek asylum because we received death threats.  We entered the United States using the CBP One application.  I have now spent nearly a year and a half in the United States.  For about one-third of that time, I have been detained at Adelanto.

4.      Before I was detained, I lived in Los Angeles County.  My wife and I were caring for our developmentally disabled son.  He is 21 years old and is developmentally disabled, deaf, and largely nonverbal because an illness he had as a baby left him with brain damage.  He requires a significant amount of care.  We have been taking him to classes that are meant to help him with his disability.  I used to provide a significant amount of care for our son before I was detained, and my wife's role as his caregiver leaves her no time to work and earn money.  Up until the time of my arrest, my family was entirely dependent upon my income.

5.      My wife and I are also very close to our church community here in Los Angeles.  We have been volunteering to do whatever kind of work is needed, such as cleaning and painting, and before I was detained we were preparing to get baptized.

6.      In ▇, I went to Home Depot to buy paint for a home improvement project.  As I was in the parking lot, many cars raced in with their doors open and tires screeching.  Some had law enforcement agents hanging off the sides, carrying large rifles.  When the cars stopped, armed, masked agents jumped out.  Within seconds, some of the agents grabbed me and threw me to the ground.  One

- 1 -

DECLARATION OF E.M.
Case No. 5:26-cv-00322-SSS-RAO

agent kneeled on my neck while another twisted my arms painfully behind my back. I made no attempt to resist them, although the hold that they had me in was so violent that I believed I was going to die. Despite my protests that they were hurting me, they did not get off of me until they had finished shackling my hands and feet. I was afraid the agents would beat me or even kill me, and I wondered if I would ever see my family again.

7. I was then taken to Adelanto. Generally speaking, I feel life at Adelanto is unnecessarily harsh and I want to get out of here as soon as I can. The treatment here is horrible. This place makes me feel depressed, and many of the things I have experienced here have traumatized me.

## II. Inadequate Medical Care for Injury Sustained During ICE Arrest and Chronic Tooth Pain

8. Ever since one of the agents who arrested me jammed his knee forcefully into the back of my neck, I have been suffering from constant back pain, which sometimes becomes debilitating. Sometimes, when it gets really bad, I cannot properly stand up from a sitting position or get myself out of bed. I have been experiencing this pain for about six months.

9. Since being detained at Adelanto, I have only been able to get one appointment with medical staff regarding my back pain, and the only result of that appointment was that they gave me Ibuprofen. For several months, I was unable to submit a written request for medical attention because these forms are only available in English and I only speak Spanish. Sometimes, Spanish-speaking detainees are able to fill out forms with the help of a detainee who is bilingual in English and Spanish. Eventually, I was able to submit several written requests for medical attention, but until now I have received no meaningful medical care for my neck and back injury. I have yet to even receive an X-ray. All that the staff at Adelanto have given me to address this injury is Ibuprofen, which is not sufficient to relieve my pain. My

attorney emailed Adelanto staff about my need for medical care on December 11th, 2025, but as of today, I still have not gotten treatment.

10.   Shortly after I arrived at Adelanto, fillings fell out of two of my teeth, causing me significant pain.  I asked to see a dentist and was given an appointment with the in-house dentist.  However, the dentist refused to give me new fillings or otherwise treat the two damaged teeth.  She claimed there was an official policy which prevented her from giving me this dental care until I had been detained for six months.  Despite the intensity of the pain, facility staff only gave me Ibuprofen when I asked for medical help.  Ibuprofen is not strong enough to relieve my pain.  As a result, I have had to live with this severe pain throughout my detention at Adelanto.

11.   I have observed that many detained people, including many in my unit of over 100 detainees, are frequently sick.  The sickness appears to be infectious, and it seems to linger within the detained population, never being eradicated because more people keep getting infected.  This sickness causes wet coughs and sinus infections.  To my knowledge, none of my fellow detainees who contracted this virus have received medicine from facility staff to treat it.  My sense is that they only give us medical attention if we faint or otherwise have an extremely serious medical episode.

