TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PUSHKAL MISHRA (Cal. Bar No. 298695)
Special Assistant United States Attorney
          Federal Building, Suite 7516
          300 North Los Angeles Street
          Los Angeles, California 90012
          Telephone: (714) 338-3503
          E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., *et al.*,<br><br>               Plaintiffs,<br><br>               v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>               Defendants. | No. 5:26-cv-00322-SSS-RAO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**<br><br>Hearing Date:   May 22, 2026<br>Hearing Time:   2:00 p.m.<br>Courtroom:       2<br><br>Honorable Sunshine Suzanne Sykes<br>United States District Judge |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that on May 22, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Sunshine Suzanne Sykes, U.S. District Judge, located at the George E. Brown, Jr. Federal Building and U.S. Courthouse, 3470 Twelfth Street, Riverside, California 92501, Defendants will and hereby do move this Court to enter an order dismissing the Complaint in its entirety.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that: (1) this Court lacks jurisdiction over this case; (2) Plaintiffs fail to state a claim upon which relief can be granted; (3) Plaintiffs' claims impermissibly intrude on the Executive's plenary authority over immigration detention; and (4) the Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declaration of Pushkal Mishra in Support of the Motion, filed concurrently herewith; the pleadings (and exhibits it references, incorporates, or relies on), files, and records in this action; and such further evidence and/or argument as may be presented at or before the hearing on this Motion. A proposed order has been included herewith.

This Motion is made following a pre-filing conference of counsel held on April 7, 2026, in compliance with Local Rule 7-3 and Section VII.A of the Court's Civil Standing Order (ECF 25). *See* Declaration of Pushkal Mishra in Support of Defendants' Motion to Dismiss the Complaint re: Pre-Filing Conference Pursuant to Local Rule 7-3, filed concurrently herewith.

i

# TABLE OF CONTENTS

DESCRIPTION                                                                                         PAGE

I.      INTRODUCTION ................................................................................... 1

II.     BACKGROUND ..................................................................................... 3

III.    LEGAL STANDARD ............................................................................. 3

IV.     ARGUMENT ........................................................................................... 4

        A.    Plaintiffs' Impermissible Shotgun Pleading Fails Rule 8 ........................... 4

        B.    Plaintiffs Cannot Enforce the ICE-GEO Detention Contract ..................... 6

        C.    Plaintiffs Have Sued the Wrong Defendants ................................. 7

        D.    Plaintiffs Lack Standing for Prospective Injunctive Relief ...................... 9

              1.    Plaintiffs Lack Standing ................................................... 9

              2.    CHIRLA Lacks Associational or Organizational Standing.............. 13

        E.    Plaintiffs Fail to State a Fifth Amendment Claim ................................. 14

        F.    Plaintiffs Fail to State a Rehabilitation Act Claim .................................. 15

        G.    Plaintiffs Fail to State an APA Claim.............................................. 16

              1.    APA Review Is Precluded by Statute.............................................. 16

              2.    Plaintiffs Fail to Allege a Final Agency Action ............................. 17

              3.    Plaintiffs Fail to Allege Facts Sufficient to State a Claim that the "Good" Rating of the Adelanto Facility is Arbitrary-and-Capricious or Unlawful ................................................................. 18

        H.    Plaintiffs' Claims Impermissibly Intrude on the Executive's Plenary Authority Over Immigration Detention ................................................. 19

V.      CONCLUSION.................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahn v. GEO Grp., Inc.*,
2024 WL 1258428 (E.D. Cal. Mar. 25, 2024) ........................................................ 11

*Allen v. Wright*,
468 U.S. 737 (1984) .............................................................................. 1, 20

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989) ........................................................................................ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................. 2, 3, 9, 15

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
950 F.2d 1401 (9th Cir. 1991) ...................................................... 14

*Astra USA, Inc. v. Santa Clara County*,
824 F.3d 1156 (9th Cir. 2016) ........................................................ 6

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ........................................................ 3

*Bell v. Hood*,
327 U.S. 678 (1946) ........................................................................ 6

*Bell v. Wolfish*,
441 U.S. 520 (1979) .......................................................... 14, 20

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................ 17

*Carrillo v. United States*,
5 F.3d 1302 (9th Cir. 1993) ........................................................ 7

*Castle v. Eurofresh, Inc.*,
731 F.3d 901 (9th Cir. 2013) ...................................................... 15

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................ 20

*Cobell v. Kempthorne*,
455 F.3d 301 (D.C. Cir. 2006) ........................................... 18

i

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ................................................................................... 17

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020) ...................................................................................... 19

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ................................................................................... 13

*Fiallo v. Bell*,
430 U.S. 787 (1977) ................................................................................... 19

*Fraihat v. U.S. Immigr. & Customs Enf't*,
16 F.4th 613 (9th Cir. 2021) ..................................................... 8, 14, 15, 20

*Fund for Animals, Inc. v. BLM*,
460 F.3d 13 (D.C. Cir. 2006) .................................................................... 18

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ................................................................................... 12

*GEO Grp., Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) (en banc) ........................................... 1, 5, 10

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) ......................................................... 4, 5, 8

*Gordon v. Cnty. of Orange*,
888 F.3d 1118 (9th Cir. 2018) .................................................................. 15

*Harris v. McRae*,
448 U.S. 297 (1980) ................................................................................... 14

*Heckler v. Chaney*,
470 U.S. 821 (1985) ....................................................................... 16, 17, 20

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ....................................................................................... 3

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ............................................................................. 13, 14

