TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PUSHKAL MISHRA (Cal. Bar No. 298695)
Special Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (714) 338-3503
    E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., *et al.*,<br><br>                  Plaintiffs,<br><br>                  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>                  Defendants. | No. 5:26-cv-00322-SSS-RAO<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:    May 29, 2026<br>Hearing Time:    2:00 p.m.<br>Courtroom:       2<br><br>Honorable Sunshine Suzanne Sykes<br>United States District Judge |

# TABLE OF CONTENTS

DESCRIPTION                                                                                    PAGE

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ................................................................................................ 1

III.    LEGAL STANDARD ......................................................................................... 1

IV.     ARGUMENT ..................................................................................................... 2

     A.  Plaintiffs Fail to Establish an Article III Case or Controversy Warranting Classwide Equitable Relief ............................................ 3

     B.  Plaintiffs' Proposed Classes Fail to Meet Rule 23(a)'s Prerequisites ......... 7

         1.  Plaintiffs Cannot Show Numerosity .................................................... 8

         2.  Plaintiffs Cannot Show Commonality .................................................. 9

         3.  Plaintiffs Cannot Show Typicality ...................................................... 13

         4.  Plaintiffs Cannot Show Adequacy of Representation ..................... 15

     C.  Plaintiffs' Proposed Classes Fail to Satisfy Rule 23(b)(1)-(2) ................... 16

         1.  Plaintiffs Fail to Satisfy Rule 23(b)(2) ............................................. 17

         2.  Plaintiffs Fail to Satisfy Rule 23(b)(1) ............................................. 20

V.      CONCLUSION .................................................................................................. 21

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahn v. GEO Grp., Inc.*,
2024 WL 1258428 (E.D. Cal. Mar. 25, 2024) .......................................................... 5

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
120 F.4th 606 (9th Cir. 2024) ............................................................................... 6-7

*AmChem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 1, 16

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024) ........................................................................ 12-13

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ................................................................................................ 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................................ 11

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977) ................................................................................................ 15

*Fraihat v. U.S. Immigr. & Customs Enf't*,
16 F.4th 613 (9th Cir. 2021) (en banc) ................................................................... 2

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) .................................................................................................. 6

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ............................................................................................. 7, 14

*GEO Grp., Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) .................................................................................... 4

*Gray v. County of Riverside*,
2014 WL 5304915 (C.D. Cal. 2014) ................................................................. 20, 21

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................................ 16

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................................. 2-3

i

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) .................................................................................................. 4

*Jamie S. v. Milwaukee Pub. Schs.*,
  668 F.3d 481 (7th Cir. 2012) .................................................................................. 9

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) (en banc) ............................................................... 3

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  934 F.3d 619 (D.C. Cir. 2019) ................................................................... 15, 18, 20

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ............................................................................................ 6, 17

*Johnson v. District of Columbia*,
  248 F.R.D. 46 (D.D.C. 2008) .................................................................................. 3

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .............................................................................. 13

*Logue v. United States*,
  412 U.S. 521 (1973) ............................................................................................. 4-5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................. 3, 7

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) .................................................................................. 9

*McDonnell Douglas Corp. v. U.S. District Court*,
  523 F.2d 1083 (9th Cir. 1975) .............................................................................. 20

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ............................................................................................... 5, 6

*Nguyen Da Yen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976) ............................................................................. 8

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................................ 3, 16

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................................ 11

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ............................................................................................... 6

*Roman v. Wolf*,
  2020 WL 3869729 (C.D. Cal. July 1, 2020) ................................................................. 9

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) .................................................................... 9

*Ronduen v. GEO Grp., Inc.*,
  2025 WL 3050059 (C.D. Cal. Sept. 26, 2025) ............................................. 13, 15, 17

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) ............................................................... 8

*Senne v. Kan. City Royals Baseball Corp.*,
  2021 WL 3129460 (N.D. Cal. July 23, 2021) ........................................... 3

*Small v. Allianz Life Ins. Co. of N. Am.*,
  122 F.4th 1182 (9th Cir. 2024) ................................................................. 18

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020) ....................................................................... 10, 11

*Tincher v. Noem*,
  164 F.4th 1097 (8th Cir. 2026) ................................................................. 13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................... 4, 10

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ..................................................................... 18, 19, 21

*Trump v. New York*,
  592 U.S. 125 (2020) ....................................................................... 3, 4, 7

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)......................................................................... 10

*United States v. Boyd*,
  378 U.S. 39 (1964) .......................................................................... 4

*United States v. New Mexico*,
  455 U.S. 720 (1982) ........................................................................ 4

*United States v. Orleans*,
  425 U.S. 807 (1976) ........................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................... 1, 2, 4, 9, 10, 11, 12, 13, 17, 18, 20

iii

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013) ................................................................. 10

**Federal Statutes**

8 U.S.C. § 1225 ................................................................................. 6

8 U.S.C. § 1231 ............................................................................. 6, 18

8 U.S.C. § 1252 ......................................................................... 6, 18, 21

## I.    INTRODUCTION

Plaintiffs seek to transform a collection of disparate, individual past grievances against varied independent day-to-day operational decisions of a non-party into a sweeping, nationwide class action challenging the Executive Branch's plenary discretion over enforcement of immigration laws, demanding broad prospective equitable relief against it, including impermissibly indeterminate "follow the law" directives. Rule 23 does not permit that result. The proposed classes fail at every stage of Rule 23's rigorous analysis: They lack a live Article III case or controversy; their amorphous and overbroad class definitions fail the test for commonality; their claims are neither typical of nor aligned with those of absent class members; and the relief sought is precisely the kind of classwide injunction that Congress has barred and the Supreme Court has repeatedly rejected. Because this Court cannot grant the relief Plaintiffs seek—and they fail to affirmatively comply with the rigors of Rule 23—the motion should be denied.

## II.    BACKGROUND

Plaintiffs—L.T., J.M., Sevak Mesrobian, and Jose Mauro Salazar-Garza (together, "Individual Plaintiffs"); and Coalition for Humane Immigrants Rights ("CHIRLA")—have sued the following Defendants: U.S. Department of Homeland Security ("DHS"); Kristi Noem, DHS's Secretary; DHS's component agency U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, ICE's Acting Director; and Jaime Rios, Acting Director of ICE's Enforcement and Removal Operations ("ERO")'s Los Angeles Field Office. *See generally* Compl. ¶¶ 14-23, ECF 1; Motion at 2-8, ECF 57.

## III.    LEGAL STANDARD

Plaintiffs must prove numerosity, commonality, typicality, and adequacy to merit class certification. Fed. R. Civ. P. 23(a). The proposed class must also separately qualify under one of the subsets of Rule 23(b). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The Supreme Court has emphasized that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Rule 23(b)(1)(A)

alternatively permits certification where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

## IV.    ARGUMENT

Class certification should be denied because the preliminary injunction motion on which it supposedly depends is infirm for the reasons argued in ECF 54. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) ("If the preliminary injunction is infirm, the class certification order necessarily falls as well, regardless of whether class certification was otherwise proper under [Rule] 23.").

Even setting *Fraihat* aside, the motion fails on its own terms for each of the independent reasons detailed below. Plaintiffs either reference Adelanto's entire population or speculate to satisfy numerosity. They do not show that members of the proposed class or subclass "have suffered the same injury," and thus fail to show commonality. *Wal-Mart*, 564 U.S. at 349-50; Fed. R. Civ. P. 23(a)(2). Their allegations about various conditions at the facility are fact-specific, individualized, and reflect "dissimilarities" among Plaintiffs themselves, between Plaintiffs and the proposed classes, and within the proposed classes. *Id.* at 350 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."). The proposed classes encompass every single detainee who will ever be detained at Adelanto, regardless of custody classification or gender, whether they have or are likely to experience any issues among other allegations to include conditions of confinement or medical care. Plaintiffs also do not show typicality or adequacy: Their claims arise from unique incidents at Adelanto and relate to their specific custody classification and are thus not sufficiently "align[ed]" or "interrelated" with the proposed classes. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course

of conduct." (cleaned up)); *Senne v. Kan. City Royals Baseball Corp.*, No. 14-00608, 2021 WL 3129460, at \*19 (N.D. Cal. July 23, 2021). Plaintiffs finally fail to show a risk of inconsistent adjudications or that their allegations "apply generally to the class[es], so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole." Fed. R. Civ. P. 23(b)(1)-(2). But—above all—Plaintiffs lack Article III standing to begin with.

### A.    Plaintiffs Fail to Establish an Article III Case or Controversy Warranting Classwide Equitable Relief

Where Plaintiffs lack standing, the class certification inquiry never gets off the ground. Indeed, in a proposed class action seeking equitable judicial remedy, no class certification is warranted if the ***named plaintiffs*** cannot show standing and ripeness.[1] To that end, "[a] foundational principle of Article III is that 'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" *Trump v. New York*, 592 U.S. 125, 131 (2020). "Two related doctrines of justiciability—each originating in the case-or-controversy requirement of Article III"—standing and ripeness—must be satisfied before the case can be adjudicated on the merits. *Id*. at 131, 134. "First, a plaintiff must demonstrate standing, including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical.'" *Id*. at 131 (cleaned

---

[1] *Hodgers-Durgin* fits here: Where two motorists stopped once by Border Patrol agents over a ten-year period sought classwide declaratory and injunctive relief challenging alleged systemic or pattern-and-practice constitutional violations, the Ninth Circuit held that named plaintiffs lacked a real and immediate threat of future harm and speculative future injuries to them or unnamed class members could not support classwide equitable relief, stating as follows: "Because we find that the named plaintiffs have not alleged sufficient injury to entitle them to equitable relief, we need not reach the question whether the class that plaintiffs seek to represent was properly certified." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also id*. ("Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek."); *id*. at 1044 (making clear that "equitable judicial remedy" includes "declaratory relief"); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Johnson v. District of Columbia,* 248 F.R.D. 46, 54-56 (D.D.C. 2008) (declining to certify Rule 23(b)(2) classes where plaintiffs lacked standing for "prospective injunctive relief").

3

up). That injury must be (1) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" and (2) "the injury will be 'redressed by a favorable decision'" by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). If a plaintiff fails at either step of the foregoing inquiry, the court cannot reach the merits of the dispute. *Trump v. New York*, 592 U.S. at 131, 134. "Second, the case must be ripe . . . ." *Id.* at 131 (cleaned up).

Plaintiffs' class certification motion does not even address Article III standing. *See generally* Motion at 9-22. The parties discussed this jurisdictional problem in their Rule 7-3 conference, and Plaintiffs have not met their burden. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) (holding that the party asserting subject matter jurisdiction has the burden of persuasion for establishing it). Plaintiffs must "affirmatively demonstrate" compliance with Rule 23, which in turn "does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. That rigorous analysis applies with full force to Article III's requirements: "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431.

With respect to ***traceability***: Plaintiffs' allegations are centered around GEO, not Defendants. *See, e.g.*, Motion at 2-6. Indeed, Plaintiffs' own factual allegations are contradictory on this point: They plead an arms-length contractual relationship—not facts underlying an agency relationship—between ICE and GEO. Compl. ¶¶ 19, 24-26. ICE avers so too. *See* ECF 54-1 ¶¶ 3-15. It is well-settled that "[p]rivate contractors do not stand on the same footing as the federal government . . . ." *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (en banc); *United States v. New Mexico*, 455 U.S. 720, 736-38 (1982); *United States v. Boyd*, 378 U.S. 39, 46 (1964).

*Logue v. United States*, 412 U.S. 521 (1973), makes that concrete. There, the Supreme Court held that employees of a county jail that housed federal prisoners pursuant

4

to a contract with the Federal Bureau of Prisons were not federal employees or employees of a federal agency; thus, the United States was not liable for the acts of the county jail. *Id*. at 527-30. Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the day-to-day conduct of the jail's employees. *Id*.; *United States v. Orleans*, 425 U.S. 807, 815-16 (1976); *Murthy v. Missouri*, 603 U.S. 43, 57-59, 68-72 (2024); *see also Ahn v. GEO Grp., Inc.*, 2024 WL 1258428, at *8-10 (E.D. Cal. Mar. 25, 2024) (dismissing claims against ICE on account of GEO's rights and responsibilities).

So too here: Plaintiffs' alleged disparate injuries—medication-timing complaints, accessible-shower access, pill-call routines, guard responses during medical emergencies, *see, e.g.,* Compl. ¶¶ 64, 75, 63, 57-59; ECF 54-1 ¶¶ 20-25, 34-35—are caused, if at all, by the independent day-to-day discretionary operational choices of GEO and its employees, not by federal agencies or their officials named in this action. GEO operates Adelanto under its own contractual, accreditation, and internal-policy obligations; it has its own supervisory hierarchy; and its day-to-day decisions about staffing, medical workflows, and facility conditions are "unfettered choices made by [an] independent actor[] not before the court[]" and "whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562; *accord Murthy*, 603 U.S. at 57-58. The ICE-GEO contract itself confirms GEO's role here: The Facility Administrator—the Warden of GEO—has "the ultimate responsibility for managing and operating the contracted detention facility," and GEO must "furnish all personnel, management, equipment, supplies, training, certification, accreditation, and services necessary for performance of all aspects of the contract." ECF 54-1, Ex. 6 (Performance Work Statement or PWS) at "63 of 226," "69 of 226."

Next, as to ***redressability***: Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504

5

U.S. at 561; *Murthy*, 603 U.S. at 57 ("[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." (cleaned up)). GEO—not ICE—owns and operates Adelanto and controls conditions day-to-day. An injunction against ICE would not, by its own force, change conditions at the facility. Any improvement in conditions would depend on GEO's "unfettered choices," *Lujan*, 504 U.S. at 562, or on ICE's separate exercise of contractual or enforcement discretion—the very "response of the regulated (or regulable) third party" that *Lujan* identifies as fatal to standing, *id.*

The foregoing redressability defects are independently confirmed by 8 U.S.C. § 1252(f)(1), which strips lower courts of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221-1232, "other than with respect to the application of such provisions to an individual alien . . . ." The Supreme Court has held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" those provisions. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Indeed, Section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1232." *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 481 (1999)). Detention at Adelanto operates under 8 U.S.C. §§ 1225, 1226, and/or 1231—squarely inside the statute's prohibited range. Because Plaintiffs sue on behalf of a putative class and seek sweeping, structural relief untethered to any specific detainee's circumstances, the "individual alien" carve-out is unavailable here.

Put simply, Section 1252(f)(1) independently forecloses redressability. Section 1252(f)'s remedial bar is not limited to the enumerated provisions "as *properly* interpreted." *Id.* at 552-54. That is, even if this Court ultimately finds that Defendants' invocation of, for example, §§ 1225, 1226, and/or 1231 to detain Individual Plaintiffs and potential class members is erroneous, § 1252(f)(1) still bars the Court from enjoining Defendants' operation of these provisions on a classwide basis. *Accord Al Otro Lado v.*

*Exec. Off. for Immigr. Rev.*, 120 F.4th 606, 627 (9th Cir. 2024) (noting that "an injunction is barred even if a court determines that the Government's 'operation' of a covered provision is unlawful or incorrect" (citing *Aleman Gonzalez*, 596 U.S. at 552-54)).

With respect to **_ripeness_**: "Second, the case must be ripe—not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. at 131. Plaintiffs have not demonstrated with evidence that any named class member faces concrete, imminent harm traceable to federal Defendants. *See, e.g.,* Compl. ¶¶ 59-61 (alleging past seizure episodes handled by facility staff, not federal Defendants); *id.* ¶ 53 (alleging illness in December 2025 attributed to facility-level failures); *id.* ¶ 94 (alleging interaction with facility nurse, not federal Defendants). This case "is riddled with contingencies and speculation" as to any asserted risk of future injury by Defendants. *Trump v. New York*, 592 U.S. at 131.

**B.      Plaintiffs' Proposed Classes Fail to Meet Rule 23(a)'s Prerequisites**

Precedent generally prohibits plaintiffs from maintaining a class action when an important element of liability depends on facts that vary among individual class members. Indeed, the Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982). That standard cannot be met where, as here, "there is a wide gap between . . . an individual's claim . . . and . . . the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Id.* at 157; *cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." (cleaned up)).

### 1.    Plaintiffs Cannot Show Numerosity

Plaintiffs assert that the Adelanto Class has "over 1,800" members, Motion at 1, 10, purportedly relying on the total population of the detained individuals at Adelanto (including its Desert View Annex). But Plaintiffs make no showing of which individuals in that population are actually exposed to specific alleged harms, and if so, how many of them. As to the Disability Subclass, Plaintiffs fare no better, speculating "over fifty . . . members" at one point of their brief, *id.* at 1, then narrowing it down to "well over forty people" at another, "assuming normal prevalence of disabilities within the Adelanto population," *id.* at 10. That shows that Plaintiffs' numerosity showing is built on speculation, not evidence. In fact, they merely allege a number as to one class and then extrapolate from a general study about "chronic conditions," relying upon a COVID-19 study, as to the other. *Id.* at 10 n.10. For the latter, "[c]hronic conditions," are patently not synonymous with "disabilities," much less "disabilities" with a determinate relation to specific conditions identified at the Adelanto facility that Plaintiffs have met their burden to establish are deficient in specific shared respects relative to the requirements of the Rehabilitation Act. Plaintiffs do not bridge the gap. *See Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999) ("A higher level of proof than mere common sense impression or extrapolation from cursory allegations is required.").

In any event, Adelanto's detainee population is inherently fluid. Detainees arrive and depart regularly, many being released due to habeas relief or being removed outside the United States due to "total and efficient enforcement" of the immigration laws under Executive Order 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). That fluidity does not establish numerosity—it underscores the unmanageability and lack of ascertainability that independently doom certification. *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 661 (N.D. Cal. 1976) ("[P]laintiffs must show some evidence of or reasonably estimate the number of class members. Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1)."). Plaintiffs offer no evidence that the entire population at Adelanto equates to the number of individuals actually affected by any challenged

8

condition on account of GEO—let alone specific action by the federal government. Without evidence, numerosity fails; with inflated generic numbers, the amorphous class raises serious class-definition overbreadth and manageability problems.

2.      Plaintiffs Cannot Show Commonality

Plaintiffs assert that three claims present common questions suitable for classwide resolution. Motion at 11-16.[2] But those purported "common questions" are not common contentions at all—they are mere restatements of the elements of each claim and indeed exactly "the raising of common questions . . . in droves" that is immaterial to the inquiry. *Wal-Mart*, 564 U.S. at 350. Asking "whether conditions are punitive" for 1,800 detainees with different housing assignments, different medical histories, and different experiences is not a question that can be ***answered*** "in one stroke." *Id*. Plaintiffs never identify a specific uniform policy or practice—attributable to the federal government—that constitutes the "common contention" capable of classwide resolution; they simply assert that "[e]veryone at Adelanto is subject to the same policies, practices, and inhumane conditions," Motion at 11, without establishing what those policies are or how they uniformly affect all class members. That "the facility is bad and punitive" formulation is "too general to allow for effective . . . review." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 842 (5th Cir. 2012); *see also Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497-98 (7th Cir. 2012) ("The plaintiffs have identified no common factual or legal question that satisfies the Rule 23(a)(2) standard, and it is their burden to do so."). As one court aptly summarized, relying on *Wal-Mart*:

> [A]s the Supreme Court noted in *Wal-Mart*, any competently
> crafted class complaint literally raises common questions. What

---

[2] Plaintiffs' reliance on *Roman*, 2020 WL 3869729, at *2 underscores the deficiency of their sweeping and overbroad class here. *Roman* was a COVID-19 emergency case in which the common question—whether pandemic-era conditions created a facility-wide risk of viral transmission—was uniform across the class. *Roman*, 977 F.3d 935, 944 (9th Cir. 2020) (affirming provisional class certification where "[t]he alleged due process violations exposed *all* Adelanto detainees to an unnecessary risk of harm" (emphasis added)). That has nothing to do with the individualized claims asserted here, each of which requires detainee-specific proof.

9

matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class may impede the generation of common answers.

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (cleaned up). Here, Plaintiffs do not—indeed, cannot—"affirmatively demonstrate," *Wal-Mart*, 564 U.S. at 350, "that the entire class was subject to the same allegedly [unlawful] practice," *Wang*, 737 F.3d at 543. The enormously broad class definition for the putative class alone compounds that problem. The Adelanto Class, for example, encompasses "[a]ll persons who are now, or in the future will be," detained at Adelanto. Motion at 1. That definition requires no showing whatsoever that the entire class was subject to the same allegedly unlawful practice of which Individual Plaintiffs complain. A detainee held for twenty-four hours with no medical needs, no disability, and no complaints about food, water, or housing is defined as a class member seeking injunctive relief for inadequate medical care that he never needed and punitive conditions that he never experienced. That is precisely the scenario *TransUnion* forbids. 594 U.S. at 431. The definition is also untethered to any temporal limitation: It has no start date, no end date, and sweeps in future detainees who have not yet arrived at the facility and may never experience any of the alleged conditions.

*Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), further underscores the deficiency. There, retired pension-plan participants brought a putative class action alleging fiduciary mismanagement, but the Court held they had "no concrete stake in th[e] lawsuit" because win or lose, they "would still receive the exact same monthly benefits that they are already slated to receive, not a penny less." *Id.* at 542. The proposed class definitions here produce the same structural defect on a far larger scale. The Adelanto Class sweeps in every person "who is now, or in the future will be," detained at the facility—even as to those who have no medical condition, disability, or complaint about the conditions of confinement. ECF 54-1 ¶ 11 ("Most detainees interviewed during the inspection reported no complaints of

10

abuse or medical issues."); ECF 54-1, Ex. 4 at 6 ("Most detainees reported satisfaction with facility services."). A detainee who arrives tomorrow, spends forty-eight hours at Adelanto without incident, and is then released has "no concrete stake" in an injunction mandating changes to medical staffing, disability accommodations, or grievance procedures he never used. *Thole*, 590 U.S. at 542. The Disability Subclass fares no better: It encompasses anyone who has a qualifying disability, yet many such individuals may never interact with any specific policies or practices that Plaintiffs might challenge; attempting to mass-adjudicate varied Rehabilitation Act claims is incoherent. *Blum v. Yaretsky*, 457 U.S. 991 (1982), where named plaintiffs who had been transferred to *lower* levels of medical care lacked standing to challenge transfers to *higher* levels of care on behalf of the class, confronted a similar mismatch. *Id.* at 1001-02.

A class definition that, by design, encompasses members whose injuries bear no resemblance to the named plaintiffs' own is not a vehicle for classwide adjudication; it is an invitation to "us[e] . . . the judicial process . . . to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Rule 23(a)(2) requires more than shared membership at the same facility. "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (cleaned up). *Parsons* is distinguishable for the same reason *Wal-Mart* controls: The varied injuries Plaintiffs allege here do not stem from any identified actual uniform ICE policy; instead, they stem from GEO's independent, discretionary operational choices—how GEO staffs its medical unit, how GEO's nurses triage sick calls, how GEO assigns housing—which are precisely the kind of decentralized, individualized decisions that *Wal-Mart* held cannot generate "common *answers* apt to drive the resolution of the litigation." 564 U.S. at 350.[3]

_____

[3] *Parsons* involved claims against the Arizona Department of Corrections—the jailer, which both set the policies and operated the prisons. Here, ICE contracts with GEO, but GEO as the "jailer" operates the facility. The contract confirms this structural divide. ECF 54-1, Ex. 6 (Section C PWS) at 12-13. The PWS defines GEO's "Facility Administrator" as "[t]he official . . . who has the ultimate responsibility for managing and operating the contracted detention facility," *id.* at 7, and designates all "Detention
*(footnote cont'd on next page)*

*Wal-Mart*, the preeminent case on this subject, reversed certification of a class of female employees who challenged sex discrimination across Wal-Mart's thousands of stores. There, the core defect was that Wal-Mart's practice was to give local supervisors discretion over employment matters, which the Court held was "just the opposite of a uniform employment practice that would provide the commonality needed." *Id.* at 355. The same structural defect infects Plaintiffs' claims here.[4] PBNDS functions like Wal-Mart's corporate policies: It sets standards that the facility must meet, but GEO's facility-level employees exercise independent discretion in deciding *how* to meet those standards on a day-to-day basis. Just as *Wal-Mart*'s individual store managers decided whom to promote and what to pay, GEO's detention officers, nurses, and facility administrators decide the custody classification of each detainee, how to triage each medical complaint, and how to respond to each grievance. Merely showing that PBNDS exists does not establish that GEO implements it uniformly—or that any shortfall in implementation is therefore attributable to a "common" ICE policy (which is not identified, much less proven) rather than to the independent judgment of GEO's on-site personnel. *Wal-Mart*, 564 U.S. at 356 ("Respondents have not identified a common mode of exercising discretion that pervades the entire company . . . ."). The "glue" holding together 1.5 million *Wal-Mart* employees' claims was missing there; so too here there is no glue that could bind the disparate claims of Adelanto detainees into a single common question.

*Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024), underscores that point. There, protest participants brought a Rule 23(b)(2) class action accusing city police officers of constitutional violations relative to suppressing their

---

Officers" as "Contractor's uniformed staff members responsible for the security, care, transportation, and supervision of detainees during all phases of activity," *id.* at 5-6; ECF 54-1, Ex. 3 at "Page 32 of 226"; *accord* ECF 54-1, Ex. 6 (Section C PWS) at 9 (same).

[4] To be sure, here the structural defect applies with even greater force. In *Wal-Mart*, the putative class at least shared a single, identifiable form of alleged discrimination: sex. Here, by contrast, Plaintiffs' complaints do not even share a common subject matter— they range from medical care to food quality to water conditions to housing assignments to disability accommodations—yet Plaintiffs ask this Court to treat them all as a single "common question" amenable to classwide resolution.

12

protests; the Ninth Circuit vacated certification of the injunctive relief class, holding that the district court "did not identify questions common to the class" before certifying under Rule 23(b)(2). *Id.* at 1265-66. In so doing, the court there rejected rulings from other district courts that had certified protest classes, reasoning that "those classes involved single protests where all class members brought identical claims." *Id.* at 1265. *Ronduen v. GEO Grp., Inc.*, No. 23-0481, 2025 WL 3050059, at *8-10 (C.D. Cal. Sept. 26, 2025), is also on point. There, the court denied class certification at Adelanto, holding that even where GEO applied a uniform facility-wide policy of spraying a chemical during the COVID-19 pandemic, "variations in exposure and, resultingly, whether each individual was actually injured, are essential components of their claims" that "preclude[d] commonality." *Id.* at *7. So too here: Each detainee's medical condition, housing assignment, treatment history, and interaction with facility staff differ, defeating any claim that a single common answer will "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350; *see also Tincher v. Noem*, 164 F.4th 1097, 1098-99 (8th Cir. 2026) (staying preliminary injunction for putative class where claims involved "different conduct, by different officers, at different times, in different places, in response to different behavior").

A class definition that requires individualized fact-finding at the threshold of membership cannot generate the "common answers apt to drive the resolution of the litigation," *Wal-Mart*, 564 U.S. at 350, that Rule 23(a)(2) demands.

### 3.    Plaintiffs Cannot Show Typicality

Plaintiffs argue that typicality is satisfied because "all four Individual Plaintiffs are exposed to and have already suffered 'a substantial risk of serious harm by the challenged policies and practices,' which apply facility-wide to the entire Adelanto Class." Motion at 16-17. They contend that the Individual Plaintiffs "are housed in the same moldy and dirty conditions, served the same unsafe food and water, and subjected to the same number of disruptive daily counts as all class members." *Id.* at 17.

Typicality requires that the claims of the named plaintiffs be "reasonably coextensive with those of absent class members." *Just Film, Inc. v. Buono*, 847 F.3d 1108,

13

1116 (9th Cir. 2017). Plaintiffs fail that test; indeed, they even fail it with each other, setting aside the 1,800 other detained individuals. The Individual Plaintiffs' circumstances diverge dramatically from each other and from those of the putative class. L.T. has right-side paralysis; Mesrobian has epilepsy; Salazar-Garza alleges a finger amputation and wound care failure; J.M. alleges cardiac arrhythmia. Motion at 7-8. Each has a unique medical condition, unique treatment history, and unique interaction with facility staff. Their claims are patently not "typical" of one another, let alone of the 1,800-person class. The record confirms these divergences: L.T.'s complaints center on shower accessibility, untimely medication, and lower-bunk assignments, ECF 54-1 ¶¶ 20-28; Mesrobian refused seizure medication against medical advice, *id.* ¶ 34; Salazar-Garza was placed in segregation for "disruptive behavior," *id.* ¶ 37; and J.M.'s arrhythmia complaints involve an entirely different medical specialty and treatment protocol, *id.* ¶ 30.

The record further refutes alleged typicality. Mesrobian's seizures resulted from his own "non-compliance with taking his prescribed seizure medication," not from any facility deficiency; GEO physicians provided "medical consultations and education specific to his non-compliance." ECF 54-1 ¶ 34. And Mesrobian's only two grievances concerned WiFi connectivity and access to the large yard—both since resolved—not medical care or conditions of confinement. ECF 54-1 ¶ 35. Salazar-Garza's administrative segregation followed an investigation for disruptive behavior. ECF 54-1 ¶ 37. Indeed, J.M.'s own bond hearing characterized his criminal history as "severe" and "extensive" and "reflective of disregard for the safety of others," ECF 54-1 ¶ 29; and another court in this District denied Mesrobian's motion for a preliminary injunction, finding he "fails to discuss, or even acknowledge [his] lengthy criminal history" and "has failed to demonstrate why the appropriate injunctive relief for the lack of proper medical care requires his release from ICE detention." ECF 54-1 ¶ 33 n.4. It would be difficult, if affirmatively assigned the task, to formulate less typical grievances.

The Supreme Court has warned that "there is a wide gap between" an individual's claim and "the existence of a class of persons who have suffered the same injury." *Falcon*,

14

457 U.S. at 157. There, the Supreme Court reversed class certification where a single employee's promotion-discrimination claim was used to represent a class alleging hiring discrimination—different factual predicates, different causal chains, and no basis for treating one plaintiff's experience as representative of the whole. *Id.* at 157-61. That is the case here, where the Individual Plaintiffs' injuries trace to GEO's individualized operational decisions, not to any uniform ICE policy, and each Plaintiff's claim will require proof of what GEO did or failed to do. Plaintiffs cannot bridge the "wide gap" between their individual grievances against GEO and a classwide challenge to federal Defendants. Indeed, in *Ronduen*, the court denied typicality at Adelanto itself, finding that named plaintiffs' pre-existing medical conditions overlapped with the alleged injuries, rendering their claims atypical of the class. 2025 WL 3050059, at *7. Where, as here, each named plaintiff's claim turns on unique medical conditions, unique staff interactions, and unique disciplinary histories, resolving even the named plaintiffs' claims would require the kind of individualized mini-trials that are incompatible with class treatment. *See Wal-Mart*, 564 U.S. at 349 n.5 (commonality and typicality "tend to merge" because "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected"); *cf. In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 627 (D.C. Cir. 2019) (class treatment inappropriate where individual claims required "at least 2,037 individual determinations of injury and causation").

### 4.    Plaintiffs Cannot Show Adequacy of Representation

Plaintiffs assert that "neither the Individual Plaintiffs nor their counsel have conflicts of interest with the Class or Subclass" and that the Individual Plaintiffs "have stepped forward in hopes of improving conditions for all those currently detained at Adelanto," despite "fear and serious risk of retaliation." Motion at 17-19. They cite their counsel's experience in class action and immigration litigation. *Id.* at 18-19.

But adequacy requires more than experienced counsel. Individual Plaintiffs' claims for prospective equitable relief are questionable. Their claims as to future injury

15

undergirding their request for equitable relief are unripe and at best speculative. *See E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 404-05 (1977). Class representatives must personally have standing to seek the relief requested; they cannot rely on the claims of absent members to bootstrap their own standing. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). The Individual Plaintiffs' declarations focus exclusively on their personal circumstances and grievances—they do not identify who the proposed classes include, how their respective circumstances compare to those of absent members, or how the requested relief would affect individuals in different procedural postures. *See, e.g.,* Motion at 17-18 (relying on Individual Plaintiffs' declarations).

There is no indication that the Individual Plaintiffs reviewed the complaint, understood the legal theories asserted, or exercised any independent judgment over the litigation strategy. That undercuts adequacy. *See AmChem*, 521 U.S. at 626-28. Critically, three of the four Individual Plaintiffs never filed a single complaint or grievance with the facility regarding the conditions they now challenge in this action, ECF 54-1 ¶ 18, and the Plaintiff who did file grievances did so for an unrelated issue, Wi-Fi performance—raising serious questions about whether they will fairly and adequately protect class interests when they did not even attempt to vindicate their own rights through available administrative channels. Furthermore, there has been no disclosure of the extent to which the Plaintiffs are seeking significant monetary compensation in this action by maintaining EAJA claims against the United States, *cf.* Compl. at 62 (requesting EAJA fees), nor any disclosure of how they may have agreed to divide up the potential recovery of such sought-after fee awards with their proposed class counsel. Such monetary interests may motivate Plaintiffs to seek remedies that do not apply to them.

**C.    Plaintiffs' Proposed Classes Fail to Satisfy Rule 23(b)(1)-(2)**

Plaintiffs do not take their evidentiary burden seriously: They regurgitate legal principles, but identify no substantiating evidence. *Cf.* Motion at 19-21. That on its face is insufficient. *Wal-Mart*, 564 U.S. at 350-51 (holding that certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each

16

requirement of the rules has been met); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . ."). And if Plaintiffs try to cure that infirmity through their Reply brief, that would plainly be improper. C.D. Cal. L.R. 7-5 (requiring that the "Moving Papers"—not the Reply brief—must include "[t]he *evidence* upon which the moving party will rely in support of the motion" (emphasis added)). In any event, the argument has no merit.

### 1.    Plaintiffs Fail to Satisfy Rule 23(b)(2)

Rule 23(b)(2) permits certification only where "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Id.* Plaintiffs argue that "[t]his case is the exact type of case Rule 23(b)(2) 'is meant to capture,'" because "Defendants have acted or refused to act on grounds that apply generally to the class." Motion at 19-20 (quoting *Wal-Mart*, 564 U.S. at 361). That argument fails for multiple reasons.

***First***, the Court should be hesitant to resolve Plaintiffs' due process claims via class-wide relief. The Supreme Court has admonished courts to consider "whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve . . . Due Process Clause claims" because "due process is flexible" and it "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314. Because Plaintiffs' proposed classes are highly varied and their due process claims are inherently fact-specific, the grievances identified here demand individualized adjudication—not a single, class-wide judgment. They seek relief across legally distinct claims—each requiring different proof and different remedies for different class members. *Ronduen*, 2025 WL 3050059, at *8 (finding in this situation that "Plaintiffs have failed to satisfy commonality, predominance, and typicality"). The record further shows that existing mechanisms address operational concerns: The 2025 ODO inspection found compliance as to 26 of 29 standards; GEO resolved identified deficiencies through internal processes,

ECF 54-1 ¶¶ 9-10; and the facility is subject to ongoing unannounced inspections, *id.* ¶ 12—a single classwide injunction is neither necessary nor appropriate.

That deficiency is fatal under Rule 23(b)(2) no less than under (a): where important elements of liability depend on facts that vary among individual class members, "a single injunction or declaratory judgment" cannot "provide relief to each member of the class," because the court would first have to conduct individualized inquiries to determine which members were actually harmed, by which conduct, and whether the defendant—ICE or GEO—bore responsibility. *Wal-Mart*, 564 U.S. at 360. The Supreme Court has squarely held that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* That is precisely the situation here: a detainee with epilepsy needs different relief than one with cardiac arrhythmia, who in turn needs different relief than one alleging shower inaccessibility. Resolving those claims would require the kind of member-by-member adjudication that courts have consistently refused to countenance. *See Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201 (9th Cir. 2024) (holding that "neither an injunction forcing specific performance, nor the district court's declaration constitute 'indivisible' relief that 'benefits all its members at once'" where causation required individualized inquiry (quoting *Wal-Mart*, 564 U.S. at 362)); *cf. In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d at 624-25, 627 (affirming denial of class certification where plaintiffs had "proposed no further way" to resolve individualized claims "short of full-blown, individual trials"). The record underscores this heterogeneity: The facility is not overcrowded (1,521 of 1,940 beds occupied at main facility, 478 of 750 at Desert View), ECF 54-1 ¶ 68; most detainees reported satisfaction with services, *id.* ¶ 11.

*Second*, § 1252(f)(1) bars classwide injunctive relief on detention-related claims, as discussed above. That statutory bar is not merely a merits defense—it is a jurisdictional limit that forecloses the precise remedy a 23(b)(2) class would seek. The Supreme Court held in *Aleman Gonzalez* that Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to

18

enforce, implement, or otherwise carry out" the covered statutory provisions. 596 U.S. at 550. Because such orders interfere with the Government's efforts to operate Section 1231(a)(6) in its chosen manner, Section 1252(f)(1) forbids them. *Id.*

***Third***, *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), precludes class certification as a vehicle for the broad-based relief Plaintiffs now request—which effectively seeks to impose a general "Plaintiff preferred" receivership under judicial directive and agents, taking control over the facility in the government's stead. When a court concludes that the Executive Branch has acted unlawfully, the answer is not for the court to exceed its power too. The Supreme Court has explicitly cautioned against that:

> [D]istrict courts should not view today's decision as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23. Otherwise, the universal injunction will return from the grave under the guise of "nationwide class relief," and [the] decision will be of little more than minor academic interest.

*Id*. at 868 (Alito, J., concurring). The governing principle is that a court granting equitable relief "may administer complete relief *between the parties*." *Id.* at 851 (quotation omitted). "Under this principle, the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 852. *CASA*'s "no broader than necessary" principle bears directly on the class definitions proposed here. Certifying classes as broad as those proposed here would require an injunction governing virtually every operational aspect of the facility—precisely the kind of sweeping institutional overhaul *CASA* forbids. Plaintiffs contend that their class definitions are ascertainable because "[t]he Adelanto Class includes members in the legal custody of ICE who are or will be detained at Adelanto" and that "it is 'administratively feasible' to ascertain whether an individual is a person detained at Adelanto with a qualifying disability under the Rehabilitation Act." Motion at 21-22. But the ease of identifying *where* someone is detained is not the same as determining *whether* that person shares a common injury, a

19

common legal theory, and a common entitlement to a single, indivisible remedy.

Because Rule 23 imposes a burden on Plaintiffs to "affirmatively demonstrate . . . compliance with the Rule," *Wal-Mart*, 564 U.S. at 350, their abbreviated—indeed, conclusory—analysis of unsubstantiated assertions fails to satisfy Rule 23(b)(2).

### 2.    Plaintiffs Fail to Satisfy Rule 23(b)(1)

Plaintiffs alternatively seek certification under Rule 23(b)(1), arguing that individual suits would "create a risk of . . . inconsistent or varying adjudications" that would "establish incompatible standards of conduct" for Defendants. Motion at 20-21. The Ninth Circuit has explained that "incompatible standards of conduct" under Rule 23(b)(1)(A) means "incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions." *McDonnell Douglas Corp. v. U.S. District Court*, 523 F.2d 1083, 1086 (9th Cir. 1975). Plaintiffs do not explain how separate lawsuits challenging individualized conditions would create conflicting obligations for Defendants. Indeed, such issues are routinely resolved in prison contexts, without such a problem.

That argument fails for the same reasons Rule 23(b)(2) certification fails. Rule 23(b)(1)(A)'s "incompatible standards of conduct" rationale presupposes that the challenged conduct is truly uniform—that individual adjudications would yield conflicting directives about a single policy. But Plaintiffs' claims do not challenge a single uniform policy; they challenge a constellation of individualized medical decisions, housing assignments, and accommodation requests that will inevitably produce different outcomes for different detainees regardless of whether they are adjudicated individually or collectively. There is no risk of "incompatible standards" when the standards themselves call for individualized application. As the Supreme Court has explained, class treatment is inappropriate where the challenged conduct reflects individualized discretionary choices rather than a single common policy. *Wal-Mart*, 564 U.S. at 350-52 (rejecting class certification where millions of individual employment decisions could not be attributed to a single common policy); *cf. In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d at 627 (observing that no court has ever "allow[ed], under Rule 23, a trial in which

thousands of class members testify").

Plaintiffs' reliance on *Gray v. County of Riverside*, 2014 WL 5304915, at \*38 (C.D. Cal. 2014), is unavailing. *Gray*, unlike here, involved a county jail *directly operated by the County of Riverside*, where the County itself employed the medical staff, set staffing levels, and controlled day-to-day operations. The court found Rule 23(b)(1) certification appropriate because the County's own systemic understaffing—only two of five physician positions and 65 of 101 health-services positions filled—constituted a single, uniform policy producing facility-wide harm amenable to a single directive, *i.e.*, the issue was literally "understaffing" directly controlled by the defendant employer. The risk of "incompatible standards" that animated *Gray* is absent where, as here, the challenged conduct traces to a private contractor's individualized operational choices rather than to any uniform government policy. Moreover, § 1252(f)(1) and *CASA* independently foreclose the classwide injunctive relief that 23(b)(1) certification would be designed to facilitate. Certification under Rule 23(b)(1) is thus equally unavailable.

## V. CONCLUSION

Defendants respectfully request that the Court deny the motion.

Respectfully submitted,

Dated: April 24, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Special Assistant United States Attorney

Attorneys for Defendants

21

**<u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2</u>**

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains 6,999 words, which complies with the word limit of Local Rule 11-6.1.

Dated: April 24, 2026                    */s/ Pushkal Mishra*
                                                        PUSHKAL MISHRA