**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

**HONORABLE SUNSHINE S. SYKES, U.S. DISTRICT JUDGE**

| | |
|---|---|
| **L.T., et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. CV 26-322 SSS (SPx)** |
| **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,** | |
| **Defendants.** | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**
**PRELIMINARY INJUNCTION HEARING**
**TUESDAY, APRIL 28, 2026**
**10:02 AM**
**RIVERSIDE, CALIFORNIA**

**MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET
RIVERSIDE, CALIFORNIA 92501
MYRAPONCECSR@GMAIL.COM

APPEARANCES OF COUNSEL:

**FOR THE PLAINTIFFS:**

PUBLIC COUNSEL
BY: REBECCA S. BROWN
BY: VANESSA YOUNG
Attorneys at Law
610 South Ardmore Avenue
Los Angeles, California 90005
(213) 385-2977

**FOR THE DEFENDANTS:**

BILAL A. ESSAYLI
Acting United States Attorney
BY: PUSHKAL MISHRA
Assistant United States Attorney
300 North Los Angeles Street, Suite 7516
Los Angeles, California 90012
(714) 338-3503

TUESDAY, APRIL 28, 2026; 10:02 AM

RIVERSIDE, CALIFORNIA

-oOo-

THE COURTROOM DEPUTY: Calling Case Number ED CV 26-322, L.T., et al., versus U.S. Immigration and Customs Enforcement, et al.

10:02AM

If I can please have the parties state their name for the record, starting with plaintiffs' counsel.

MS. BROWN: Good morning, Your Honor. Rebecca Brown for the plaintiffs for Public Counsel.

10:02AM

THE COURT: Good morning.

MS. YOUNG: Good morning, Your Honor. Vanessa Young, Public Counsel for the plaintiffs.

THE COURT: Good morning.

10:03AM

MR. MISHRA: Good morning, Your Honor. Pushkal Mishra for the defendants.

THE COURT: Okay. Good morning.

So we're here today for a hearing in regards to the preliminary injunction. You know, just as far as background, there are currently three pending motions before the Court. There's this one, the motion for preliminary injunction. However, there are two other motions currently pending -- a motion to dismiss that was filed by the defendants on April 20th, and then there is also a motion for class certification that's been filed by the plaintiffs on April 9th.

10:03AM

10:03AM

10:03AM 10:04AM 10:04AM 10:04AM 10:05AM

So -- but we're here today for the motion for preliminary injunction.

And in regards to the motion itself, I just wanted to go over several concerns that I have with the motion and give the opportunity for the plaintiffs to respond, if they so choose to, to those concerns, given that the procedural posture is somewhat a little different from the time that the plaintiffs filed it in that the other two motions hadn't yet been filed.

So the ultimate concern that this Court has is in regards to whether or not this motion itself may be premature, given the concerns that the defendants raised in opposition to the motion.

I think we all can agree that the allegations of the Complaint are certainly concerning if they are, in fact, true. The conditions in which these noncitizens are being held in the Adelanto detention facility as alleged in the petition are certainly concerning. And I think that each of us would never want to be in that position of having to be held under the conditions that are alleged in the Complaint.

The concern that this Court has beyond that, however, is the proper procedural posture to bring this preliminary injunction motion to this Court for it to be decided. And defendants do raise concerns in their opposition to the preliminary injunction. And I'm just going to go

through a few of those which, of course, is just a few and it's not exhaustive.

First, defendants identified some potential issues with the identity of the named defendants. Maybe that any such relief, if it were to be ordered by this Court, may not compel corrective conduct to the appropriate parties. The warden of Adelanto is not a named defendant, nor is The GEO Group.

If this Court were to order some type of relief and even looking at the proposed order, further preliminary injunction, it's -- it's I think defendant raises some good points as far as how that order, even if it was ultimately ordered, would be enforced, considering that GEO Group is essentially the group managing the day-to-day operations of the Adelanto facility through the contract that it has with the Federal Government.

So if this Court were to order, you know, X number of nurses be available, then ICE would then have to tell GEO Group the Court ordered 12 nurses. And if GEO Group says, well, we're only going to give nine, how does the Court then enforce that against GEO Group if they're not a party to the proceeding other than telling ICE, the Government, to do so? And if GEO Group just says we can't, we don't have enough nurses to do so, then what happens then?

So I think the Government does raise some legitimate concerns that GEO Group and the warden of Adelanto are not

named defendants.

Second, the defendants raised further challenges to organizational standing that implicates this Court's subject matter jurisdiction.

10:07AM One observation that the Court wants to make is that the Complaint does not identity any of the named plaintiffs as -- do you say CHIRLA, CHIRLA members? -- as CHIRLA members. So that's not alleged in the Complaint, and I think that is -- would be important as to organizational standing as it's challenged by the defendants in opposition. 10:07AM

Third, the factual circumstances relating to ripeness and the fairly traceable element of Article III standing give the Court some pause as to which plaintiffs present a live controversy for which the defendants are responsible. 10:07AM

I understand that there is a class certification motion that is currently -- currently been filed. And so that goes back to my initial comment in regards to, until some of these concerns that defendants have raised and this Court is now raising are addressed, either through perhaps an Amended 10:08AM Complaint or through the class certification motion itself, this may, in fact, be premature.

Finally, the requested relief appears incongruent to the factual basis of the Complaint and the procedural posture. And this just goes back to what I've been saying. Based upon a 10:08AM

motion for class certification, the defendants' motion to dismiss and the Court's initial review of these filings and now the motion to dismiss and the motion for class certification only further supports that this preliminary injunction may be premature.

10:08AM

And so I'd like to give plaintiffs the opportunity to respond. My current tentative would be to deny the motion without prejudice and to -- or to allow plaintiffs to withdraw the motion and refile it upon addressing some of the concerns that I raised here today. That may be the most efficient way to proceed.

10:09AM

I understand plaintiffs' urgency and -- in getting this -- some of these issues addressed, considering the allegations of the Complaint. However, it needs to be, of course, in a proper procedural posture in regards to addressing all of these concerns that not only defendants have raised but the Court has now raised as well before that could be in a proper place for this Court to make that type of decision.

10:09AM

So if you'd like to be heard on behalf of plaintiffs, I'd give you that opportunity. But that's -- in looking at the current posture of the case, looking at the Complaint, looking at some of the issues raised by defendants, I think it may be best just to either, one, like I said, proceed. The Court's tentative would be to deny without prejudice or to allow plaintiffs the opportunity to withdraw

10:09AM

10:10AM

and then correct some of those deficiencies that were raised and then refile if they so desire at a later time.

But, of course, I'd give you the opportunity to change my mind and provide any additional argument that you'd like to provide. But I have, you know, spent quite some time on this and reviewed it at length.

So who's going to be speaking on behalf of plaintiffs today?

MS. YOUNG: I will, Your Honor.

THE COURT: Okay. Go ahead, Ms. Young.

MS. YOUNG: Thank you. Thank you for raising all those concerns. We really appreciate it.

I would just say I think as for the -- the general concerns, I think a lot of them are addressed by the fact that we do have a pending motion for class certification and we would urge the Court to preliminarily certify the class in conjunction with the motion for preliminary injunction. But I can start with addressing the Court's concerns as to the correct defendant.

So we do think that the Government is the correct defendant here because, as the Court is aware, the Supreme Court has been clear that the Government has a constitutional duty to care for the people in its custody and the people that it chooses to detain, regardless of whether it employs a private company. And the Court said that in *West*

*versus Atkins*.

And I would also point the Court to the Ninth Circuit's decision --

THE COURT: Well, it's -- and I'd like to speak more specifically as -- I don't think I'm saying that the Government is not a proper defendant. I'm saying that The GEO Group as well as the warden of Adelanto may need to be joined or brought in as defendants as well. So I think that's a little different. So if you could address that.

MS. YOUNG: Absolutely, Your Honor. I would point the Court to *Roman versus Wolf* where GEO Group is not a defendant and the Ninth Circuit affirmed their conditions injunction against the Government at Adelanto.

And there, in Footnote 1 -- so the warden was named, but the warden was considered to be part of the Government. And that's addressed in Footnote 1 of that decision.

So I think it's clear that detained people can sue the Government and that the Ninth Circuit has affirmed injunctions where GEO Group is not a party. And I don't think that they are a necessary party here because we're alleging systemic violations for which the Government is responsible. And I think the fact that The GEO Group could have been named is not fatal to our claims.

THE COURT: Okay.

MS. YOUNG: And if I may add one other case,

Your Honor, *Armstrong versus Schwarzenegger*, which is another Ninth Circuit decision. The Ninth Circuit talks about the fact that a party could have sued another party that was potentially liable for an injury doesn't mean that the Government as a defendant can avoid liability.

10:12AM

THE COURT: Okay. Would you like to respond, Mr. Mishra, just as to that issue?

Because, Ms. Young, were you going to move on to a different issue?

10:13AM

Okay. Go ahead. I'll just give him the opportunity to respond. Go ahead.

MR. MISHRA: Yes, Your Honor, thank you. So at the outset, even if the Government has not argued standing before in *Roman* or *Fraihat* cases, the Supreme Court has been clear

10:13AM

that standing cannot be waived, forfeited, or conceded by the parties. And that's *Steel Company*, the citation is 523 U.S. at 94-95.

The Supreme Court has repeated that more recently in *Arizonians for Official English*. And that's 520 U.S. at 73.

10:13AM

And, again, *Roman* and *Fraihat* came up during an emergency and also involved ICE's national policy related to COVID. So even on the facts, that's distinguishable. But, again, defendants' position is that standing cannot be waived. That's at the outset a jurisdictional issue.

10:14AM

I go to the cases also that plaintiffs have cited in

their reply brief and now rely on. If anything, *West v. Atkins*, *Armstrong*, as well as *DeShaney* stand for the same proposition that -- first of all, I'll say it again, those are merits decisions. That's not a standing -- those are not standing decisions.

But even focusing on the merits aspect, in each case, custody was important. In *West*, for example, the state retained physical custody and operated the prison itself. In *Armstrong*, again, it involved California's direct state-run prison system.

In *DeShaney*, if anything, it helps us even more affirmatively. It says there is an affirmative duty only where the Government has assumed full custodial control and directly provides care. That is not the situation here. But, again, Your Honor, those are all merits considerations.

Right now we're saying between the Government and alleged injury are the independent, discretionary, uncertain, and speculative day-to-day activities of a third party. Without -- they are the proper defendants in the case, not Government, especially because when the conditions of confinement relates to the physical custody, again, the physical custodian has to be the proper defendant.

THE COURT: Are you saying that if -- if they weren't brought in and this Court were to fashion an order ordering the Government to provide, you know, five gallons of

water per day to each person, individual detained, that the Government wouldn't be able to then ensure that that occurred?

MR. MISHRA: Your Honor, that's the tenuous chain of causation here. The Court may order the Government, but then the Government has to order a third party. And that's *Printz v. U.S.*, saying the Government cannot order a third party to do something.

But, again, here, how the remedy would shape up is that ultimately the Government has ordered GEO to do something. And, again, GEO's employees, they -- they would be asserting their own independent day-to-day discretionary decisions to effectuate the remedy ordered by the Court.

So, again, even there, the ideal situation would be where the Court would have to order GEO to effectuate the changes. That could be redressable.

But going to the Government and the Government then essentially regulating GEO -- or ordering GEO to do something on a day-to-day basis, that is not what the Supreme Court has said is tenable as a remedial measure.

THE COURT: Okay. And then, Ms. Young, would you like to respond before you move on to your next argument?

MS. YOUNG: Yeah, if I may. I just want to reiterate that the Ninth Circuit has, again, affirmed the conditions injunction that runs against the Government at Adelanto.

So to the extent that the Government is arguing that it doesn't have control over what is happening there or that it wouldn't be able to effectuate those changes, I don't think that's accurate based on the history.

10:17AM I would just also point the Court to the two more recent District Court decisions in the state in *Ruiz versus ICE* and *Pablo Sequen versus Albarran*. And both of those injunctions run against the Government.

And in *Ruiz versus ICE*, that facility is owned by 10:17AM CoreCivic, a private facility. But the injunction runs against the Government because it's the Government that ultimately sets the policies and has control over the day to day in terms of ordering changes there.

So I think it is perfectly appropriate for the Court 10:17AM to be ordering the Government to make those changes. And I haven't heard the Government say that it doesn't have control over what is happening at Adelanto or that it couldn't make those changes.

THE COURT: Okay. Okay. Go ahead.

10:17AM MS. YOUNG: And if I may, Your Honor, I just want to address the Court's concerns about, you know, the nine nurses, for instance. And I absolutely hear the Court's concerns there. I think that's why our injunction is still providing the Government some leeway in terms of how it meets its 10:18AM constitutional obligations, that we're not asking the Court to

order, you know, a specific number of staff or -- or those sorts of specifics.

That is -- you know, it's up to the Government to comply with its constitutional obligations. And exactly how it does that and its relationship with GEO there is for it to -- to decide.

THE COURT: Okay.

MS. YOUNG: I can turn to address the Court's concerns about organizational standing if there's no other questions there.

THE COURT: No. Go ahead.

MS. YOUNG: Yes. So we're alleging that CHIRLA has both associational and organizational standing. I think that a lot of the Court's concerns here are also cured by the fact that we do have a pending motion for class certification. But, you know, the Government doesn't make any argument as to CHIRLA's associational standing. And we think that there is controlling case law.

In *Vasquez Perdomo versus Noem*, the Ninth Circuit found that CHIRLA had standing under similar circumstances. And, you know, here we've alleged that there are detained members at Adelanto and that all of CHIRLA's members, many of whom are immigrants, face a risk of being detained there. And so --

THE COURT: But you're not -- you didn't allege any

of the named plaintiffs are members.

MS. YOUNG: No, Your Honor.

THE COURT: So -- so the fact that there may be detained members would really only be relevant if the Court were to grant or -- or address the class certification motion.

MS. YOUNG: I don't think so, Your Honor. I think we still satisfy the standard for associational standing, which is the -- you know, a member would have standing just in its own right and that the interests that we're seeking to protect are germane to the organization's purpose and that the lawsuit doesn't require the participation of an individual member.

So CHIRLA is -- is sort of substituting in for that particular detained member. And a detained member doesn't need to be a named plaintiff. It's simply the fact that we've alleged that they are -- that there are detained members there that are members of CHIRLA.

THE COURT: Okay.

MR. MISHRA: Your Honor, may I respond to that?

THE COURT: Yes. Go ahead.

MR. MISHRA: Your Honor, again, they seem to think that standing could be waived. But, again, even if we didn't oppose associational standing, the Court can independently address that.

And to be sure, we still say that none of the named plaintiffs have standing and that we devoted a whole section in

10:20AM

our opposition brief on that.

And as to the organizational standing, the *FDA v. Hippocratic Med* is on point that resource diversion is no longer good law. And it seems like the allegations -- the two declarations that plaintiffs rely on, they admit that this is all about diversion of resources theory. That's been foreclosed by the Supreme Court now.

THE COURT: Would you like to speak to that point, Ms. Young, because that was one of the Court's concerns as well in regards to how the Complaint is framed to address the organizational standing.

10:21AM

MS. YOUNG: Absolutely, Your Honor. I think the case that is squarely on all fours here is *Immigrant Defenders versus Noem*. I think we have nearly identical facts to that case because there was a legal services provider ImmDef which provides services that are quite similar to what CHIRLA does and represents indigent detained people.

10:21AM

And they allege that their core business activities were impaired by the defendants' actions. And I think that's exactly what we have here. We've alleged in the -- both the Salas and the Thompson-Lleras declarations that CHIRLA's core business activity of providing legal services to detained people is being impaired because people are -- are sick and unable to -- to fully participate thoroughly in their defense.

10:21AM

10:21AM

CHIRLA is receiving an immense volume of calls,

hundreds of calls about medical issues. And so it's having to divert those resources into -- into responding to urgent medical needs instead of providing the representation that it -- that it typically does. So its operations are strained and impaired by the defendants' actions here.

10:22AM

And I don't think that *Hippocratic Medicine* foreclosed the issue of having both an impairment of core business activities and diversion of resources based on a frustration of mission. I think *ImmDef versus Noem* clarifies that.

10:22AM

THE COURT: Where do you speak to that in your Complaint? What paragraph does it speak to the core business activities being impaired?

MS. YOUNG: Your Honor, I may have to get back to you on that. I apologize. I'm having some technical difficulties, but I can check back with my team.

10:22AM

THE COURT: Okay.

MR. MISHRA: Your Honor, may I respond to the arguments?

THE COURT: Go ahead.

10:22AM

MR. MISHRA: Two points, Your Honor. The first one is the *Immigrant Defenders* case that they referred to just now. The procedural posture is that the merits decision is still outstanding. The preliminary decision that plaintiffs rely on, that's still talking about the stay -- I think there was a

10:23AM

request for stay until the merits inquiry is decided by the Court. So whatever the Court said about the standing there is still preliminary.

And I think what the dissent says in that decision is quitely revealing. And the dissent points out what the Supreme Court said, that now for anyone to -- any association to use organizational standing, they have to show a more direct relationship much like -- and the example the Supreme Court gives, *FDA v. Hippocratic Med* case, is that -- almost like a manufacturer and retailer relationship.

So there has to be a direct and targeted relationship between the Government and CHIRLA to satisfy the organizational standing here.

THE COURT: Okay. And then if you'd like to address the ripeness issue that the Court had brought up.

MS. YOUNG: Absolutely, Your Honor.

THE COURT: Fairly traceable element. Yes?

MS. YOUNG: And I would just -- just to respond to the -- the Complaint. It's at paragraph 18. But I think the Salas and Thompson-Lleras declarations also supplement that as well.

On ripeness, Your Honor, and traceability, I would just say that ripeness is about whether a dispute is premature. And I think that that's not the case here because plaintiffs are suffering both ongoing and imminent harms. The record is

replete with evidence of ongoing harm.

And I'm happy to go through each named plaintiff and describe what those harms are.

For Mr. Mesrobian, he is epileptic and has seizures twice a month, on average, and he's still not getting his medication consistently. As the declaration -- the second declaration that we filed in support of the reply shows, he just recently suffered a seizure after not receiving his medication. And he had to be hospitalized as a result of that.

10:24AM

10:25AM

And Mr. Salazar Garza, for instance, is also still experiencing pain in his finger as a result of an injury that he suffered. And he has been asking for orthopedic shoes because he had surgery on his foot and he has not received that for over a year.

10:25AM

And L.T., who suffers from serious mobility issues and uses a cane, still has difficulty getting around the facility. He is often left in line for food or to be able to use the microwave to heat up his food. The showers that he's using, he doesn't have consistent access to one with an accessible chair or bench. And when he's taken to a doctor's appointment, for instance, or to the court, he -- they place shackles around his ankles even though he uses a cane. So he's risking a fall every time that that happens. So I think those are -- those are ongoing issues there.

10:25AM

10:25AM

And J.M., who suffers from cardiac arrhythmia, still

has not received the results of his blood work or of the monitoring of his heart for cardiac arrhythmia. So he does not know what the results of those are, and he's not received follow-up care. And he still has ongoing chest pain.

10:26AM So I think that there is still ongoing medical issues that we have documented here with respect to the named plaintiffs and certainly with respect to several of the other witnesses.

But I would also just add that there is a 10:26AM well-established body of proven case law -- and I would point the Court to *Helling versus McKinney* and *Brown versus Plata* in terms of alleging imminent injury because of the dangerous medical system. Everyone there at Adelanto is subject to a substantial risk of harm independent of their ongoing injuries 10:26AM that I just described.

And so our expert concluded that the medical system at Adelanto is broken and that it's not safe to be sick there. And the Supreme Court has said that that's more than enough; when there's a failed medical system, it endangers every person 10:26AM there. And they said that in *Helling* and in *Brown versus Plata*, and the Ninth Circuit has reaffirmed that in *Parsons versus Ryan*.

So I think the Court said that a remedy for unsafe conditions doesn't need to await a tragic event. So even if a 10:27AM particular person isn't having an ongoing medical issue, the --

the fact that they are subject to this system of deficient or practically nonexistent medical care is exposing everyone there to a substantial risk of harm that is sufficiently imminent injury for standing and for injunctive relief.

10:27AM THE COURT: But wouldn't the injunctive relief until -- if and until a class is certified, have to be specific to these named plaintiffs?

MS. YOUNG: I don't think so, Your Honor. I mean, I think the Court can provisionally certify the class today

10:27AM because the motion for class certification is briefed. And we would urge --

THE COURT: Well, there's been no opposition. You're saying certify without due process without the other side being able to argue against it.

10:27AM MS. YOUNG: I see, Your Honor. Yeah, I mean, I think that the opposition has been filed. But I think that -- yeah, if the Court wants to wait for the class cert motion to be heard, I understand that. I would say that the Court could still issue injunctive relief today based on the complete

10:28AM relief principle. And the Court also has -- you know, could also issue a TRO.

In *A.A.R.P. versus Trump*, the Supreme Court reaffirmed that Courts can issue class-wide relief to a putative class before a class certification has occurred. So I

10:28AM think that, given the urgency of this situation, we would ask

the Court to enter a TRO.

And I completely understand the Court's concerns about wanting to -- to also, you know, provisionally certify the class before a PI is entered. But I think the circumstances here are appropriate, at least for a TRO. And then it could be converted to a PI when the Court, you know, preliminarily certifies the class after hearing the Government.

THE COURT: Okay. Would you like to be heard on that specific issue, Mr. Mishra?

10:28AM MR. MISHRA: Yes, Your Honor.

What we just heard is exactly what defendants have said in their briefs. All these actions that Ms. Young pointed to, again, they are at best attributable to GEO. That's not what Government defendants are doing to these named plaintiffs.

10:29AM So even if assuming all of what Ms. Young referred to is happening, again, we don't see any injury on account of the Government defendants doing something affirmatively or imposing something affirmatively on these named plaintiffs.

And the second point is, again, we have cited a case --

THE COURT: I mean, if the Court were to allow that argument really to stand, then GEO Group could just do anything to these individuals and the Government could just kind of put their head in the sand and say it's not us. I mean, I think you -- you would agree that that's not true. GEO Group

couldn't go about, you know, torturing someone and the Government would just say, oh, well, it's not us.

I think the Government, then, would have some sort of responsibility to ensure that these individuals who are being detained by the Government, not by GEO Group because it's the Government that's detaining these individuals and housing them in these detention facilities, are you saying the Government has no responsibility for how these individuals are treated in these facilities?

MR. MISHRA: Your Honor, the U.S. Supreme Court has spoken twice about these at a minimum in *Heckler* as well as more recently in *U.S. v. Texas*. And the authority that supports any challenge there is basically the *Heckler* abdication theory.

The Government has to do -- completely -- absolutely abdicated responsibility, then folks like the named plaintiffs have standing to challenge it. But this is not *Heckler* abdication at all.

In fact, wherever plaintiffs challenge how vigorously the Federal Government supervises a contractor or enforces a contractual provision, that challenge, the Supreme Court has said, strikes at the code of the enforcement discretion. *Heckler* protects and has said the Government has absolute discretion over. And that's *Heckler*, 470 U.S. at 831.

We have not seen plaintiffs allege or argue *Heckler*

abdication at all. But, again, those two cases are on point -- *U.S. v. Texas* and *Heckler*.

Unless that happens, the Government satisfies its responsibilities by creating a standard like PBNDS, contractually requiring GEO to follow it and doing annual -- in fact, random inspections. That's what the Government has been doing.

THE COURT: Okay. Okay. Ms. Young, would you like to respond to anything that he said?

MS. YOUNG: Yeah, I think the Government is correct that we're not alleging *Heckler* abdication. That's about enforcement of a contract, and that's not what our claims are about here. Our claims are based on the Government's constitutional duties.

And I think the Court hit the nail on the head in terms of the implications of the rule that the Government is urging this Court to adopt, you know, if the Government could just avoid its constitutional duties by hiring a private company to do its job that would pose serious constitutional and practical problems. And it's just not what the law says.

There's been -- I couldn't find a single case in the context of immigration detention rejecting -- or accepting the rule that the Government is urging the Court to adopt here. The Courts have never said that detained people can't sue the Government under these circumstances.

THE COURT: Okay.

MR. MISHRA: May I respond, Your Honor?

THE COURT: Go ahead.

MR. MISHRA: Again, when we talk about duty, that's not delegable, sure, that happens. But even the cases -- we can look at the cases that the plaintiffs themselves have cited. And each of them show that the state has a duty which it cannot delegate when the state has the custody.

Again, we're talking about confinement conditions. We look at the jailer. And that's addressed also in our motion to dismiss. For at least this motion, what we can say is that each of those cases talk about duty in the context of a merits inquiry. We don't even get there right now.

THE COURT: Okay. So now that the Government has these allegations at least in this Complaint as to what has been going on allegedly at Adelanto and the Government may have had these -- you know, these checks where they've gone out there unannounced, does the Government -- if this Court weren't to get involved, does the Government take that information and do something with it?

MR. MISHRA: Yes, Your Honor. In fact, our declaration has some letters attached to it. And that shows that even the three areas where Adelanto didn't pass the muster last year in its surprise inspection, September 2025, there were follow-ups after the Government on those three issues.

I think there are letters back and forth on what needs to be remedied. And that's how the Federal Government works with the contractors. It basically enforces wherever there are deficiencies and so too here. And Adelanto has responded and rectified those conditions.

And, again, there's a process to be followed there. Again, this is right up the enforcement discretion that the Government has under the law. But, again, the Government does it in a very structured manner, and that process was followed here as well.

THE COURT: Okay. I was just looking for those letters.

Are those attached to your opposition?

MR. MISHRA: Yes, Your Honor. That would be one of the exhibits to the declaration. And I think that would be right after Exhibit 4, I think, because Exhibit 4 is the surprise inspection of last year.

And I think just following that, there are some letters back and forth as to what was missed in that inspection, what Adelanto did not do and how to rectify what time frame Adelanto has to rectify those conditions.

THE COURT: Okay. Ms. Young, is there anything else you'd like to address?

MS. YOUNG: I think on that point, Your Honor, yeah, it's Exhibit 5. And I think that -- you know, what I'm hearing

10:35AM the Government say is that it does have the ability to change things at Adelanto and it just hasn't. It's chosen not to do that despite the fact that it went in and inspected the facility and, you know, despite the mountain of evidence showing that there's serious issues there, it has chosen not to take corrective action. And so that's why I think an injunction is needed.

10:35AM THE COURT: Okay. And in regards to not including GEO Group or the warden in this case, wouldn't it be more efficient for this Court to be able to directly order the individuals who are running the institution to do something as opposed to ordering the Government who then has to then go to GEO Group? Isn't that a more efficient way for the plaintiffs to receive the ultimate relief that they're seeking as opposed to, you know, the legal arguments that you all have raised? 10:36AM

Perhaps legally, as you argue, GEO Group is not required to be named in the Complaint. But for purposes of efficiency, why wouldn't the plaintiffs want to name GEO Group?

10:36AM MS. YOUNG: Yeah. Thank you for the question, Your Honor. I think the majority of these cases do run against the Government because plaintiffs have found that it's more efficient to just be able to order the Government to make those changes, I think, because of the particular defenses that GEO Group might have to claims against it.

10:36AM But I think if Your Honor would like additional

information about this, we'd be happy to brief it as well.

THE COURT: Okay. Anything further on any of these issues, then, before I take the matter under submission?

On behalf of plaintiffs, Ms. Young?

10:37AM MS. YOUNG: I don't -- I don't think so at this moment, Your Honor. I mean, I think, you know, what Your Honor raised about the incongruent relief was hopefully already addressed with the pending motion for class certification and the possibility of entering a TRO that can be converted to a PI once the class is preliminarily certified.

THE COURT: Okay. Mr. Mishra, anything further?

MR. MISHRA: Your Honor, the defendants submit on the tentative.

THE COURT: Okay.

10:37AM Yes, Ms. Brown?

MS. BROWN: Your Honor, one moment. I'm just hearing something from our team. One moment.

I think we may want to have -- offer, if possible, a hearing on the 29th to hear the motion to dismiss the class cert and any other issues, if you wish us to -- if you do wish us to withdraw and amend.

One moment.

MR. MISHRA: Your Honor, defendants oppose that. We talked about joining the motion to dismiss and the motion for preliminary injunction together. And the Court already decided

that issue. We've been going back and forth on that. There were two meet and confers also as to that.

Right now, basically delaying the motion to dismiss is not helpful because we think that defendants are the wrong defendants. And, also, the allegations are directed at GEO, not at the Government.

So the sooner the Court decides the motion to dismiss, the faster we can resolve this. And especially given the urgency on the allegations alleged in the Complaint, we need to have the right party in here.

THE COURT: Well, I haven't yet reviewed the motion to dismiss. And my concern that I raised here today is not that the Government isn't the right party. It's that perhaps GEO Group needs to be included as an additional party.

So I don't know if the motion to dismiss is arguing that the Government shouldn't be included at all. But I certainly don't think that there's anything before me at least at this point in time, because I haven't read the motion to dismiss, that would cause this Court to believe that the Government should be excluded altogether.

But like I said, I haven't read the motion to dismiss and I haven't looked at what the arguments -- how the arguments have been laid out in regards to that. But --

MR. MISHRA: Good point, Your Honor.

THE COURT: So, Ms. Brown, I didn't quite understand

what you were saying. Could you -- did you get more information?

MS. BROWN: Sorry, Your Honor. Just that -- no, that we would offer to have a hearing May 29th to combine the motion to dismiss and the class cert to be efficient with the Court's time.

THE COURT: Is the motion for class certification currently already scheduled on the 29th? I don't know when it's scheduled. And then the motion to dismiss was just filed on the 20th, so I think that would be setting it pretty short.

So when is the motion to dismiss scheduled for hearing?

MR. MISHRA: Your Honor, we scheduled it for May 22nd, a week before the class certification. Because plaintiffs have also been asking for things to be expedited so we also need to resolve these issues. The sooner, the better.

THE COURT: I see.

Well, typically what the -- what I would do and in these situations is, if I felt that it made sense for them to be heard together, then I would. If there's a need for me to, you know, stack them as far as hearing the motion to dismiss and then perhaps issuing an order on that, which may or may not reflect a decision in the class certification or it may affect it, then I would do that.

But like I said before, I haven't completed my

review of either of these or even started the review of the motion to dismiss. So if, upon my reviewing each of those, I determine that it makes sense to be heard on the same day, then I would.

10:41AM If I determine that -- and stick with my tentative that I believe that, you know, some of these issues need to be fleshed out first, then I would proceed that way as it relates to the motion to dismiss.

So there's a lot of moving parts here. But at the 10:41AM end of the day, this Court does understand the urgency of which plaintiff brings their claims and the allegations that have been made.

So I think the Government, at least Mr. Mishra has indicated he understands that as well and has been willing to 10:41AM work with plaintiffs to get all of these matters to the Court as expeditiously as possible.

So, of course, you all should be aware this isn't my only case as well so I have a lot of other cases going on. So certainly this Court will get to these issues as soon as it 10:42AM can. But long story short, if I think it makes sense to hear both of those hearings on the same day, I'll hear them on the same day. If I need more time, then I may continue it.

But given all of the allegations made and the concerns raised, I'm well aware of that when I'm making my 10:42AM decisions on when to hold these hearings. Okay?

10:42AM

MS. BROWN: Of course, Your Honor. And we defer to the Court. And we just, yeah, appreciate your time. And if everything could -- would be more efficient on the 29th, we -- but we, of course, defer to you.

10:42AM THE COURT: Okay. Okay. Well, I will then take this matter under submission. And then we'll -- I'll let you know, if those hearings are combined in the future, you'll get a minute order on that. But for now, we'll keep them as is.

Okay. Thank you, all. Have a good rest of your

10:42AM day.

MS. BROWN: Thank you, Your Honor.

MS. YOUNG: Thank you, Your Honor.

MR. MISHRA: Thank you, Your Honor.

(Proceedings concluded at 10:42 AM.)

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF RIVERSIDE )
)
STATE OF CALIFORNIA )

I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 29TH DAY OF APRIL, 2026.

/S/ MYRA L. PONCE

MYRA L. PONCE, CSR NO. 11544, CRR, RDR
FEDERAL OFFICIAL COURT REPORTER