UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:26-cv-00322-SSS-SPx | Date | May 5, 2026 |
|---|---|---|---|
| Title | *L.T. et al. v. U.S. Immigration and Customs Enforcement (ICE) et al.* | | |

Present: The Honorable   SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER (1) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 34]; (2) GRANTING REQUEST FOR JUDICIAL NOTICE [DKT. NO. 35]; (3) DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [DKT. NO. 59]**

Before the Court is Plaintiffs' Motion for Preliminary Injunction filed on March 6, 2026.  [Dkt. No. 34].  The Motion is fully briefed and ripe for review. [Dkt. No. 34, "Motion"; Dkt. No. 54, "Opposition" or "Opp."; Dkt. No. 56, "Reply"].  Moreover, Plaintiffs filed a Request for Judicial Notice in conjunction with the Motion.  [Dkt. No. 35, "Request for Judicial Notice" or "RJN"].

Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **DENIES WITHOUT PREJUDICE** the Motion and **GRANTS** the Request.

## I.   BACKGROUND

This case pertains to the conditions of confinement at Adelanto Detention Facility in Adelanto, California.  The Court begins with a brief description of the parties involved in this suit, and how this Motion seeks relief.

## A.     Defendants to the Suit

Named in this lawsuit are the following Defendants: (1) U.S. Immigration and Customs Enforcement ("ICE"); (2) Todd Lyons, the Acting Director of ICE; (3) Jaime Rios, Acting Director of Los Angeles Field Office of ICE; (4) the U.S. Department of Homeland Security ("DHS"); and (5) Markwayne Mullin[1], Secretary of the DHS.

DHS is the federal agency "responsible for, among other things, enforcing federal immigration laws and overseeing immigration to the United States." [Complaint ¶ 11].  DHS is headed by the Secretary of DHS, Markwayne Mullin, who is "oversees [DHS's] component agencies, including Defendant ICE and U.S. Customs and Border Protection ('CBP')."  [*Id.* ¶ 22].

ICE is a "component agency of [DHS]," and "is responsible for the criminal and civil enforcement of immigration laws." [Complaint ¶ 19].  Such responsibilities include the detention and removal of immigrants. [*Id.*].  ICE's current senior official is Todd Lyons, who "is responsible for Defendant ICE's policies, practices, and procedures, including those relating to the detention of immigrants and the conditions under which they are held."  [*Id.* ¶ 20].

ICE also has field offices that possess jurisdiction and responsibility over local regions.  Jamie Rios is the current Acting Director of ICE's Los Angeles Field Office, and is "responsible for Defendant ICE's policies, practices, and procedures, including those relating to the detention of immigrations and the conditions under which they are being held."  [*Id.* ¶ 21].

## B.     Adelanto ICE Processing Center

---

[1] Substitutions are appropriate only where government officials are sued in their official capacities, in which case the current official is the appropriate defendant.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). At the time Plaintiffs filed suit, they had named Kristi Noem in her official capacity as Secretary of Homeland Security.  Since then, Markwayne Mullin has replaced Kristi Noem as Secretary of Homeland Security.  Therefore, the Court substitutes Kristi Noem with Markwayne Mullin as the appropriate defendant.

In connection with detaining immigrants, ICE has contracted with the GEO Group, Inc. ("GEO"), one of the "largest for-profit prison corporations in the country." [Complaint ¶ 19]. Within this judicial district, ICE contracts with GEO to run and manage the Adelanto ICE Processing Center ("Adelanto") in Adelanto, California. [Id.].

Prior to becoming an immigration detention center, Adelanto was a former prison. [Complaint ¶ 24]. In 2010, GEO "purchased the former prison for $28 million." [Id.]. Located in the Mojave Desert in San Bernardino County, Adelanto then opened as an immigration detention center in 2011 and has served as "the primary long-term immigration detention center in the Central District." [Id.].

Adelanto is one of the largest immigration detention facilities in the country with the capacity to house 1,940 people. [Complaint ¶ 25]. It is comprised of three buildings—the East building, the West building, and the Desert View Annex—that share much of the same administrative, executive, medical, and mental health staff. [Id. ¶ 26].

According to the Complaint, the contract between ICE and GEO provides the latter with "over two billion dollars to operate [these facilities]." [Complaint ¶ 26]. This contract requires GEO to comply with ICE's Performance-Based National Detention Standards ("PBNDS"). [Id. ¶ 28]. ICE published its PBNDS in 2011, and has revised them in 2016. [Id. ¶ 28 n.21].

Adelanto has previously faced scrutiny regarding the conditions of confinement resulting in investigations of civil rights complaints and lawsuits. [Complaint ¶¶ 29, 30]. Some conditions related to allegedly deficient medical care provided at Adelanto, while others involved the number of detained individuals suffering from serious mental illness that were placed in solitary confinement for extended periods of time. [Id. ¶¶ 29–32].

There have also been public requests to seek closure of the facility dating from 2015 to 2024. [Complaint ¶ 37]. Adelanto, however, remains open. After the Court approved a settlement in another matter that lifted restrictions on new intakes at Adelanto back in June of 2025, its population increased from 153 detained individuals to over 1,200 within a week. [Id. ¶ 38]. *See Roman v. Wolf*, No. EDCV 20-00768 TJH (PVCX), 2020 WL 5797918, at *5 (C.D. Cal. Sept. 29, 2020), *aff'd in part, vacated in part, remanded*, 977 F.3d 935 (9th Cir. 2020).

The detainee population at Adelanto has likely surged in light of Defendants' increased enforcement efforts that began in June 2025. [Complaint ¶

39].  Separate from the prior lawsuits filed against Adelanto for its conditions of confinement, Plaintiffs in this instant suit complain of current conditions at Adelanto, which they allege are "unsafe and abusive."  [*Id.* ¶ 40].

### C.  Plaintiffs to the Suit

Plaintiffs include the organization Coalition for Humane Immigrant Rights ("CHIRLA").  [Complaint ¶ 18].  Founded in 1986, CHIRLA is a nonprofit organization that seeks to "advance the human and civil rights of immigrants and refugees."  [Complaint ¶ 19].  CHIRLA's initiatives include providing education and legal services to detained individuals who have allegedly been impacted by Defendants' policies and practices.  [*Id.*].  Because CHIRLA alleges at least one of its members is detained at Adelanto and faces harm from Defendants' policies and practices, CHIRLA brings this suit "on behalf of itself and its members."  [*Id.*].

Also named as Plaintiffs are four individuals currently detained at Adelanto: L.T., Sevak Mesrobian, Jose Mauro Salazar Garcia, and J.M.  [Complaint ¶¶ 14–17].

L.T. is a 62-year-old noncitizen that had resided in California since 1989.  [Complaint ¶ 14].  He suffers from "serious medical and mobility issues," including partial paralysis that resulted from a stroke as well as a spinal tumor.  [*Id.*].  L.T. was arrested by ICE on November 14, 2025, and remains in immigration detention in Adelanto.  [*Id.*].

Sevak Mesrobian is [].   Like L.T., Mesrobian came to the United States in 1990 and lived in California until he was arrested by ICE in 2025.  [Complaint ¶ 15].  Mesrobian suffers from epilepsy and requires prescription medication to control his condition.  [*Id.*].

Jose Mauro Salazar Garza has lived in the United States since 1981, but was arrested in 2023.  [Complaint ¶ 16].  Salazar Garza was initially detained at Desert View Annex, but was transferred to Adelanto months after another detainee "bit off part of his right pinky finger."  [*Id.*].  He currently works as a Christian preacher in his unit at Adelanto.  [*Id.*].

J.M. came to the United States in 2005 and lived in Moreno Valley, California before his arrest by ICE in March of 2025.  [Complaint ¶ 17].  J.M. suffers from cardiac arrythmia for which a doctor has ordered him to wear a heart monitor.  [*Id.*].

Each of these individuals present medical conditions that require care; however, each of them alleges failure to receive timely medical assistance at Adelanto.  For example, L.T. has a spinal tumor and abdominal aneurysm that require monitoring; however, he has still not received the results of an ultrasound taken for these two conditions.  [Complaint ¶ 55].  Likewise, Salazar Garza has received delayed medical attention to infections on at least two occasions.  [*Id.* ¶ 16].  One instance, delay to provide any medical attention was so severe that Salazar Garza's finger burst open and expelled black pus.  [*Id.* ¶ 56].  Salazar Garza notified guards, but they did not take him to the medical unit, or provide materials to clean or bandage his wound.  [*Id.*].  Worse, "[i]t was days before medical staff provided antibiotics, and even longer before he was transported to the local hospital for treatment."  [*Id.*].

Even for medical conditions that Adelanto has been made aware of, treatment appears to be no better.  Mesrobian reports receiving either no medical attention or delayed and deficient care when he has seizures as well as inconsistent receipt of his prescription medication to control his seizures.  [Complaint ¶ 15].  Finally, J.M. noted that Adelanto staff cancelled his heart monitoring appointment without prior notice, and never rebooked another appointment for him.  [*Id.* at ¶ 17].

## D.    The Lawsuit

Together, CHIRLA and the individuals (collectively, "Plaintiffs") filed suit against Defendants on January 26, 2026, alleging four claims for which they seek declaratory and injunctive relief.  [Dkt. No. 1, "Complaint"].  Those claims allege violations of the Fifth Amendment's Due Process Clause, the Rehabilitation Act, and the Administrative Procedure Act ("APA").  [*Id.* ¶¶ 152–192].

On March 6, 2026, Plaintiffs filed this Motion for Preliminary Injunction seeking an injunctive order containing extensive remedial measures and corrective conditions to be made at Adelanto.  [*See* Motion; *see* Dkt. No. 34-1 at 3–12 (detailing the requested terms of relief in the proposed order)].

Defendants oppose the Motion, suggesting that the "sweeping injunction" directed at ICE is improper.  [*See generally* Opp.; *id.* at 9, 28–29].

For the reasons discussed below, the Court **DENIES** the Motion.

## II.    REQUEST FOR JUDICIAL NOTICE

Plaintiffs request that the Court take judicial notice of seven items: (1) Exhibit A: a copy of the U.S. Immigration and Customs Enforcement's ("ICE") 2011 Performance-Based National Detention Standards ("PBNDS") as revised in December 2016; (2) Exhibit B: a copy of the American Correctional Association's the Performance-Based Standards and Expected Practices for Adult Correctional Institutions; (3) Exhibit C: a copy of the National Detainee Handbook with revisions made to the Handbook and supplement to the Handbook specific to Adelanto; (4) Exhibits D and E, a copy of two death reports on ICE's website regarding detainees that passed away in ICE custody at Adelanto; (5) Exhibit F, a press release from ICE regarding a detainee who passed away in ICE custody at Adelanto; and (7) Exhibit G, a copy of the ICE Office of Professional Responsibility's Report of a September 16-18, 2025 inspection of Adelanto.. [*See generally* Request].  Defendants have not provided any argument in opposition to any of the Requests.

Federal Rule of Evidence 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Under Rule 201, the Court may take judicial notice of "[p]ublic records and government documents available from reliable sources on the internet," such as websites run by governmental agencies.  *Sage Telecom Commc'ns, LLC v. Iretas Grp., LLC*, No. CV 15-00716 BRO (JPRX), 2015 WL 13919072 at *3 (C.D. Cal. Aug. 14, 2015).  Moreover, courts in the Ninth Circuit routinely take judicial notice of press releases.  *See, e.g., In re Homestore.com. Inc. Sec. Litig.,* 347 F.Supp.2d 814, 816–17 (C.D.Cal.2004) (stating that the court can take judicial notice of press releases).  *See also In re Netflix, Inc. Securities Litig.,* Nos. C 04–2978 WHA, C 04–3021, C 04–3204, C04–3233, C 04–3329, C 04–3770, C 04–3801, 2005 WL 3096209, *1 (N.D.Cal. Nov. 18, 2005)

Each of the documents and the particular facts for which Defendants seeks judicial notice can be accurately and readily determined from sources who accuracy cannot be questioned.  Accordingly, Plaintiffs' Request for Judicial Notice is **GRANTED.**

## III.    LEGAL STANDARD

To obtain a preliminary injunction, plaintiffs must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in

the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

## IV.   JUSTICIABILITY

Defendants raise several arguments that relate to Article III standing. [*See* Opp. at 11–18]. Because the Court has an "independent obligation" to ensure its subject matter jurisdiction, these issues are discussed first. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

### A.   Organizational Standing

An organization may have standing to sue "in its own right . . . to vindicate whatever rights and immunities the association itself may enjoy," and in doing so, "may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). To establish organizational standing, an organization must "meet the same standing test that applies to individuals." *Spann v. Colonial Vill. Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (internal quotations and citations omitted). "In those cases where an organization is suing on its own behalf, it must establish concrete and demonstrable injury to the organization's activities—with a consequent drain on the organization's resources—constituting more than simply a setback to the organization's abstract social interests. Indeed, the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Common Cause v. Federal Election Comm'n*, 108 F.3d 413, 417 (D.C. Cir. 1997) (internal quotations and citations omitted); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Defendants contend that Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA") lacks organizational standing to bring their claims. [Opp. at 18]. Plaintiffs respond that "the conditions at Adelanto have increased call volumes to

CHIRLA, impacting its ability to screen prospective clients' legal claims, and have impaired CHIRLA's representation." [Reply at 10].

The Court must first determine whether CHIRLA has organizational standing, or whether it relies on a resource-diversion theory of standing that the Supreme Court has rejected. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024).

In *Hippocratic Medicine*, the Supreme Court determined that organizations that pleaded the defendant had "impaired their ability to provide services and achieve their organizational missions" did not demonstrate standing, as "[a]n organization cannot manufacture its own standing" "simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394–95 (internal quotation marks omitted). Nevertheless, an organization may have standing if the defendant's "actions directly affect[ ] and interfere[ ] with [the plaintiff's] core business activities." *Id.* at 395; *see Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024) ("*Hippocratic Medicine* clarified that the distinctive theory of organizational standing reflected in *Havens Realty* extends *only* to cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action.").

CHIRLA is an organization that was "founded in 1986 to advance the human and civil rights of immigrants and refugees." [Complaint ¶ 18]. The organization's core business activity appears to include pro bono legal services. [*Id.*]. To demonstrate organizational standing, CHIRLA must be able to demonstrate that Defendants "directly affected and interfered with [its] core business activities" such that it "perceptibly impaired" CHIRLA's ability to provide legal services—"not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Hippocratic Medicine*, 602 U.S. at 395 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368–379 (1982).

Here, CHIRLA more resembles the plaintiffs in *Hippocratic Medicine*, who had to expend considerable time, energy, and resources in response to the defendant's conduct, to the detriment of its other priorities. *Hippocratic Medicine*, 602 U.S. at 394–95. In other words, Defendants' policies and practices have injured the individuals whose interests CHIRLA seeks to assist; Defendants have not perceptively impaired CHIRLA's ability to provide legal services itself.

Based on the current pleadings, the Court finds CHIRLA lacks organizational standing. With no organizational standing, the Court lacks subject

matter jurisdiction over claims brought by CHIRLA.  In light of this finding, the Court **GRANTS** Plaintiffs with **LEAVE TO AMEND** any pleading deficiencies

### B.        Standing for Injunctive Relief

The Opposition further raises three arguments that raise justiciability issues. *First*, Defendants argue that Plaintiffs are unable to trace their injury to Defendants such that Plaintiffs cannot establish causation for Article III purposes.  [Opp. at 12–15].  *Second*, Defendants assert that Plaintiffs cannot show Article III redressability because it is GEO Group, not Defendants that the requested relief should be directed to.  [*Id.* at 16–17].[2]  *Finally*, Defendants suggest Plaintiffs "suffer no ongoing concrete harm" such that the dispute is not ripe.  [*Id.* at 17]. The Court considers each argument in turn.

### 1.        Causation

Article III requires that Plaintiffs show their injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Defendants contend that Plaintiffs ultimately complain of conduct by GEO Group, not that of Defendants.  [Opp. at 13–16].  When private contractors are custodians of federal detainees, courts have found they may be sued for constitutional violations.  In *Correctional Services Corp. v. Malesko*, the Court found a detainee held in a private facility had access to injunctive actions in federal court.  534 U.S. 61, 74 (2001).  The Ninth Circuit has previously recognized that petitioners may seek both habeas and injunctive relief relating to conditions of confinement in similar class actions relating to COVID-19.  In those cases, the Ninth Circuit allowed petitioners to sue private detention facilities for alleged constitutional violations concerning those conditions, just as Petitioners have done. *See Zepeda Rivas v. Jennings*, 845 Fed. Appx. 530 (9th Cir. 2021); *Hernandez Roman*, 977 F.3d 935.  But Plaintiffs have not named GEO Group as a defendant.

Nevertheless, the fact that "the harm to [the plaintiff] may have resulted indirectly does not in itself preclude standing."  *Warth v. Seldin*, 422 U.S. 490, 504

---

[2] Having established that CHIRLA lacks organizational standing, the Court finds no need to discuss redressability as to the individual Plaintiffs.  A court order is likely to address the conditions of confinement and medical care to which individual Plaintiffs might be entitled while at Adelanto.

(1975). Causation may be found even if there are multiple links in the chain connecting Defendants' unlawful conduct to Plaintiffs' injuries. In other words, the Supreme Court has not imposed any requirement that Defendant's conduct comprise the last link in the causal chain. *Bennett,* 520 U.S. at 168–69. The Court considers the "plausibility of the links that comprise the chain." *Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 849 (9th Cir.2002) (internal quotations omitted).

When a plaintiff alleges that government action caused injury by influencing the conduct of third parties, the Ninth Circuit has held that "more particular facts are needed to show standing." *Nat'l Audubon Soc'y*, 307 F.3d at 849. This is because third parties may be independently responsible for their injury-inflicting actions, even in the absence of the government's challenged conduct. *Americans for Safe Access v. DEA,* 706 F.3d 438, 448 (D.C.Cir.2013).

To plausibly allege that the injury was "not the result of the *independent* action of some third party," *Bennett*, 520 U.S. at 167 (emphasis added), Plaintiffs must provide facts to show that Defendants' unlawful conduct was "a substantial factor motivating the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014) (citing *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C.Cir.2001) (internal quotation marks omitted).

The Complaint alleges, among other things, that Defendants are delinquent in their provision of medical care, and subject detainees at Adelanto to punitive conditions in violation of the Constitution. [*See generally* Complaint]. Even if GEO Group is a private contractor that provides detention and medical services to Defendants, this does not relieve Defendants of their duties under the Constitution. *See West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their [] rights.").

The Complaint alleges that Defendants, as the government agency and individuals within the agency responsible for detaining Plaintiffs, have been on notice of punitive, prison-like conditions at Adelanto as well as inadequate health care at the facility. [Complaint ¶¶ 28–37, 42–45]. Despite this knowledge, Defendants have failed to act in a manner to cure the injuries that Plaintiffs have suffered and continue to suffer. [*Id.* ¶¶ 47–52].

Where the Complaint identifies various injuries that the individual Plaintiffs have suffered in Adelanto due to the conditions of confinement and lack of adequate medical care, these injuries are fairly traceable to Defendants.

### 2.   Ripeness

Finally, the Court addresses whether the individual Plaintiffs suffer ongoing concrete harm.  [*See* Opp. at 17].  The doctrine of ripeness permits courts to "dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Changler v. State Farm Mt. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Because this inquiry focuses on whether an injury "is real and concrete rather than speculative and hypothetical," it "merges almost completely with standing." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

Defendants suggest that the individual Plaintiffs have received medical attention such that future injury is merely speculative.  [Opp. at 17].  Plaintiffs respond that the inhumane conditions at Adelanto are ongoing such that their claims are ripe for adjudication.  [Reply at 9–10].

As the Complaint alleges, individual Plaintiffs are all presently detained at Adelanto.  [Complaint ¶¶ 14–17].  So long as these individuals are detained at Adelanto, they face the punitive conditions described in the Complaint.  As such, the individual Plaintiffs do present ongoing concrete harm due to their exposure to poor conditions of confinement, which may be in violation of their constitutional rights.  Plaintiffs' claims are ripe for the same reason that these allegations can demonstrate an "injury in fact" sufficient to establish standing.

Having established the justiciability of the individual Plaintiffs' claims, the Court now considers whether Plaintiffs' Motion for Preliminary Injunction is appropriate.

## V.   DISCUSSION

The Ninth Circuit has "long held that injunctive relief must be tailored to remedy the specific harm alleged." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).  "[A]n injunction against state actors must directly address and relate to the constitutional violation itself and must not require more of state officials than is necessary to assure their compliance with the constitution." *Id.  See also* Fed. R.

Civ. P. 65(d)(1)(B), (C) (providing that an injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required").

Plaintiffs' requested relief is too broad. Based upon the Court's review of the Motion, Plaintiffs' request for a preliminary injunction is neither tied to the injuries of any of the named Plaintiffs nor necessarily related to the constitutional violations alleged in the Complaint. As an example, Plaintiffs seek an injunction that orders Defendants to "[e]nsure adequate health care staffing to timely meet the needs of individuals detained at Adelanto, including ensuring the Health Services Administrator position is filled." [*See* Dkt. No. 34-1 at 3]. Although it is likely that the staffing of a Health Services Administrator and additional staffing beyond what Adelanto Detention Center currently has will improve the conditions of confinement, Plaintiffs' request violates the fundamental principle that injunctive relief must be *precisely tailored* to address only the specific constitutional harm, not broadly constrain otherwise lawful government action.

Plaintiffs, in addition to that broad staffing request, further seek "timely and adequate responses to medical requests and urgent medical needs," an ask that will inherently require an individualized determination and may vary based on a detainee's health condition and concerns. At this stage of the proceedings, there is no class certification or class representative. It is true that the district court has broad discretion to fashion a remedy. *Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir.2000). To order Defendants to adhere to a general course of conduct to cure constitutional violations without a connection to a specific aggrieved individual presents questions as to the scope of the Court's authority. *See Melendres*, 784 F.3d at 1265 (indicating that "an injunction exceeds the scope of a district court's power only if it is 'aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation.'") (citing *Milliken v. Bradley*, 433 U.S. 2670 282 (1977)).

Where the requested relief is too broad for the injuries outlined for individual Plaintiffs, the Court **DENIES** the Motion.

## VI.    CONCLUSION

Consistent with the discussion above, the Court **GRANTS** Plaintiffs' Request for Judicial Notice and **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Preliminary Injunction.

The Court provides Plaintiffs with **LEAVE TO AMEND** the Complaint.[3] Should Plaintiffs choose to file an amended complaint, they shall do so by **May 22, 2026**. Plaintiffs should also email a red lined version of the amended complaint to SSS_chambers@cacd.uscourts.gov on the date it is filed. If an amended complaint is filed, Defendants must either file a motion to dismiss or responsive pleading within 14 days after being served with the amended complaint. Given the leave to amend, the Court further **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss as **MOOT**. [Dkt. No. 59].

**IT IS SO ORDERED.**

---

[3] Any amended complaint filed by Plaintiffs shall address the concerns raised by the Court at the hearing on Plaintiffs' Motion for Preliminary Injunction and detailed in Defendants' filed Motion to Dismiss. [*See* Dkt. No. 59, "Motion to Dismiss"; Dkt. No. 68, "Hearing Transcript"].