PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br><br>                              Plaintiffs,<br><br>        v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Office Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>                              Defendants. | Case No. 5:26-cv-00322-SSS-SPx<br><br>**PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF CLASS ACTION**<br><br>Date:  July 10, 2026<br>Time:  2:00 p.m.<br>Ctrm: 2, 2nd Floor<br>       3470 12th Street<br>       Riverside, CA 92501<br>       Hon. Sunshine Sykes |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 10, 2026, at 2:00 p.m., or as soon thereafter as may be heard before the Honorable Sunshine Sykes in Courtroom 2 of the United States Courthouse for the Central District of California, 3470 Twelfth St., Riverside, CA 92501, Plaintiffs L.T., Sevak Mesrobian, Jose Mauro Salazar Garza, and J.M., on behalf of themselves and the class they seek to represent, along with Plaintiff the Coalition for Humane Immigrant Rights ("CHIRLA") (collectively "Plaintiffs") hereby move the Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction against Defendants: the U.S. Immigration and Customs Enforcement ("ICE"); David J. Venturella in his official capacity as Acting Director of ICE; Jaime Rios in his official capacity as Acting Director of the Los Angeles Field Office, Enforcement and Removal Operations of ICE; the U.S. Department of Homeland Security, and Markwayne Mullin in his official capacity as Secretary of the Department of Homeland Security; and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them.

Plaintiffs respectfully move the Court to enter a preliminary injunction to remedy ongoing violations of the Rehabilitation Act, the Administrative Procedure Act ("APA"), and the constitutional rights of Plaintiffs and the putative class. A [Proposed] Order is attached to this Motion.

This motion is based on this Notice of Motion and Motion for Preliminary Injunction, the Memorandum of Points and Authorities, and the accompanying supporting declarations and exhibits thereto, including:

1. Expert Declarations
   a. Declaration of William Adams (ECF 34-3, "Adams Decl.")
   b. Declaration of Dr. Altaf Saadi, M.D. (ECF 34-4, "Saadi Decl.")
2. Declarations of Detained or Formerly Detained People

i

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

a. Declaration of A.A. (ECF 34-9, "A.A. Decl.")

b. Declaration of A.A.A.A. (ECF 34-10, "A.A.A.A. Decl.")

c. Declaration of Jorge Aguilar (ECF 34-12, "Aguilar Decl.")

d. Declaration of A.K. (ECF 34-11, "A.K. Decl.")

e. Declaration of Gilbert Anthony Arnold (ECF 34-14, "Arnold Decl.")

f. Declaration of Xiaoman Ding (ECF 34-16, "Ding Decl.")

g. Declaration of E.M. (ECF 34-17, "E.M. Decl.")

h. Declaration of Jose Flores (ECF 34-18, "Flores Decl.")

i. Declaration of Julius Omene Fredrick (ECF 34-19, "Fredrick Decl.")

j. Declaration of J.M. (ECF 75-9, "J.M. Decl.")

k. Declaration of Andrei Vladimirovich Karamychev (ECF 34-21, "Karamychev Decl.")

l. Declaration of Fernando A. Lopez (ECF 34-23, "Lopez Decl.")

m. Declaration of L.T. (ECF 75-6, "L.T. Decl.")

n. Declaration of Sevak Mesrobian (ECF 75-7, "Mesrobian Decl.")

o. Declaration of Josue Jeison Pereira Amaya (ECF 34-13, "Pereira-Amaya Decl.")

p. Declaration of Olga Beatriz Rodriguez Arzola (ECF 34-15, "Rodriguez-Arzola Decl.")

q. Declaration of Elmer "Manuel" Ruiz Escobar (ECF 34-25, "Ruiz-Escobar Decl.")

r. Declaration of Jose Mauro Salazar Garza (ECF 75-8, "Salazar-Garza Decl.")

s. Declaration of Saddam Samaan Daoud Samaan (ECF 34-27, "Samaan Decl.")

t. Declaration of Alton George Smith (ECF 34-28, "Smith Decl.")

u. Declaration of Philip Winfield (ECF 34-29, "Winfield Decl.")

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

3. Declarations of Non-Detained Entities and Persons

a. Declaration of Angelica Salas on behalf of Coalition for Humane Immigrant Rights ("Salas Decl.") (concurrently filed)

b. Declaration of Amanda Schuft ("Schuft Decl.")

c. Declaration of Nicolás Thompson-Lleras (ECF 34-8, "Thompson-Lleras Decl.")

d. Declaration of Saralyn Olson-Wagner ("Olson-Wagner Decl.")

4. Declaration of Outside Counsel

a. Declaration of Stephen Henrick and Exhibit 1 attached thereto—a summary exhibit created for the Court's convenience, which categorizes and presents key quotations in the fact declarations listed above. (concurrently filed)

This motion is also supported by the First Amended Complaint (ECF 74), Plaintiff's Request for Judicial Notice in Support of Renewed Motion for Preliminary Injunction ("RJN") (ECF 78), and accompanying exhibits, as well as Plaintiffs' Second Motion for Class Certification and the supporting papers (Dkt. No. 75).

Dated:  June 1, 2026                    Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:  /s/ Nicholas Reddick
     Nicholas Reddick
     Stephen Henrick
     Alyxandra Vernon
     Jacob Karim

///

///

///

PUBLIC COUNSEL

By:   */s/ Rebecca Brown*
      Rebecca Brown
      Sophia Wrench
      Amelia Piazza
      Elizabeth Hercules-Paez

IMMIGRANT DEFENDERS LAW CENTER

By:   */s/ Alvaro M. Huerta*
      Alvaro M. Huerta
      Carson Adrianna Scott
      Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By:   */s/ Carl Bergquist*
      Carl Bergquist
      Adam Reese

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 1

    A.    Inhumane Conditions of Confinement........................................................ 1

        1.    Dysfunctional Medical System................................................ 2

        2.    Punitive Conditions................................................................. 3

        3.    Disability Discrimination......................................................... 4

    B.    Defendants' Supervision of Adelanto.......................................................... 4

    C.    ICE's September 2025 Inspection................................................................ 5

III.  LEGAL STANDARD ...................................................................................... 5

IV.   ARGUMENT.................................................................................................... 6

    A.    Plaintiffs are likely to succeed on the merits of their claims. .................. 6

        1.    Adelanto's punitive conditions violate the Fifth Amendment. ..... 6

            a.    Conditions at Adelanto are presumptively punitive....... 7

            b.    Even without the *Jones* presumption, conditions at Adelanto are unconstitutionally punitive. ........................... 8

            c.    Adelanto's inadequate medical care violates the Fifth Amendment. ...................................................................... 10

        2.    Defendants' conduct violates the Rehabilitation Act. ................. 13

        3.    Defendants' Conduct Violates the Administrative Procedure Act. ...................................................................................................... 14

            a.    Plaintiffs Challenge Final Agency Action.................... 15

            b.    Defendants' Actions Are Arbitrary and Capricious.... 15

            c.    Defendants' Actions Violate the *Accardi* Doctrine..... 16

    B.    Plaintiffs have established that they are suffering irreparable harm...... 17

v

C.    The balance of hardships and public interest favor an injunction. ........ 17

D.    Plaintiffs Request Necessary Relief. ...................................................... 18

E.    A Preliminary Injunction Binding the Government Will Provide Relief
      to the Purported Classes. ....................................................................... 18

F.    This Court should provisionally certify the proposed class and subclass
      and enter a facility-wide preliminary injunction. ................................... 19

G.    The relief Plaintiffs seek is tailored to Defendants' constitutional and
      statutory violations. ............................................................................... 20

V.    CONCLUSION ................................................................................................ 21

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) *overruled on other grounds*, *Johnson v. California*,
   543 U.S. 499 (2005).................................................................................. 14, 18, 21

*Bell v. Wolfish*,
   441 U.S. 520 (1979)............................................................................................. 6, 9

*Bennett v. Spear*,
   520 U.S. 154 (1997)............................................................................................... 15

*Brown v. Plata*,
   563 U.S. 493 (2011)............................................................................................... 20

*Castillo v. Barr*,
   449 F. Supp. 3d 915 (C.D. Cal. 2020)..................................................................... 6

*Cmty. Legal Services in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*,
   780 F.Supp.3d 897 (N.D. Cal. 2025)..................................................................... 16

*Coleman v. Wilson*,
   912 F. Supp. 1282 (E.D. Cal. 1995) ...................................................................... 12

*Csutoras v. Paradise High Sch.*,
   12 F.4th 960 (9th Cir. 2021) .................................................................................. 13

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) ........................................................................... 9, 21

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989)............................................................................................... 10

*Doe v. Becerra*,
   732 F. Supp. 3d 1071 (N.D. Cal. 2024).................................................................... 6

*Doe v. Kelly*,
   878 F.3d 710 (9th Cir. 2017) ................................................................................. 20

*Emami v. Nielsen*,
   365 F.Supp.3d 1009 (N.D. Cal. 2019).................................................................... 16

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

*Gomez Ruiz v. U.S. Immigr. & Customs Enf't*,
No. 3:25-CV-09757-MMC, 2026 WL 851980 (N.D. Cal. Mar. 27, 2026)
.................................................................................................. 11, 13, 18, 19

*Gonzalez v. Noem*,
2025 WL 3170784 (N.D. Ill. Nov. 5, 2025) ........................................................ 18

*Graves v. Arpaio*,
623 F.3d 1043 (9th Cir. 2010) ................................................................. 9

*Hernandez v. Cnty. of Monterey*,
110 F. Supp. 3d 929 (N.D. Cal. 2015) .................................................. 17

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) ................................................................ 17

*Hoptowit v. Ray*,
682 F.2d 1237 (9th Cir. 1982) *overruled in part on other grounds, Sandin v.
Connor*, 515 U.S. 472 (1995) ........................................... 9, 10, 12, 19

*Jensen v. Shinn*,
609 F. Supp. 3d 789 (D. Ariz. 2022) .............................................. 12, 18

*Jones v. Blanas*,
393 F.3d 918 (9th Cir. 2004) . Civil ................................................. 6, 8

*Kansas v. Crane*,
534 U.S. 407 (2002)........................................................................... 9

*Keenan v. Hall*,
83 F.3d 1083 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318
(9th Cir. 1998) ........................................................................... 9, 20

*King v. Cnty. of L.A.*,
885 F.3d 548 (9th Cir. 2018) ................................................................ 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........................................................... 12

*Madrid v. Gomez*,
889 F. Supp. 1146 (N.D. Cal. 1995)........................................... 10, 11, 12

*Melendres v. Apario*,
784 F.3d 1254 (9th Cir. 2015) ............................................................ 20

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ................................................................. 17

*Mercado v. Noem*,
  800 F. Supp. 3d 526 (S.D.N.Y. 2025) ................................................. 9, 17, 18, 19

*Meyer v. Portfolio Recovery Assocs.*,
  707 F.3d 1036 (9th Cir. 2012) ............................................................. 19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .............................................................................. 15, 16

*Pablo Sequen v. Albarran*,
  2025 WL 3283283 (N.D. Cal. Nov. 25, 2025) ..................................... 18

*Pablo Sequen v. Albarran*,
  810 F. Supp. 3d 1084 (N.D. Cal. 2025) .......................................*passim*

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .............................................................. 13

*Plata v. Schwarzenegger*,
  No. C01-1351 TEH, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005) .................... 12

*Roe v. Critchfield*,
  137 F.4th 912 (9th Cir. 2025) ............................................................. 17

*Roman v. Wolf*,
  5:20-cv-00768-TJH-PVC, Dkt. 55, *aff'd in part*, 977 F.3d 935 (9th Cir. 2020) 18

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) .............................................................. 13, 19, 20

*Ruiz v. U.S. Immigr. & Customs Enf't.*,
  2026 WL 391924 (N.D. Cal. Feb. 10, 2026) ........................................ 18

*Thakur v. Trump*,
  787 F. Supp. 3d 955 (N.D. Cal. 2025) *affirmed in part, reversed in part and
  remanded on other grounds by Thakur v. Trump,* No. 25-4249, 2026 WL 1466303
  (9th Cir. May 26, 2026) ...................................................................... 17

*Torres v. U.S. Dep't of Homeland Sec.*,
  411 F. Supp. 3d 1036 (C.D. Cal. 2019) .............................................. 6, 15

ix

*Updike v. Multnomah Cnty.*,
  870 F.3d 939 (9th Cir. 2017) ...................................................................14

*West v. Atkins*,
  487 U.S. 42 (1988).................................................................................18

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)...................................................................................5

*Youngberg v. Romeo*,
  457 U.S. 307 (1982)...............................................................................6

*Zadvydas v. Davis*,
  533 U.S. 678 (2001)...............................................................................6

*Zepeda Rivas v. Jennings*,
  465 F. Supp. 3d 1028 (N.D. Cal. 2020) aff'd, 845 F. App'x 530 (9th Cir. 2021)18

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................................14, 15

29 U.S.C. § 794(a) ...................................................................................13, 14

Cal. Code Regs. tit. 15, §§ 3335, 3343, 3348(i)...............................................7

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, Div. C, Tit.
  II, § 213(a)-(b) (Mar. 23, 2024), 138 Stat. 460 ....................................5

**Other Authorities**

*'Alligator Alcatraz'*, The Guardian, Jul. 1, 2025, https://www.theguardian.com/us-
  news/2025/jul/01/trump-alligator-alcatraz-immigration-
  florida?CMP=share_btn_url ......................................................................8

https://www.dhs.gov/sites/default/files/2022-05/ICE%20-
  %20Office%20of%20Detention%20Oversight%20Inspections.pdf..................15

Ice Detention Trends, Vera (June 1, 2026), https://www.vera.org/ice-detention-
  trends.................................................................................................1

Dept. Homeland Sec. Off. Inspector Gen., U.S. Dep't Homeland Sec. Office of the
    Inspector General, ICE Does Not Fully Use Contracting Tools to Hold Detention
    Facility Contractors Accountable for Failing to Meet Performance Standards, No.
    OIG-19-18 at 6, (Jan. 29, 2019),
    https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf
    (Jan. 29, 2019) ................................................................................................5, 15

U.S. Immigr. & Customs Enf't, ICE Detention Statistics FY 2026 YTD (Sept. 24,
    2025), available at https://www.ice.gov/detain/detention-management ..............4

U.S. Immigr. & Customs Enf't, ODO ICE Facility Inspections, available at
    https://www.ice.gov/foia/odo-facility-inspections ...............................................5

U.S. Immigr. & Customs Enf't, Self-Deportation (July 16, 2025),
    https://www.ice.gov/self-deportation ...................................................................8

Urge Self-Deportation, Noem Says, Associated Press, Sept. 3, 2025,
    https://apnews.com/article/louisiana-immigration-detention-noem-trump-
    682793a4db4757649cb78b0ea3aa051d?utm_source=copy&utm_medium=share
    ...............................................................................................................................9

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

At the Adelanto ICE Processing Center ("Adelanto")—the primary long-term immigration detention center in the Central District—Defendants detain approximately 1,800 people for weeks, months, or years under patently illegal conditions.  Drinkable water is limited, food is unsanitary, facilities are filthy, and mold grows on the walls.  Medical care and disability accommodations are largely nonexistent, leaving people to suffer avoidable pain and preventable deterioration.  Needless rules—prohibitions on holding loved ones during visits, or using the toilet in private—make the facility harsher than prison.  Detainees cannot protest the conditions or they risk solitary confinement, where they are locked in a small cell for twenty-three hours a day.

These conditions are no accident.  Defendants' actions at Adelanto are part of a policy and practice that seeks to degrade, dehumanize, and demonize immigrants, stripping them of dignity in the process.  As immigrants are cycled in and out of Adelanto, injunctive relief is urgently needed to protect the safety and dignity of everyone detained there.  Plaintiffs seek a preliminary injunction ordering Defendants to provide conditions compliant with the Constitution, the Rehabilitation Act, and Defendants' own detention standards.

## II.    FACTUAL BACKGROUND

### A.    Inhumane Conditions of Confinement

In June 2025, the federal government launched a sweeping dragnet of immigration raids in southern California, apprehending thousands.  The result was a massive influx of people detained at Adelanto, from approximately 300 in May to over 1600 in July.[1]  The facility was not prepared for this surge.  *See* ECF 44-1 at 10.

---

[1] Ice Detention Trends, Vera (June 1, 2026), https://www.vera.org/ice-detention-trends.

1

As the facility filled, conditions rapidly deteriorated. *See generally id.* at 9–16. A year later, dangerous, inhumane, and degrading conditions persist.

### 1.    Dysfunctional Medical System

Adelanto's health care system is grossly deficient. Medical screening upon intake is cursory and often delayed, if it happens at all. *See, e.g.*, Flores ¶ 4 (no intake); Lopez ¶ 10 (belated intake resulting in medication delay); Smith ¶ 16 (belated intake resulting in delay treating broken toe); A.A.A.A ¶¶ 10-11 (staff announcing results of intake pregnancy tests in group setting); *see also* Henrick Decl., Ex. 1 at 44-47.

The backlog for medical treatment is immense, leaving detained people to wait days, weeks, or months for primary and specialty care. *See, e.g.*, Salazar-Garza Decl. ¶¶ 8-10 (no bandages for infected, pus-filled wound); Pereira-Amaya Decl. ¶ 9 (days without care for bleeding head cyst); Lopez Decl. ¶¶ 16-20 (days without care for internal bleeding); Smith Decl. ¶ 9 (days without medical attention for chest pains); Schuft Decl. ¶ 18 (days without care for poisonous spider bite); Karamychev Decl. ¶¶ 14-15 (nearly two-month delay in treating infection resulting in emergency hospitalization); Flores Decl. ¶ 9 (never treated for degenerative nerve disease, causing loss of limb control); Salas Decl. ¶ 26 (never provided dental fillings to address severe tooth pain); *see also* Henrick Decl., Ex. 1 at 47-64, 75-82.

Detained people do not receive required medications and medical devices. *See, e.g.*, Mesrobian Decl. ¶¶ 10-11, 28-50 (regularly misses doses of anti-seizure medication, resulting in repeated hospitalizations); Olson-Wagner Decl. ¶ 11 (irregular administration of psychiatric medication); Schuft Decl. ¶ 15 (facility terminated medication that prevents muscle stiffening); Ding Decl. ¶ 13 (denied pre-detention prescriptions to manage recurring, debilitating headaches); L.T. Decl. ¶ 17 (denied sleep apnea machine); *see also* Henrick Decl., Ex. 1 at 64-75, 104-109.

Perhaps most alarmingly, staff do not respond appropriately to medical emergencies. *See, e.g.*, Mesrobian Decl. ¶ 19 (during seizure, no oxygen for 25

2

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

minutes); A.A. Decl. ¶ 36 (guards took 30 minutes to respond to detained woman who collapsed, urinated herself, and appeared to stop breathing); A.A.A.A. Decl. ¶¶ 33-34 (after detained woman collapsed, guards dropped her and rolled a wheelchair over her body); Lopez Decl. ¶ 13 (guards responded slowly to detained person lying in pool of blood, saying, "Be happy, at least we come"); *see also* Henrick Decl., Ex. 1 at 82-102. In the past year, four individuals detained at Adelanto have died under circumstances that raise serious questions about the adequacy of their medical care.

### 2. Punitive Conditions

Living conditions at the facility are dangerous and punitive. The tap water is discolored and foul-tasting and the drinkable water is limited. *See, e.g.*, Mesrobian Decl. ¶ 66; Schuft Decl. ¶ 8; *see also* Henrick Decl., Ex. 1 at 9-14. The kitchens serve spoiled or undercooked food in small portions, leaving detained people hungry. *See, e.g.*, Mesrobian Decl. ¶¶ 76-77; Schuft Decl. ¶ 8; Salas Decl. ¶¶ 28-29; *see also* Henrick Decl., Ex. 1 at 1-9. The facilities are filthy; mold grows on walls and in showers. *See, e.g.*, Schuft Decl. ¶ 21; L.T. Decl. ¶ 30, 31; Salazar-Garza Decl. ¶ 31; *see also* Henrick Decl., Ex. 1 at 14-23. Detained people do not receive sufficient clean, warm clothing or adequate bedding. *See, e.g.*, Schuft Decl. ¶ 7; Mesrobian Decl. ¶¶ 84-87; L.T. Decl. ¶¶ 33, 35; *see also* Henrick Decl., Ex. 1 at 23-28.

Facility policies are highly restrictive. Detained people are locked in their cells five times a day for headcounts lasting over an hour. *See, e.g., Mesrobian Decl. ¶ 93; Salazar-Garza Decl. ¶ 23; *see also* Henrick Decl., Ex. 1 at 32-33. They receive one hour of outdoor time per day,[2] if that. *See, e.g.*, Salazar-Garza Decl. ¶ 33; *see also* Henrick Decl., Ex. 1 at 33-36. They must use the toilet and showers in full view of staff and other detained people. *See, e.g.*, Mesrobian Decl. ¶ 64; Salazar-Garza Decl. ¶¶ 24, 26; *see also* Henrick Decl., Ex. 1 at 28-30. They cannot hold their children during visitation. *See, e.g.*, Arnold Decl. ¶ 35; *see also* Henrick Decl., Ex. 1 at 30-

---

[2] Detainees are otherwise given access to a "mini-yard," a small area that is open above but enclosed by tall concrete walls. *E.g.*, Samaan Decl. ¶ 17.

32. Staff routinely use solitary confinement[3] to punish people who speak out about conditions. *See* Henrick Decl., Ex. 1 at 38-44. ICE's own data shows it subjected 76 people at Adelanto to solitary confinement during March 2026, and 72 during February 2026.[4]

### 3. Disability Discrimination

Defendants lack effective systems for identifying and accommodating disabilities, including provision of adaptive equipment and services. *See, e.g.*, L.T. Decl. ¶¶ 10, 14 (detained person using cane placed in second-floor cell and transported to court in chains); Schuft Decl. ¶ 10 (detained people with mobility issues assigned to top bunks); Ruiz-Escobar ¶ 33 (same); L.T. Decl. ¶ 13 (no shower chair); Arnold Decl. ¶¶ 6-7 (no prescription glasses); A.A. ¶ 26 (no wheelchair); Rodriguez-Arzola ¶ 18 (no diabetic shoes for swollen feet); A.A.A.A Decl. ¶ 37 (guards refusing to assist elderly detained person with toileting); *see also* Henrick Decl., Ex. 1 at 104-109.

### B. Defendants' Supervision of Adelanto

Defendants ultimately direct and control every material aspect of Adelanto's operations. ICE contracts with the for-profit company The GEO Group, Inc. ("GEO") to operate the facility under Defendants' supervision. To ensure "consistent conditions of confinement, program operations, and management expectations," ICE issues Performance Based National Detention Standards ("PBNDS"), *see* ECF 35-1, and mandates compliance with these standards in its contract with GEO. If GEO fails to comply with its contract, ICE has the power to engage in informal resolution, issue

---

[3] At Adelanto, detained people may be placed in medical, administrative, or disciplinary segregation. Regardless of the term used, each imposes complete isolation and is punitive in effect. *E.g.*, Aguilar Decl. ¶ 10 (administrative segregation is "effectively solitary confinement"); Ding Decl. ¶¶ 25-26 (medical segregation is solitary confinement); Schuft Decl. ¶ 22. Accordingly, Plaintiffs refer to segregation as "solitary confinement."

[4] U.S. Immigr. & Customs Enf't, ICE Detention Statistics FY 2026 YTD (Sept. 24, 2025), available at https://www.ice.gov/detain/detention-management.

4

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

a Discrepancy Report documenting deficiencies, require a corrective action plan, withhold payment, or impose financial penalties.[5]

### C.    ICE's September 2025 Inspection

Since 2021, ICE's Office of Detention Oversight ("ODO") has the congressionally mandated responsibility to inspect detention facilities for compliance with the PBNDS.[6]  Following each inspection, ODO creates a Compliance Inspection Final Report, intended to be an independent assessment of deficiencies.

ODO inspected Adelanto in September 2025.  Despite repeated complaints of substandard medical care and inhumane conditions from detained people, journalists, government oversight entities, and members of Congress, ICE awarded Adelanto a "good" rating, with no care deficiencies found.  *See* ECF 35-7.

### III.  LEGAL STANDARD

A preliminary injunction must issue if Plaintiffs establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs readily satisfy this standard.

---

[5] ECF 54-2 at ECF 51-55, Ex. 5 (GEO responding to ICE's identification of deficiencies with corrective action plan); Dept. Homeland Sec. Off. Inspector Gen., U.S. Dep't Homeland Sec. Office of the Inspector General, *ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards, No. OIG-19-18* at 6, (Jan. 29, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf ("If the facility is not compliant, a Discrepancy Report may include a recommendation for financial penalties, such as a deduction in or withholding of ICE payment to the contractor").

[6] Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, Div. C, Tit. II, § 213(a)-(b) (Mar. 23, 2024), 138 Stat. 460; U.S. Immigr. & Customs Enf't, ODO ICE Facility Inspections, available at https://www.ice.gov/foia/odo-facility-inspections.

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

## IV.  ARGUMENT

### A.    Plaintiffs are likely to succeed on the merits of their claims.

#### 1.    Adelanto's punitive conditions violate the Fifth Amendment.

Because Defendants hold immigrants in "civil, not criminal" detention, the conditions of detained Plaintiffs' confinement must be "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Subjecting detained Plaintiffs to conditions that "amount to punishment" violates the Fifth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979); *see also Youngberg v. Romeo*, 457 U.S. 307, 322 (1982) (People in civil detention are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Conditions are punitive where, as here, the challenged restrictions (1) are "expressly intended to punish," (2) serve a "non-punitive purpose" but are "excessive in relation to the … purpose," or (3) "are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (cleaned up).  Civil conditions are presumed punitive where they are "identical to, similar to, or more restrictive than, those in which his criminal counterparts are held." *Id.*  Courts across the Ninth Circuit have consistently held that these rules apply "in the immigration context." *E.g.*, *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1128-31 (N.D. Cal. 2025); *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1080 n.2 (N.D. Cal. 2024); *Castillo v. Barr*, 449 F. Supp. 3d 915, 920-21 (C.D. Cal. 2020); *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1064 (C.D. Cal. 2019).

People detained at Adelanto are subject to harsher and more restrictive conditions than criminal prisoners, making the conditions presumptively unconstitutional.  Plaintiffs have also demonstrated that these conditions are intended to punish, have no legitimate purpose, and any legitimate objective could be achieved using less harsh methods.  *See Jones*, 393 F.3d at 932.

6

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

### a.      Conditions at Adelanto are presumptively punitive.

Mr. William Adams, who has extensive experience managing California prisons, concluded that conditions at Adelanto are harsher and more restrictive than prison. Adams Decl. ¶¶ 22, 27. In addition, six formerly incarcerated individuals aver conditions at Adelanto are worse than when they were in prison. Mesrobian Decl. ¶¶ 24, 64, 74; Salazar-Garza Decl. ¶¶ 23, 26, 32, 34; Samaan Decl. ¶¶ 16, 19; Ruiz-Escobar Decl. ¶¶ 24, 27-28; Fredrick Decl. ¶¶ 23, 28, 36, 40-41, 43; Arnold Decl. ¶¶ 12, 24, 27, 32, 35.

Adelanto is not meeting the basic human needs–including adequate water, food, sanitation, and hygiene–guaranteed to any incarcerated population, including those in prison. *See* Adams Decl. ¶¶ 30-31; *see also id.* ¶ 32 (Adelanto does not provide the "equivalent caliber and quantities of food" as would a prison); ¶ 46 (same for "access to potable water"); ¶ 58 (same for "facility cleanliness" and "consistent access to soap"); ¶ 70 (same for "serviceable, temperature-appropriate clothing and bed linen").

Further, rights and freedoms are more heavily curtailed at Adelanto than in prison. Adams Decl. ¶ 84. Compared to people at Adelanto, people incarcerated in prison spend less time locked in their cells, have greater access to the outdoors, can shower and use the toilet in private, and are allowed contact visits with loved ones with no per se time limit. *See* Adams Decl. ¶¶ 26, 109-110 (prisoners have short, out-of-cell headcounts); ¶ 115-120 (yard access); ¶¶ 85-94 (privacy for toilet and showers); ¶¶ 24, 98-99 (multi-hour, contact visitation). Further, Defendants use solitary confinement to maintain an environment of fear and penalize those who speak out about conditions at Adelanto. *Supra*. Prisons do not and *cannot* use solitary confinement in this manner. Adams Decl. ¶ 143; Cal. Code Regs. tit. 15, §§ 3335, 3343, 3348(i).

Imposition of these conditions, which are harsher and more restrictive than prison, triggers the presumption that detained Plaintiffs are subject to punitive

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

conditions. *Jones*, 393 F.3d at 934. Under the presumption, "the burden shifts to [Defendants] to show (1) legitimate, non-punitive interests justifying the conditions of … confinement and (2) that the restrictions imposed … [are] not excessive in relation to these interests." *King v. Cnty. of L.A.*, 885 F.3d 548, 557 (9th Cir. 2018). They can show neither. *See infra* IV.A.2.[7]

### b.   Even without the *Jones* presumption, conditions at Adelanto are unconstitutionally punitive.

Even if the *Jones* presumption does not apply, ample record evidence proves that conditions at Adelanto are unconstitutionally punitive because they are (1) "intended to punish," (2) "excessive in relation to [their] non-punitive purpose," or (3) "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones*, at 932. Plaintiffs are likely to succeed on each of these independent bases.

***First***, Defendants have admitted that detention conditions are intended to coerce immigrants to leave the United States. ICE's website warns: "If ICE arrests you because you didn't turn yourself in, the agency will detain and remove you—and you may have to spend several months in detention while you're awaiting removal."[8] Standing alongside then-DHS Secretary Noem while opening a detention facility in Florida, Governor Ron DeSantis stated, "You'll have a lot of people who will deport on their own because they don't want to end up in an Alligator Alcatraz, or some of these other places."[9] On another occasion, Secretary Noem explained that the federal government "purposefully chose a notorious Louisiana prison to hold immigration

---

[7] Even if Defendants could show legitimate, non-punitive justifications (which they cannot), "conditions of confinement may still be 'excessive' if they are 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *King v. Cnty. of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018) (quoting *Jones*, 393 F.3d at 934). That is the case here, *see infra* IV.A.2.

[8] *See* U.S. Immigr. & Customs Enf't, Self-Deportation (July 16, 2025), https://www.ice.gov/self-deportation.

[9] Richard Luscombe, *Trump Celebrates Harsh Conditions for Detainees on Visit to 'Alligator Alcatraz'*, The Guardian, Jul. 1, 2025, https://www.theguardian.com/us-news/2025/jul/01/trump-alligator-alcatraz-immigration-florida?CMP=share_btn_url.

8

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

detainees … to encourage people … to self-deport."[10]  These statements demonstrate "that harsh conditions of confinement are a deliberate feature … intended to induce self-deportation and to deter illegal immigration."  *Mercado v. Noem*, 800 F. Supp. 3d 526, 575-76 (S.D.N.Y. 2025).  Detained people have felt pressure to take voluntary departure rather than endure the conditions.  A.K. Decl. ¶¶ 13, 18; Rodriguez-Arzola Decl. ¶ 30; Samaan Decl. ¶ 21; Thompson-Lleras Decl. ¶¶ 22-27.  Imposing conditions for "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives."  *Bell*, 441 U.S. at 539, n.20; *see also Kansas v. Crane*, 534 U.S. 407, 412 (2002) (civil detention cannot be a "mechanism for retribution or general deterrence"); *Mercado*, 800 F. Supp. 3d at 576 ("Nor is encouragement of alien self-deportation on pain of otherwise enduring inhumane conditions of confinement a legitimate, nonpunitive objective.").

**Second**, Defendants impose conditions at Adelanto that are excessive to any purported non-punitive purpose.  There is no legitimate, non-punitive interest that justifies depriving people of basic human necessities like food, water, medical care, and basic sanitation and hygiene.  These conditions "significantly exceed . . . the inherent discomforts of confinement."  *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (citation omitted).  Indeed, they violate the more demanding Eighth Amendment prohibition on cruel and unusual punishment.  *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (Eighth Amendment guarantees access to water); *Graves v. Arpaio*, 623 F.3d 1043, 1050-51 (9th Cir. 2010) (Eighth Amendment guarantees access to sufficient food); *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) *overruled in part on other grounds, Sandin v. Connor*, 515 U.S. 472 (1995) (Eighth Amendment guarantees basic sanitation).

---

[10] Sara Cline, *A Notorious Louisiana Prison was Chosen for Immigrant Detainees to Urge Self-Deportation, Noem Says*, Associated Press, Sept. 3, 2025, https://apnews.com/article/louisiana-immigration-detention-noem-trump-682793a4db4757649cb78b0ea3aa051d?utm_source=copy&utm_medium=share.

9

Further, expert testimony establishes the conditions imposed are not only excessive but actually counterproductive for safe management of the facility. *See* Adams Decl. ¶ 27 (conditions at Adelanto "undermine the security of the facility"); *id.* ¶¶ 45 (no penological justification for failing to provide detained people with sufficient quantities of quality, nutritious food), ¶ 57 (same for denying detained people reasonable access to drinking water), ¶ 69 (same for failure to provide sanitary facilities), ¶ 82 (same for failure to provide suitable clothes, linens, or beds), ¶ 94 (same for failure to protect detained people's privacy), ¶ 104 (same for restrictive visitation policies); ¶ 114 (same for "so many prolonged and disruptive facility-wide in-cell counts"; ¶ 122 (same for limited outdoor time); ¶ 149 (same for "using placement in restrictive housing as a tool to punish inmates who voice concerns").

***Third***, to the extent the conditions are designed to achieve legitimate objectives—which is doubtful given Defendants' statements and the harsh conditions, Defendants' own standards demonstrate that the harsh conditions are unnecessary. The PBNDS provide alternative, less harsh methods and, in fact, forbid the current practices at Adelanto. *See* ECF 35-1 at 215-16, 232, 420. Prison operations also prove that less harsh methods exist and that the current conditions are unconstitutionally punitive. *See generally* Adams Decl. For these reasons, Plaintiffs are likely to succeed on the merits of their claim that the punitive conditions at Adelanto violate the Fifth Amendment.

### c.   Adelanto's inadequate medical care violates the Fifth Amendment.

The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). This includes "a system of ready access to medical care," through which patients can alert medical staff to their problems, and staff can diagnose and treat those problems or refer patients to others who can. *Hoptowit,* 682 F.2d at 1253; *see also Madrid v. Gomez*, 889 F. Supp. 1146,

10

1259 (N.D. Cal. 1995) (a system for healthcare delivery cannot survive constitutional scrutiny "unless it actually delivers ready access to adequate care.").

A "system of ready access" does not exist at Adelanto.  Dr. Altaf Saadi, a board-certified neurologist with extensive experience evaluating the health conditions of detained people in ICE's custody, found that Defendants provide "inadequate" and "substandard" medical care that endangers detained people.  Saadi Decl. ¶¶ 11, 149. Adelanto's healthcare system puts all detained people at substantial risk of serious harm for, at minimum, the following reasons:

*First*, there is no consistent system for confidential, timely, or thorough medical intake assessments that would identify health and medication needs as well as contagious diseases. Saadi Decl. ¶ 27.  Proper health screening *before* a person enters the general population setting is necessary to ensure the health and safety of 2,000 individuals confined in close quarters. *Id.* ¶¶ 14, 17; *see also Madrid*, 889 F. Supp. at 1257 ("Health screenings are a necessary supplement to ordinary avenues of access to medical care"); *Gomez Ruiz v. U.S. Immigr. & Customs Enf't*, No. 3:25-CV-09757-MMC, 2026 WL 851980, at *7 (N.D. Cal. Mar. 27, 2026) ("correctional institutions must conduct adequate medical screenings to identify individuals' health needs and risk factors"); *Pablo Sequen*, 810 F. Supp. 3d at 1134 (ordering basic medical screening by a medical professional sufficient to "identify and begin necessary treatment of those with mental or physical illness and injury; to provide access to prescription medication without interruption; to recognize, segregate, and treat those with communicable diseases; [and] to provide medically necessary special diets").

*Second,* there is no effective system to respond to detained people's medical needs with timely treatment appropriate to the acuity of their conditions.  Saadi Decl. ¶¶ 28, 44, 72.  It is not uncommon for sick call slips and requests for medical care to be ignored.  *Id.* ¶ 43.  Chronic illnesses go untreated, which can and has resulted in progression and worsening of illnesses, complications, the development of secondary

conditions, and reduced quality of life. *Id.* ¶¶ 44–54. Patients with serious and time-sensitive medical needs have been unable to obtain specialty care for possible tumors, infections, and other serious medical conditions. *Id.* ¶¶ 74–81. These are hallmarks of constitutionally inadequate healthcare. *See Madrid*, 889 F. Supp. at 1259 (finding healthcare delivery to be constitutionally inadequate where patients "often experience significant delays in receiving treatment" and the facility has "no effective procedures for managing inmates' chronic illnesses"); *Plata v. Schwarzenegger*, No. C01-1351 TEH, 2005 WL 2932253, at *6 (N.D. Cal. Oct. 3, 2005) (unconstitutional system of care evinced by repeated failures to address symptoms such as fever and chills, low or elevated blood pressure, and abdominal or chest pain).

**Third,** detained people receive delayed and inadequate emergency care. Saadi Decl. ¶ 83; *cf. Hoptowit*, 682 F.2d at 1253 (a facility "must provide an adequate system for responding to emergencies"). Staff do not treat a situation as an emergency unless a person collapses to the floor, and even then, emergency response is dangerously slow, especially at night. Saadi Decl. ¶¶ 85–91.

**Fourth,** Adelanto's medication distribution system is "dangerously ineffective," Saadi Decl. ¶ 12. Medication continuity is "a critical component of a functional health-care system," with missed doses resulting in increased risk of medical complications. *Id.* ¶ 57; *see also Pablo Sequen*, 810 F. Supp. 3d at 1131; *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000); *Coleman v. Wilson*, 912 F. Supp. 1282, 1309–10 (E.D. Cal. 1995). Yet at Adelanto, medication is often administered at clinically inappropriate times, if it is administered at all. Saadi Decl. ¶ 71.

**Fifth,** there is not adequate medical staffing to administer a functional health system. *See* ECF 44-1 at 9–11 (only five full-time and two part-time staff for population of nearly two thousand people and no assurances staffing has increased); *see also* Henrick Decl., Ex. 1 at 47-56; *cf. Jensen v. Shinn*, 609 F. Supp. 3d 789, 865 (D. Ariz. 2022) ("Defendants' insufficient hiring and retention of qualified staff create a substantial risk of serious harm . . . "); *Plata,* 2005 WL 2932253 at *3-9

12

(unconstitutional system of care evinced by lack of medical leadership and qualified medical staff); *Gomez Ruiz*, 2026 WL 851980, at *7.

Defendants' failure to provide an adequate health care system to the individuals in its custody violates the Fifth Amendment. *See Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) (listing elements). ***First***, conditions are the result of Defendants' "intentional decision[s]" to rapidly repopulate Adelanto and knowingly ratify its continued operation without sufficient healthcare staffing and a proper medical system. *Id.*

***Second***, deficient medical care systems expose *all* detained people to a substantial risk of serious harm. *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014) (citing *Brown v. Plata*, 563 U.S. 493, 531 (2011)) ("[I]nadequate health care in a prison system endangers every inmate.").

***Third***, Defendants "did not take reasonable available measures to abate [the] risk" of having a deficient healthcare system at Adelanto—instead, they have tolerated systemic and well-documented healthcare delivery failures. *See Roman*, 977 F.3d at 943 (failure to remedy conditions despite known health risks reflects "reckless disregard for detainee safety").

***Fourth***, Defendants' failure to ensure a functional healthcare system has caused—and without Court intervention, will continue to cause—unnecessary suffering, irreversible health impacts, and even death. Saadi Decl. ¶ 149. These circumstances necessarily violate the Fifth Amendment.

### 2.  Defendants' conduct violates the Rehabilitation Act.

Under the Rehabilitation Act, subclass Plaintiffs Mesrobian, L.T., Salazar-Garza, and the putative disability subclass must show that they: (1) are "qualified individual[s] with a disability; (2) [were] denied a reasonable accommodation that [they] [need] in order to enjoy meaningful access to the benefits of public services;" and (3) the program is conducted by an executive agency. *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 968-69 (9th Cir. 2021) (cleaned up); 29 U.S.C. § 794(a). Subclass

13

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

Plaintiffs and those they seek to represent have qualifying disabilities. L.T. Decl. ¶¶ 6, 9-11 (mobility issues from stroke); Mesrobian ¶ 9 (epilepsy); Salazar-Garza Decl. ¶ 21 (pain and ambulatory limitations from bunion). Defendants Department of Homeland Security ("DHS") and ICE are executive agencies. 29 U.S.C. § 794(a).

Adelanto does not have an adequate system to identify or accommodate disabilities. *See* Saadi Decl. ¶¶ 27, 56; Adams Decl. ¶¶ 150, 155-157. As a result, detained people are regularly denied the accommodations they require to participate in the fundamentals of life at Adelanto. *See supra* II.A.3. Defendants' failure to comply with their affirmative duty to "assess the potential accommodation needs of [detained people]" and provide reasonable accommodations violates § 504. *See Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (citations omitted) ("Title II and § 504 include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities."); *Armstrong v. Davis*, 275 F.3d 849, 859 (9th Cir. 2001) *overruled on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005) (upholding injunction requiring defendants "to identify . . . which prisoners have a disability, create and maintain a system for tracking disabled prisoners and parolees, and provide them with accommodations").

### 3. Defendants' Conduct Violates the Administrative Procedure Act.

Under the APA, a "court shall … hold unlawful and set aside agency action . . . found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . ." 5 U.S.C. § 706(2)(A). Plaintiffs challenge two agency actions: first, ICE's decision to rapidly repopulate Adelanto without adequate staff and medical systems, and second, ICE's decision to award Adelanto a "good" rating following an inadequate congressionally-mandated inspection—despite repeated notice of inhumane conditions.

14

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

### a.    Plaintiffs Challenge Final Agency Action.

Both agency actions that Plaintiffs challenge are final because they "mark[] the consummation of the agency's decision-making process," from which "legal consequences … flow." *Bennett v. Spear*, 520 U.S. 154, 156 (1997). ***First***, ICE's repopulation decision was consummated when ICE approved the massive influx in June 2025. ***Second***, by awarding Adelanto a "good" rating, ICE failed to identify and order corrective action, essentially ratifying the decision not to comply with its own standards at Adelanto.[11]    In both instances, the rights of detained people and obligations of Defendants flow from any agency action regarding PBNDS compliance. *See Torres*, 411 F. Supp. 3d at 1069 (holding ICE's failure to enforce its standards was final agency action where there was a decision not to enforce the terms of contract despite documented violations of the PBNDS).

### b.    Defendants' Actions Are Arbitrary and Capricious.

Defendants' decisions to repopulate Adelanto and fail to remedy deficiencies are both "arbitrary and capricious" under 5 U.S.C. § 706(2)(A). An agency's decision must be set aside where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Both actions Plaintiffs challenge fail this standard.

---

[11] *See* U.S. Dep't Homeland Sec. Office of the Inspector General, ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards, No. OIG-19-18 (Jan. 29, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf (noting inspection process is one method for ordering corrective action and obtaining standards compliance); https://www.dhs.gov/sites/default/files/2022-05/ICE%20-%20Office%20of%20Detention%20Oversight%20Inspections.pdf ((indicating ODO identifies deficiencies and corrective action in its Compliance Inspection Final Reports).

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

***First***, ICE's decision to rapidly repopulate Adelanto was made without any rational consideration of the facility's adequacy.  ICE's own inspection report later acknowledged that the "sudden influx [of detained people] may have contributed to the rise in deficiencies." *Id*. ¶ 45 n.57.  ICE "entirely failed to consider an important aspect of the problem"—the facility's unpreparedness to meet PBNDS standards—and the decision to repopulate at such scale and speed was therefore arbitrary and capricious.  *State Farm*, 463 U.S. at 43.

***Second***, ICE's "Good" rating is arbitrary and capricious because it "runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.  The PBNDS require timely medical care; hot, nutritious, and sanitary meals; potable water; outdoor recreation time; soap; and clean clothing, bedding, and linens; identifying, assessing, and accommodating disabilities; and not using "retaliatory" disciplinary action.  ECF 35-1 at 216, 232-35, 257, 328-30, 344-353, 370-71.  Yet ICE awarded Adelanto a "Good" rating notwithstanding documented and ongoing violations of its standards governing medical care, food service, drinking water, and disability accommodations.  That the facility still received a "Good" rating despite being on repeated notice of inhumane conditions defies rational explanation.

### c.    Defendants' Actions Violate the *Accardi* Doctrine.

"To establish an APA claim under the *Accardi* doctrine, Plaintiffs must show both that (1) the Government violated its own regulations, and (2) [that they] suffer substantial prejudice as a result of that violation." *Cmty. Legal Services in E. Palo Alto v. U.S. Dep't of Health & Human Servs.*, 780 F.Supp.3d 897, 921 (N.D. Cal. 2025).  Here, Defendants promulgated standards only to completely ignore them.  Whether it is Defendants' decision to repopulate the facility or their approval of its clearly deficient conditions, their departure from the PBNDS is precisely the sort of arbitrary, unexplained deviation from established internal standards that *Accardi* forbids.  *See Emami v. Nielsen*, 365 F.Supp.3d 1009, 1020 (N.D. Cal. 2019) (sustaining APA claim where agency disregarded its own established rules and

16

internal procedures in administering a federal program).  Defendants' violations have caused detained Plaintiffs significant prejudice, as they must live in inhumane, non-compliant conditions.  *Supra* II.A.

**B.      Plaintiffs have established that they are suffering irreparable harm.**

The deprivation of constitutional rights itself "unquestionably constitutes irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  Further, "subpar medical and psychiatric care in ICE detention facilities" constitute "irreparable harms" for detained immigrants like Plaintiffs.  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Mercado*, 800 F. Supp. 3d at 566-67; ECF 44-1 at 20–21 (injunction required to prevent harm to detained people and their families).    Likewise, Defendants' failure to accommodate disabilities causes "irreparable harm through access exclusion."  *Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 956 (N.D. Cal. 2015).

**C.      The balance of hardships and public interest favor an injunction.**

The third and fourth factors—the balance of hardships and the public interest—"merge when the Government is the opposing party."  *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025) (citation omitted).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002 (citation omitted).  And it is always in the public interest for the government to follow the law.  *Thakur v. Trump*, 787 F. Supp. 3d 955, 997 (N.D. Cal. 2025) *affirmed in part, reversed in part and remanded on other grounds by Thakur v. Trump,* No. 25-4249, 2026 WL 1466303 (9th Cir. May 26, 2026).   Moreover, those held in immigration detention "are members of the community, and their interests, too, must be included in assessing the public interest."  *See Tyson v. City of San Bernardino*, EDCV 23-015939 TJH, 2024 WL 3468832, at *8 (C.D. Cal. Jan. 12, 2024) (discussing people experiencing homelessness).

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

**D.      Plaintiffs Request Necessary Relief.**

Courts have consistently enjoined the conditions like those faced by Plaintiffs and the putative class, *see Pablo Sequen v. Albarran*, 2025 WL 3283283, at *23-*29 (N.D. Cal. Nov. 25, 2025) (granting preliminary injunction for comparable conditions); *Ruiz v. U.S. Immigr. & Customs Enf't.*, 2026 WL 391924, at *1 (N.D. Cal. Feb. 10, 2026) (same); *Mercado*, 800 F. Supp. 3d at 575-76 (same); *Gonzalez v. Noem*, 2025 WL 3170784, at *1 (N.D. Ill. Nov. 5, 2025) (same), and this Court should too.

**E.      A Preliminary Injunction Binding the Government Will Provide Relief to the Purported Classes.**

Courts in this Circuit regularly enter injunctions against the government to remedy conditions in privately operated detention facilities. *See Roman v. Wolf*, 5:20-cv-00768-TJH-PVC, Dkt. 55 (ordering the government, not GEO, to make changes at Adelanto), *aff'd in part*, 977 F.3d 935, 938 n.1 (9th Cir. 2020) (affirming conditions injunction at Adelanto against the government, where GEO was not a party); *Zepeda Rivas v. Jennings*, 465 F. Supp. 3d 1028, 1036–37 (N.D. Cal. 2020) (entering injunction against "ICE and all of its officers, agents, servants, employees" at GEO-run facility) aff'd, 845 F. App'x 530, 535 (9th Cir. 2021); *Gomez Ruiz,* 2026 WL 851980 (entering injunction against government, not contracted facility operator); *see also Armstrong*, 732 F.3d at 957 (affirming injunction against government, not contracted facility operator); *Jensen*, 609 F. Supp. 3d at 866, n. 36 & 912-13 (holding government liable for unconstitutional prison medical care provided by private contractor because government could compel sufficient staffing and "when [state director of prisons] believes his chosen vendor must provide health care in a different manner, he must enforce his rights under the vendor contract").

An injunction against the government provides a streamlined, effective remedy because it is the government that bears ultimate constitutional responsibility for the conditions in ICE detention. *West v. Atkins*, 487 U.S. 42, 56 (1988).  Even where, as

18

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

here, the government has engaged a contractor for facility operations, it maintains control over the policies and practices its contractor employs. *Infra* II.B. Moreover, it retains discretion to determine how to meet its constitutional obligations. *See Hoptowit*, 682 F.2d at 1253-54 ("[T]here is more than one way in which the State could provide necessary medical services."). For that reason, it is appropriate to order the government to comply with its constitutional obligations to provide a proper medical system, clean drinking water, and sufficient food. This leaves the government with the proper discretion to choose how to meet its obligations, and is why Plaintiffs propose that the government submit a plan and that the Court appoint an expert to help inform that plan and monitor compliance.

**F.     This Court should provisionally certify the proposed class and subclass and enter a facility-wide preliminary injunction.**

A district court can "certify[ ] a provisional class for purposes of [a] preliminary injunction." *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1040 (9th Cir. 2012). "Once a 'provisional' class is certified, a preliminary injunction may provide relief to all class members." *Id.* at 1043. Provisional class certification for purposes of preliminary relief is common in detention conditions cases, where unlawful facility-wide policies and practices threaten irreparable harm across the purported class. *See, e.g.*, *Roman v. Wolf*, 977 F.3d at 944 (affirming district court's grant of provisional certification); *Pablo Sequen*, 810 F. Supp. 3d at 1121 (concurrently provisionally certifying class and issuing facility-wide injunction); *Gomez Ruiz*, 2026 WL 851980, at *6 (concurrently provisionally certifying class and issuing facility-wide injunction); *Mercado v. Noem*, No. 25-cv-6568, 800 F. Supp. 3d 526, 559 (S.D.N.Y. Sept. 17, 2025) (same).

That is precisely the case here. Plaintiffs' claims are about Defendants' failure to implement proper, functioning systems to meet basic human needs and provide constitutionally adequate medical care—not occasional instances of staff misconduct. Because the lack of proper systems endangers the entire putative class, class-wide

19

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

relief is necessary.  *See Brown v. Plata*, 563 U.S. at 531 ("Even [detainees] with no present physical or mental illness may become afflicted, and all [detainees] are at risk so long as the [the government] continues to provide inadequate care.").  Plaintiffs urge the Court to provisionally certify the class.  *See* ECF 75, Plaintiffs' Renewed Motion for Class Certification.

**G.    The relief Plaintiffs seek is tailored to Defendants' constitutional and statutory violations.**

A "district court ha[s] broad equitable authority to grant provisional relief to remedy a likely constitutional violation."  *Roman v. Wolf*, 977 F.3d at 939.  An injunction "exceeds the scope of a district court's power only if it is 'aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation.'"  *Melendres v. Apario*, 784 F.3d 1254, 1265 (9th Cir. 2015) (citation omitted).    Here, each piece of relief Plaintiffs request is tailored to remedy constitutional and statutory violations.  First, the Constitution requires:

- **A functional system of healthcare.**  *See Doe v. Kelly,* 878 F.3d 710, 722 (9th Cir. 2017).
- **Sufficient, adequate drinking water.**  *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) ("water that is foul would be inadequate to maintain health.");
- **Sufficient, adequate food.** *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (food that is "'spoiled, tampered with, cold, raw, [and failed] to meet a balanced nutritional level' . . .  would be inadequate to maintain health.")
- **Basic sanitation and access to hygiene supplies.** *See Pablo Sequen*, 810 F. Supp. 3d at 1130 (detained people must have "clean cells, hygiene supplies like toothbrushes, opportunities to wash their bodies, and clean clothing").

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

Second, the Fifth Amendment prohibits punishment of people in civil detention with conditions that "significantly exceed . . . the inherent discomforts of confinement," *Demery*, 378 F.3d at 1030 (citation omitted), such as:

- **Excessive headcounts that restrict movement**.  *Cf.* Adams Decl. ¶¶ 109-110 (counts in prison typically occur out of cell and be cleared within 15-20 minutes);

- **Marginal access to outdoors**.  *Cf. id.* ¶¶ 116-17 (in prison, outdoor yard is typically open daily from breakfast to dinner time, then again until 9:00 pm);

- **Lack of reasonable privacy for toileting and showering.**  *Cf. id.* ¶¶ 85-90 (prisons provide privacy screens appropriate for toilets and showers);

- **Restrictive visitation policies**.  *Cf. id.* ¶¶ 98-99 (prisons do not limit visitation length or appropriate physical contact during visitation);

- **Imposition of solitary confinement as punishment for peaceful protest**.  *Cf. id.* ¶¶ 144, 146 (prisons apply disciplinary segregation only after hearing).

Finally, the Rehabilitation Act requires:

- **A system for identifying disabilities**. *See Armstrong v. Davis*, 275 F.3d 849, 859 (9th Cir. 2001).

- **Reasonable accommodations** for people with qualifying disabilities. *Id.*

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Plaintiffs' Renewed Motion for Preliminary Injunction, filed herewith.

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

Dated:  June 1, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:   */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim

PUBLIC COUNSEL

By:   */s/ Rebecca Brown*
Rebecca Brown
Sophia Wrench
Amelia Piazza
Elizabeth Hercules-Paez

IMMIGRANT DEFENDERS LAW CENTER

By:   */s/ Alvaro M. Huerta*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By:   */s/ Carl Bergquist*
Carl Bergquist
Adam Reese

22

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx

# WORD COUNT CERTIFICATE

The undersigned counsel of record for Plaintiffs certified that this Memorandum of Points and Authorities contains 6,568 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 1, 2026                    Respectfully Submitted,

                                        WILLKIE FARR & GALLAGHER LLP

                                        By:  */s/ Nicholas Reddick*
                                             Nicholas Reddick
                                             Stephen Henrick
                                             Alyxandra Vernon
                                             Jacob Karim

MEM. ISO PLAINTIFFS' RENEWED MOT. FOR PRELIMINARY INJUNCTION
Case No. 5:26-cv-00322-SSS-SPx