PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br><br>Defendants. | Case No. 5:26-cv-00322-SSS-SPx<br><br>**DECLARATION OF AMANDA SCHUFT IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>**CLASS ACTION** |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

-i-

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

## DECLARATION OF AMANDA SCHUFT IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

I, Amanda Schuft, make the following statements on behalf of myself and Immigrant Defenders Law Center ("ImmDef") in my capacity as Director of Legal Services at ImmDef.

1.    My name is Amanda Schuft and I am Director of Legal Services at ImmDef, where I have worked for ten years.  I make this declaration based on personal knowledge and a review of records related to my position.

2.    ImmDef is a non-profit organization headquartered in Los Angeles, California, with additional offices in Riverside, Santa Ana, and San Diego.  It is the largest removal defense nonprofit in Southern California.  ImmDef's mission and vision is that no immigrant should have to face deportation proceedings alone.  We believe that every person facing removal deserves to have zealous, competent counsel at their side. In 2025, ImmDef represented nearly 4,000 noncitizens in their removal proceedings, and provided other legal services to approximately 33,000 additional noncitizens. We provide pro bono representation and other legal services to unaccompanied minor children, indigent detained adults, individuals deemed mentally incompetent to represent themselves, deported veterans, and families separated at the border, among others.

3.    ImmDef attorneys provide full-scope legal representation to our clients, including those who are detained at the Adelanto ICE Processing Center ("Adelanto").  This includes legal defense in their immigration removal proceedings, bond hearings, habeas petitions in federal district court, and other forms of immigration relief, such as applications before the United States Citizenship and Immigration Services ("USCIS").  ImmDef also provides legal representation to the most vulnerable people in ICE detention through the National Qualified Representative Program ("NQRP"), which entitles noncitizens with serious mental disorders that render them unable to represent themselves to court-appointed counsel.

- 1 -

In 2024, ImmDef launched the Rapid Response Program to respond to local ICE enforcements and raids. This team coordinates real-time responses to enforcement actions and helps detainees' loved ones locate them after they have been taken by ICE.

4.    Since the current administration ramped up its sweeping ICE raids in the Los Angeles area in June 2025, ImmDef attorneys have witnessed an abrupt increase in the number of individuals detained at Adelanto. The ImmDef Rapid Response team has fielded over 3,600 calls from individuals whose loved ones have disappeared after being taken by ICE, many of whom have been taken to Adelanto. From June 2025 to present, ImmDef attorneys have visited over seventy people detained at Adelanto to provide legal consultations and help connect them to full scope representation.

5.    Many ImmDef clients have been denied the opportunity to have a bond hearing or, when they are granted a hearing, they have been denied bond in an unprecedented manner based on arbitrary factors.  For example, Immigration Judges have recently denied bond to ImmDef clients after finding that working without authorization constitutes a flight risk, whereas in the past it was viewed as gainful employment to financially support a family, which has traditionally been considered a positive factor *mitigating* flight risk.  *See Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). ImmDef clients are also denied bond based on minor criminal history.

6.    ImmDef attorneys have represented clients detained at Adelanto for years.  However, the facility was largely empty before June 2025.  Since the current administration began ramping up its immigration detention and deportation efforts in June 2025, ImmDef attorneys have been on the ground at Adelanto visiting both current and prospective clients multiple times a week. ImmDef attorneys have witnessed the large influx of detained people at Adelanto and the inhumane conditions detained people face.

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

**I.    ImmDef Clients Lack Basic Food, Water, Clothing, and Living Arrangements at Adelanto**

7.    ImmDef's clients have been suffering alarming conditions at Adelanto for years, but since the increase in ICE arrests and detentions starting in June 2025, conditions have deteriorated exponentially. Detained people are subjected to harsh living conditions and are denied basic rights like adequate food, clean water, clean and warm clothing, and appropriate sleeping arrangements.

8.    The water from the faucets sometimes will come out brown, especially after it has been raining. The showers at Adelanto are notoriously dirty, and the lack of hygiene within the facility extends to food preparation. Detainees have found hair, bones, plastic, and worms in their food.

9.    Adelanto constantly runs the air conditioning, keeping the facility freezing cold, and does not provide detained people with sufficiently warm clothing. Detained people only receive a thin sweatshirt, a t-shirt, and sweatpants. Family members are not allowed to bring warmer clothes to detained people during visits, forcing detainees to spend money at the commissary to buy necessary clothing to stay warm. Detainees are allowed to spend $100 per week at commissary, and often spend their money buying clothes like sweatshirts, sweatpants, or thermals so that they can stay warm in the cold of the facility. Detainees have been stuck in the same outfits for days without the opportunity to launder their clothes.

10.    Detainees are also subject to strict and arbitrary sleeping arrangements. For example, older detainees who cannot easily move around are often assigned to sleep in top bunks. When other detainees who are more physically agile and assigned to a lower bunk attempt to swap beds, they are disciplined.  Adelanto detainees protested because of this, and detainees reported that they were subsequently punished, including with tear gas.

- 3 -
DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

## II.    ImmDef Clients Suffer from Medical Neglect at Adelanto

11.    At the start of the ICE raids in June 2025, Adelanto did not have the infrastructure to provide necessary medical care for the rapid influx of detainees in its facility.  Most detainees did not receive their medication consistently for around one month.  To date, Adelanto lacks an adequate system for detainees to request and receive the medical care they need. The examples of medical neglect experienced by prospective and current ImmDef clients are many.

12.    Another ImmDef client J.D., has been detained at Adelanto since January 2023 and has suffered stomach pain, indigestion, and chronic diarrhea up to eight times a day since then. While detained at Adelanto, doctors have given him conflicting information and diagnoses. Adelanto medical staff dismissed his symptoms as irritable bowel syndrome and blamed his physical symptoms on his unrelated mental illness until October 2024. In October 2024, Adelanto doctors diagnosed him with pancreatic insufficiency and prescribed him the medication Creon. In March 2025, he went to a gastroenterologist at an outside medical facility, and there, the doctor told him to stop taking Creon. That doctor did not have this individual's medical records because ICE did not provide them. He stopped taking Creon but, a couple of days later, an Adelanto medical staff member told him to start taking it again. He did not want to start taking the Creon again because he did not know which doctor to believe. He started taking Creon again, until around the end of 2025 or early 2026, when another doctor told him to stop taking Creon. Throughout his time at Adelanto, he has consistently made medical requests, including over twenty requests that have gone unanswered. This ImmDef client has suffered through pain and confusion for years due to Adelanto's inadequate medical care.

13.    One ImmDef attorney conducted a pre-representation consultation with a detained woman at Adelanto who was prescribed medication for high blood pressure. Prior to being detained, she had not taken that medication, so she did not feel comfortable taking it now. When she declined to take the medication, the medical

- 4 -

provider told her that she would have her deported if she refused to take the medication. The woman reported that she started taking the medication out of fear of being deported and separated from her child who is currently in ORR custody. One day, the number of pills she was given increased from one pill to three pills. She was not told why. She is too scared to ask for an explanation and fears that she must take the medication given the prior threat of deportation.

14.   Detainees at Adelanto suffer immensely because of inconsistent access to their medications and a lack of accommodations for their disabilities. Detained people who were getting treatment for serious medical conditions before they were detained have had their treatment abruptly stopped when they arrive at Adelanto.

15.   On or around February 9, 2026, ImmDef client L.L. informed his ImmDef attorney that Adelanto was no longer giving him Cogentin, a medication that prevents his muscles from stiffening. Since then, the client's condition began deteriorating and he was unable to stand up straight or walk without hunching over.  On or around February 22, 2026, he presented to medical staff at Adelanto complaining of chest pains. On February 25, 2026, he was hospitalized due to chest pains. He was discharged and returned to Adelanto on February 28, 2026, and was advised to report any new or worsening symptoms. His ImmDef attorney was never informed of this hospitalization.

16.   On March 3, 2026, L.L. was brought to his immigration court hearing in a wheelchair. His condition was so bad that the officer who brought the client into the courtroom stated that he needed to be taken to medical and could not proceed at the hearing, causing the client to miss his hearing. After inquiring with a deportation officer, his ImmDef attorney was informed only that he was receiving medical care at a hospital. However, medical reports indicate that he was hospitalized due to suspected sepsis. He was returned to Adelanto on March 8, 2026. On March 10, 2026, he presented to medical staff at Adelanto complaining of shortness of breath and chest

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

pain. He was taken to an emergency center on the same day and assessed. He was discharged and returned to Adelanto that same day. On March 11, he again presented to medical staff at Adelanto complaining of shortness of breath and chest pain. He was hospitalized the same day, and he was discharged and returned to Adelanto on March 12, 2026.  After being returned to Adelanto, he presented to medical staff again, and again complained of chest pain and shortness of breath. He was hospitalized the same day due to respiratory failure. He was not discharged and returned to Adelanto until March 18, 2026.  His ImmDef attorney was never informed of any of these hospitalizations. On April 11, 2026, his ImmDef attorney was informed that he would be transferred to the port Isabel Detention Center that day to receive a "higher level of care."

17.    In December 2025, ImmDef client N.V.M. was transferred to ICE custody from state prison.  N.V.M. was not allowed to bring any of his belongings, including his cane, walker, wheelchair, or medications needed to treat his diabetes. N.V.M requires a special diet that was not respected, and that he must eat immediately after taking insulin, otherwise his blood sugar can drop to dangerous levels.  Between December 2025 and April 2026, N.V.M. was often administered his insulin around 5:00 PM and then given food around 5:30 PM that does not comply with his special diet.  But, nearly every day, N.V.M. had to send back his food and request a meal that complied with his special diet.  However, a population count would start around 6:30 PM, causing even more delay between when N.V.M. was administered his insulin and when he actually received his meal.  During this period of time, N.V.M. did not receive his food until around 8:00 PM.  This nearly three-hour gap between the administration of his insulin and when he received his meal was dangerous to his health.  In the last month, Adelanto has complied with N.V.M.'s required diet but now does not administer his insulin until several hours after he eats.  Just last week, Adelanto personnel forgot to administer his insulin altogether and other detainees gave N.V.M. candy to help him control his blood sugar.

- 6 -

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

18. Detainees often get rashes, and staph infections have run rampant across the facility.  ImmDef client A.A. was bitten on his hand by a poisonous spider, believed to be a desert recluse, while showering at Adelanto. His hand continued to swell for days until he was eventually taken to an offsite hospital and received surgery. He did not receive adequate follow-up care and was in constant pain for weeks. A.A. was concerned that his finger was infected and that he would lose his finger.

19. A few days after ImmDef client J.G. arrived at Adelanto, he started getting headaches and a bump on the top of his head that he had believed to be a mole became painful and hurt to the touch. He consistently complained about his pain, but the medical staff at Adelanto only gave him Tylenol. The medical staff at Adelanto then shaved his head, and when they did, they cut the bump.

20. On or around January 19, 2026, J.G. was taken to Victor Valley Global Medical Center where he received an MRI and was diagnosed with a severe staph infection. After conducting the MRI, doctors told this client that the bump on his head could become cancerous and they would need to operate. A medical student performed the operation. J.G. was supposed to return to the hospital eight days after his procedure for a follow-up appointment, but he was never taken back to the hospital for his follow-up.

21. On or around February 6, 2026, J.G. started experiencing more serious symptoms, including severe headaches, blurry vision, and vomiting. On February 11, 2026, he finished his prescription medication and never received a refill. He filed at least eight medical requests to see a doctor.  J.G. was worried that his infection would return and get worse because the wound was open and the facilities at Adelanto are unsanitary. He also developed fungal blisters on his foot because of the mold in the showers and started having trouble walking. He had no choice but to use the facilities, despite being terrified of exposing his head wound to these unsanitary conditions. Officers accused him of being mentally ill and having suicidal ideation because of his

- 7 -

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

requests to return to the hospital. A psychiatrist at Adelanto prescribed him medication for anxiety, but he was wary of taking the medication based on the negligent medical care he has received since being detained. He also began experiencing hearing and vision loss, which he had never experienced before being detained at Adelanto. On March 1, 2026, he was once again admitted to Victor Valley Global Medical Center, where his fear of infection was confirmed as reality. The doctor told him that they had to remove his stitches, re-do the operation they had previously done, and stitch him back up. The doctor also told him that if they had waited even a week longer to bring him to the hospital, he could have died from sepsis. On or around March 12, 2026 he was released from the hospital and taken back to Adelanto. The doctor at the hospital told him that the medical staff at Adelanto would need to clean his wound out every single day. However, the medical staff did not follow these orders and skipped the required cleaning several times, despite his repeated requests to Medical to see him. On April 30, 2026, he was released form ICE custody after filing a habeas petition.

22. Detainees suffering from mental health crises also do not receive adequate care. When a detainee expresses that they are feeling suicidal or have tendencies to self-harm, rather than provide mental health treatment, Adelanto staff may place these individuals in solitary confinement, exacerbating the mental health issues to which the punitive detention conditions have already contributed.

23. For example, ImmDef client S.S. suffers from severe PTSD and schizophrenia. Since his detention at Adelanto, he has called his attorney numerous times stating that he either cannot see his psychiatrist or that the medications he is being given are not helping at all. He has also experienced delays in getting his prescriptions refilled after they've run out.

24. Alternatively, detainees who want to be housed in administrative segregation for their own safety may go ignored. In late 2025, one ImmDef client expressed fear that other detainees were plotting to take his life. This client was afraid

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

to tell Adelanto staff about his fear because he did not want other detainees to see him talking to staff and think he was reporting them. His ImmDef attorney informed Adelanto staff that he feared of his life and the attorney was told he would be pulled aside and taken out of general population for his safety if needed. However, no action was taken. The next day, his ImmDef attorney called back and repeated the request that he be removed from the general population because of a threat to his life. She was told that when a detained person expresses a fear of danger to their life, it must be addressed within 24 hours according to policy. However, by the time this client was finally pulled aside and placed in administrative segregation for his own safety, it had been more than twenty-four hours since his attorney first reported his fear. Until he was transferred to administrative segregation, he was in extreme distress that he would be imminently attacked.

**III.  Fear of Retaliation**

25.  Detainees who have come forth and offered to share information about conditions at Adelanto are now fearful of retaliation from Adelanto staff. Staff have been sleuthing amongst the detainees, attempting to determine which unnamed plaintiffs have been assisting with litigation efforts to improve conditions at Adelanto. Detainees are afraid to speak freely on the phone or even in person with attorneys for fear of Adelanto staff listening in or overhearing. The attorney meeting rooms at Adelanto are not soundproof, making it all the more difficult to ensure confidentiality and ease detainees' fears of retaliation.

**IV.  Conditions at Adelanto Impede Attorney Access**

26.  The lack of medical care and communication around detainees' care impedes attorney access and the ability to provide zealous representation. ImmDef attorneys have appeared in immigration court only to be told that their client is unavailable because they have been taken to an offsite hospital, without any notice. It is not until later, once the detainee has returned and informed their counsel of what

- 9 -

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx

happened, that the attorneys know what happened to their client and where they were taken.

27.    Other times, detainees are unable to attend court because they are under quarantine.  In January 2026, an entire unit was under quarantine, purportedly because of COVID, and the entire unit was therefore not taken to court. One ImmDef client was a part of this quarantine.  His attorney was not informed of and did not learn that her client was quarantined until she arrived at the court and the judge let her know. Adelanto staff do not inform detainees' immigration attorneys when their clients are unavailable because of illness or offsite medical appointments.  Attorneys will arrive at Adelanto or appear virtually just to find out that their client is not there. This can result in months' long continuances before the immigration court, delaying detainees' legal cases and prolonging their detention. This difficulty and unpredictability in meeting with clients also delays attorneys from preparing for hearings and meeting filing deadlines.

28.    Adelanto also prejudices ImmDef clients by delaying requests for medical records or by withholding medical records entirely. Requests for medical records are sent via email and usually require multiple follow-ups before receiving a response. One ImmDef paralegal requested medical records for a client in September 2025, and despite following up, has still not received those medical records. These delays harm our clients because they prevent attorneys from sending the medical records to psychologists to review for their psychological evaluations. In some instances, the lag from requesting medical records delays our clients' immigration court trial dates.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 28, 2026 in Portland, Oregon

_____
Amanda Schuft

- 10 -

DECLARATION OF AMANDA SCHUFT
Case No. 5:26-cv-00322-SSS-SPx