TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
PUSHKAL MISHRA (Cal. Bar No. 298695)
Special Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (714) 338-3503
E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | No. 5:26-cv-00322-SSS-SPx<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: July 10, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2<br><br>Honorable Sunshine Suzanne Sykes<br>United States District Judge |

# NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on July 10, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Sunshine Suzanne Sykes, U.S. District Judge, located at the George E. Brown, Jr. Federal Building and U.S. Courthouse, 3470 Twelfth Street, Riverside, California 92501, Defendants will and hereby do move this Court to enter an order dismissing the First Amended Complaint in its entirety.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that: (1) this Court lacks jurisdiction over this case; (2) Plaintiffs fail to state a claim upon which relief can be granted; (3) Plaintiffs' claims impermissibly intrude on the Executive's plenary authority over immigration detention; and (4) the First Amended Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the June 4, 2026 Declaration of Rosa Quevedo, filed concurrently herewith; the pleadings (and exhibits the First Amended Complaint references, incorporates, or relies on), files, and records in this action; and such further evidence and/or argument as may be presented at or before the hearing on this Motion. A proposed order has been included herewith.

This Motion is made following a pre-filing conference of counsel held on May 28, 2026, in compliance with Local Rule 7-3 and Section VII.A of the Court's Civil Standing Order, ECF 25. *See* Decl. of Pushkal Mishra in Support of Defendants' Motion to Dismiss the First Amended Complaint re: Pre-Filing Conference Pursuant to Local Rule 7-3.

# TABLE OF CONTENTS

DESCRIPTION PAGE


I. INTRODUCTION ... 1
II. BACKGROUND ... 3
III. LEGAL STANDARD ... 3
IV. ARGUMENT ... 4
A. Plaintiffs' Impermissible Shotgun Pleading Fails Rule 8 ... 4
B. Plaintiffs Cannot Enforce the ICE-GEO Detention Contract ... 5
C. Plaintiffs Have Sued the Wrong Defendants ... 6
D. Plaintiffs Lack Standing for Prospective Injunctive Relief ... 8
1. Plaintiffs Lack Standing ... 8
2. CHIRLA Lacks Associational or Organizational Standing ... 13
E. Plaintiffs Fail to State a Fifth Amendment Claim ... 14
F. Plaintiffs Fail to State a Rehabilitation Act Claim ... 15
G. Plaintiffs Failed to Exhaust Available Administrative Remedies ... 16
H. Plaintiffs Fail to State an APA Claim ... 17
1. APA Review Is Precluded by Statute ... 17
2. Plaintiffs Fail to Allege a Final Agency Action ... 18
3. Plaintiffs Fail to Allege Arbitrary-and-Capricious or Unlawful Action ... 18
I. Leave to Amend Should Be Denied as Futile ... 19
V. CONCLUSION ... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahn v. GEO Grp., Inc.*,
2024 WL 1258428 (E.D. Cal. Mar. 25, 2024) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 8, 9

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .......... 3

*Bell v. Hood*,
327 U.S. 678 (1946) .......... 5

*Bell v. Wolfish*,
441 U.S. 520 (1979) .......... 14

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 18

*Bonanno v. Thomas*,
309 F.2d 320 (9th Cir. 1962) .......... 19

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) .......... 5

*Castle v. Eurofresh, Inc.*,
731 F.3d 901 (9th Cir. 2013) .......... 15, 16

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) .......... 18

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .......... 10

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020) .......... 19

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 13

*Fraihat v. U.S. Immigration & Customs Enforcement*,
16 F.4th 613 (9th Cir. 2021) .......... 8, 14, 15

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) .......... 12

*GEO Grp., Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) (en banc) .......... 1, 4, 8

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 4

*Gordon v. Cnty. of Orange*,
888 F.3d 1118 (9th Cir. 2018) .......... 15

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 17, 18

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) .......... 3

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 13, 14

*Immigration Center for Women & Children v. Noem*,
No. 25-09848, 2026 WL 1455004 (C.D. Cal. May 20, 2026) .......... 14

*J.L. v. Social Security Administration*,
971 F.2d 260 (9th Cir. 1992) .......... 17

*Jones v. Blanas*,
393 F.3d 918 (9th Cir. 2004) .......... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 5

*Lincoln v. Vigil*,
508 U.S. 182 (1993) .......... 17

*Logue v. United States*,
412 U.S. 521 (1973) .......... 1, 6, 7, 8, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 9, 10, 11

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 18

*McCarthy v. Madigan*,
503 U.S. 140 (1992) .......... 16

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) .......... 4

*McKart v. United States*,
395 U.S. 185 (1969) .......... 16

*Mesrobian Szvak v. Warden*,
No. 5:25-cv-02629-MAA (C.D. Cal. May 27, 2026) .......... 13

*Minneci v. Pollard*,
565 U.S. 118 (2012) .......... 7

*Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 19

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 10, 11

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 18

*Peralta v. Dillard*,
744 F.3d 1076 (9th Cir. 2014) (en banc) .......... 14, 15

*Puga v. Chertoff*,
488 F.3d 812 (9th Cir. 2007) .......... 16

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) .......... 19

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) .......... 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 3, 14

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 19

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 2, 18

*Trump v. New York*,
592 U.S. 125 (2020) .......... 9, 12

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*,
477 U.S. 597 (1986) .......... 15

*United States v. Edwards*,
415 U.S. 800 (1974) .......... 7

*United States v. Orleans*,
425 U.S. 807 (1976) .......... 1, 6, 7, 8

*Village of Bald Head Island v. U.S. Army Corps of Eng'rs*,
714 F.3d 186 (4th Cir. 2013) .......... 18

*Woodford v. Ngo*,
548 U.S. 81 (2006) .......... 16

*Xirum v. U.S. Immigr. & Customs Enf't*,
No. 22-00801, 2023 WL 2683112 (S.D. Ind. Mar. 29, 2023) .......... 5, 6

*Xirum v. U.S. Immigr. & Customs Enf't*,
No. 22-00801, 2024 WL 3718145 (S.D. Ind. Aug. 8, 2024) .......... 18

**Federal Statutes**

5 U.S.C. § 551 .......... 18

5 U.S.C. § 701 .......... 17

6 U.S.C. § 202(5) .......... 17

8 U.S.C. § 1103 .......... 5

8 U.S.C. § 1225 .......... 12

8 U.S.C. § 1226 .......... 12

8 U.S.C. § 1231 .......... 5, 6, 17

8 U.S.C. § 1252 .......... 11, 12, 14, 20

**Federal Regulations**

6 C.F.R. § 15.70 .......... 16, 17

**Federal Rules**

Fed. R. Civ. P. 8 .......... 4

Fed. R. Civ. P. 12 .......... 3, 5, 14

# I. INTRODUCTION

The Supreme Court has long held that federal supervision—even a contractual duty to follow the Government's precise rules, regulations, or standards of treatment "governing the care and custody of persons committed"—does not turn a contractor's operations into the federal government's, because "the day-to-day operations of the contractor's facilities" remain "in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." *Logue v. United States*, 412 U.S. 521, 529-30 (1973); *see also United States v. Orleans*, 425 U.S. 807, 815-16 (1976) (holding that "specific and precise condition[] to implement federal objectives . . . do[es] not convert the acts of entrepreneurs . . . into federal governmental acts"). The Ninth Circuit, sitting en banc, has also held the same: "Private contractors do not stand on the same footing as the federal government," recognizing that "ICE has decided to rely almost exclusively on privately owned and operated facilities" run by the GEO Group. *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 750-52 (9th Cir. 2022) (en banc). And this Court has told Plaintiffs the same thing—twice. At the preliminary-injunction hearing, the Court observed that "GEO Group is essentially the group managing the day-to-day operations of the Adelanto facility through the contract that it has with the Federal Government," and asked how an injunction could be enforced "against GEO Group if they're not a party to the proceeding." Hr'g Tr. 5:12-15, 5:19-21 (Apr. 28, 2026), ECF 68. Denying a preliminary injunction, the Court then noted that "Plaintiffs have not named GEO Group as a defendant," ECF 70 at 9, and directed that "[a]ny amended complaint . . . shall address the concerns raised by the Court at the hearing." *Id.* at 13 n.3.

Yet, in their dogmatic and blind pursuit of broad-based injunctive relief against the Government rather than the operating group and its personnel, Plaintiffs pay no heed to the foregoing—what the Supreme Court, the Ninth Circuit, and indeed this Court have held about who runs and controls Adelanto: ICE contracts with GEO, but it is GEO that runs and operates the facility on a day-to-day basis. Their First Amended Complaint belatedly relabels the landscape—now alleging in a swift U-turn that "Defendants exercise

pervasive operational control over Adelanto" (FAC ¶ 58)—while still pointedly declining to name GEO, the contractor that actually owns, staffs, and operates the facility.

The First Amended Complaint (FAC) also fails to coherently allege a theory underlying Plaintiffs' legal claim. The Court need not accept as true inconsistent or contradictory allegations. *See, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). Among other things, Plaintiffs now label GEO's facility staff as "agents of Defendant ICE" (FAC ¶ 26)—a legal conclusion—yet when alleging actual harm, they repeatedly attribute the complained-of conduct to "Adelanto staff" (*see, e.g.*, *id.* ¶¶ 7, 15-17, 60, 71, 88, 97, 103, 116, 127, 154, 185), not to any federal official. *See also id.* ("Taken together, . . . Adelanto staff's behavior toward detained individuals . . . indicate that conditions are punitive"); *id.* ¶ 88 (blaming staffing shortages on facility administration); ECF 13-2 (L.T. Declaration) ¶ 18 ("Adelanto staff also decide where in the facility I am housed, when I can seek medical treatment, and what medical treatment I can have."). Plaintiffs make no effort to distinguish the federal government from the employees of its independent contractor, GEO; the FAC indiscriminately refers to them throughout its pleading. Defendants are entitled to a pleading that puts them on notice as to their own actions, rather than vaguely attributing all acts of others to them—particularly of *absent* others.

Plaintiffs challenge conditions at Adelanto—a facility that GEO owns, operates, and administers. Yet Plaintiffs have sued federal officials and federal agencies, demanding that this Court conscript the Executive Branch into performing the role of a day-to-day facility operator and superintending, by injunction, compliance with contractual provisions to which Plaintiffs are not parties—and where the contracted party is not even a defendant. Plaintiffs' calculated decision to omit GEO from this suit because they view suing the entity with operational control as too hard for them to win against (*see, e.g.*, Hr'g Tr. 27:23-24) is not incidental; it is fatal. Plaintiffs have now amended once, and the FAC changes none of this: It still omits GEO, attributes GEO's operational conduct to the

federal Defendants, and asks this Court to operate, by injunction, a detention facility that ICE does not run. The First Amended Complaint should be dismissed in its entirety.

## II. BACKGROUND

Plaintiffs—L.T., J.M., Sevak Mesrobian, and Jose Mauro Salazar-Garza (together, "Individual Plaintiffs"); and Coalition for Humane Immigrant Rights ("CHIRLA")—have sued the following Defendants: U.S. Department of Homeland Security ("DHS"); Markwayne Mullin, DHS's Secretary; DHS's component agency U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, ICE's Acting Director; and Jaime Rios, Acting Director of ICE's Enforcement and Removal Operations ("ERO")'s Los Angeles Field Office. *See generally* FAC ¶¶ 14-30. Plaintiffs filed this action in January 2026 and moved for a preliminary injunction on March 6, 2026. ECF 1, 34. On April 9, 2026, Plaintiffs moved to certify a class. ECF 57. Following the April 28, 2026 hearing, the Court denied the preliminary injunction motion without prejudice, dismissed CHIRLA for lack of standing, granted Plaintiffs leave to amend, and denied the then-pending motion to dismiss as moot. ECF 70 at 8-9, 12-13. On May 22, 2026, Plaintiffs filed the FAC. ECF 74. They then also renewed both motions. ECF 75, 77.

## III. LEGAL STANDARD

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

A Rule 12(b)(6) attack warrants dismissal where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive dismissal only if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

**IV. ARGUMENT**

**A. Plaintiffs' Impermissible Shotgun Pleading Fails Rule 8**

The Ninth Circuit has squarely rejected shotgun pleading. *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026). "Shotgun pleading undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." *Id.* at 1290; *see also id.* (making clear that shotgun pleadings "fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis").

The First Amended Complaint is a textbook shotgun pleading. Every count "incorporates by reference" all preceding paragraphs, sweeping a vast array of unrelated factual allegations into every legal theory and leaving Defendants to guess which facts support which claim. *See* FAC ¶¶ 176, 190, 195, 205 (each count beginning: "Plaintiffs repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein."). That is the paradigmatic defect *McHenry* condemned. *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996); *Gibson*, 165 F.4th at 1288 (exemplary type one).

The First Amended Complaint also persistently and deliberately "lumps" ICE and GEO together, attributing operational acts and omissions of different entities under the undifferentiated label of "Defendants," *e.g.*, FAC ¶¶ 67, 86, 98, 114-15, 139, 151, 180, 192-93, 199, despite the fundamental legal distinction this Court must draw between the federal Executive (which contracts for detention and exercises regulatory oversight) and the private contractor (which physically operates the facility day-to-day), *Newsom*, 50 F.4th at 750-53. *Compare id.* ¶ 32 (alleging that "ICE contracts with GEO to *run* Adelanto and *detain* immigrants there" (emphases added)), *with id.* ¶ 197 ("ICE *operates* a civil immigration detention program at . . . Adelanto" (emphasis added)).

Nor have Plaintiffs cured these defects, given leave and a full opportunity to amend. A plaintiff who is granted leave to amend and then re-files the same shotgun pleading

confirms that the defect is structural, not inadvertent—and the remedy for a structural pleading defect, twice committed, is not a third attempt—but dismissal.

### B. Plaintiffs Cannot Enforce the ICE-GEO Detention Contract

As a matter of substantive federal law, Plaintiffs have no cause of action or party standing to enforce ICE's contract with GEO. The absence of a private right of action—under a third-party-beneficiary theory—is a merits defect that is properly resolved on a motion to dismiss for failure to state a claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (whether a plaintiff "has a cause of action under the statute" is a 12(b)(6) merits question, not a jurisdictional one); *Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding that whether a complaint states a cause of action "must be decided after and not before the court has assumed jurisdiction").

Government contracts are presumed not to confer enforceable rights on third parties. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016) ("A third party that wishes to sue under a government contract must demonstrate that it is an intended beneficiary of the contract, rather than merely an incidental one."). That principle squarely defeats Plaintiffs' legal theory and jurisdiction here. The INA and the ICE detention-contract scheme do not create enforceable rights for detainees. *See, e.g.*, *Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00801, 2023 WL 2683112, at *19-21 (S.D. Ind. Mar. 29, 2023). In *Xirum*, the court explained that 8 U.S.C. § 1103(a)(11) and the governing detention contracts "d[o] not function to benefit detainees," and that detainee-plaintiffs cannot enforce those contracts. *Id.* So too here. Indeed, Section 1231(g) directs the Attorney General to "arrange for appropriate places of detention" for removable aliens; its text and structure speak to Executive resource allocation and contracting authority, not to detainee welfare. 8 U.S.C. § 1231(g)(1)-(2). Section 1231(h) removes any doubt by expressly denying that the statute creates "any substantive or procedural right or benefit" enforceable by "any party." *Id.* § 1231(h).

Plaintiffs cannot disclaim the contract as a source of enforceable rights while simultaneously invoking it as the engine of their standing theory, especially redressability.

ECF 66 at 5; *cf.* Hr'g Tr. 5:12-15. Both theories depend on attributing GEO's contractual obligations to ICE, and *Caltex* and § 1231(h) foreclose both. Plaintiffs' rejoinder—that *Xirum* should be read to have sustained an APA "abdication" claim, ECF 66 at 5—does not help them. *Xirum* dismissed the third-party-beneficiary theory outright, *Xirum*, 2023 WL 2683112, at *19-21, and Plaintiffs' counsel has since disclaimed any abdication theory altogether. *See* Hr'g Tr. 24:10-11.

### C. Plaintiffs Have Sued the Wrong Defendants

Plaintiffs have sued the wrong defendants. Operational control over the conditions Plaintiffs actually challenge—medication timing, housing assignments, pill-call routines, shower access, intake procedures, and day-to-day staffing—rests with GEO, the private contractor that operates Adelanto, not with the federal Defendants named in the First Amended Complaint. ICE contracts for detention capacity and exercises regulatory oversight; it does not itself dispense medication, assign bunks, or staff housing units. Under settled law, a federal principal is not derivatively liable for the operational acts of an independent contractor absent day-to-day control. *Logue*, 412 U.S. at 527-32; *Orleans*, 425 U.S. at 813-16.

The Supreme Court reinforced that common-law framework in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), articulating the principle for allocating responsibility when the challenge (and the requested relief) is directed at physical confinement rather than some abstract legal relationship. *Padilla* held that "the immediate custodian, not a supervisory official who exercises legal control" is the proper party to answer when a detainee challenges his "present physical confinement." *Id.* at 435, 439; *see also id.* at 437, 439 (rejecting the "legal reality of control" theory). The question is who has "day-to-day control" over the conditions at issue, *id.* at 439-40—not who holds ultimate legal authority over the detention program at large.

The physical-versus-legal-custody distinction is not unique to habeas. The Supreme Court has applied the same logic in the tort context, holding that the United States is not answerable for the day-to-day operational acts of a contractor running a detention facility;

responsibility instead lies with the entity in physical control. *Logue*, 412 U.S. at 528-30; *Orleans*, 425 U.S. at 814-16. The common thread is that when a claim turns on how a person is physically confined, the proper defendant is the entity with actual physical control over those conditions—not the remote sovereign that has contracted the custodial function out to that entity. *Cf. Minneci v. Pollard*, 565 U.S. 118, 125-29 (2012) (making clear that when detainees are held in private facilities, their recourse is against the "jailers, including private operators of prisons," and under state law); *United States v. Edwards*, 415 U.S. 800, 804 n.6 (1974) (describing a "jailer" as one having "custody and control" over an inmate); Jailer, *Black's Law Dictionary* (12th ed. 2024) (defining the term as follows: "A keeper, guard, or warden of a prison or jail; one who is in charge of a jail, or part of it, and of the prisoners confined there.").

That allocation is dispositive here. Plaintiffs' claims target the physical realities of confinement at Adelanto—medication administration and timing, pill-call routines, housing placements, shower access, intake screening, disability accommodations on the housing unit, and staffing inside pods. *See, e.g.*, FAC ¶¶ 86-88, 98-99, 103, 108. Those are the paradigmatic day-to-day physical-custody functions and operations. GEO is the custodian: It owns, staffs, and operates Adelanto, delivers medical care, and makes the on-the-ground decisions.

ICE, by contrast, occupies the position the Supreme Court held irrelevant for this kind of challenge—the "remote supervisory official" whose legal authority, contractual oversight, and PBNDS promulgation do not translate into the day-to-day physical control that drives the inquiry. Plaintiffs' effort to press claims about physical conditions against the legal custodian, while leaving the immediate physical custodian out of the case (seeking relief that would then require the former to micromanage the latter not pursuant to their contract but per the terms of a court order), warrants outright dismissal.

The FAC tries to plead around this problem, and the attempt proves the point. Plaintiffs have added a new section asserting that ICE "ultimately directs and controls every material aspect of the Adelanto facility's operations" and exercises "pervasive

operational control" there. FAC ¶¶ 47, 58. Those are conclusions, not facts, and the Court need not credit them. *Iqbal*, 556 U.S. at 678. The facts that the FAC actually pleads describe the opposite of an operator: ICE sets standards through a contract, FAC ¶ 36; inspects for compliance, *id.* ¶¶ 49, 157-59; stations "monitors" who review grievances against *GEO* and audit *GEO*'s performance, *id.* ¶ 50; and—tellingly—must resort to contractual levers (a discrepancy report, a corrective-action plan, withheld payment, or replacing the contractor) if it wants conditions changed, *id.* ¶ 57. An entity whose only means of influencing a facility is to enforce, withhold payment under, or terminate a contract is, by definition, a contracting regulator—not the jailer. *Logue*, 412 U.S. at 529-30; *Newsom*, 50 F.4th at 750-53; *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 643 (9th Cir. 2021) (making clear that ICE's undisputed statutory authority to detain, and its nationwide policy directives on conditions, did not make the "mere fact of . . . detention" culpable conduct by the Government).

Moreover, facts now offered to support "pervasive operational control" describe nothing more than the ordinary incidents of a contract—an ICE "Contracting Officer" whose approval is required before GEO may make "[f]acility staffing changes," FAC ¶ 53, and ICE's contractual "power" to impose "financial penalties" "[i]f a contractor fails to comply," FAC ¶ 57. Stripped of the relabeling, FAC ¶¶ 47-58 plead what Plaintiffs pled from the start: GEO runs Adelanto, not ICE. That principle—that contractual oversight is not operational control—is the heart of *Logue* and *Orleans*, and it answers FAC ¶¶ 47–58 fact by fact. Even the authority Plaintiffs flag as their trump card—ICE's power to "enforce, extend, modify, or terminate the contract," FAC ¶ 58—is the canonical exercise of a *contracting* party's rights (indeed a typical provision of almost any commercial contract), and does not constitute day-to-day operational control. *Orleans*, 425 U.S. at 815.

**D. Plaintiffs Lack Standing for Prospective Injunctive Relief**

1. <u>Plaintiffs Lack Standing</u>

"A foundational principle of Article III is that 'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" *Trump v.*

*New York*, 592 U.S. 125, 131 (2020). "First, a plaintiff must demonstrate standing, including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical.'" *Id.* at 131 (cleaned up). That injury must be (1) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" and (2) "the injury will be 'redressed by a favorable decision'" by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Second, the case must be ripe—not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. at 131.

That principle is dispositive here: The First Amended Complaint's new assertions that ICE "directs and controls every material aspect" of Adelanto's operations, FAC ¶¶ 47, 58, are precisely the kind of bare and conclusory characterization that cannot substitute for well-pleaded facts tracing Plaintiffs' injuries to the federal Defendants rather than to GEO's independent operational choices.

With respect to **traceability**: Plaintiffs' allegations are centered around GEO, not Defendants. *See, e.g.*, FAC ¶¶ 31-37, 60-66, 104-30. Plaintiffs label GEO an "agent" of ICE, but that is a legal conclusion, unsupported by their own allegations. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Indeed, Plaintiffs' own factual allegations are contradictory on this point: They plead an arms-length contractual relationship—not facts underlying an agency relationship—between ICE and GEO. FAC ¶¶ 26, 31-35. Per that contract, GEO provides "detention, transportation and medical services." *Id.* ¶ 32 n.18 (quoting the 2019 Adelanto Contract). The contract "mandates compliance with the PBNDS." *Id.* ¶ 36. The operational-presence figures the FAC recites fare no better: Its allegations of "55" ICE staff, space for "158" ICE ERO employees, and "three" compliance officers, FAC ¶ 51, "are 2019 figures, which are outdated and inaccurate . . . ." Quevedo Decl. ¶ 5. ICE's approximately 52 on-site personnel perform immigration case management—"an oversight role that is separate and apart from GEO Group's contracted role"—while GEO supplies approximately 100 medical staff and 350 security and

operations personnel. *Id.*

*Logue v. United States*, 412 U.S. 521 (1973), makes that concrete. There, the Supreme Court held that employees of a county jail that housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons were not federal employees or employees of a federal agency; thus, the United States was not liable for the acts of the county jail. *Id*. at 527-30; *Murthy v. Missouri*, 603 U.S. 43, 57-60, 68-72 (2024) (no traceability or redressability where plaintiffs' injuries stemmed from social-media platforms' independent content-moderation decisions, which an injunction against federal officials would not control, and platforms "had independent incentives to moderate content and often exercised their own judgment," breaking the causal chain to the government); *see also Ahn v. GEO Grp., Inc.*, 2024 WL 1258428, at *5, *7-8 (E.D. Cal. Mar. 25, 2024) (dismissing claims against ICE on account of GEO's rights and responsibilities).

So too here: Plaintiffs' alleged injuries—medication-timing complaints, shower accessibility, pill-call routines, guard responses during medical emergencies, *see, e.g.*, FAC ¶¶ 80-82, 86-87, 99—are a miscellany of generalized and diffuse grievances caused, if at all, by the independent day-to-day operational choices of GEO, a third party that is not before the Court. Quevedo Decl. ¶ 10 (ICE "does not carry out day to day operations at APC"; GEO "independently administers" medication prescriptions, housing, hygiene products, cleaning services, showers, intakes, and initial emergency care, and ICE has "no direct control or supervisory role over any GEO Group employees"); *Lujan*, 504 U.S. at 562 (no traceability where the injury turns on the choices of an independent actor "whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict"); *accord Murthy*, 603 U.S. at 57-58.

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), does not bridge the gap. The court there refused to extend damages liability to the private operator of a federal facility precisely because other avenues existed—including "suits in federal court for injunctive relief" and the operator's grievance machinery. *Id.* at 74. That passage identifies a remedial *category*, not a proper *defendant*: injunctive relief is "the proper means for preventing

entities from acting unconstitutionally," *id.*—and the "entity" to be enjoined is the custodian whose conduct is challenged, there CSC, here GEO. Nothing in *Malesko* holds that a detainee may obtain an injunction against the United States to reform a *contractor's* operations. And *Malesko*'s premise—that administrative grievance mechanisms stand ready to surface and correct unconstitutional practices, *id.*—cuts against Plaintiffs, three of four of whom never used them, and the fourth is no longer in ICE custody. Quevedo Decl. ¶¶ 23, 39.

Next, as to ***redressability***: Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561; *Murthy*, 603 U.S. at 57 ("[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." (cleaned up)). GEO—not ICE—owns and operates Adelanto and controls conditions day-to-day. Quevedo Decl. ¶¶ 4, 8, 10. An injunction against ICE would not, by its own force, change conditions at the facility. Any improvement in conditions would depend on GEO's "unfettered choices," *Lujan*, 504 U.S. at 562, or on ICE's separate exercise of contractual or enforcement discretion—the very "response of the regulated (or regulable) third party" that *Lujan* identifies as fatal to standing, *id.*

The Court recognized this very defect at the April 28, 2026 hearing on Plaintiffs' preliminary-injunction motion. The Court observed that an order directed at ICE could not be enforced where GEO is absent from the case: Were the Court to "order . . . X number of nurses be available," ICE "would then have to tell GEO Group," and if GEO declined, the Court would have no way to "enforce that against GEO Group" because GEO is "not a party to the proceeding." Hr'g Tr. 5:12-23. Defendants' objection, the Court recognized, raised "legitimate concerns." *Id.* at 5:24-25. Those observations identify exactly the redressability defect that requires dismissal of Plaintiffs' claims for prospective relief.

These redressability defects are independently confirmed by 8 U.S.C. § 1252(f)(1), which strips lower courts of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221-1232, "other than with respect to the application of such provisions

to an individual alien." The Supreme Court has held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" those provisions. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Detention at Adelanto operates under 8 U.S.C. §§ 1225, 1226, and/or 1231—squarely inside the statute's prohibited range. Because Plaintiffs sue on behalf of a putative class and seek sweeping, structural relief untethered to any specific detainee's circumstances, the "individual alien" carve-out is unavailable. Section 1252(f)(1) thus independently defeats redressability: The class-wide injunctive relief that Plaintiffs seek is categorically beyond this Court's remedial power.

With respect to ***ripeness***: Plaintiffs have not alleged that any named class member faces concrete, imminent harm traceable to the federal Defendants. *See, e.g.,* FAC ¶¶ 82-84 (alleging past seizure episodes handled by facility staff, not federal Defendants, as to Mesrobian, who is no longer detained at Adelanto, Quevedo Decl. ¶ 39); *id.* ¶ 76 (alleging illness in December 2025 attributed to facility-level failures). This case "is riddled with contingencies and speculation" as to any asserted risk of future injury by Defendants. *Trump v. New York*, 592 U.S. at 131. Tellingly, two of the four named Plaintiffs cannot pursue prospective injunctive relief at all because they are no longer detained at Adelanto. The record forecloses imminence as well: The OIG reports the First Amended Complaint invokes "date from 2017 through 2019," the conditions they describe "were addressed years ago through the contract's corrective-action process," and ODO's September 2025 inspection "identified no medical-care deficiency." Quevedo Decl. ¶ 17. And the facility's population "is below the rated capacity." *Id.* ¶ 2.

Nor is it any answer that Plaintiffs were detained when this case began: "[A]n actual controversy must exist not only at the time the complaint is filed, *but through all stages of the litigation*." *Trump v. New York*, 592 U.S. at 131 (emphasis added). Mesrobian is not in ICE custody: Upon his release from Adelanto on or about May 27, 2026, he was picked up on a prior Los Angeles Police Department warrant for felony firearm possession and immediately taken into custody by the San Bernardino County Sheriff's Deputies, who

held him for LAPD. Quevedo Decl. ¶ 39. Nor can ICE simply take him back: Another court in this District ordered his release from ICE custody and enjoined re-detention "without evidence that his removal is reasonably foreseeable." *Mesrobian Szvak v. Warden*, No. 5:25-cv-02629-MAA, ECF 35 at 7 (C.D. Cal. May 27, 2026). J.M. likewise was released from Adelanto on April 28, 2026, and is no longer detained there. Quevedo Decl. ¶ 35. The First Amended Complaint concedes the point as to J.M., alleging only that "[i]f Mr. J.M. were to be redetained, he would again be subject to" the challenged conditions. FAC ¶ 17. Neither faces any prospect—much less a "real and immediate" one—of being subjected to the Adelanto conditions the FAC challenges. Their claims for prospective injunctive relief are therefore non-justiciable for lack of ripeness.

2. CHIRLA Lacks Associational or Organizational Standing

Organizations may sue for themselves if they satisfy the three elements of standing that apply to individuals. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024). They may sue on their members' behalf when, among other things, their members "would otherwise have standing to sue in their own right," and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Court has already resolved CHIRLA's organizational standing—against CHIRLA: "CHIRLA lacks organizational standing," and that "[w]ith no organizational standing, the Court lacks subject matter jurisdiction over claims brought by CHIRLA." ECF 70 at 8-9. The Court reached that conclusion "[b]ased on the current pleadings," granted leave to amend, and directed that any amended complaint "address the concerns raised by the Court at the hearing . . . and detailed in Defendants' filed Motion to Dismiss." *Id*. at 8, 13 n.3. The First Amended Complaint does not do so: Its expanded CHIRLA allegations replead the very resource-diversion theory the Court has held insufficient.

The associational theory fails for an even more basic reason: The First Amended Complaint identifies no CHIRLA member who has standing. It alleges only that "[a]t least one CHIRLA member is currently detained at Adelanto," FAC ¶ 20, without identifying

that member—and none of the four named individual Plaintiffs, whose injuries the pleading details at length, is alleged to be a CHIRLA member at all. The Court raised this precise gap at the preliminary-injunction hearing, observing that the pleading does not identify any named Plaintiff as a CHIRLA member; and Plaintiffs' counsel confirmed it—asked whether Plaintiffs had "allege[d] any of the named plaintiffs are members," counsel answered "No, Your Honor." Hr'g Tr. 6:5-9, 14:25-15:2. Associational standing requires that the organization's "members would otherwise have standing to sue in their own right," *Hunt*, 432 U.S. at 343; CHIRLA's reliance on an unidentified, unnamed detainee cannot satisfy that requirement, especially where, as here, defendants' Rule 12(b)(1) jurisdictional attack is factual. *Safe Air for Everyone*, 373 F.3d at 1039.

*Immigr. Ctr. for Women & Child. v. Noem*, No. 25-09848, 2026 WL 1455004 (C.D. Cal. May 20, 2026), is instructive on the interplay between organizational standing and § 1252(f)(1)'s bar. There, the court found "enough doubt about whether the classwide injunction Plaintiffs seek survives § 1252(f)(1) that it will not enter such relief," *id.* at *17—and, on the same reasoning, declined to enter injunctions running to the organizational plaintiffs' "clients and members": Because § 1252(f)(1)'s carve-out reaches only "an individual alien against whom proceedings . . . have been initiated," the court "cannot find that unspecified, unnamed 'clients and members' of the Organizational Plaintiffs are equivalent to 'an individual alien.'" *Id.* at *18. CHIRLA seeks materially identical relief here: An injunction reconfiguring Adelanto's operations on behalf of unspecified, unnamed detained members. Section 1252(f)(1) forecloses it.

**E. Plaintiffs Fail to State a Fifth Amendment Claim**

As to claim 1, Plaintiffs must allege that their conditions of confinement are punitive. *Fraihat*, 16 F.4th at 647 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004)). That turns on "intent." *Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014). As to claim 2, Plaintiffs must allege deliberate indifference. *Fraihat*, 16 F.4th at 636. That in turn requires them to allege that Defendants' conduct was "objectively unreasonable"—i.e., show "reckless disregard." *Id.*

(quoting *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)) (cleaned up).

Plaintiffs fail both tests. They reference conclusory allegations regarding conduct by non-party GEO staff in order to attribute the requisite intent to the federal Defendants. *See, e.g.*, FAC ¶¶ 60-90, 104-06. That is irrelevant to the specific, day-to-day operations at Adelanto, which, Plaintiffs admit, are executed by GEO. *Id.* ¶¶ 26, 32. And they complain of auditing that is the opposite of disregard: Taking issue with an audit's findings does not establish punitive intent or reckless disregard. *See Fraihat*, 16 F.4th at 637 ("far from recklessly disregarding" the risk, ICE "took steps to address COVID-19"—defeating deliberate indifference irrespective of whether those steps proved effective); *see also id.* at 643 (that plaintiffs "may have desired" more aggressive measures "does not mean that the government's approach . . . reflected reckless disregard"). For the same reasons, Plaintiffs cannot plead deliberate indifference. What is reasonable "depends on the circumstances, which normally constrain what actions a state official can take," including the policy framework under which the official operates. *Peralta*, 744 F.3d at 1082. And allegations that an agency has adopted, monitors, and enforces a comprehensive detention standard directly and inherently contradict any allegation that the agency's own conduct was "objectively unreasonable." *Gordon*, 888 F.3d at 1125.

**F. Plaintiffs Fail to State a Rehabilitation Act Claim**

Plaintiffs allege that *Defendants* have failed to reasonably accommodate them under the Rehabilitation Act. *See, e.g.*, FAC ¶¶ 195-204. But Congress intended to strictly limit the scope of the Rehabilitation Act solely "to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986). So only "those who affirmatively choose to receive federal aid may be held liable under the RA," *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013), "as a *quid pro quo* for the receipt of federal funds," *Paralyzed Veterans*, 477 U.S. at 605. Plaintiffs have conspicuously not sued the actual grantee of the federal contract here—GEO. Instead, they argue incorrectly that ICE, as the ***grantor*** of

the federal contract, should "be held liable under the RA." *Castle*, 731 F.3d at 908.

Plaintiffs allege however that ICE inspected and did not find any deficiencies at Adelanto as to "[d]isability [i]dentification, [a]ssessment, and [a]ccommodation." 2025 Inspection Report at 6. The existence of such disability policies and related inspections inherently contradicts Plaintiffs' allegations that *Defendants* discriminated against Plaintiffs ***solely*** on account of their ***disability***. Plaintiffs' First Amended Complaint, as a whole, appears to allege the opposite—that rather than such specific discriminatory intent having been directed at a perceived subclass and then depriving them of disability accommodation, Defendants have allegedly not provided adequate medical care *generally* at the facility. That does not allege a valid Rehabilitation Act claim.

**G. Plaintiffs Failed to Exhaust Available Administrative Remedies**

Dismissal is independently warranted because no named Plaintiff exhausted—or even meaningfully invoked—the administrative remedies that exist for precisely these complaints. "Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Where, as here, Congress has not clearly required exhaustion, "sound judicial discretion governs," *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), and "the agency should be given the first chance to exercise that discretion or to apply that expertise," *McKart v. United States*, 395 U.S. 185, 194 (1969). While the Prison Litigation Reform Act's exhaustion mandate may not strictly apply to civil detainees, its animating purposes—record development, agency self-correction, and control of institutional-reform litigation, *see Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)—apply with full force to Plaintiffs' demand for judicial superintendence of a detention facility.

The administrative machinery is substantial and layered. The PBNDS—the very standards Plaintiffs invoke throughout the First Amended Complaint—prescribe a multi-tiered grievance system. PBNDS § 6.2 V.C.1-4. Layered on top, DHS regulations supply a Section 504 complaint process for the Rehabilitation Act claim: a complaint to the Officer for Civil Rights and Civil Liberties, written findings, and an appeal. 6 C.F.R.

§ 15.70(c)-(h). The Ninth Circuit has required exactly this sequencing for systemic Rehabilitation Act claims against a federal agency's programs. *J.L. v. Soc. Sec. Admin.*, 971 F.2d 260, 271-72 (9th Cir. 1992) (dismissing systemic § 504 claims so that plaintiffs' "grievances will . . . be resolved by the agency," with leave to "return to federal court" if unresolved).

Named Individual Plaintiffs who are currently detained at ICE bypassed all of it—indeed, their litigation strategy suggests affirmative deliberate efforts to evade the process. Quevedo Decl. ¶¶ 23-24, 39-40. ICE's ODO itself identified grievance-processing deficiencies at Adelanto, and ERO directed corrective action that GEO completed. Quevedo Decl. ¶ 13 & Ex. 5. Each prudential factor therefore points the same way: Systemic accommodation-and-conditions claims require "agency expertise . . . to generate a proper record"; excusing wholesale bypass "would encourage the deliberate bypass of the administrative scheme"; and the scheme demonstrably "allow[s] the agency to correct its own mistakes." *J.L.*, 971 F.2d at 271. Lack of exhaustion warrants dismissal here.

**H. Plaintiffs Fail to State an APA Claim**

1. <u>APA Review Is Precluded by Statute</u>

Before this Court may review any agency action under the APA, Plaintiffs must "first clear the hurdle of § 701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a) withdraws APA review in two circumstances: where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and where "agency action is committed to agency discretion by law," *id.* § 701(a)(2). The Supreme Court has repeatedly confirmed that decisions traditionally regarded as within the agency's purview—including "enforcement," *id.* at 831, and resource allocation, *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)—are presumptively unreviewable. That deference to agency discretion has a statutory anchor: Congress itself vested sweeping enforcement authority in the Secretary. *See* 6 U.S.C. § 202(5) (charging the Secretary with "[e]stablishing national immigration enforcement policies and priorities"); *see also* 8 U.S.C. § 1231(h).

In *Xirum*, the court applied this framework to dismiss an APA challenge to ICE's

detention-oversight enforcement decisions. *See Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00801, 2024 WL 3718145, at *7-9 (S.D. Ind. Aug. 8, 2024). That rationale extends to ICE's inspection-and-rating decisions, which require the agency to weigh competing priorities and allocate limited oversight resources across a national detention network—the "paradigmatic" enforcement calculus *Heckler* committed to agency discretion: Congress has provided no "law to apply" to ICE's standards for detention oversight and has not "circumscrib[ed] [the] agency's power" to conduct immigration enforcement, *Heckler*, 470 U.S. at 830-31, 833.

2. Plaintiffs Fail to Allege a Final Agency Action

Judicial review under the APA "is available only for 'final agency action.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In addition, the challenged action must be "agency action" as defined by the APA—one of five "circumscribed, discrete" categories. 5 U.S.C. § 551(13); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). The APA's "limitation to discrete agency action precludes the kind of broad programmatic attack" the Supreme Court rejected in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990), where plaintiffs sought "wholesale improvement" of an agency program by court decree. *Norton*, 542 U.S. at 64. Accordingly, the "term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, . . . operating a program, or performing a contract." *Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). ICE's ongoing inspection and oversight of Adelanto, including GEO's compliance with the PBNDS contractual provision, is precisely that kind of "operating a program" or "performing a contract"—not a discrete, final action subject to APA review.

3. Plaintiffs Fail to Allege Arbitrary-and-Capricious or Unlawful Action

Plaintiffs' allegations on this point (*see, e.g.*, FAC ¶¶ 209-16) are plainly contradicted by the material they incorporate by reference. *Steckman*, 143 F.3d at 1295-96 ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). ODO tied the change in rating to legitimate

factors—such as an increased number of deficiencies. 2025 Inspection Report at 7-8. Those factors fall squarely within agency expertise, and courts recognize them as appropriate bases for policy change. *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). The Supreme Court has emphasized that under arbitrary-and-capricious review, the court's role is "narrow" and it "is not to substitute its judgment for that of the agency." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020). The question is whether the agency "articulate[d] a satisfactory explanation for its action," showing "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. That ICE does here; Plaintiffs do not plausibly allege otherwise.

**I. Leave to Amend Should Be Denied as Futile**

Finally, if the Court grants this Motion, it should do so without leave to amend, because further amendment would be futile. The Ninth Circuit has long held that "if a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986); *accord Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962). The amended pleading "may only allege 'other facts consistent with the challenged pleading'"—it "would not be possible" to amend "to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (quoting *Schreiber*, 806 F.2d at 1401). Plaintiffs cannot satisfy that test.

Plaintiffs have already had that opportunity. The Court granted them leave to amend and directed that any amended complaint "address the concerns raised by the Court at the hearing . . . and detailed in Defendants' filed Motion to Dismiss." ECF 70 at 13 n.3. They did not. The FAC reproduces the same shotgun structure; it still omits GEO—the "jailer" with physical custody over Individual Plaintiffs and that operates Adelanto—an omission Plaintiffs' counsel has admitted is deliberate and strategic; it still attributes GEO's

operational conduct to ICE, now through allegations that contradict Plaintiffs' own original Complaint; it still presses CHIRLA's organizational standing after the Court has held that CHIRLA has none; and it still demands the class-wide structural injunction that 8 U.S.C. § 1252(f)(1) places beyond this Court's power. No amendment can convert ICE into the operator of a facility GEO owns and runs, or bring class-wide structural relief within a jurisdictional bar Congress has imposed. A third complaint would fail for the same reasons the first two did, and the FAC should therefore be dismissed with prejudice.

## V. CONCLUSION

Defendants respectfully request that the Court grant the motion and dismiss the First Amended Complaint without leave to amend.

Respectfully submitted,

Dated: June 5, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Special Assistant United States Attorney

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains 6,968 words, which complies with the word limit of Local Rule 11-6.1.

Dated: June 5, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA