PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
ELIZABETH HERCULES-PAEZ (SBN 320944)
eherculespaez@publiccounsel.org
BELINDA ESCOBOSA (SBN 214178)
bescobosa@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, <br><br> Defendants. | Case No. 5:26-cv-00322-SSS-SPx <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> **CLASS ACTION** <br><br> Date:  July 10, 2026 <br> Time:  2:00 p.m. <br> Ctrm:  2, 2nd Floor <br>       3470 12th Street <br>       Riverside, CA 92501 <br> Hon. Sunshine Sykes |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND .............................................................................................. 1

III. ARGUMENT .................................................................................................... 2

    A.   The Court Has Already Resolved Standing in Plaintiffs' Favor. ......... 2

        1.   The Individual Plaintiffs' Injuries Remain Traceable, Redressable, and Ripe. ................................................................ 2

        2.   Section 1252 Does Not Bar Relief for Unconstitutional Conditions of Confinement. .................................................. 6

        3.   CHIRLA Has Standing Because Adelanto's Conditions Directly Impair Its Core Legal-Services Operations. ................ 6

    B.   Defendants Cannot Evade Responsibility For Adelanto by Pointing to Their Contractor. ........................................................................ 8

        1.   Defendants' Custodial Duty is Nondelegable and Cannot be Contracted Away to GEO. .................................................. 9

        2.   GEO Is Not Required Because Complete Relief Can Run Against the Federal Defendants. ......................................... 10

    C.   The ICE-GEO Contract Confirms Defendants' Control; Plaintiffs Do Not Sue to Enforce It. ...................................................... 14

    D.   The FAC Ties Each Claim to Its Supporting Facts and Satisfies Rule 8 ................................................................................................ 15

    E.   No Administrative Exhaustion Requirement Bars Plaintiffs' Claims. ................................................................................................ 16

    F.   The FAC States Fifth Amendment Claims Based on Unconstitutional Conditions. ...................................................................... 16

    G.   The Rehabilitation Act Applies to ICE, and the FAC States a Claim. ................................................................................................ 18

    H.   Plaintiffs State Reviewable APA Claims Challenging ICE's Own Adelanto Decisions. ................................................................ 18

        1.   Congress Has Not Precluded Review of ICE's Conditions and Compliance Decisions. ........................................... 18

        2.   ICE's Repopulation Decision and "Gosod" Rating Are Final Agency Action. ...................................................... 20

        3.   ICE Plausibly Acted Arbitrarily by Ignoring Known Risks and Departing From Its Own Standards. ....................................... 21

ii

I.    At Minimum, Plaintiffs Should Be Granted Leave to Amend. ..........22

IV.   CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J.T. v. Osseo Area Schs.*,
  605 U.S. 335 (2025)................................................................................18

*Agyeman v. INS*,
  296 F.3d 871 (9th Cir. 2002) ................................................................17

*Ahn v. GEO Grp. Inc.*,
  2024 WL 1258428 (E.D. Cal. Mar. 25, 2024)........................................3

*Al Otro Lado v. EOIR*,
  138 F.4th 1102 (9th Cir. 2025) (en banc) ...............................................6

*Allen v. Milas*,
  896 F.3d 1094 (9th Cir. 2018) .................................................................6

*Armstrong v. Brown*,
  732 F.3d 955 (9th Cir. 2013) ...................................................................9

*Bell v. Wolfish*,
  441 U.S. 520 (1979).............................................................................. 16

*Biden v. Texas*,
  597 U.S. 785 (2022)..................................................................................6

*Bregsal v. Brock*
  843 F. 2d 1163 (9th Cir. 1988) ..............................................................13

*Castle v. Eurofresh, Inc.*,
  731 F.3d 901 (9th Cir. 2013) .................................................................18

*Castro v. Cnty. of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) ...............................................................17

*Cmty. Legal Servs. in E. Palo Alto v. HHS.*,
  137 F.4th 932 (9th Cir. 2025)................................................................19

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001)....................................................................................3

iv

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989)...............................................................................9

*Emami v. Nielsen*,
   365 F. Supp. 3d 1009 (N.D. Cal. 2019)................................................22

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .............................................................22

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024)...............................................................................7

*Foman v. Davis*,
   371 U.S. 178 (1962)...............................................................................22

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   16 F.4th 613 (9th Cir. 2021) .................................................................18

*Franco-Gonzales v. Holder*,
   767 F. Supp. 2d 1034 (C.D. Cal. 2010).................................................18

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022)...............................................................................6

*Geo Grp., Inc. v. Newsom*,
   50 F.4th 745 (9th Cir. 2022) (en banc).................................................12

*Gibson v. City of Portland*,
   165 F.4th 1265 (9th Cir. 2026) .............................................................15

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
   975 F.3d 788 (9th Cir. 2020) ................................................................6

*Graves v. Arpaio*,
   623 F.3d 1043 (9th Cir. 2010) ..............................................................5

*Heckler v. Chaney*,
   470 U.S. 821 (1985)...............................................................................15

*Helling v. McKinney*,
   509 U.S. 25 (1993).................................................................................5

*Hoptowit v. Ray*,
   682 F.2d 1237 (9th Cir. 1982), *overruled in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995) ............................................................13

v

*Jensen v. Shinn*,
609 F. Supp. 3d 789 (D. Ariz. 2022) ................................................................. 13

*Jones v. Blanas*,
393 F.3d 918 (9th Cir. 2004) ............................................................................. 16

*Laing v. Ashcroft*,
370 F.3d 994 (9th Cir. 2004) ............................................................................. 16

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955) ........................................................................................... 15

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ........................................................................................... 19

*Logue v. United States*,
412 U.S. 521 (1973) ......................................................................................... 3, 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................. 3

*Mach Mining, LLC v. EEOC*,
575 U.S. 480 (2015) ........................................................................................... 19

*McGary v. City of Portland*,
386 F.3d 1259 (9th Cir. 2004) ........................................................................... 18

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ............................................................................. 15

*Minneci v. Pollard*,
565 U.S. 118 (2012) ........................................................................................... 10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ............................................................................................. 21

*Murthy v. Missouri*,
603 U.S. 43 (2024) ............................................................................................... 4

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................................. 21

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) ............................................................................. 20

vi

*Page v. Torrey*,
201 F.3d 1136 (9th Cir. 2000) ...............................................................................16

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ...................................................................................5

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) .................................................................................5

*Roman v. Wolf*,
5:20-cv-00768-TJH-PVC, Dkt. 55, *aff'd in part*, 977 F.3d 935 (9th Cir. 2020) ...
.......................................................................................................................3, 12

*Ruiz v. ICE*,
No. 3:25-CV-09757-MMC, 2026 WL 851980 (N.D. Cal. Mar. 27, 2026)........12

*Ruiz v. U.S. Immigr. & Customs Enf't.*,
2026 WL 391924 (N.D. Cal. Feb. 10, 2026)........................................................3

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004)...............................................................................................10

*Spencer Enters., Inc. v. United States*,
345 F.3d 683 (9th Cir. 2003) .................................................................................19

*Thomas v. Bible*,
983 F.2d 152 (9th Cir. 1993) ...................................................................................2

*Torres v. U.S. Dept. of Homeland Sec.*,
411 F. Supp. 3d 1036 (C.D. Cal 2019). ..................................................................5

*U.S. Department of Transportation v. Paralyzed Veterans of America*,
477 U.S. 597 (1986)...............................................................................................18

*United States v. Orleans*,
425 U.S. 807 (1976)..................................................................................................9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .................................................................................11

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ............................................................................7, 8

*Wade v. Kirkland*,
118 F.3d 667 (9th Cir. 1997) ...................................................................................5

*West v. Atkins*,
   487 U.S. 42 ...............................................................................................5, 9

*Xirum v. U.S. Immigr. & Customs Enf't*,
   No. 1:22-cv-00801-TWP-KMB, 2023 WL 2683112 (S.D. Ind. Mar. 29, 2023)
   .....................................................................................................................14

*Xirum v. U.S. Immigr. & Customs Enf't*,
   No. 1:22-cv-00801-TWP-KMB, 2024 WL 3718145 (S.D. Ind. Aug. 8, 2024).....
   .....................................................................................................................15

*Zepeda Rivas v. Jennings*,
   465 F. Supp. 3d 1028 (N.D. Cal. 2020) *aff'd*, 845 F. App'x 530 (9th Cir. 2021)
   .....................................................................................................................12

**Statutes**

5 U.S.C. § 551(6) .........................................................................................21

5 U.S.C. § 706(2)(A) ....................................................................................21

6 U.S.C. § 205(b) .........................................................................................19

8 U.S.C. § 1231(h) .......................................................................................14

29 U.S.C. § 794 ........................................................................................6, 18

**Rules**

Fed. R. Civ. P. 19(a)(1) ................................................................................10

**Other Authorities**

https://www.governor.nh.gov/sites/g/files/ehbemt971/files/media/media_document/
   merrimack-nh-detention-reengineering-initiative-final.pdf ...............................14

PLAINTIFFS' OPPOSITION TO DEFS' MOTION TO DISMISS FAC
Case No. 5:26-cv-00322-SSS-SPx

## I.    INTRODUCTION

Plaintiffs have submitted a robust and detailed account of the inhumane conditions inflicted upon over 1,900 people at Adelanto. *See* ECF 74, First Amended Complaint ("FAC"). Defendants again ask this Court to reject these serious allegations of unconstitutional conditions via a threshold dismissal based on GEO's role as ICE's contractor. *See* ECF 80, "Motion." But the Court's Order did not hold that Defendants escape liability because they contracted with GEO. *See* ECF 70, "Order"; ECF 68, Reporter's Transcript of Proceedings, Apr. 28, 2026 ("Hearing Tr.") at 22:21–23:9 (observing that the Government cannot "put their head in the sand and say it's not us."). To the contrary, the Court denied preliminary relief without prejudice because, prior to class certification, Plaintiffs' proposed injunction was not tailored to the Individual Plaintiffs' specific injuries. Order at 12. The Court recognized that the alleged conditions were "certainly concerning," that the Individual Plaintiffs' injuries were traceable to Defendants, and that their claims were ripe. *Id.* at 9–11; Hearing Tr. at 4:15.

Plaintiffs amended to address the specific concerns the Court identified. Defendants nevertheless filed a motion to dismiss that largely repackages their same threshold argument that the government is an improper defendant. That argument was wrong before, and it is wrong now. Plaintiffs have adequately pled four claims against Defendants based on detailed allegations. Defendants' motion should be denied in full.

## II.    BACKGROUND

Plaintiffs filed this action to remedy ongoing, inhumane conditions at Adelanto. The Court denied Plaintiff's motion for preliminary injunction without prejudice, Order at 12, concluding that the proposed injunction was inappropriate prior to class certification and CHIRLA's organizational standing was insufficient "based on the current pleadings." *Id.* at 8–9. The Court granted leave to amend. *Id.* at 13.

Plaintiffs' First Amended Complaint addresses the Court's concerns by

1

expanding CHIRLA's standing allegations. FAC ¶¶ 19–25. The FAC also expands allegations showing Defendants' control the levers necessary to remedy conditions: they set the governing standards; maintain onsite compliance personnel; approve staffing plans; inspect the facility; identify deficiencies; require corrective action; and retain authority to enforce, modify, extend, or terminate the GEO contract. *Id.* ¶¶ 47–58. Finally, the FAC makes clear that Plaintiffs challenge systemic failures—not isolated staff misconduct—including chronically deficient provision of food and water, unsanitary facilities, needlessly restrictive headcounts and visitation policies, and ineffective systems for medical intake, sick call, emergency response, medication administration, and disability accommodations. *Id.* ¶¶ 67–155. These failures are distilled into four claims for classwide relief: a Fifth Amendment claim challenging punitive policies and practices (*Id.* ¶¶ 176–89); a Fifth Amendment claim challenging the ineffective medical system putting the entire detained population at risk (*Id.* ¶¶ 190–94); a Rehabilitation Act claim challenging the routine failure to accommodate disabilities (*Id.* ¶¶ 195–204); and an Administrative Procedure Act claim challenging agency action inconsistent with agency standards and federal law (*Id.* ¶¶ 205–16).

## III. ARGUMENT

### A. The Court Has Already Resolved Standing in Plaintiffs' Favor.

#### 1. The Individual Plaintiffs' Injuries Remain Traceable, Redressable, and Ripe.

The Court's determination that Plaintiffs have standing is the law of the case. Order at 9–11. This Court found that the Individual Plaintiffs' injuries "are fairly traceable to Defendants," likely to be redressed by a court order, and ripe for review. *Id.* Under the law-of-the-case doctrine, a court's prior ruling "should generally be adhered to" unless there has been "an intervening change of controlling authority, new evidence, or a showing that the prior ruling was clearly erroneous." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). Defendants satisfy none of these conditions.

On **traceability**, this Court already held that contracting with GEO "does not relieve Defendants of their duties under the Constitution," and that causation exists even where "multiple links in the chain" connect Defendants' conduct to Plaintiffs' injuries. Order at 10–11. Courts have consistently found Article III standing when plaintiffs in contractor-run detention facilities bring constitutional claims against the federal government. *See, e.g.*, *Roman v. Wolf*, 5:20-cv-00768-TJH-PVC, Dkt. 55, *aff'd in part*, 977 F.3d 935, 938 n.1 (9th Cir. 2020) (affirming conditions injunction at Adelanto against the government where GEO was not a party); *Zepeda Rivas,* 465 F. Supp. 3d at 1036–37; *Ruiz v. U.S. Immigr. & Customs Enf't.*, 2026 WL 391924, at *1 (N.D. Cal. Feb. 10, 2026). Defendants do not cite a single case holding otherwise.

Plaintiffs allege a straightforward theory of traceability: Defendants took Plaintiffs into federal custody and confined them at a facility that Defendants selected, funded, and are statutorily obligated to oversee (FAC ¶¶ 31–32); Defendants made the affirmative decision to rapidly repopulate Adelanto despite the facility lacking adequate staffing and medical resources (FAC ¶¶ 38–39, 212); Defendants systematically failed to enforce their own detention standards (FAC ¶¶ 36–37, 58, 156, 210); Defendants conducted an inadequate inspection and awarded a "Good" rating, allowing the facility to continue operating without remediation (FAC ¶¶ 156, 161, 213); and Defendants have taken no action to remedy the unconstitutional conditions at Adelanto despite their acknowledged responsibility and authority to do so (FAC ¶¶ 156–61, 199). Each link in the causal chain is an affirmative act or omission by Defendants themselves, not the "independent action of some third party." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992).

Defendants' authorities are unavailing. *Logue v. United States* and *Ahn v. GEO Grp., Inc.* analyze the federal government's liability for damages under the Federal Tort Claims Act—not at issue here. 412 U.S. 521, 530 (1973); 2024 WL 1258428 (E.D. Cal. Mar. 25, 2024). *Corr. Servs. Corp. v. Malesko* held that the *Bivens* remedy—an action for damages based on constitutional torts—does not extend to

3

private corporations. 534 U.S. 61, 70-71 (2001). Plaintiffs bring the exact challenge *Malesko* endorses: a "suit[] for injunctive relief" in federal court. *Id.* at 74. The Court in *Murthy v. Missouri* found no traceability because the record showed no "specific causation" between government conduct and social media companies' independent content moderation decisions. 603 U.S. 43, 59 (2024). Here, GEO performs a government function at Defendants' direction under mandatory standards Defendants wrote—they do not possess the independent discretion present in *Murthy*. FAC ¶¶ 32–38, 47–58, 156, 212.

Finally, *GEO Group, Inc. v. Newsom* undercuts Defendants' traceability argument. There, the federal government and GEO sued California to challenge a state statute banning private detention facilities. The government's argument, which the Ninth Circuit accepted, was that ICE's detention operations at privately run facilities are federal operations that states cannot interfere with, precisely because ICE exercises pervasive authority over those operations through its contracting power and detention standards. 50 F.4th at 756–57. Having successfully argued that privately operated detention facilities are extensions of federal operations when it suited the government's interests, Defendants cannot now reverse course and disclaim responsibility for those same operations when detained people challenge the punitive conditions within them.

On **redressability**, this Court found that a court order is "likely to address the conditions of confinement and medical care to which individual Plaintiffs might be entitled while at Adelanto." Order at 9. Defendants offer no basis to revisit that conclusion. Unlike *Lujan*, where the party to be enjoined had no power to compel non-parties, Defendants here set standards and policies, fund all operations, control staffing plans, conduct inspections, identify deficiencies, require corrective action, and retain authority to compel GEO's compliance or terminate the contract. FAC ¶¶ 32, 36, 47–58, 156–62. Moreover, because Defendants' constitutional obligations are nondelegable, if a contractor is not providing constitutional conditions,

4

Defendants *must* find a way to satisfy constitutional standards, whether by compelling GEO, replacing GEO, or providing adequate conditions themselves. *See West v. Atkins*, 487 U.S. 42, 56 (1988); *see also* Order at 13.

On **ripeness**, this Court found that Plaintiffs' claims are ripe because they challenge "ongoing concrete harm due to their exposure to poor conditions of confinement." Order at 11. Nothing has changed. The FAC confirms ongoing conditions: contaminated water, spoiled food, grossly inadequate medical care, and insufficient disability accommodations. FAC ¶¶ 59–162. Courts consistently hold that ongoing exposure to inhumane conditions satisfies ripeness and Article III injury. *See Graves v. Arpaio*, 623 F.3d 1043, 1047 (9th Cir. 2010); *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014). Defendants' suggestion that Plaintiffs' claims are speculative ignores that L.T. and Salazar-Garza remain detained at Adelanto *today*, subject to the very conditions the FAC challenges.

Although Plaintiffs J.M. and Mesrobian have been released from Adelanto, their release does not moot the class claims. Conditions-of-confinement claims in detention are the classic example of claims that are "inherently transitory" as they are "capable of repetition, yet evading review" because detained people are routinely transferred or released before litigation concludes. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1092 (9th Cir. 2011). Indeed, the inherently transitory doctrine applied to conditions-of-confinement claims at this facility in *Torres v. U.S. Dept. of Homeland Sec.*, 411 F. Supp. 3d 1036, 1056 (C.D. Cal 2019). When the inherently transitory doctrine applies, "the action qualifies for an exception to mootness *even if* there is no indication that [individual plaintiffs] may again be subject to the acts that gave rise to the claims." *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997). Moreover, two Individual Plaintiffs—L.T. and Salazar-Garza—remain detained at Adelanto, ensuring a live controversy exists independent of J.M.'s and Mesrobian's releases.

PLAINTIFFS' OPPOSITION TO DEFS' MOTION TO DISMISS FAC
Case No. 5:26-cv-00322-SSS-SPx

### 2. Section 1252 Does Not Bar Relief for Unconstitutional Conditions of Confinement.

Plaintiffs' requested relief does not implicate any provision covered by Section 1252(f)(1). Their Fifth Amendment claims arise from the United States Constitution. Their Rehabilitation Act claims arise from 29 U.S.C. § 794. Their APA claims challenge ICE's failure to follow its own standards. None of these claims seeks to enjoin or restrain the operation of Sections 1221–1231 of the INA because they concern the *conditions* of detention, not the authority to detain.

Section 1252(f)(1) limits the jurisdiction of the Judiciary and the District Courts to review certain executive actions taken with respect to immigration, but it does not "categorically insulate immigration enforcement from 'judicial classwide injunctions.'" *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 812 (9th Cir. 2020). It is not a threshold jurisdictional bar; it merely limits certain kinds of injunctive relief. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022); *Biden v. Texas*, 597 U.S. 785, 798 (2022).

Even if the injunction were to have some incidental downstream effect on a covered INA provision, that would not bring it within Section 1252(f)(1)'s scope. The Ninth Circuit has repeatedly held "that § 1252(f)(1) does not prohibit an injunction" issued under non-covered provisions "simply because of collateral effects on a covered provision." *Al Otro Lado v. EOIR*, 138 F.4th 1102, 1125 (9th Cir. 2025) (en banc). There is also a strong presumption that the judiciary may address constitutional claims. *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018).

### 3. CHIRLA Has Standing Because Adelanto's Conditions Directly Impair Its Core Legal Services Operations.

The Court's sole pleading concern was CHIRLA's organizational standing, which it found insufficient "based on the current pleadings" because CHIRLA's prior allegations resembled a resource-diversion theory. Order at 8–9. The Court granted leave to amend and identified a path forward: *Hippocratic Medicine* recognizes

6

standing where the challenged conduct "directly affect[s] and interfere[s] with [an organization's] core business activities." *Id.* (quoting *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024)). The FAC's amended allegations follow that roadmap and plead precisely the kind of direct interference the Court indicated would suffice. FAC ¶¶ 18–25.

CHIRLA's core work is providing pro bono legal services to detained indigent individuals, conducting intakes, coordinating legal-support referrals, and operating a hotline for individuals affected by immigration enforcement. *Id.* ¶¶ 21–22. The FAC alleges that conditions at Adelanto directly impair each function: CHIRLA receives hundreds of Adelanto-related calls, must spend additional time recording medical information rather than screening legal claims, and conducts fewer intakes and referrals as a result. *Id.* ¶ 22. These are not discretionary advocacy expenditures; they are forced disruptions to CHIRLA's existing client-services pipeline caused by Defendants' conduct.

The FAC also alleges that Adelanto's conditions interfere with CHIRLA's legal representation itself—a harm distinct from and more severe than resource diversion. Medical neglect makes removal-defense preparation harder because staff must devote time to addressing clients' medical crises rather than preparing their legal cases, and clients' declining health makes attorney meetings more difficult and less productive. *Id.* ¶ 23. Worse still, Adelanto's conditions pressure actual and prospective clients to abandon their claims and accept "self-deportation," causing CHIRLA to lose clients entirely and waste resources preparing cases that are never adjudicated. *Id.* ¶ 24. These injuries go to the heart of CHIRLA's organizational mission: the conditions do not merely increase CHIRLA's costs, they prevent CHIRLA from doing its work. *Id.* ¶¶ 21–25; *see also* Order Granting Motion for Preliminary Injunction*, Vasquez Perdomo v. Noem*, No. 25-cv-05605 (C.D. Cal. Nov. 13, 2025) Dkt. No. 256. Under *Hippocratic Medicine,* this is sufficient to establish organizational standing.

7

CHIRLA independently satisfies the requirements for associational standing. In *Vasquez Perdomo v. Noem*, 148 F.4th 656, 676 (9th Cir. 2025), the Ninth Circuit concluded that CHIRLA had associational standing because its members were at risk of being injured by the government's practice of racially profiling and detaining individuals. Here, Plaintiffs similarly allege that (1) CHIRLA has members who would otherwise have standing to sue in their own right because it has detained members who risk imminent harm; (2) the interests CHIRLA seeks to protect are germane to its purpose of protecting indigent immigrants; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.*; *see* FAC ¶ 18. As such, CHIRLA also satisfies the requirements of associational standing.

**B.    Defendants Cannot Evade Responsibility by Pointing to Their Contractor.**

Defendants' central argument—that Plaintiffs have "sued the wrong defendants" because GEO exercises day-to-day operational control over Adelanto—rests on a fallacious rewriting of the constitutional obligations at stake in this case and ignores this Court's prior holdings. Motion at 6–7. Defendants do not dispute they are responsible for Plaintiffs' detention; they contracted with GEO to carry out that detention; they set detention standards; they have federal staff onsite responsible for compliance and reviewing grievances weekly (*Id.* at 5, 8; Quevedo Decl. ¶ 5); they routinely inspect the facility (Motion at 8); they control staffing plans (*id.*); they are responsible for identifying deficiencies and requiring corrective action (*id.* at 7–8); they fund GEO's operations with over $400 million per year under a $2 billion contract (FAC ¶ 35); and they have the power to compel changes, impose financial penalties, or terminate the contract. FAC ¶¶ 47–58, 156–60. Yet Defendants contend that because they hired GEO to operate the facility, they bear no constitutional responsibility for the conditions at Adelanto, no matter how inhumane those conditions become. The Court already agreed that the Constitution does not permit

the government to abdicate its constitutional duties, and the consequences of such a finding would allow the Government to violate fundamental human rights. Hearing Tr. at 22:21–23:9.

### 1. Defendants' Custodial Duty is Nondelegable and Cannot be Contracted Away to GEO.

The Supreme Court has made clear that "when the State takes a person into its custody and holds the person there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). This duty encompasses the obligation to provide "food, clothing, shelter, [and] medical care" because by restraining an individual's liberty, the government has rendered him "unable to care for himself." *Id.* at 200.

This constitutional duty is nondelegable—it cannot be contracted away. The Supreme Court squarely addressed this point in *West v. Atkins*, holding that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody." 487 U.S. at 56. The Ninth Circuit has applied the same principle, holding that government entities "cannot shirk their obligations . . . under federal law by housing [plaintiffs] in facilities operated by [third-parties]." *Armstrong v. Brown*, 732 F.3d 955, 957 (9th Cir. 2013). Any other rule would produce an untenable result: the government could immunize itself from constitutional accountability by hiring a private company.

Defendants' cited authorities do not support their baffling position. *Logue* and *Orleans* are Federal Tort Claims Act ("FTCA") cases addressing whether the U.S. is vicariously liable for damages caused by the negligent acts of independent contractors. *Logue v. United States*, 412 U.S. 521 (1973); *United States v. Orleans*, 425 U.S. 807 (1976). The question there was whether a contractor's employees were "employees of the government" for purpose of the FTCA's waiver of sovereign immunity. Plaintiffs here have not sued GEO, do not sue under the FTCA, and do not

9

seek damages. They assert that the *federal government itself* has violated its constitutional duties to people in its custody. *Padilla* only addressed the procedural question of the proper respondent in a habeas petition challenging the *fact* of detention, and the Court expressly limited its immediate-custodian rule to that context, recognizing that the rule "does not apply when a habeas petitioner challenges something other than his present physical confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004). Plaintiffs do not challenge their detention; they challenge the *conditions* of their confinement. This is not a habeas case, and the immediate-custodian rule does not apply. *Minneci v. Pollard* is simply incongruous—it held that a "federal prisoner seek[ing] damages from privately employed personnel working at a privately operated federal prison" lacks a *Bivens* remedy and "must seek a remedy under state tort law." 565 U.S. 118, 131 (2012). Plaintiffs do not bring a *Bivens* claim and do not seek damages from private employees. They seek *injunctive relief* against the *federal government*—precisely the type of remedy *Minneci* left undisturbed.

### 2. GEO Is Not Required Because Complete Relief Can Run Against the Federal Defendants.

Defendants suggest this case cannot proceed without GEO as a party. But neither Rule 19 nor any other authority requires joinder of a government contractor when detained individuals seek injunctive relief against the government for unconstitutional conditions of confinement. To the contrary, under Rule 19(a), a party is "required" only if the court cannot "accord complete relief among existing parties" without the absentee, or if the absentee's absence would impair its ability to protect its interest or leave existing parties subject to inconsistent obligations. Fed. R. Civ. P. 19(a)(1).

First, the Court can accord complete relief among the existing parties. The FAC alleges that Defendants possess every tool necessary to remedy the challenged conditions without GEO's participation in this lawsuit. Defendants set the governing detention standards through the PBNDS (FAC ¶¶ 47–50); approve staffing under the

10

"Government-approved Contractor Staffing Plan," with monthly vacancy reporting (FAC ¶ 53) and may respond to noncompliance through informal resolution, discrepancy reports, corrective-action plans, withholding payment, financial penalties, replacing the contractor, or administering detention. FAC ¶¶ 54–57. Critically, Defendants retain authority to "enforce, modify, extend, or terminate" the GEO contract. FAC ¶ 58. Defendants can exercise these existing authorities without an injunction against GEO.

Defendants do not adequately refute these allegations. In fact, Defendants' own evidence confirms their control. The Quevedo Declaration (ECF 80-1) establishes that ICE/ERO has responsibility to "observe, identify, and notify" contractors of deficiencies and to maintain quality assurance under the PBNDS (Quevedo Decl. ¶ 4); that approximately 52 federal personnel are assigned onsite at Adelanto, including supervisors and assistant field office directors, who monitor adherence to detention standards (Quevedo Decl. ¶ 5); that the ICE contracting officer verifies GEO's staffing obligations as requirements change; that ICE administers the contract through invoices, monthly reports, and deficiency documentation; and that ICE may address deficiencies through discrepancy reports, corrective-action plans, inspections, remedial measures, withheld payment, or contract termination (Quevedo Decl. ¶ 9); that ODO inspections generate reports; that ERO notified GEO in writing of inspection deficiencies; that GEO completed corrective action; and that Quevedo herself meets weekly with GEO staff regarding grievances and complaints from detained individuals. Quevedo Decl. ¶¶ 12–13.[1] These admissions confirm that Defendants already possess—and regularly exercise—the oversight and enforcement through which any injunctive relief would operate.

Second, GEO's absence will not impair its ability to protect its interests. Courts

---

[1] The Quevedo declaration cannot be used to support facts in dispute during a 12(b)(6) motion. *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)).

in this Circuit have consistently entered injunctions against the government alone—without the contracted facility operator—in conditions-of-confinement cases at privately run detention facilities, and no court has required joinder of the contractor. *See Roman v. Wolf*, 5:20-cv-00768-TJH-PVC, Dkt. 55 (ordering the government, not GEO, to make necessary changes at Adelanto), *aff'd in part*, 977 F.3d 935, 938 n.1 (9th Cir. 2020) (affirming conditions injunction at Adelanto against the government, where GEO group was not a party);[2] *Zepeda Rivas v. Jennings*, 465 F. Supp. 3d 1028, 1036–37 (N.D. Cal. 2020) (entering injunction against "ICE and all of its officers, agents, servants, employees" at GEO facility) *aff'd*, 845 F. App'x 530, 535 (9th Cir. 2021); *Ruiz v. ICE*, No. 3:25-CV-09757-MMC, 2026 WL 851980, (N.D. Cal. Mar. 27, 2026) (entering injunction against government, not contracted facility operator); *see also Armstrong*, 732 F.3d at 957 (affirming same).[3] Plaintiffs are not aware of *any* case holding that the private entity operating a facility is a required party when detained individuals sue the government for injunctive relief based on conditions violations.[4] Moreover, under Rule 65(d)(2), any injunction entered against Defendants would bind their "officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" with them—which would include GEO as Defendants' contractor.

---

[2] The warden of Adelanto was named in *Roman* because that case involved a habeas petition.

[3] Because courts independently assess standing and joinder under Rule 19, it is implicit that these courts determined the facility operators, including GEO, were *not* required parties.

[4] While Plaintiffs contend that GEO is a government actor, *see Torres*, 411 F. Supp. 3d at 1057, if added as a party, GEO would likely raise defenses that could complicate the litigation, namely that they are not liable for constitutional violations as private contractors. *See, e.g., Geo Grp., Inc. v. Newsom*, 50 F.4th 745 at 755 (9th Cir. 2022) (en banc). GEO might also seek to litigate its contract with ICE within the scope of this case. Adding GEO would also enable the government to continue disclaiming responsibility for conditions and delay Plaintiffs' urgent need for relief while this issue is litigated.

The Ninth Circuit squarely held that injunctions may be issued against the government to enforce standards upon its contractors, even when the contractors are absent from the case. In *Bregsal v. Brock*, the Ninth Circuit held that a preliminary injunction requiring the Department of Labor to enforce statutory standards upon labor contractors without joining them, observing the contractors not being "among the parties here does not prevent the district court, or this court, from issuing an injunction." 843 F. 2d 1163, 1170 (9th Cir. 1988). The same principle applies here: Plaintiffs ask the government to enforce its own constitutional and regulatory standards at a facility it funds, oversees, and controls. *See, e.g.*, *Jensen v. Shinn*, 609 F. Supp. 3d 789, 866, n. 36 & 912–13 (D. Ariz. 2022) (holding government liable for unconstitutional prison medical care provided by private contractor because government could compel sufficient staffing").

An injunction against the federal Defendants also provides the most streamlined and effective remedy because the government bears constitutional responsibility and retains discretion to determine how to meet its obligations. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253–54 (9th Cir. 1982), *overruled in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995) ("[T]here is more than one way in which the State could provide necessary medical services."). For example, if the Court orders the government to provide clean drinking water, the government could take various steps to comply: it could order GEO to take certain actions, bring in actors beyond GEO to provide clean water, or provide clean water itself. The same flexibility applies across the range of conditions at issue–staffing, medical care, disability accommodations, and facility maintenance. Even if GEO were unable or unwilling, the government remains constitutionally obligated to act—it could replace GEO, bring in additional contractors, or operate the facility itself. And because Plaintiffs' claims target systemic policies and practices, rather than any given GEO employee, the injunction would address the governmental decisions and omissions

that the government alone controls.[5]

**C.    The ICE-GEO Contract Confirms Defendants' Control; Plaintiffs Do Not Sue to Enforce It.**

Defendants argue that Plaintiffs lack a cause of action or "party standing" to enforce ICE's contract with GEO. Motion at 5–6. This is a strawman. Plaintiffs do not assert a cause of action as third-party beneficiaries of the ICE-GEO contract. The sources of Plaintiffs' rights are the Fifth Amendment, the Rehabilitation Act, and Administrative Procedure Act—not the ICE-GEO contract. The ICE-GEO contract is relevant here only as evidence of the government's control over Adelanto's conditions and its power to compel changes—precisely the kind of evidence courts routinely consider in assessing traceability and redressability. FAC ¶¶ 32–37; ECF 54-2 at ECF 2. Defendants' reliance on 8 U.S.C. § 1231(h), which provides that the INA does not create enforceable rights for detained people, is an aberration because Plaintiffs' claims arise under the Constitution and federal statutes, not the INA's detention provisions.

Because Plaintiffs are not seeking to enforce the ICE-GEO contract, *Xirum v. U.S. ICE* does not support Defendants' position. To the contrary, Defendants mischaracterize *Xirum*'s holdings: the court held that ICE's certification of a facility as PBNDS-compliant was final agency action reviewable under the APA, *Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00801-TWP-KMB, 2023 WL 2683112, at *11–12 (S.D. Ind. Mar. 29, 2023), and sustained a claim that ICE's continued funding of a facility despite known violations constituted abdication of statutory responsibilities falling within the *Heckler* exception, *Xirum v. U.S. Immigr. &*

---

[5] There is no guarantee GEO will remain the contractor at Adelanto—ICE could purchase the facility or seek to change contractors. *See ICE Detention Reengineering Initiative,* https://www.governor.nh.gov/sites/g/files/ehbemt971/files/media/media_document/merrimack-nh-detention-reengineering-initiative-final.pdf (indicating ICE intends to purchase ten existing facilities where it operates).

14

*Customs Enf't*, No. 1:22-cv-00801-TWP-KMB, 2024 WL 3718145, at \*9–12 (S.D. Ind. Aug. 8, 2024) (citing *Heckler v. Chaney,* 470 U.S. 821, 833 n.4 (1985)).

### D. The FAC Ties Each Claim to Its Supporting Facts and Satisfies Rule 8.

"The touchstone of Rule 8 is to provide notice of the entitlement to relief[.]" *Gibson v. City of Portland*, 165 F.4th 1265, 1293 (9th Cir. 2026). The FAC does exactly that: each count has a corresponding section of detailed factual allegations and explicates a distinct legal basis for relief. *See* FAC ¶¶ 104–14, 176–89 (conditions constituting punishment); ¶¶ 67–93, 190–94 (unconstitutional healthcare deficiencies); ¶¶ 94–103, 195–204 (failures to accommodate amounting to disability discrimination); ¶¶ 156–162, 205–16 (agency action violating the APA).

None of Defendants' arguments prove otherwise. First, incorporation by reference does not automatically convert the FAC into a shotgun pleading. Defendants' case law makes clear that "[i]ncorporation by reference is permitted by Rule 10(b) and (c)" and creates a problem only when used "indiscriminately," making it "difficult, if not impossible, for the opposing party to formulate a response." *Gibson*, 165 F.4th at 1288. That is not the case here. Second, referring to the same facts in multiple counts does not "mix[] legal theories." *See* Motion at 4–5. It is axiomatic that "'the same course of wrongful conduct' . . . may frequently give rise to more than a single cause of action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955). Finally, the FAC plainly alleges Defendants' liability as the "legal custodian of Plaintiffs" who are "responsible for ensuring immigrants are kept in conditions that comply with the Constitution and the law." FAC ¶¶ 26, 29; *cf. McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996) (affirming dismissal because "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Defendants are on notice of Plaintiffs' claims.

**E.    No Administrative Exhaustion Requirement Bars Plaintiffs' Claims.**

Defendants argument that Plaintiffs' FAC should be dismissed because Plaintiffs have not exhausted administrative remedies fails because there is no exhaustion requirement. As Defendants admit, the Prison Litigation Reform Act's exhaustion requirement does not apply to people in civil detention. Motion at 16; *Page v. Torrey*, 201 F.3d 1136, 1139–40 (9th Cir. 2000) (the term "prisoner" does not encompass a person in civil detention for purposes of the PLRA); *Agyeman v. INS*, 296 F.3d 871, 885–86 (9th Cir. 2002) (finding that a detained person pending civil deportation proceedings is not a prisoner under the PLRA). Defendants have not cited any case where an exhaustion requirement barred *civil* detainees' constitutional claims.

Even if the exhaustion requirement were to apply, the requirement is prudential rather than jurisdictional and may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotations omitted). Here, the "multitiered grievance system," Motion at 16, is incapable of timely resolving Plaintiffs' claims while their health and safety is at stake.

**F.    The FAC States Fifth Amendment Claims Based on Unconstitutional Conditions.**

Count One states a claim that conditions at Adelanto are unconstitutionally punitive. Conditions violate the Fifth Amendment where they are either (1) "expressly intended to punish," (2) "excessive in relation" to a non-punitive purpose, *or* (3) could be "accomplished in so many alternative and less harsh methods." *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979); *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). The FAC alleges each basis: Defendants are on record stating the purpose of detention is to punish and deter illegal entry (FAC ¶ 183); conditions including inedible food, undrinkable water, grossly inadequate medical care, and retaliatory solitary

confinement bear no reasonable relationship to any legitimate governmental objective (FAC ¶¶ 59–155, 179–89); and the PBNDS show less harsh methods exist. Additionally, conditions "similar to" or "more restrictive than" those of criminal prisoners are presumptively punitive under *Jones*, 393 F.3d at 932–34, which is plainly alleged in the FAC (FAC ¶¶ 66, 106–13, 179–82, 186–87). Defendants' only argument—that the FAC attributes harmful conduct to Adelanto staff rather than to federal officials, Motion at 15—is based on a misreading of law. An "express intent to punish" is *only one of three* ways that Plaintiffs can show unconstitutionally punitive conditions. *Bell*, 441 U.S. 535–39. Regardless, Plaintiffs have alleged government intent behind ICE's abdication of duty to ensure constitutional conditions. FAC ¶¶ 105, 183.

For Count Two, Plaintiffs must allege the government made an intentional decision regarding conditions that posed a substantial risk of serious harm, failed to take reasonable measures to abate that risk despite the obvious consequences, and the failure caused plaintiff's injuries. *Roman*, 977 F.3d at 943. The FAC alleges that Defendants have populated a detention center with an objectively deficient system of medical care and tolerated the resultant danger to detainees, causing widespread harm. FAC ¶¶ 190–94.

Defendants argue that ICE's creation of the PBNDS and routine inspections of Adelanto "directly contradict" any allegation of punitive intent or deliberate indifference. Motion at 15. But Defendants ignore the crucial allegations that Defendants knew or should have known about deplorable conditions and failed to appropriately remedy them. FAC ¶¶ 156–59, 210–16. Adopting standards that are not enforced is not evidence of good faith; it is evidence of awareness of a problem and a failure to remedy it—the very definition of deliberate indifference. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (consciously taking no action can be an intentional decision); *Roman*, 977 F.3d at 944 (government's "inadequate response reflected a reckless disregard for detainee safety."). Finally,

17

*Fraihat* does not foreclose a deliberate indifference claim; it demonstrates that the adequacy of ICE's oversight procedures is an issue of fact that cannot be resolved at the pleading stage. *See Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021). If there is a factual dispute regarding the adequacy of Defendants' oversight, it is premature to resolve on a motion to dismiss.

**G.     The Rehabilitation Act Applies to ICE, and the FAC States a Claim.**

Defendants are subject to § 504 of the Rehabilitation Act, which expressly applies to "program[s] or activit[ies] receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C.A. § 794(a), (b)(1)(A). The Rehabilitation Act applies to DHS and ICE's activities, including detention, because they are executive branch agencies. *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1051 (C.D. Cal. 2010) (finding likelihood of success for Rehabilitation Act claims against DHS).

Defendants' citations to *U.S. Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597, 605 (1986), and *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013), address whether *companies* that do not directly receive federal funding are subject to the Act. Neither discusses § 504's application to federal agencies.

Defendants also wrongly imply that Plaintiffs must allege "specific discriminatory intent." Motion at 16. That showing is not required in Rehabilitation Act claims where, as here, Plaintiffs seek only injunctive relief. *A.J.T. v. Osseo Area Schs.*, 605 U.S. 335, 344 (2025); *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004).

**H.     Plaintiffs State Reviewable APA Claims Challenging ICE's Own Adelanto Decisions.**

**1.     Congress Has Not Precluded Review of ICE's Conditions and Compliance Decisions.**

The APA imposes a "strong presumption favoring judicial review" of agency

actions, and the government must carry a "heavy burden" to establish that Congress intended to preclude judicial review. *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (quotation omitted). A court in this District previously determined that similar claims were reviewable. *Torres*, 411 F. Supp. 3d at 1068–69.

Under § 701(a)(1), Defendants identify no statute precluding review; the provisions they cite (§ 202(5); § 1231(h)) address immigration enforcement, not detention conditions, and contain no review-preclusion language.

The exception for agency action committed to agency discretion under § 701(a)(2) "has been construed 'narrowly' to apply only in 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Cmty. Legal Servs. in E. Palo Alto v. HHS.*, 137 F.4th 932, 939 (9th Cir. 2025) (citation omitted). It does not bar review where "regulations or agency practice provide a 'meaningful standard'" for judicial review. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (citation omitted). The PBNDS supply that standard. Under the *Accardi* doctrine, agencies must follow their own internal standards—such standards provide "law to apply" for § 701(a)(2). *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004). ODO "assess[es] and rate[s] each facility's compliance with their contractually obligated detention standards." ECF 35-7 at 4. Where an agency must follow prescribed criteria, there is law to apply.

Finally, Congress directed ODO to conduct "unannounced inspections of detention facilities," provide "assistance to individuals affected by potential misconduct, excessive force, or violations of law or detention standards," and make "recommendations to address concerns or violations of contract terms." 6 U.S.C. § 205(b); FAC ¶ 159 n.156. *Lincoln v. Vigil* does not apply. 508 U.S. 182, 193 (1993). Plaintiffs do not seek to dictate staffing levels or reallocate funds; they challenge ICE's decision to resume mass detention at a single detention facility despite known capacity constraints and ODO's "Good" rating under prescribed PBNDS benchmarks.

**2.** **ICE's Repopulation Decision and "Good" Rating Are Final Agency Action.**

Defendants try to recast Plaintiffs' APA claim as a challenge to GEO staffing or generalized detention oversight, and do not meaningfully address the first discrete agency action Plaintiffs challenge: ICE's decision to repopulate Adelanto at scale despite known capacity constraints and its own documented findings of facility deficiencies. Plaintiffs also challenge ODO's final "Good" rating after a completed inspection. Both are discrete, final agency actions.

Finality is a "flexible" inquiry approached "pragmatically." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). It is satisfied when the challenged conduct both "mark[s] the consummation of the agency's decision-making process" and carries "legal consequences." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified)).

First, Plaintiffs challenge ICE's deliberate decision to rapidly repopulate Adelanto without adequate staff—a specific, identifiable course of agency conduct, not the diffuse programmatic attack *Lujan* addressed. ICE's repopulation decision was consummated when ICE approved the massive influx beginning in June 2025. Legal consequences flowed immediately as the massive influx overwhelmed the facility's capacity, resulting in unconstitutional conditions. FAC ¶¶ 59–66, 212.

Second, Plaintiffs challenge ICE's issuance of a "Good" rating following an inadequate congressionally mandated inspection with direct legal consequences. FAC ¶ 213. *Torres* held that ICE's inspection and rating of this same facility constitutes final agency action, and Defendants offer no basis to depart from that holding. *Torres*, 411 F. Supp. 3d at 1068–69. Defendants' own authority, *Xirum*, held that ICE's certification of a detention facility was final agency action. *Xirum*, 2023 WL 2683112, at *11. Defendants' programmatic-activity cases are inapposite: each involved diffuse, ongoing conduct with no discrete triggering act.

Defendants' reliance on *Norton* is also misplaced; Plaintiffs do not seek to

20

compel agency action under § 706(1). *Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004). The "Good" rating also satisfies the statutory definition of agency action as an "order" under 5 U.S.C. § 551(6)—ICE's definitive disposition of its congressionally mandated performance evaluation.

### 3. ICE Plausibly Acted Arbitrarily by Ignoring Known Risks and Departing From Its Own Standards.

Plaintiffs have adequately pleaded that both the decision to repopulate Adelanto and the "Good" rating were "arbitrary and capricious" under 5 U.S.C. § 706(2)(A). An agency's decision must be set aside where the agency "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must also "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Both fail this standard.

The FAC plausibly alleges that ICE resumed mass detention at Adelanto without rationally considering whether the facility could safely absorb that influx. FAC ¶ 70. ICE's own inspection report later acknowledged that the "sudden influx [of detained individuals] may have contributed to the rise in deficiencies." *Id.* ¶ 67 n.97. These allegations plausibly establish that ICE "entirely failed to consider an important aspect of the problem" and that the decision to repopulate at such scale and speed was therefore arbitrary and capricious. *State Farm*, 463 U.S. at 43.

The "Good" rating is independently arbitrary and capricious because it "runs counter to the evidence before the agency." *Id.* Plaintiffs alleged widespread medical neglect. FAC ¶¶ 60–64, 73. A detained person died mere days after the ODO inspection, after staff identified his condition as potentially life-threatening but returned him to his cell. *Id.* ¶ 89. That the facility still received a "Good" rating with

21

no medical care deficiencies found defies rational explanation.

The rating is also independently defective under the *Accardi* doctrine, which forbids an agency's unexplained departure from its own binding standards. *See Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1020 (N.D. Cal. 2019). Here, ICE imposed the PBNDS on GEO as mandatory contract terms (FAC ¶¶ 36–37), yet graded Adelanto "Good" in September 2025 despite ongoing violations of PBNDS standards governing medical care, food service, drinking water, and disability accommodations. *Id.* ¶¶ 62–67, 89–93, 161–62. Defendants' departure from their own standards in the face of these documented deficiencies is precisely the sort of arbitrary, unexplained deviation from established internal standards *Accardi* forbids.

## I.    At Minimum, Plaintiffs Should Be Granted Leave to Amend.

Should this Court grant Defendants' Motion in whole or in part, Plaintiffs respectfully seek leave to amend. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (leave to amend should be granted with "extreme liberality" and there is a "presumption" in favor of granting leave absent prejudice or other *Foman* factors); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive … leave sought should, as the rules require, be 'freely given.'"). Here, there is no risk of prejudice to Defendants. As in *Eminence Capital*, Plaintiffs' allegations are not frivolous, are endeavoring to meet pleading requirements, and, have a "reasonable chance of successfully stating a claim." 316 F.3d at 1053. Plaintiffs firmly believe the FAC sufficiently pleads their causes of action, but they should be given the opportunity to cure any deficiencies perceived by the Court.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety and request leave to amend to cure any deficiencies determined by the Court.

PLAINTIFFS' OPPOSITION TO DEFS' MOTION TO DISMISS FAC
Case No. 5:26-cv-00322-SSS-SPx

Dated:  June 18, 2026                    Respectfully Submitted,

                                         WILLKIE FARR & GALLAGHER LLP

                                         By:   /s/ Nicholas Reddick
                                               Nicholas Reddick
                                               Stephen Henrick
                                               Alyxandra Vernon
                                               Jacob Karim


                                         PUBLIC COUNSEL

                                         By:   /s/ Rebecca Brown
                                               Rebecca Brown
                                               Sophia Wrench
                                               Amelia Piazza
                                               Elizabeth Hercules-Paez
                                               Belinda Escobosa


                                         IMMIGRANT DEFENDER LAW CENTER

                                         By:   /s/ Alvaro M. Huerta
                                               Alvaro M. Huerta
                                               Carson Adrianna Scott
                                               Alison Steffel


                                         COALITION FOR HUMANE IMMIGRANT RIGHTS

                                         By:   /s/ Carl Bergquist
                                               Carl Bergquist
                                               Adam Reese

23

## WORD COUNT CERTIFICATE

The undersigned counsel of record for Plaintiffs certified that this Opposition to Defendants' Motion to Dismiss the Complaint contains 6,993 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 18, 2026                    Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By:   */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim

PUBLIC COUNSEL

By:   */s/ Rebecca Brown*
Rebecca Brown
Sophia Wrench
Amelia Piazza
Elizabeth Hercules-Paez
Belinda Escobosa

IMMIGRANT DEFENDER LAW CENTER

By:   */s/ Alvaro M. Huerta*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By:   */s/ Carl Bergquist*
Carl Bergquist
Adam Reese

PLAINTIFFS' OPPOSITION TO DEFS' MOTION TO DISMISS FAC
Case No. 5:26-cv-00322-SSS-SPx