PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
BELINDA ESCOBOSA (SBN 214178)
bescobosa@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br>Plaintiffs,<br>v.<br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br>Defendants. | Case No. 5:26-cv-00322-SSS-SPx<br><br>**PLAINTIFFS' FEEDBACK REGARDING THE ADEQUACY OF DEFENDANTS' REMEDIAL PLAN**<br><br>**CLASS ACTION**<br><br>**Ctrm:** 2, 2nd Floor<br>3470 12th Street<br>Riverside, CA 92501<br>Hon. Sunshine Sykes |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

*Attorneys for Plaintiffs*

On July 16, 2026, the Court issued an "Order Granting, In Part, Plaintiffs' Renewed Motion for Preliminary Injunction" Dkt. No. 104 (the "Order")[1]. The Order required Defendants "to develop and file within 14 days a remedial plan to implement comprehensive systems for medical care and disability accommodations at Adelanto Processing Center East and West" ("Adelanto") and required the Medical Monitor to review the remedial plan and provide feedback to the Court. The Order further stated that "[t]he parties will have 14 days after receipt of the Medical Monitor's feedback to meet and confer, and if necessary, submit feedback to the Court regarding the adequacy of the remedial plan." *Id.* at 2. The Court would then "enter a separate order adopting a Remedial Plan based on the feedback from the Medical Monitor and the parties," which would be incorporated by reference into the Preliminary Injunction Order. *Id.* On July 30, 2026, Defendants filed their Remedial Plan. Dkt. No. 111-1. On September 8, 2026, the Medical Monitor submitted his "Analysis of Remedial Plan," which provided feedback on Defendants' Plan to the Court.[2] Dkt. No. 138.

Defendants' submission does not satisfy the Court's Order because it fails to provide comprehensive and substantive remedial measures. Accordingly, Plaintiffs' position is that Defendants' Remedial Plan should not be incorporated into the Preliminary Injunction Order. Instead, Plaintiffs are prepared to meet and confer with Defendants after the Monitors' first monthly reports are submitted[3] and, within seven days, stipulate to a revised remedial plan, to the extent agreement is possible, and identify any remaining disputed provisions for the Court's resolution.

On September 21, 2026, the parties met and conferred to discuss Defendants' Remedial Plan and the Monitors' Analysis. Plaintiffs expressed that they agree with

[1] On September 11, 2026, the Court amended the Order but made no amendments regarding the Remedial Plan. Dkt. No. 147.

[2] Feedback on the portions of the Remedial Plan concerning Disability Accommodations was provided by Conditions Monitor Kellie Wasko.

[3] The Monitors' first reports are due on October 1, 2026. Dkt. No. 147 at 5.

the Monitors' Analysis and that Defendants' Remedial Plan was not substantive enough for Plaintiffs to provide specific feedback. Piazza Decl. ¶ 3. Plaintiffs suggested creating a remedial plan based on the information contained in the Monitors' first reports, due on October 1, 2026. *Id.* Defendants are amenable to deferring further action on the remedial plan until the Monitors file their first reports. *Id.* ¶ 4.

## I. INTRODUCTION

On July 16, 2026, the Court issued an "Order Granting, In Part, Plaintiffs' Renewed Motion for Preliminary Injunction" Dkt. No. 104 (the "Order"). The Order required Defendants "to develop and file within 14 days a remedial plan to implement comprehensive systems for medical care and disability accommodations at Adelanto Processing Center East and West" ("Adelanto"). *Id*. For both medical care and disability accommodations, the Court identified specific outcomes and ordered that Defendants' remedial plan should "specify policies, procedures, staffing, and required training sufficient to ensure" those outcomes. *Id.*

Plaintiffs agree with the Medical Monitor that Defendants' proposal "essentially is to develop a remedial plan" and is therefore unresponsive to the Court's Order. Dkt. No. 138 at 3. In multiple instances, Defendants' Plan maintains that the facility is in compliance with the Court's Order, implicitly denying that any remedial measures are necessary. Dkt. No. 111-1 at 3–6.[4] As the Monitors explained, any revised remedial plan should identify existing gaps in access to care, specify the

[4] Defendants' Remedial Plan also contains a section regarding the Court-ordered "Grievance System" by which detained people can submit information to the Monitors. *See* Dkt. No. 104. Since Defendants' Remedial Plan was filed, the Court entered the First Amended Preliminary Injunction Order, which modified the "Grievance System" and provided for implementation of a "Comment System." Dkt. No. 147. As of the date of this filing, implementation of the Comment System is in progress. Plaintiffs reserve the right to raise any issues regarding the Comment System and its implementation.

resources necessary to close those gaps, explain how those resources will be obtained, and provide a timeline for implementation. *Id*. at 2–3. Because Defendants' Remedial Plan is not responsive to the Court's Order, Plaintiffs' feedback is necessarily limited. Overall, Plaintiffs agree with the Monitors' Analysis and recommend that the Court decline to adopt Defendants' submission and defer entry of a remedial plan until after the Monitors file their first monthly reports. Following those reports, the parties should be directed to meet and confer and, within seven days, submit an agreed remedial plan to the extent agreement is possible and identify any remaining disputed provisions for the Court's resolution. Consistent with the Order and the Monitors' Analysis, any future remedial plan should identify the persons responsible for implementation, establish specific implementation deadlines, and provide measurable benchmarks for the Court to assess compliance.

## II. MEDICAL MONITOR'S ANALYSIS AND PLAINTIFFS' FEEDBACK

### A. Medical Care

**1. A documented health intake screening for all new detainees within eight hours of that person's arrival at the facility. The health intake screening must be sufficient to (1) identify and begin necessary treatment of those with physical or mental illnesses or injuries, (2) ensure continuity of pre-detention treatment and medication, and (3) recognize, segregate, and treat those with communicable diseases.**

<u>Defendants' Remedial Plan</u>

"ICE has asked GEO Group, Inc. (GEO) to comply with this requirement, has been reviewing existing facility contractual standards and requirements, and will review those same standards with GEO to bring current standards in line with the Court-ordered standards, e.g., reduce the maximum screening time from 12 hours (the contractually mandated PBNDS standard) down to 8 hours (the standard ordered by the Court)."

Monitor's Analysis

What Defendants propose is more an affirmation of the Court's intended goal than a plan of how to achieve that goal. Among other things, the current remedial plan fails to, but should:

a. identify the gaps between current and required performance. For example, while PBNDS may require intake screenings to be conducted within 12 hours of arrival, it is possible that they are currently all being conducted within 4 hours, in which case no remedial plan is necessary. Conversely, it's possible that many are not conducted until 18 to 24 hours after arrival, in which case a much more vigorous plan is needed.

b. specify the resources that are necessary to close any gaps. For example, current intake screenings might be inadequate due to: insufficient number of staff; the wrong type of staff (e.g., licensed practice nurses or medical assistants instead of registered nurses); insufficient space to conduct the examination part of the screenings; insufficient equipment to conduct the screenings confidentially (e.g., telephones used for language interpreter services that lack double handsets for confidentiality); unavailability of an internal or external source of pharmaceuticals to be able to continue medications within the timeframe of the patient's next scheduled dose.

c. describe how those resources will be obtained. For example, if an identified gap is that the detention facility currently employs five nurses to conduct screenings but needs seven nurses to achieve the Court's time requirement, the plan should describe how the Defendants will increase staffing by two additional people: Is an amendment to the Defendant's contract with GEO required? Will salaries have to be increased to fill vacant positions? Etc.

d. delineate the timeline for closing the gaps.

Plaintiffs' Feedback

Plaintiffs agree with the Medical Monitor's analysis. Defendants' proposal is merely an affirmation of the outcome the Court identified, not a plan for achieving it. Because Defendants have failed to identify specific remedial measures, Defendants should be required to meet and confer with Plaintiffs on a revised plan that identifies any gap between current and required performance and specifies the measures and resources necessary to close that gap, consistent with the Medical Monitor's findings

and recommendations. Depending on the cause of any identified deficiency, the revised plan should address whatever staffing, space, equipment, medication-access, or other resource gaps are preventing timely, comprehensive, and confidential intake screenings. As is evident from the record, Defendants must address specific issues related to the sick call system, access to specialists, and emergency responses.

**2. Access to primary, secondary, and tertiary medical care for all detainees according to their health care needs. This includes timely treatment appropriate to the severity of their physical or mental conditions consistent with the established standards of care and required timeliness for routine, urgent and emergent cases.**

<u>Defendants' Remedial Plan</u>

"ICE immediately asked GEO to comply with this requirement, has been reviewing existing facility contractual standards and requirements, and will be reviewing those same standards with GEO to determine a resolution to bring current standards in line with the Court ordered standards, e.g., providing some areas of specialty care in the facility to reduce wait times of third-party providers, relative to transferring detainees out of the facility for receiving that care."

<u>Monitor's Analysis</u>

Defendant's remedial plan essentially is to develop a remedial plan and therefore is unresponsive to the Court's instruction. Defendants recognize that they were already aware that they needed to provide the care described above in bold, and that their contractor, GEO, was supposed to have a mechanism in place to make that happen. Clearly that hasn't happened.

To be responsive to the Court's order, among other things, the remedial plan should include the four elements I outlined in (i) a, b, c, and d above, *to wit* :

a. identify the gaps between current and required performance;

b. specify the resources that are necessary to close any gaps;

c. describe how those resources will be obtained; and

d. delineate the timeline for closing the gaps.

Plaintiffs' Feedback

Plaintiffs agree with the Medical Monitor's analysis. As the Medical Monitor explained, Defendants' proposal "essentially is to develop a remedial plan" and therefore is unresponsive to the Court's Order. Dkt. No. 138 at 3. A revised remedial plan should identify existing gaps in access to primary, secondary, and tertiary care, specify the resources necessary to close those gaps, describe how those resources will be obtained, and establish a timeline for implementation.

**3. Timely diagnostic testing (including procedures for prioritizing the urgency of laboratory orders) and required timeframes for review, communication to patients, and follow-up of results.**

Defendants' Remedial Plan

"This facility is compliant. Adelanto ICE Processing Center maintains an established diagnostic services program that provides timely laboratory testing, diagnostic imaging, electrocardiography, and other medically necessary diagnostic studies. Existing established operational procedures, and clinical practices provide for prioritization of diagnostic testing based upon clinical urgency, timely provider review of diagnostic results, to patients,[sic] documentation within the Electronic Health Record, and appropriate clinical follow-up."

Monitor's Analysis

Defendants assert that they are already in compliance with this requirement and therefore do not offer a remedial plan. If their assertion is correct, then no remedial plan is needed. I will assess the validity of their assertion in the next and subsequent reports as necessary.

Plaintiffs' Feedback

Defendants assert that no remedial measures are necessary because Adelanto is already compliant with this requirement. But that assertion is inconsistent with evidence Plaintiffs have submitted regarding diagnostic testing at Adelanto, including Dr. Altaf Saadi's Declaration which explains that "detained individuals with chronic

issues do not receive proper medical attention in general, nor when it comes to receiving necessary medications, specialty care, or accommodations." Dkt. No. 34-4, Decl. Altaf Saadi, M.D. (Saadi Decl.) ¶ 46. Among other instances, detained individuals suffered from a broken toe that went untreated and without an X-ray for three months (Dkt. No. 34-28, Smith Decl. ¶¶ 14-19); a purple, swollen knee that was not evaluated by a doctor for over a month (Dkt. No. 34-21, Karamychev Decl. ¶¶ 14-16); and a dislocated shoulder for which GEO told the detained individual to reset the shoulder herself (Dkt. No. 92-3, Torres Decl. ¶ 8).

Otherwise, Plaintiffs agree with the Medical Monitor's analysis. Defendants' assertion of compliance should be tested against actual conditions at Adelanto before the Court determines that no remedial measures are necessary. If the Monitor identifies deficiencies, the revised remedial plan should specify concrete measures for correcting them consistent with the Monitor's findings and recommendations.

**4. Continuous provision of ordered medications, according to the prescribed dosage regimen, from the time of intake and throughout the period of detention. If there are any medications changes, a qualified medical provider must explain immediately to the detainee the reason for the change.**

<u>Defendants' Remedial Plan</u>

"This facility is compliant. Current medication management processes provide for: a.) Continuation of clinically appropriate medications from the time of intake through detention; b.) Provider review and reconciliation of medications upon admission; c.) Timely pharmacy ordering and delivery processes designed to prevent interruptions in prescribed therapy; d.) Procedures for bridge orders and continuation of treatment when pharmacy supplies are pending; e.) Management of formulary and nonformulary medications; f.) Monitoring and administration of medications through established medication administration procedures; g.) Continuity of medications during transfer or release through discharge planning and medication supply

processes; and h.) Ongoing provider oversight of medication regimens as part of continuity-of-care services.

Monitor's Analysis

Defendants assert that they are already in compliance with this requirement and therefore do not offer a remedial plan. If their assertion is correct, then no remedial plan is needed. I will assess the validity of their assertion in the next and subsequent reports as necessary.

Plaintiffs' Feedback

Defendants assert that no remedial measures are necessary because Adelanto is already compliant with this requirement. But that assertion is disputed by evidence Plaintiffs have submitted regarding interruptions in or administration of prescribed medications, including detained individuals who have been denied prescription diabetes medication (Dkt. No. 75-6, L.T. Decl. ¶¶ 22-29; Dkt. No. 34-15, Rodriguez-Arzola Decl. ¶¶ 5-15); denied doses of anti-seizure medication, leading to at least one late night seizure (Dkt. No. 75-7, Mesrobian Decl. ¶¶ 28-50); inconsistently administered medication for lupus, thyroid, and GERD, which can have life-threatening consequences (Dkt. No. 34-10, A.A.A.A. Decl. ¶ 16); and denied hospital-prescribed medication after a cardiac event at Adelanto (Dkt. No. 34-28, Smith Decl. ¶¶ 11-12).

Plaintiffs agree with the Medical Monitor's analysis. Defendants' assertion of compliance should be tested against actual conditions at Adelanto. If the Monitor identifies deficiencies, the revised remedial plan should specify the measures necessary to ensure continuous provision of ordered medications and otherwise incorporate the Monitor's findings and recommendations.

**5. Provision of patients' rights materials, translated as appropriate, for all detainees that inform them of their rights as patients, including rights to confidentiality, informed consent, refusal of treatment, access to medical records, and procedures for requesting medical attention.**

Defendants' Remedial Plan

"This facility is compliant."

Monitor's Analysis

Defendants assert that they are already in compliance with this requirement and therefore do not offer a remedial plan. If their assertion is correct, then no remedial plan is needed. I will assess the validity of their assertion in the next and subsequent reports as necessary.

Plaintiffs' Feedback

Plaintiffs agree with the Medical Monitor's analysis. Defendants' assertion that the facility is compliant should be tested against actual conditions at Adelanto. If the Medical Monitor identifies deficiencies, the revised remedial plan should incorporate the Medical Monitor's findings and recommendations regarding the provision of patients' rights materials.

**B. Disability Accommodations**

**1. A system to identify and track all detainees who have qualifying disabilities, as defined by Section 504 of the Rehabilitation Act and its implementing regulations, upon intake and throughout the period of detention.**

Defendants' Remedial Plan

"The facility is currently compliant. GEO is requesting that an additional ADA Coordinator position, with the appropriate relief factor, be added to the staffing plan to ensure adequate resources are available to manage this process. ICE is reviewing this proposal."

Monitor's Analysis

The Defendants state that GEO is requesting funding for an "additional" ADA Coordinator. It is not clear if this would be GEO's single (first) ADA Coordinator or it already has one or more ADA Coordinators and is seeking supplementary staff.

If it is the former, Defendants are not in compliance, as Section 504 of the Rehabilitation Act (as well as PBNDS, Section 4.7, which has been in place since the inception of GEO's contract with ICE) requires the facility to designate an ADA Compliance Coordinator. If it is the latter, it is not clear if the supplementary ADA Coordinator position is to support current workload or future workload of the ADA coordinator(s) who is (are) already working at Adelanto. If it is to support current workload, then the Defendants presumptively are not in compliance currently, in which case their remedial plan should specify when that supplementary ADA Coordinator will be in place and fully operating. If that supplementary position is to support future workload, the Defendants should so state.

In either case, according to their description of the "Current Process" ("The facility has a system to identify and track all detainees with qualifying disabilities upon intake and during their stay at the facility. This information is tracked in the Electronic Health Record (EHR) called Sapphire, and it is updated as needed."), the Defendants are not currently compliant for another reason. Section 504 of the Rehabilitation Act requires equal access to programs and services for those with disabilities. To fulfill that requirement, the fact that the individual has a disability requiring an accommodation must be communicated to the detention staff in the housing units, classification unit, education, and the general management responsible for ensuring equal rights and access to programs and services. Thus, while the current process that the Defendants share "identifies" individuals with a qualifying disability, it does not show any means of "tracking," i.e., a mechanism for that information to be communicated to detention staff. An acceptable remedial

plan needs to articulate how Defendants plan to communicate the information found in individuals' EHR, to detention staff[5] and the timeline for making that happen.

Finally, in their description of the current process, Defendants state that "[t]he facility has a system to identify…qualifying disabilities." They did not indicate whether that system included a mechanism for detention staff, attorneys, or family to alert the institution to the need for disability assessment and accommodations. If such a mechanism does not exist, a satisfactory remedial plan should include a description of the mechanism Defendants plan to put in place and the timeline to do so.

Plaintiffs' Feedback

Plaintiffs agree with the Conditions Monitor's analysis. Defendants' submission does not establish whether Adelanto currently has an ADA Compliance Coordinator, whether existing staffing is sufficient, or when the additional position requested by GEO would become operational. Nor does the Plan identify a mechanism for communicating necessary disability and accommodation information maintained in Sapphire to the detention staff responsible for providing those accommodations. Dkt. No. 138 at 5. The Plan also does not identify a mechanism by which detention staff, attorneys, or family members may alert the facility to the need for disability assessment or accommodations. *Id.* at 5–6. These deficiencies are particularly significant because family members of detained individuals have been unable to adequately ensure that, for example, the detained family member receives staff assistance to cope with dementia (Dkt. No. 34-27, Samaan Decl. ¶ 14) and to sleep in a bottom bunk when they cannot safely climb to a top bunk due to a brain tumor (Dkt. No. 34-16, Ding Decl. ¶¶ 18-19). A revised remedial plan should address these deficiencies and incorporate the Conditions Monitor's recommendations

---

[5] Per the Conditions Monitor, "The plan needs to account for the fact that, in accordance with PBNDS 4.3(II)(23) detention staff are not permitted access to the EHR."

regarding identification and tracking of individuals with disabilities, including concrete implementation timelines.

**2. A system for identifying and tracking the reasonable accommodations necessary for detainees with qualifying disabilities to participate in programs, services, and activities at the facility.**

Defendants' Remedial Plan

"ICE is currently reviewing existing facility contractual standards and requirements and will be reviewing those same standards with GEO to determine a resolution to bring current standards in line with the court-ordered standards, e.g., providing an additional ADA Coordinator position, with the appropriate relief factor, to be added to the staffing plan to ensure adequate resources are available to manage this process."

Monitor's Analysis

The Defendants' Remedial Plan is missing several elements.

With regard to bringing contractual requirements in alignment with court-ordered requirements, the plan fails to articulate the timeline for completing this alignment.

With regard to the addition of an ADA Coordinator position, as noted above, it is not clear if this would be GEO's single (first) ADA Coordinator or it already has one or more ADA Coordinators and is seeking supplementary staff. In either case, the Remedial Plan fails to, but should:

a. describe the process that will be put in place to track the detainees with qualifying disabilities, the housing restrictions, the health care appliances necessary to meet their needs (accommodations), and any necessary physical plant accommodations for their qualifying disability (e.g., strobe lights for deaf, ADA-compliant cells for mobility impaired); and

b. delineate the timeline for completing these tasks.

Plaintiffs' Feedback

Plaintiffs agree with the Conditions Monitor's analysis. Defendants' submission does not describe the process by which detainees' disability-related restrictions, necessary healthcare appliances, and physical-plant accommodations will be identified and tracked, and it provides no timeline for bringing contractual requirements into alignment with the Court-ordered requirements. A revised remedial plan should address those omissions consistent with the Conditions Monitor's findings and recommendations.

**3. Disabled detainees are provided reasonable accommodations.**

Defendants' Remedial Plan

"This facility is compliant, however, ICE is currently reviewing existing facility contractual standards and requirements and will be reviewing those same standards with GEO to try to improve this issue, e.g., by providing an additional ADA Coordinator position, with the appropriate relief factor, be added to the staffing plan to ensure adequate resources are available to manage this process."

Monitor's Analysis

Though Defendants assert that they are already in compliance, two facts belie this. First, they also state that they require additional resources to provide reasonable accommodations adequately. Therefore, we must conclude that at the present time, in the absence of those additional resources, they are not providing reasonable accommodations. Second, based on Defendants' assertions in B(i) above, they do not currently have a mechanism for communicating the qualifying disabilities identified by the health care staff, to detention staff, i.e., those responsible for assuring that most of the accommodations are provided.

In addition to providing the Court with the missing elements of a satisfactory remedial plan described above, their remedial plan should:

a. describe how they plan to provide the various reasonable accommodations that eligible individuals require, using an interactive process between the facility and the individual;

b. specify any resources (aside from ADA Coordinator staff) that are necessary to provide the accommodations;

c. describe how those resources will be obtained; and

d. delineate the timeline for completing these tasks.

Plaintiffs' Feedback

Plaintiffs agree with the Conditions Monitor's conclusion that Defendants' own submission contradicts their assertion of present compliance. Defendants simultaneously assert that Adelanto is compliant and state that additional ADA Coordinator staffing is necessary "to ensure adequate resources are available." Defendants also identify no mechanism for communicating qualifying disabilities identified by healthcare staff to the detention staff responsible for providing most accommodations. Dkt. No. 138 at 7. Plaintiffs' evidence likewise reflects continuing deficiencies in the provision of reasonable accommodations. As the Court explained, "[t]he record shows at least 8 detainees who have been denied reasonable accommodations." Dkt. No. 121 at 38. A revised remedial plan should therefore specify how required accommodations will be provided, the resources necessary to provide them, how those resources will be obtained, and the timeline for implementation.

**4. Provision of disability specific materials, translated as appropriate, for all detainees that inform them of their right to reasonable accommodation and procedures to request reasonable accommodation.**

Defendants' Remedial Plan

"This area is compliant. The Adelanto facility provides disability-specific materials, translated as appropriate, for all detainees with disabilities, which explains

the right to reasonable accommodation and procedures to request reasonable accommodation."

Monitor's Analysis

The Defendants assert that they are already compliant with this requirement and therefore do not offer a remedial plan. If their assertion is correct, then no remedial plan is needed. The validity of their assertion will be assessed in subsequent reports as necessary.

The PBNDS requires that the facility post documents for awareness in detainee living areas and in the medical unit, as requested by ICE/ERO. This will be validated while onsite.

Plaintiffs' Feedback

Plaintiffs agree with the Conditions Monitor's analysis. Defendants' assertion of compliance should be tested against actual conditions at Adelanto, including whether the required materials are posted and otherwise provided in an accessible manner. If the Conditions Monitor identifies deficiencies, the revised remedial plan should incorporate her findings and recommendations regarding the provision of disability-specific materials.

## III. CONCLUSION

Defendants' Remedial Plan does not comply with the Court's Order. Accordingly, Plaintiffs respectfully request that the Court decline to adopt Defendants' July 30 submission as the Remedial Plan contemplated by Dkt. No. 104. Plaintiffs further request that, following the filing of the Monitors' first monthly reports, the Court direct the parties to meet and confer and, within seven days of filing those reports, submit agreed remedial provisions and identify any remaining disputed provisions for the Court's resolution.

Dated: September 22, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim

PUBLIC COUNSEL

By: */s/ Rebecca Brown*
Rebecca Brown
Sophia Wrench
Amelia Piazza
Belinda Escobosa

IMMIGRANT DEFENDERS LAW CENTER

By: */s/ Alvaro M. Huerta*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By: */s/ Carl Bergquist*
Carl Bergquist
Adam Reese