12.   A friend of mine here suffers from kidney pain, and despite making many requests, he has not received a medical appointment.  He arrived at Adelanto days before me but has yet to receive an appointment.

**III.   Poor Food and Lack of Drinking Water**

13.   The food at Adelanto is generally terrible, seems to have little nutritional value, and is provided in quantities that are often too small to satisfy our hunger.  Those who are still hungry after finishing their meal are not allowed to eat more.

14.   Often, I am hungry after finishing breakfast.  At dinner, some of the food that they serve us reminds me of cat food, because the croquettes they give us contain flavorless, mushy ground meat that seems more like something fit for an animal than

for a human being. Some of the food is so highly processed that I cannot tell what type of meat I am eating. Fresh fruit is provided a maximum of one time per week.

15. Some detainees supplement this meager diet by using their commissary funds to purchase food items like instant noodles or sardines. However, I am too poor to afford such items. Occasionally a fellow detainee who has purchased food with his commissary funds will share some of it with me out of kindness.

16. As for water, my unit receives a ten-gallon container twice per day, to be shared among the roughly 114 individuals detained in my unit. On days when I am able to get an equal share of the water, this works out to about two coca-cola bottles worth of water per day. If one of us is thirsty and wants more water than that, they refuse to give it to us when we ask. In those cases, the only water source available to us would be the foul-smelling, foul-tasting water that comes out of the tap in our unit. Also, the water that they bring us is full of ice, even though we are already staying in a very cold room. So even if we are thirsty, we must avoid drinking this water too quickly because we do not want to feel colder than we already are.

## IV. Mistreatment from Adelanto Staff

17. The guards often mistreat us. They frequently yell at us and insult us. Sometimes they yell at us to clean the bathrooms, because they tell us that is not their job, and therefore we must do it. There is also a guard who only speaks to us in English, even though he knows that many of us do not understand English. He gives us commands that I am never able to understand.

18. On two occasions, guards have cut short my meetings with lawyers who came to visit me from the nonprofit organization CHIRLA. This forced us to conclude those two meetings before we had the chance to discuss everything these attorneys wanted to discuss with me.

19. Before our court hearings, the guards sometimes take us to a room that they call the "tank." This room is uncomfortably cold–even colder than the units where we live, which are already cold–and mostly empty apart from a concrete bench

- 4 -

DECLARATION OF E.M.
Case No. 5:26-cv-00322-SSS-RAO

and two toilets. Often, we have to wait three hours in the cold before the guards escort us to our hearings. After the hearing concludes, the guards normally take us back to the "tank." From there they will sometimes take us to a second waiting room with a similarly low temperature, where we often endure several more hours in the cold. It has never been clear to me why they do not take us directly back to our housing units after our hearings, but instead expose us to prolonged physical discomfort in the "tank." The whole process usually takes more than eight hours. I once spent over 12 hours in those rooms in a single day.

**V.    I Want My Personal Information to Be Private**

20.    I would like to remain anonymous in this case because I am afraid that the guards at Adelanto or other immigration officers will retaliate against me or my family for my participation in this case. I do not want other people to know about my personal life, including the reasons I fled my home country to be the basis of their opinions about me. Other than with my attorneys and other trusted individuals, I have not publicly shared the reasons I fled to the United States, and I would not want that information publicly available to strangers.

21.    I am also afraid that disclosing my identity and immigration status could put me at risk. I fear that people in the United States who are against immigrants like me could harm me if they know my identity and know I am participating in this lawsuit. I also would not want the information about my immigration status to be made available to the public and to define me for the rest of my life.

22.    I ask that this Court allow me to proceed under a pseudonym in this case.

23.    This declaration was read to me in my native language.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 26, 2026 in Adelanto, California.



E.M██████,

- 5 -