*Jones v. Blanas*,
393 F.3d 918 (9th Cir. 2004) .................................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..................................................................................... 6

ii

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ........................................................................... 16

*Logue v. United States,*
   412 U.S. 521 (1973) .......................................................................... 1, 7

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .............................................................. 9, 11, 12, 18

*Magluta v. Samples,*
   256 F.3d 1282 (11th Cir. 2001) ............................................................ 5

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) ................................................................ 4

*Minneci v. Pollard,*
   565 U.S. 118 (2012) ............................................................................ 8

*Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ............................................................................ 19

*Murthy v. Missouri,*
   603 U.S. 43 (2024) ....................................................................... 10, 11

*NLRB v. Express Publishing Co.,*
   312 U.S. 426 (1941) ............................................................................ 1

*Noem v. Perdomo,*
   146 S. Ct. 1 (2025) .............................................................................. 1

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) ............................................................................ 18

*Peralta v. Dillard,*
   744 F.3d 1076 (9th Cir. 2014) ........................................................ 14, 15

*Perdomo v. Noem,*
   148 F.4th 656 (9th Cir. 2025) ............................................................... 1

*Rumsfeld v. Padilla,*
   542 U.S. 426 (2004) ............................................................................ 7

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .............................................................. 3

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) .............................................................................. 1

iii

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................... 2, 9-10, 10, 15, 19

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................ 19

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................ 1, 9

*Trump v. New York*,
    592 U.S. 125 (2020) ........................................................................... 9, 13

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*,
    477 U.S. 597 (1986) ............................................................................... 15

*United States v. Boyd*,
    378 U.S. 39 (1964) ................................................................................. 10

*United States v. Edwards*,
    415 U.S. 800 (1974) ................................................................................. 8

*United States v. New Mexico*,
    455 U.S. 720 (1982) ............................................................................... 10

*United States v. Orleans*,
    425 U.S. 807 (1976) ............................................................................. 1, 7

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
    467 U.S. 797 (1984) ............................................................................... 20

*Village of Bald Head Island v. U.S. Army Corps of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) ................................................................. 18

*Xirum v. U.S. Immigr. & Customs Enf't*,
    2023 WL 2683112 (S.D. Ind. Mar. 29, 2023) ................................... 6, 16-17

*Xirum v. U.S. Immigr. & Customs Enf't*,
    2024 WL 3718145 (S.D. Ind. July 29, 2024) ....................................... 16

**Federal Statutes**

5 U.S.C. § 551(13) ..................................................................................... 18

5 U.S.C. § 701 ............................................................................................ 16

5 U.S.C. § 706(1) ....................................................................................... 18

6 U.S.C. § 202(5) ....................................................................................... 16

iv

8 U.S.C. § 1103 ........................................................................................... 6

8 U.S.C. § 1231 ............................................................................... 16, 17, 20

8 U.S.C. § 1252 ...................................................................................... 12, 13

## I.   INTRODUCTION

Plaintiffs say they seek "complete relief" of the sort granted in *Perdomo*. ECF 56 at 10 (quoting *Perdomo v. Noem*, 148 F.4th 656, 687 (9th Cir. 2025)). Elsewhere, they also say that "an injunction ordering Defendants to comply with the Constitution and federal law— . . . is all Plaintiffs ask for . . . ." *Id.* at 3. They anchor their bold claim for a sweeping injunction on a shotgun pleading that links their claimed injuries to GEO's day-to-day independent operational decisions—not to any act of the federal government Defendants.

But that "complete relief" assertion is defective—the Supreme Court has already told us so. *Noem v. Perdomo*, 146 S. Ct. 1 (2025) (per curiam) (staying the TRO that Plaintiffs cite and rely on as their ostensible justification for sweeping injunctive relief). And with respect to the claim that they are just asking the government to follow the Constitution and federal law, the Supreme Court has long condemned such "obey-the-law" injunctions. *NLRB v. Express Publishing Co.*, 312 U.S. 426, 435 (1941). Plaintiffs' effort to broadly conflate the federal Defendants with private third parties not before this Court (and also with GEO's independent acts) fails because the Supreme Court has also long held that a federal contractor is not a federal instrumentality. *Logue v. United States*, 412 U.S. 521, 527-532 (1973); *United States v. Orleans*, 425 U.S. 807, 815-16 (1976); *see also GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (en banc) ("Private contractors do not stand on the same footing as the federal government . . . .").

The Supreme Court has warned that a casual approach to Article III, such as that Plaintiffs adopt here, "would pave the way generally for suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations." *Allen v. Wright*, 468 U.S. 737, 759-60 (1984); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). Where, as here, the causal chain runs through a third party's independent decisions, traceability prong of standing fails, plain and simple. *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S.

1

26, 40-42 (1976); *Allen*, 468 U.S. at 757-59.

The Complaint also fails to coherently allege a theory underlying Plaintiffs' legal claim(s) to relief. The Court need not accept as true inconsistent or contradictory allegations. *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). Among other things, Plaintiffs label GEO's facility staff as "agents of Defendant ICE" (Compl. ¶ 19)—a legal conclusion—yet when alleging actual harm, they repeatedly attribute the complained-of conduct to "Adelanto staff" (*see, e.g.*, *id.* ¶¶ 7, 15-17, 40, 49, 65, 71, 79, 92, 103, 129, 161), not to any federal official. *See also id.* ("Taken together, . . . Adelanto staff's behavior toward detained individuals . . . indicate that conditions are punitive"); *id.* ¶ 49 (blaming staffing shortages on facility administration); ECF 13-2 (L.T. Declaration) ¶ 18 ("Adelanto staff also decide where in the facility I am housed, when I can seek medical treatment, and what medical treatment I can have."). Plaintiffs make no effort to distinguish the federal government from the employees of its independent contractor, GEO; the Complaint indiscriminately refers to them throughout their pleadings. That does not satisfy federal pleading standards. Defendants are entitled to a pleading that puts them on notice as to their own actions, rather than vaguely attributing all acts of others to them.

Plaintiffs similarly allege that ICE designed PBNDS, intended to "transform the immigration detention system" (*see id.* ¶ 28 n.21, incorporating PBNDS by reference)—then swiftly turn around and claim that the very agency that created, imposed, and routinely monitors those standards is somehow "punitive" or acting with "deliberate indifference" given the alleged conditions the agency regulates. *Id.* ¶¶ 28-29, 186. Indeed, they allege that ICE "monitors Adelanto to ensure compliance with detention standards and contract requirements" (*id.* ¶ 186) and cite ICE's own Office of Detention Oversight (ODO) inspection reports documenting deficiencies (*id.* ¶¶ 132-34)—the very opposite of the abdication their legal theory requires. And they complain that *ICE* fails to "comply with [its] own detention standards" (*id.* ¶ 131)—standards that the Complaint itself admits

2

elsewhere ICE contractually imposes on GEO, and which it is contractually obligated to implement under its $2 billion contract with ICE. *Id*. ¶ 28; *see also id.* ¶ 19 (alleging that GEO "run[s] and manage[s]" Adelanto). Again, if Plaintiffs wish to plead a claim against the federal Defendants, they cannot mindlessly aggregate them with GEO in this manner. GEO and the federal government are not the same.

Plaintiffs challenge conditions at Adelanto—a facility that GEO owns, operates, and administers. Yet Plaintiffs have sued federal officials and federal agencies, demanding that this Court conscript the Executive Branch into performing the role of a day-to-day facility operator and installing unelected "Independent Monitors" to supervise compliance with contractual provisions to which Plaintiffs are not parties—and where the contracted party is not even a defendant. Plaintiffs' decision to omit GEO from this suit is not incidental; it is fatal. The Complaint should be dismissed in its entirety.

## II.    BACKGROUND

Plaintiffs—L.T., J.M., Sevak Mesrobian, and Jose Mauro Salazar-Garza (together, "Individual Plaintiffs"); and Coalition for Humane Immigrants Rights ("CHIRLA")—have sued the following Defendants: U.S. Department of Homeland Security ("DHS"); Kristi Noem, DHS's Secretary; DHS's component agency U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, ICE's Acting Director; and Jaime Rios, Acting Director of ICE's Enforcement and Removal Operations ("ERO")'s Los Angeles Field Office. *See generally* Compl. ¶¶ 14-23, ECF 1.

## III.    LEGAL STANDARD

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

A Rule 12(b)(6) attack warrants dismissal where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive dismissal only if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## IV.    ARGUMENT

### A.    Plaintiffs' Impermissible Shotgun Pleading Fails Rule 8

The Ninth Circuit has squarely rejected shotgun pleading. *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026). "Shotgun pleading undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." *Id.* at 1290; *see also id.* (making clear that shotgun pleadings "fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis").

The Complaint is a textbook shotgun pleading. Every count "incorporates by reference" all preceding paragraphs, sweeping unrelated factual allegations into every legal theory and leaving Defendants to guess which facts support which claim. *See* Compl. ¶¶ 152, 166, 171, 181 (each count beginning: "Plaintiffs repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein."). That is the paradigmatic defect *McHenry* condemned. *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996); *Gibson*, 165 F.4th at 1288 (exemplary type one).

The Complaint also mixes legal theories within single counts—for example, conflating substantive due process, procedural due process, and statutory-accommodation theories and scatters conclusory policy assertions throughout factual narrative without tying them to discrete acts. As but one example, Count One (Compl. ¶¶ 152-65) is labeled "Punitive Conditions of Confinement / Fifth Amendment Due Process" but conflates *substantive* due process (conditions at Adelanto amounting to "punishment," *id.* ¶¶ 155-56, 158-59) with what are really *procedural* due process concepts (ICE's statutory duty to "arrange for appropriate places of detention," *id.* ¶ 154, citing 8 U.S.C. §§ 1231(g)(1),

1103(a)(11)(B)) and even folds in disability-accommodation-style allegations about failing to respond to medical needs (*id.* ¶ 156) that overlap with Counts Two and Three. That is improper. *See Gibson*, 165 F.4th at 1288 (exemplary types two and three); *McHenry*, 84 F.3d at 1179 ("As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what.").

The Complaint also persistently "lumps" ICE and GEO together, attributing operational acts and omissions of different entities under the undifferentiated label of "Defendants," *e.g.*, Compl. ¶¶ 47, 63, 73, 90-91, 115, 126, 156, 168-69, 175 (saying the "Defendants" do or fail to do something that is plainly facility-level operational conduct—medical care, food, sanitation, grievances, solitary—without ever distinguishing ICE from GEO), despite the fundamental legal distinction this Court must draw between the federal Executive (which contracts for detention and exercises regulatory oversight) and the private contractor (which physically operates the facility day-to-day), *Newsom*, 50 F.4th at 750-53 (recognizing the legal significance of that division of authority). *Compare id.* ¶ 24 (alleging that "ICE contracts with GEO to *run* Adelanto and *detain* immigrants there" (emphases added)), *with id.* ¶ 173 ("ICE *operates* a civil immigration detention program at . . . Adelanto" (emphasis added)); *compare id.* ¶ 28 & n.22 (alleging that ICE's contract with GEO mandates compliance with PBNDS, in that "[a]ll services shall be furnished in compliance with" PBNDS), *with id.* ¶ 29 (alleging—against *Defendants*, not GEO—that they "have consistently failed to comply with the PBNDS" because "Adelanto has long been plagued by substandard conditions, medical neglect, and abuse").

That undifferentiated lumping of entities and their conduct is fatal because ICE is entitled to know what it did that is asserted to be wrongful. It is doubly problematic here because virtually every element of Plaintiffs' theories—traceability, punitive intent, deliberate indifference, discrimination on account of disability, final agency action—turns on whose conduct is actually at issue. *Gibson*, 165 F.4th at 1288 ("[P]ermitting parties to file pleadings that do not tie factual averments against specific parties to individual causes

of action infringes Rule 8."); *see, e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (condemning "a quintessential 'shotgun'" complaint that charged all defendants in each count, "making no distinction among the fourteen defendants charged," and was "in no sense the 'short and plain statement of the claim' required by Rule 8").

### B.   Plaintiffs Cannot Enforce the ICE-GEO Detention Contract

As a matter of substantive federal law, Plaintiffs have no cause of action or party standing to enforce ICE's contract with GEO. The absence of a private right of action—under a third-party-beneficiary theory—is a merits defect properly resolved on a motion to dismiss for failure to state a claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (whether a plaintiff "has a cause of action under the statute" is a 12(b)(6) merits question, not a jurisdictional one); *Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding that whether a complaint states a cause of action "must be decided after and not before the court has assumed jurisdiction").

Government contracts are presumed not to confer enforceable rights on third parties. *Astra USA, Inc. v. Santa Clara County*, 824 F.3d 1156, 1160 (9th Cir. 2016) ("A third party that wishes to sue under a government contract must demonstrate that it is an intended beneficiary of the contract, rather than merely an incidental one."). That principle squarely defeats Plaintiffs' legal theory and jurisdiction here. The INA and the ICE detention-contract scheme do not create enforceable rights for detainees. *See, e.g.*, *Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00801, 2023 WL 2683112, at *19-21 (S.D. Ind. Mar. 29, 2023). In *Xirum*, the court explained that 8 U.S.C. § 1103(a)(11) and the governing detention contracts "restrict[] both the purpose of the detention contracts and the use of federal funds paid under the contracts" but "d[o] not function to benefit detainees," and that detainee-plaintiffs cannot enforce those contracts. *Id.* So too here. Indeed, Section 1231(g) directs the Attorney General to "arrange for appropriate places of detention" for removable aliens; its text and structure speak to Executive resource allocation and contracting authority, not to detainee welfare. 8 U.S.C. § 1231(g)(1)-(2). Section 1231(h) removes any doubt by expressly denying that the statute creates "any

6

substantive or procedural right or benefit" enforceable by "any party." *Id.* § 1231(h).

### C.    Plaintiffs Have Sued the Wrong Defendants

Plaintiffs have sued the wrong defendants. Operational control over the conditions Plaintiffs actually challenge—medication timing, housing assignments, pill-call routines, shower access, intake procedures, and day-to-day staffing—rests with GEO, the private contractor that operates Adelanto, not with the federal Defendants named in the Complaint. ICE contracts for detention capacity and exercises regulatory oversight; it does not itself dispense medication, assign bunks, or staff housing units. Under settled law, a federal principal is not derivatively liable for the operational acts of an independent contractor absent day-to-day control. *Logue*, 412 U.S. at 527-32; *Orleans*, 425 U.S. at 813-16; *cf. Carrillo v. United States*, 5 F.3d 1302, 1304-05 (9th Cir. 1993) (same, relying on, for example, *Orleans*, 425 U.S. at 814; *Logue*, 412 U.S. at 528)).

The Supreme Court reinforced that common-law framework in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), articulating the principle for allocating responsibility when the challenge (and the requested relief) is directed at physical confinement rather than some abstract legal relationship. *Padilla* held that "the immediate custodian, not a supervisory official who exercises legal control" is the proper party to answer when a detainee challenges his "present physical confinement." *Id.* at 435; *see also id.* at 433, 439 (rejecting the "legal reality of control" theory). It squarely rejected the view that legal custody—the sort of contractual or statutory authority ICE exercises here—suffices to make a "remote supervisory official" the proper party when the real-world grievance concerns physical custody. *Id*. The question is who has "day-to-day control" over the conditions at issue, *id.* at 439-40—not who holds ultimate legal authority over the detention program at large.

The physical-versus-legal-custody distinction is not unique to habeas. The Supreme Court has applied the same logic in the tort context, holding that the United States is not answerable for the day-to-day operational acts of a contractor running a detention facility; responsibility instead lies with the entity in physical control. *Logue*, 412 U.S. at 528-30; *Orleans*, 425 U.S. at 814-16. The common thread is that when a claim turns on how a

person is physically confined, the proper defendant is the entity with actual physical control over those conditions—not the remote sovereign that has contracted the custodial function out to that entity. The focus, in other words, is on whether the claim concerns physical confinement—not on whether the case is styled as habeas, *Bivens*, APA, or, as here, a mix of constitutional and statutory claims seeking structural injunctive relief directed at large at the federal program of detention. *Cf. Minneci v. Pollard*, 565 U.S. 118, 125-29 (2012) (making clear that when detainees are held in private facilities, their recourse is against the "jailers, including private operators of prisons," and under state law); *United States v. Edwards*, 415 U.S. 800, 804 n.6 (1974) (describing a "jailer" as one having "custody and control" over an inmate); Jailer, *Black's Law Dictionary* (12th ed. 2024) (defining the term as follows: "A keeper, guard, or warden of a prison or jail; one who is in charge of a jail, or part of it, and of the prisoners confined there.").

That allocation is dispositive here. Plaintiffs' claims target the physical realities of confinement at Adelanto—medication administration and timing, pill-call routines, housing placements, shower access, intake screening, disability accommodations on the housing unit, and staffing inside pods. *See, e.g.*, Compl. ¶¶ 63-64 (medication administration and timing), 75 (shower access), 73 (intake screening for mobility issues), 49 (medical staffing shortages), 84 (housing in eight-person cells), 79 (failure to accommodate mental health disabilities on the unit). Those are the paradigmatic day-to-day physical-custody functions and operations. GEO is the custodian: It owns, staffs, and operates Adelanto, delivers medical care, and makes the on-the-ground decisions. ICE, by contrast, occupies the position the Supreme Court held irrelevant for this kind of challenge—the "remote supervisory official" whose legal authority, contractual oversight, and PBNDS promulgation do not translate into the day-to-day physical control that drives the inquiry. The Ninth Circuit has applied the same logic to ICE detention specifically, recognizing that "ICE contracts out its detention responsibilities to . . . private contractors, who *run* facilities they own." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 643 (9th Cir. 2021) (emphasis added). Plaintiffs' effort to press claims about physical-

conditions against the legal custodian while leaving the immediate physical custodian out of the case (seeking relief that would then require the former to micromanage the latter not pursuant to their contract but per the terms of a court order) warrants outright dismissal.

### D.    Plaintiffs Lack Standing for Prospective Injunctive Relief

#### 1.    Plaintiffs Lack Standing

"A foundational principle of Article III is that 'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" *Trump v. New York*, 592 U.S. 125, 131 (2020). "Two related doctrines of justiciability—each originating in the case-or-controversy requirement of Article III"—standing and ripeness—must be satisfied before the case can be adjudicated on the merits. *Id*. at 131, 134. "First, a plaintiff must demonstrate standing, including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical.'" *Id.* at 131 (cleaned up). That injury must be (1) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" and (2) "the injury will be 'redressed by a favorable decision'" by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *TransUnion*, 594 U.S. at 431 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").[1] Thus, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* If a plaintiff fails at either step of the inquiry, the court cannot reach the merits of the dispute. *Trump v. New York*, 592 U.S. at 131, 134. "Second, the

---

[1] And where, as here, a plaintiff's alleged injury arises from the government's purported regulation (or lack of regulation) of a third party, "much more is needed" to establish standing, because causation and redressability "hinge on the response of the regulated (or regulable) third party to the government action or inaction." *Lujan*, 504 U.S. at 562. The existence of the essential elements of standing here "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)).

case must be ripe . . . ." *Id.* at 131 (cleaned up).

With respect to **_traceability_**: Plaintiffs' allegations are centered around GEO, not Defendants. *See, e.g.*, Compl. ¶¶ 24-29, 40-46, 80-106. Plaintiffs label GEO an "agent" of ICE, but that is a legal conclusion, unsupported by their own allegations. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Sprewell*, 266 F.3d at 988 (court "need not" accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Indeed, Plaintiffs' own factual allegations are contradictory on this point: They plead an arms-length contractual relationship—not facts underlying an agency relationship—between ICE and GEO. Compl. ¶¶ 19, 24-26. Per that contract, GEO provides, among other things, "detention" and "medical services." *Id*. ¶ 24 n.11. It "mandates compliance with the PBNDS," *id.* ¶ 28, which Plaintiffs repeatedly reference to try to show violations of the PBNDS standards at Adelanto. *See, e.g.*, Compl. ¶¶ 28-29, 50-68, 185-192; *compare id*. ¶ 28 (alleging that "ICE[]" contractually mandates GEO's compliance with the PBNDS), *with id.* ¶ 29 (alleging that "*Defendants* have consistently failed to comply with the PBNDS" because "Adelanto has long been plagued by substandard conditions, medical neglect, and abuse" (emphasis added)), *and id*. ¶¶ 28-29 (alleging that the "PBNDS are contractually binding terms that *Defendants* are not following" (emphasis added)).

Moreover, "[p]rivate contractors do not stand on the same footing as the federal government . . . ." *Newsom*, 50 F.4th at 750; *United States v. New Mexico*, 455 U.S. 720, 736-38 (1982); *United States v. Boyd*, 378 U.S. 39, 46 (1964). To be sure, ICE routinely inspects Adelanto through its ODO to help ensure GEO's compliance with PBNDS. *See* ECF 54-1, Ex. 4 ("2025 Inspection Report") at 3 (incorporated by reference in the Complaint, *see* Compl. ¶ 115 n.91); *see also id.* at 4 ("ODO conducts the following annual and biennial oversight inspections of ICE detention facilities to assess and rate each facility's compliance with *their contractually obligated detention standards* . . . ." (emphasis added)). That ODO did not find any deficiencies at Adelanto on account of 26

10

out of 29 standards—including as to emergency plans; disciplinary system; food service; medical care; and disability identification assessment, and accommodation, *id.* at 5-7, further contradict any suggestion that *Defendants* caused any injury to Plaintiffs, and any allegation to the contrary must not be accepted as true. *See, e.g.*, *Steckman*, 143 F.3d at 1295-96 ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). Plaintiffs' disagreement with the findings of those audits, relative to a contractor, does not state a constitutional claim.

*Murthy v. Missouri*, 603 U.S. 43 (2024), makes that concrete. There, plaintiffs alleged that federal officials had induced social-media platforms to restrict their speech, but the Supreme Court held they lacked standing because the challenged injuries were caused by the platforms' independent content-moderation choices, not by the government. *Id.* at 57-59, 68-72. The platforms had been "acting independently" in enforcing their pre-existing content-moderation policies, the Court explained, so linking the plaintiffs' injuries to government conduct required non-speculative proof that federal officials had "coerced" or "significantly encouraged" the specific third-party conduct that injured the plaintiffs. *Id.* at 56, 60, 69-70. Absent that showing—and absent proof that an injunction against the government would actually change the third party's independent behavior—both traceability and redressability failed. *Id.* at 68-72, 73-74. *Ahn v. GEO Grp., Inc.*, 2024 WL 1258428, at *8-10 (E.D. Cal. Mar. 25, 2024) faithfully applies that settled principle. There, the district court dismissed claims against ICE finding that "[t]he relevant contracts . . . indisputably vest GEO solely with the rights and responsibilities to manage . . . operations and compliance with applicable statutes, regulations, and the PBNDS. . . . GEO alone runs . . . operations, deciding whether it has the capability to accept detainees with medical issues, how to classify detainees, where to house them, how to supervise them, and how to ensure that they receive necessary medical treatment and intervention." *Id.*

So too here: Plaintiffs' alleged injuries—medication-timing complaints, accessible-shower access, pill-call routines, guard responses during medical emergencies, *see, e.g.*, Compl. ¶¶ 64, 75, 63, 57-59—are caused, if at all, by the independent day-to-day

11

discretionary operational choices of GEO and its employees, not by federal agencies or their officials named in this action. GEO operates Adelanto under its own contractual, accreditation, and internal-policy obligations; it has its own supervisory hierarchy; and its day-to-day decisions about staffing, medical workflows, and facility conditions are "unfettered choices made by [an] independent actor[] not before the court[]" and "whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . . ." *Lujan*, 504 U.S. at 562; *accord Murthy*, 603 U.S. at 57-58.

Next, as to **_redressability_**: Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561; *Murthy v. Missouri*, 603 U.S. 43, 57-59 (2024) ("[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." (cleaned up)). Two independent barriers defeat redressability here. *First*, GEO—not ICE—owns and operates Adelanto and controls conditions day-to-day. ICE has no supervisory command authority over GEO's internal operations, and an injunction against ICE would not, by its own force, change conditions at the facility. Any improvement in conditions would depend on GEO's "unfettered choices," *Lujan*, 504 U.S. at 562—the very "response of the regulated (or regulable) third party" that *Lujan* identifies as fatal to standing, *id*. *Second*, the APA limits this Court's remedial power. The proper remedy under the APA is vacatur of the challenged action itself. Even if Plaintiffs prevailed on their APA claim, the most this Court could do is vacate the challenged "Good" rating and remand to ICE—which would not itself alter conditions at Adelanto, let alone yield the sweeping operational reforms Plaintiffs seek. *Lujan*, 504 U.S. at 561 (redressability must be "likely, as opposed to merely speculative" (quoting *Simon*, 426 U.S. at 38, 43). The attenuated causal chain here defeats standing.

These redressability defects are independently confirmed by 8 U.S.C. § 1252(f)(1), which strips lower courts of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221-1232, "other than with respect to the application of such provisions to an individual alien." The Supreme Court has held that § 1252(f)(1) "generally prohibits

12

lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" those provisions. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Detention at Adelanto operates under 8 U.S.C. §§ 1225, 1226, and/or 1231—squarely inside the statute's prohibited range. Because Plaintiffs sue on behalf of a putative class and seek sweeping, structural relief untethered to any specific detainee's circumstances, the "individual alien" carve-out is unavailable. Section 1252(f)(1) thus independently defeats redressability: The class-wide injunctive relief Plaintiffs seek is categorically beyond this Court's remedial power.

With respect to **ripeness**: Plaintiffs do not plausibly allege ongoing concrete harm traceable to the actual named Defendants. *See, e.g.*, Compl. ¶¶ 59-61 (alleging past seizure episodes handled by facility staff, not federal Defendants); *id*. ¶ 53 (alleging illness in December 2025 attributed to facility-level failures); *id*. ¶ 94 (alleging interaction with facility nurse, not federal Defendants). None of the named Plaintiffs plausibly allege any concrete, imminent plan by the *government-Defendants* to injure them—much less unlawfully. As such, "this case is riddled with contingencies and speculation" as to their asserted risk of future injury by Defendants, which "impede judicial review." *Trump v. New York*, 592 U.S. at 131.

### 2.    CHIRLA Lacks Associational or Organizational Standing

Organizations may sue for themselves if they satisfy the three elements of standing that apply to individuals. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024). They may sue on their members' behalf when, among other things, their members "would otherwise have standing to sue in their own right," and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

CHIRLA alleges that its provision of legal services to detained individuals has been diffusely impacted by Defendants' policies and practices. Compl. ¶ 18. But its asserted proof of this relies admittedly on a resource-diversion theory of standing. *See, e.g.*, ECF 34-6 ¶ 31 (averring "expend[ing] more of its resources"); ECF 34-8 ¶¶ 29-30 (averring

13

"diversion of resources" and that "[i]n the context of the hundreds of calls . . . , the opportunity cost of any diversion is enormous"). Organizations cannot "demonstrate standing" by arguing a policy has "impaired" their "ability to provide services and achieve their organizational missions." *Hippocratic Med.*, 602 U.S. at 394.

CHIRLA fares no better under a pure associational theory. *First*, CHIRLA's members—detainees—cannot establish standing in their own right for the same causation and redressability reasons that defeat the named Plaintiffs' standing. *See supra* § IV.D.1. *Second*, the claims are inherently fact- and member-specific, turning on each detainee's medical condition, disability, housing assignment, and individualized interactions with GEO staff. Such claims cannot be litigated in the aggregate without "the participation of individual members." *Hunt*, 432 U.S. at 343; *see Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991) (associational standing unavailable where "individualized proof" is required); *Harris v. McRae*, 448 U.S. 297, 321 (1980) (rejecting associational standing because the claim for relief required participation of individual members). CHIRLA thus lacks associational standing.

### E.   Plaintiffs Fail to State a Fifth Amendment Claim

As to claim 1, Plaintiffs must allege that their conditions of confinement are punitive. *Fraihat*, 16 F.4th at 647 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004)). That turns on "intent." *Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014). As to claim 2, Plaintiffs must allege deliberate indifference. *Fraihat*, 16 F.4th at 636. That in turn requires them to allege that Defendants' conduct was "objectively unreasonable"—i.e., show "reckless disregard." *Id.* (quoting *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)) (cleaned up).

Plaintiffs fail both tests. They reference conclusory allegations regarding conduct by non-party GEO staff to attribute the requisite intent to government-Defendants. *See, e.g.*, Compl. ¶¶ 40-46, 80-82; *see also id*. ¶¶ 40-68 (referencing allegations based on non-party accounts). That is irrelevant to the specific, day-to-day operations at Adelanto, which, Plaintiffs admit, is executed by GEO. *Id*. ¶¶ 19, 24. And they complain of auditing

that is the opposite of disregard. Taking issue with an auditing report's findings does not establish punitive intent or reckless disregard. *See Fraihat*, 16 F.4th at 637 (rejecting the possibility that the plaintiffs could show deliberate indifference because ICE "took steps to address COVID-19," irrespective of whether the steps were effective). For the same reasons, Plaintiffs cannot plead deliberate indifference. What qualifies as reasonable "depends on the circumstances that constrain what actions an official can take," including the policy framework under which the official operates. *Peralta*, 744 F.3d at 1082. Allegations that an agency has adopted and is enforcing a comprehensive standard then directly contradicts allegations that the agency's conduct was not "objectively unreasonable." *Gordon*, 888 F.3d at 1125. The Ninth Circuit has rejected even the possibility of a claim of deliberate-indifference because ICE "took steps to address COVID-19," regardless of whether those steps were ultimately effective. *Fraihat*, 16 F.4th at 637. Likewise, the pleading here fails.

## F.    Plaintiffs Fail to State a Rehabilitation Act Claim

Plaintiffs allege that *Defendants* have failed to reasonably accommodate them under the Rehabilitation Act. *See, e.g.*, Compl. ¶¶ 171-80. But Congress intended to strictly limit the scope of the Rehabilitation Act solely "to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986). So only "those who affirmatively choose to receive federal aid may be held liable under the RA," *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013), "as a *quid pro quo* for the receipt of federal funds," *Paralyzed Veterans*, 477 U.S. at 605. Plaintiffs have conspicuously not sued the actual grantee of the federal contract here—GEO. Instead, they argue incorrectly that ICE, as the **grantor** of the federal contract, should "be held liable under the RA." *Castle*, 731 F.3d at 908.

Plaintiffs allege however that ICE inspected and did not find any deficiencies at Adelanto as to "[d]isability [i]dentification, [a]ssessment, and [a]ccomodation." 2025 Inspection Report at 5. The existence of such disability policies and related inspection

15

directly contradict Plaintiffs' allegations that *Defendants* discriminated against Plaintiffs **solely** on account of their **disability**. Plaintiffs' Complaint, as a whole, appears to allege the opposite—that rather than such specific discriminatory intent having been directed at a perceived subclass and then depriving them of disability accommodation, Defendants have allegedly not provided adequate medical care *generally* at the facility. That does not allege a valid Rehabilitation Act claim.

### G.    Plaintiffs Fail to State an APA Claim

#### 1.    APA Review Is Precluded by Statute

Before this Court may review any agency action under the APA, Plaintiffs must "first clear the hurdle of § 701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a) withdraws APA review in two circumstances: where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and where "agency action is committed to agency discretion by law," *id.* § 701(a)(2). The Supreme Court has repeatedly confirmed that decisions traditionally regarded as within the agency's purview—including "enforcement," *id.* at 831, and resource allocation, *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)—are presumptively unreviewable. That deference to agency discretion has a statutory anchor: Congress itself vested sweeping enforcement authority in the Secretary. *See* 6 U.S.C. § 202(5) (charging the Secretary with "[e]stablishing national immigration enforcement policies and priorities"); *see also* 8 U.S.C. § 1231(h) ("Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.").

In *Xirum*, the court applied this framework to dismiss an APA challenge to ICE's detention-oversight enforcement decisions. *See Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00801, 2024 WL 3718145, at *7-9 (S.D. Ind. July 29, 2024) (holding ICE's enforcement of the Two Strikes Mandate committed to agency discretion because "Congress has provided no guidelines, or law to apply, to constrain ICE's enforcement or application of overall performance evaluations"); *see also Xirum*, 2023 WL 2683112, at *13-14 (dismissing parallel enforcement-discretion claim under *Heckler*). That rationale

extends to ICE's inspection-and-rating decisions, which require the agency to weigh competing priorities and allocate limited oversight resources across a national detention network—the "paradigmatic" enforcement calculus *Heckler* committed to agency discretion: Congress has provided no "law to apply" to ICE's standards for detention oversight, 8 U.S.C. § 1231(g)(1), and has not "circumscrib[ed] [the] agency's power" to conduct immigration enforcement, *Heckler*, 470 U.S. at 830-31, 833.

### 2.    Plaintiffs Fail to Allege a Final Agency Action

Judicial review under the APA "is available only for 'final agency action.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In addition, the challenged action must be "agency action" as defined by the APA—one of five "circumscribed [and] discrete" categories: "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). The APA's "limitation to discrete agency action precludes the kind of broad programmatic attack" the Supreme Court rejected in *Lujan*, 497 U.S. 871, where plaintiffs sought "wholesale improvement" of an agency program by court decree. *Norton*, 542 U.S. at 64. Accordingly, the "term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, . . . operating a program, or performing a contract." *Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013); *see also Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 19 (D.C. Cir. 2006) (noting that APA is "not so all-encompassing as to authorize us to exercise judicial review over the "common business of managing government programs"). ICE's ongoing inspection and oversight of Adelanto, including GEO's compliance with the PBNDS contractual provision, is precisely that kind of "operating a program" or "performing a contract"—not a discrete, final action subject to APA review. And insofar as Plaintiffs' real grievance is the manner in which ICE structures its detention-oversight regime writ large, that is the paradigmatic "broad programmatic attack" that *Lujan* and *Norton* foreclose. *Norton*, 542 U.S. at 64; *see also Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) ("[A]n on-

17

going program or policy is not, in itself, a 'final agency action' under the APA."). For the same reason, Section 706(1)'s remedy to "compel agency action unlawfully withheld" is unavailable: A plaintiff must identify "a *discrete* agency action that [the agency] is *required to take*." *Norton*, 542 U.S. at 63-64. Plaintiffs identify no such agency action; they demand generalized oversight and wholesale improvement of conditions—again, the paradigmatic "broad programmatic attack" *Norton* and *Lujan* foreclose.

        3.    <u>Plaintiffs Fail to Allege Facts Sufficient to State a Claim that the "Good" Rating of the Adelanto Facility is Arbitrary-and-Capricious or Unlawful</u>

Plaintiffs' allegations on this point (*see, e.g.*, Compl. ¶¶ 185-92) are plainly contradicted by the material they incorporate by reference. *Steckman*, 143 F.3d at 1295-96 ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). ODO tied the change in rating to legitimate factors—such as an increased number of deficiencies. 2025 Inspection Report at 7-8. Those factors fall squarely within agency expertise, and courts recognize them as appropriate bases for policy change. *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983) (recognizing that agency must consider "the relevant factors," including feasibility and cost, and provide a rational explanation). The Supreme Court has emphasized that under arbitrary-and-capricious review, the court's role is "narrow" and it "is not to substitute its judgment for that of the agency." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020). Yet, that is what Plaintiffs seek here—for this Court to take issue with and then substitute its judgment for that of the agency in its audit conclusions. The question is whether the agency "articulate[d] a satisfactory explanation for its action," showing "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. That ICE does here; Plaintiffs do not plausibly allege otherwise.

**H.      Plaintiffs' Claims Impermissibly Intrude on the Executive's Plenary Authority Over Immigration Detention**

A separation-of-powers principle runs through each of Plaintiffs' claims: The political branches, not the courts, are vested with plenary authority over immigration and the arrangements by which removable aliens are detained. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("This Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens."). Congress has exercised that authority by committing to the Executive broad discretion to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1), then foreclosing any challenge to that discretion by denying that the statute creates "any substantive or procedural right or benefit" enforceable by "any party," *id.* § 1231(h).

The APA's "committed to agency discretion" doctrine, *see supra*, is itself grounded in these separation-of-powers concerns, *Heckler*, 470 U.S. at 831-32. An injunction directing ICE how to inspect, rate, or contract for detention facilities would require Article III courts to perform, in effect, an Article II function—setting and supervising immigration-enforcement policy—in contravention of these structural commitments. *Allen*, 468 U.S. at 752 ("[T]he law of Art. III standing is built on a single basic idea—the idea of separation of powers."); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.").

Plaintiffs' suit asks this Court to do what the Constitution forbids. "[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial," *Wolfish*, 441 U.S. at 548, and courts owe

19

"wide-ranging deference" to detention administrators in the "adoption and execution of policies and practices that in their judgment are needed to preserve internal order" and operational functioning, *id.* at 547; *Fraihat*, 16 F.4th at 643. These deference principles reinforce, and are reinforced by, the standing, APA, and injunction-scope defects identified here and in ECF 54. The Court should decline Plaintiffs' invitation to convert this litigation into a vehicle for the judicial management of immigration detention.

## V.    CONCLUSION

Defendants respectfully request that the Court grant the motion.

Respectfully submitted,

Dated: April 20, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Special Assistant United States Attorney

Attorneys for Defendants

## **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains 6,945 words, which complies with the word limit of Local Rule 11-6.1.

Dated: April 20, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA