PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
BELINDA ESCOBOSA (SBN 214178)
bescobosa@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,<br>Plaintiffs,<br>v.<br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br>Defendants. | Case No. 5:26-cv-00322-SSS-SPx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE FIRST AMENDED PRELIMINARY INJUNCTION**<br><br>**CLASS ACTION**<br><br>**Ctrm:** 2, 2nd Floor<br>3470 12th Street<br>Riverside, CA 92501<br>Hon. Sunshine Sykes<br><br>Date Filed: January 26, 2026<br>Trial Date: November 8, 2027 |

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

VINCENT R. BIAGIOTTI (*pro hac vice*)
vbiagiotti@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
Tel: 212-728-8000

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. The Injunction Imposes Specific, Operative Requirements ..... 2

B. The Court Has Twice Ordered Defendants to Show Cause Regarding Monitor Access ..... 4

C. The Record Documents Substantive Noncompliance ..... 6

III. LEGAL STANDARD ..... 7

A. Enforcement of the Injunction ..... 7

B. Civil Contempt ..... 7

C. Coercive Civil Contempt Sanctions ..... 8

IV. ARGUMENT ..... 8

A. The Preliminary Injunction Is Clear and Definite ..... 8

B. Clear and Convincing Evidence Demonstrates Defendants' Noncompliance ..... 9

C. Defendants' Noncompliance is Contemptable ..... 13

D. Coercive Sanctions Are Warranted and Proportionate ..... 14

V. REQUESTED RELIEF ..... 15

VI. CONCLUSION ..... 17

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Armstrong v. Brown*,
939 F. Supp. 2d 1012 (N.D. Cal. 2013) .......... 7

*Crawford v. Honig*,
37 F.3d 485 (9th Cir. 1994) .......... 7

*Douglas v. City of L.A.*,
No. 2:20-cv-07439-MEMF-PDx, 2026 U.S. Dist. LEXIS 202865 (C.D. Cal. Sep. 1, 2026) .......... 7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) .......... 8, 13

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004) .......... 7

*FTC v. Affordable Media, LLC*,
179 F.3d 1228 (9th Cir. 1999) .......... 7, 14

*Int'l Union, United Mine Workers v. Bagwell*,
512 U.S. 821 (1994) .......... 8, 15

*Kia Am., Inc. v. Rally Auto Grp., Inc.*,
No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 (C.D. Cal. Oct. 20, 2022) .......... 7

*L.T. v. U.S. Immigr. & Customs Enf't*,
No. 26-4902, Dkt. 22.1 (9th Cir. Aug. 20, 2026) .......... 3, 9

*Nat'l Res. Def. Council v. Sw. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) .......... 7

*Parsons v. Ryan*,
949 F.3d 443 (9th Cir. 2020) .......... 14

*Shillitani v. United States*,
384 U.S. 364 (1966) .......... 7

*Stone v. City & Cnty. of San Francisco*,
968 F.2d 850 (9th Cir. 1992) .......... 8

*Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*,
364 U.S. 647 (1961) ... 7

*U. S. v. Ayres*,
166 F.3d 991 (9th Cir. 1999) ... 15

*U.S. v. Yacoubian*,
24 F.3d 1 (9th Cir. 1994) ... 7, 15

*United States v. Cloud*,
102 F.4th 968 (9th Cir. 2024) ... 14

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947) ... 8, 14

*United States v. Woodley*,
9 F.3d 774 (9th Cir. 1993) ... 14

*Whittaker Corp. v. Execuair Corp.*,
953 F.2d 510 (9th Cir. 1992) ... 8

**Statutes**

18 U.S.C. § 401(3) ... 7

**Rules**

Fed. R. Civ. P. 62(c)(1) ... 7

# I. INTRODUCTION

Nearly three months after this Court entered the Preliminary Injunction (the "Injunction"), and more than six weeks after the Ninth Circuit lifted the administrative stay, Defendants remain noncompliant with its requirements.

The Court's Conditions Monitor, Ms. Wasko, now confirms noncompliance with nearly every conditions provision—water, meals, sanitation, privacy, clothing, bedding, outdoor recreation, visitation, and headcounts. ECF 177 at 3–11. Defendants continue to conduct six headcounts every 24 hours, including four during the Injunction's nighttime window—twice the Court-ordered maximum—and the Conditions Monitor concluded that the facility "has not changed its count process according to the injunction." *Id.* at 10–11. Detained individuals do not receive the four hours of daily yard time the Injunction mandates; those housed in Adelanto West receive only one hour per day, five days per week, of true yard time, while those housed in Adelanto East receive only one and one-half to three hours per day, five days per week. *Id*. at 8. Defendants also continue to operate under a visitation policy that "specifically states that there will be no physical touching between the detainee and adult visitors" beyond a brief hug and kiss, notwithstanding the Injunction's requirement of physical contact absent a documented security risk. *Id.* at 9. The Conditions Monitor observed widespread mold in every general-population shower room she inspected in Adelanto West, including walls soaking wet, ceilings dripping water, and live larvae on shower-room floors. *Id.* at 6–7.

These are not inadvertent implementation failures. Class members report that GEO staff told them they had "instructions not to follow" the Court's Order unless ICE directed them to do so. *See* Declaration of Sophia Wrench, dated October 7, 2026 ("Wrench Oct. 7 Decl."), filed concurrently herewith, ¶ 5.

Compounding these failures, the Court's independent monitors have been met with obstacles at each turn. The Conditions Monitor is still missing crucial information for her reports and has been denied access to photos taken during her on-

site visit. ECF 177. The Medical Monitor, Dr. Stern, was unable even to prepare a report because Defendants failed to provide remote access to medical records and to guarantee physical access to the facility. ECF 176. In response to these failures, on October 2, 2026, the Court ordered Defendants to show cause why they had not provided numerous records and answers the Monitors requested and set a status conference for October 9, 2026. ECF 178. Plaintiffs do not seek duplicative relief on those monitor-access issues here. Rather, the Conditions Monitor's report now supplies independent evidence of substantive violations of the Injunction that fall outside the October 2 OSC. This Motion seeks enforcement of those substantive requirements.

Plaintiffs therefore respectfully request that the Court grant this Motion and enforce Paragraphs 1(a)–(h) and 2 of the Injunction by ordering Defendants to take the specific compliance measures set out in Part V, which are grounded in the Conditions Monitor's findings and recommendations, and account for their compliance under oath. Plaintiffs further request that the Court issue an order to show cause why Defendants should not be held in civil contempt for any continuing violations. The Court has already told Defendants what continued noncompliance will cost: in its September 15 Order, it warned that it would impose sanctions of $500 per violation per day and that unresolved violations could result in a finding of civil contempt. ECF 155 at 3. Upon a finding of contempt, the Court should impose prospective, purgeable coercive sanctions to secure compliance. Because the violations recur daily, Plaintiffs have concurrently filed an *ex parte* application to shorten time so that this Motion may be heard as soon as practicable.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Injunction Imposes Specific, Operative Requirements

On July 16, 2026, the Court granted in part Plaintiffs' renewed motion for a preliminary injunction and provisionally certified the classes. ECF 104. Defendants appealed and moved for a stay. The Ninth Circuit entered a brief administrative stay

on August 6, 2026, and on August 20, 2026, denied Defendants' stay motion and lifted the administrative stay. *L.T. v. ICE*, No. 26-4902 (9th Cir.), Dkt. 22.1. On August 12, 2026, the Court issued its Memorandum of Decision explaining the preliminary injunction ruling. ECF 121. The Court ordered Defendants to *immediately* provide 24-hour access to basic necessities: clean potable drinking water; nutritious and sanitary meals with sufficient calories; adequate sanitation, including daily cleaning, consistently available hygiene products, and mold remediation; adequate bathroom and shower privacy; clean and sanitary clothing and bedding; and at least four hours of daily yard access absent documented security reasons. ECF 147 ¶ 1(a)–(g). The Court prohibited arbitrary limits on visits with family and loved ones and required Defendants to allow physical contact during visitation absent a documented security risk. *Id.* ¶ 1(h). The Injunction also requires that daytime headcounts generally occur on an out-count basis and that Defendants conduct no more than two daytime and two nighttime counts. *Id.* ¶ 2.

The Injunction also requires Defendants to file a remedial plan regarding medical care and disability accommodations. *Id.* ¶ 4. Finally, Paragraph 5 orders Defendants to provide access to two independent monitors "[t]o ensure compliance with this order (namely, paragraphs 1 through 4)." *Id.* ¶ 5. Defendants must ensure the Monitors can conduct "unannounced, independent inspections"; have "reasonable access to . . . any physical and electronic records relevant to the implementation of this order"; and "be allowed to bring into the facility any materials, items, or equipment needed to facilitate their inspections." *Id.* ¶ 5(d). Defendants were required, within 24 hours, to send an authorization letter approving "expedited security screening and entry into the facility within 10 minutes of arrival" for authorized persons and to post that letter "at every entrance point." *Id.*

Following the September 1, 2026 hearing on Plaintiffs' August 27 *ex parte* application regarding injunction compliance and monitor access, *see* ECF 123, and the September 4, 2026 status conference, during which the parties were heard on the

Court's proposed amendments to the injunctive order, *see* ECF 137, the Court issued the First Amended Preliminary Injunction Order on September 11, 2026, which "includes the entire preliminary injunction order with any modifications made at the September 1, 2026, hearing and subsequent amendments." ECF 147 at 1. The amendments clarified the monitoring provisions; the substantive conditions requirements remained unchanged

**B. The Court Has Twice Ordered Defendants to Show Cause Regarding Monitor Access**

On August 4, 2026, the Court appointed Kellie R. Wasko as Conditions Monitor. ECF 117. On August 5, 2026, the Court appointed Dr. Marc Stern as Medical Monitor. ECF 119. Both Monitors promptly requested records and information necessary to perform their duties. *See* ECF 155 at 2–3. Many of those requests remained unanswered for weeks and, as of October 2, were still outstanding. *See* ECF 155 at 2–3; ECF 178 at 1–3.

At her site visit, Ms. Wasko encountered numerous access issues. ECF 177. Upon her unannounced arrival, staff "were unable to allow [her] access to the facility for about 45 minutes, as they had no 'authority' from ICE to allow [her] in." *Id.* at 2. She "was not allowed to take anything into the facility," and facility leadership "declined to allow [her] to bring in the camera that was previously agreed upon in the status conference on Sept 4th," explaining that "ICE makes the decisions on what can be brought into the facility." *Id.* The Warden instead took photographs of the mold, larvae, cracked ducts, and water-filtration system at her request, but never provided them. *Id.* at 2–3, 5–6. Ms. Wasko was unable to access the laundry room, speak with laundry staff, observe the visitation room, or observe a nighttime count. *Id.* at 8–9, 11. Information responsive to her requests remains incomplete or outstanding, including menus with caloric values and substitution reports, granular administrative-segregation data, the facility's ADA policy, and records concerning the tracking of

detained individuals with disabilities and their accommodation requests. *Id.* at 2, 5, 11–14, 17.

On September 15, 2026, this Court issued an order to show cause regarding Defendants' noncompliance with the monitor-access requirements. ECF 155 at 1–3. The Court found that Defendants had not provided the Medical Monitor with an orientation for the electronic health record ("EHR") system, remote access to the records, or the promised patient lists, and that the Warden had prevented the Conditions Monitor from using the equipment she brought, instead took photographs on her behalf, and then withheld those photographs pending ICE approval. *Id.* at 2. The Court ordered daily status reports and warned that it would "begin imposing daily sanctions on Defendants in the amount of $500 per violation" if the identified access issues were not resolved by September 16. *Id.* at 3. The Court further cautioned that, if those issues were not rectified by September 21, it would "consider holding Defendants in civil contempt." *Id.* Just days later, on Defendants' representation that the Monitors had finally received EHR access, the Court issued an order deferring sanctions. ECF 160. However, the Monitors' EHR access was incomplete. ECF 178 at 1. On October 1, 2026, Dr. Stern informed the Court that he could not provide any analysis of medical conditions at Adelanto because Defendants failed to fully comply with the Court's order to provide him access to medical records and to guarantee physical access to the facility. ECF 176.

On October 2, 2026, after receiving the Monitors' reports, the Court issued a further Order to Show Cause ("October 2 OSC") concerning Defendants' failure to provide numerous documents and answers requested by the Monitors. ECF 178. The Court directed Defendants to explain in writing by October 7, 2026 why those materials had not been provided and set a status conference for October 9, 2026. *Id.* at 4. The October 2 OSC thus addresses Defendants' interference with the monitoring process. This Motion presents a related but distinct issue: continuing violations of the

Injunction's substantive requirements, now extensively documented by the Court's Conditions Monitor.

**C. The Record Documents Substantive Noncompliance**

The Court is familiar with Defendants' noncompliance history. On August 27, 2026, Plaintiffs filed an *Ex Parte* Application for Emergency Hearing re: Injunction Compliance and Court-Appointed Monitors, which described ongoing violations of the Injunction and obstacles to the Monitors' work. *See* ECF 123. The application was supported by declarations from class members and counsel documenting, among other things, continued restrictions on yard time, unchanged headcount practices, and limits on contact visitation. *See generally* ECF 123-2–123-7. The Court heard the application on September 1, and thereafter amended the Injunction's monitoring provisions. ECF 147.

On October 1, 2026, Ms. Wasko's first monthly report was filed with the Court. ECF 177. Covering September 2 through September 30, 2026, Ms. Wasko's report is based on an unannounced site visit that spanned two days, along with documents obtained from Defendants' counsel. *Id.* at 2, 6–7, 20. Ms. Wasko found Defendants noncompliant with the Injunction's headcount, outdoor-recreation, visitation, and mold-remediation requirements, and noncompliant or only partially compliant with other requirements, regarding water, sanitation, privacy, and bedding. *Id.* at 3–11**.** Specifically, she found that the facility had not changed its headcount process to conform to the Injunction, detained individuals were not receiving the required four hours of daily yard time, the visitation policy continued to prohibit ordinary physical contact, and mold remained widespread in the shower areas she inspected. *Id.* at 6–11. Contemporaneous reports from detained individuals corroborate Ms. Wasko's findings. *See generally* Wrench Oct. 7 Decl.

## III. LEGAL STANDARD

### A. Enforcement of the Injunction

Federal courts "have inherent power to enforce compliance with their lawful orders." *U.S. v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994). They "are not reduced to issuing injunctions . . . and hoping for compliance." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004) (citation omitted). On the contrary, "[o]nce issued, an injunction may be enforced," *id.,* and district courts retain "continuing jurisdiction to enforce their injunctions," *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994)—including during the pendency of an interlocutory appeal, Fed. R. Civ. P. 62(c)(1). *See Nat'l Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *Douglas v. City of L.A.*, No. 2:20-cv-07439-MEMF-PDx, 2026 U.S. Dist. LEXIS 202865 (C.D. Cal. Sep. 1, 2026).

Where a party fails to comply with an injunction, the Court may enter further orders requiring compliance. *See Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013); *Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 647 (1961). An order is sufficiently definite to support enforcement where its terms clearly and specifically proscribe the conduct at issue, considering both the order's language and the objective circumstances surrounding its issuance. *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022).

### B. Civil Contempt

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also* 18 U.S.C. § 401(3). In the Ninth Circuit, "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir.

1999) (quoting *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). "There is no good faith exception to the requirement of obedience to a court order," and contempt "need not be willful." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A party is in substantial compliance only if it has "take[n] all reasonable steps" to comply. *Id.*; *Stone*, 968 F.2d at 856.

### C. Coercive Civil Contempt Sanctions

Civil contempt sanctions may serve to "coerce the defendant into compliance with the court's order, [or] to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). A per diem fine imposed for each day a contemnor fails to comply with an affirmative court order is a classic coercive civil sanction because the contemnor can purge it through compliance. *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827–29 (1994). In fashioning a coercive sanction, the Court considers "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers*, 330 U.S. at 304; *see Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516–17 (9th Cir. 1992).

## IV. ARGUMENT

### A. The Preliminary Injunction Is Clear and Definite

The Preliminary Injunction imposes concrete, measurable requirements in plain terms: 24-hour access to clean potable drinking water; daily cleaning; free soap and hygiene products; mold remediation; privacy in bathrooms and showers; clean and temperature-appropriate clothing and bedding; at least four hours of individual yard access daily; contact visitation not subject to arbitrary time limits; and no more than two headcounts in each defined window. ECF 147 ¶¶ 1–2. Defendants have never sought clarification of any obligation; to the contrary, their objections to the Order show they understand its provisions perfectly well. *See, e.g.*, ECF 113 at 14–16. The

Ninth Circuit agreed, finding that Defendants had not shown that the Injunction lacked "specific directives with which to comply," that its terms were ambiguous, or that the Monitors rendered those terms unclear. *L.T. v. U.S. Immigr. & Customs Enf't*, No. 26-4902, Dkt. 22.1 at 5 (9th Cir. Aug. 20, 2026). Both predicates for enforcement—a specific order and actual notice—are therefore satisfied.

**B. Clear and Convincing Evidence Demonstrates Defendants' Noncompliance**

The Court appointed Ms. Wasko as Conditions Monitor based on the parties' joint stipulation, which proposed Ms. Wasko based on "[h]er independence as a current consultant" and "her deep operational expertise and national leadership in correctional standards." ECF 117; ECF 112 at 3. Ms. Wasko's first report rests on firsthand observations from an unannounced two-day inspection and on Defendants' own records. ECF 177 at 2, 6–7, 20. It identifies noncompliance with multiple substantive provisions of the Injunction. Those findings are corroborated by contemporaneous sworn reports from detained individuals. *See generally* Wrench Oct. 7 Decl. The resulting record documents continuing violations of Paragraphs 1(a)–(h) and 2, warranting an order enforcing the Injunction and requiring Defendants to cure the violations described below.

*a. Water (¶ 1(a))*

The Injunction requires 24-hour access to clean potable water. ECF 147 ¶ 1(a). Class members report recurring periods of three to seven hours without clean drinking water, affecting units of up to 80 people at a time. Wrench Oct. 7 Decl. ¶ 9–10. Ms. Wasko found that igloo water jugs are filled only at the beginning of each eight-hour shift, ECF 177 at 3, consistent with class members' reports that when the jugs run out, hours pass before they are refilled. On July 29, 2026, individuals in one housing unit found worms or larvae in water jugs serving approximately 75 to 80 people; replacement water contained the same contamination. ECF 120-1, Hellerstein Decl. ¶¶ 6–11.

Ms. Wasko also identified continuing concerns about water quality. The City of Adelanto's most recent water report found three contaminants "above health goals" and recommends NSF-certified filters for residents. ECF 177 at 5. In Adelanto West, only a temporary "simple" filtration system has been installed; the Adelanto East igloo-filling spigot "was not on a filtration system." *Id.* at 4–5. An NSF-certified system has been prepared for at least some water sources, but ICE has not authorized the funding necessary to implement it. *Id.* at 4.

*b. Food (¶ 1(b))*

The Injunction requires nutritious and sanitary meals that contain a sufficient number of calories. PI ¶ 1(b). Ms. Wasko was unable to meaningfully assess whether meals are nutritious and sanitary because Defendants failed to provide the caloric values and substitution report for the menus. ECF 177 at 5. Detained individuals, however, report the same problems as before the Injunction: small portions, foods piled together, and breakfast served as early as 4:00 a.m., causing many to miss the meal. Wrench Oct. 7 Decl. ¶¶ 11–13.

*c. Sanitation and Mold Remediation (¶ 1(c))*

The Injunction requires daily cleaning, free and consistently available hygiene products, and mold treatment and remediation. PI ¶ 1(c). Ms. Wasko "observed mold in every General Population shower room" in Units 2, 3, 4, and 5 of Adelanto West—each with four pods—finding "a large amount of mold growing throughout the shower room." ECF 177 at 6. She found walls "soaking wet," ceilings "dripping water," and paint "saturated and separating from the wall," with ceilings still dripping the next morning. *Id.* at 6–7. Facility staff reported that their response "has generally involved applying Kilz and/or painting over affected surfaces," an approach that "does not address the underlying condition and has not resulted in a sustained resolution." *Id.* Detained individuals also report that mold painted over approximately six weeks earlier has returned and shower mold has worsened. Wrench Oct. 7 Decl. ¶¶ 14–15.

Ms. Wasko also discovered live larvae on the shower-room floors. ECF 177 at 6. In Adelanto East, shower curtains were torn, dragging on wet floors, and had "developed mold and mildew and an odor." *Id.* at 7. In Adelanto East Unit 2A, cracked air-conditioning ducts were blowing "quite a bit of airborne debris" into the dorm, a condition the Conditions Monitor deemed "significant" and in need of remediation; cracked, dirty ductwork was evident in both buildings. *Id.* at 6, 24.

*d. Privacy in Restrooms and Showers (¶ 1(d))*

The Injunction requires adequate privacy for detained people when using the restroom or shower, consistent with the safety needs of the facility. PI ¶ 1(d). Ms. Wasko reports that the shower stalls in Adelanto West face each other directly, without any privacy barrier, which is "not typical in any carceral setting." ECF 177 at 7. Although the Warden reported after the visit that showers in Adelanto West now have privacy curtains, *id.*, class members report that privacy curtains remain absent from the toilets and the ADA-accessible shower. Wrench Oct. 7 Decl. ¶ 19.

Also in Adelanto West, up to eight people share the same in-cell toilet without any privacy barrier, and staff remove barriers that detained individuals construct out of bed sheets. *Id.* ¶¶ 19–20. One Plaintiff reports that the toilet in his unit is visible from the doorway to the entire unit. *Id.* ¶¶ 19–20. Ms. Wasko opined that a quick-release privacy barrier around in-cell toilets would be feasible and safe. ECF 177 at 18.

*e. Clothing (¶ 1(e))*

The Injunction requires clean, sanitary, and temperature-appropriate clothing. ECF 147 ¶ 1(e). Detained individuals told Ms. Wasko that the air conditioning is so cold that they need additional sweatshirts and blankets. ECF 177 at 8. Plaintiff Salazar reported that no shorts are issued with uniforms, requiring people to wear long pants outside in 90-plus-degree weather unless they can afford commissary shorts. Wrench Oct. 7 Decl. ¶ 21.

*f. Bedding (¶ 1(f))*

The Injunction requires clean, sanitary, and temperature appropriate mattresses, pillows, and blankets. ECF 147 ¶ 1(f). Ms. Wasko found that mattresses "are very thin, and many of them had cracks and holes in them on both the West and East sides," with some Adelanto East mattresses "as thin as 2 inches." ECF 177 at 8. "The majority of complaints [she] received were about the mattresses," and in numerous Adelanto West cells, detained individuals were stacking two or three mattresses per bunk. *Id.* Detained individuals in both buildings reported being cold and needing additional blankets. *Id.* at 8, 25.

*g. Outdoor Recreation (¶ 1(g))*

The Injunction requires four hours per day, seven days a week of outdoor time (not in the "mini yard"), absent documented security risks or reasons necessitating otherwise. ECF 147 ¶ 1(g). Ms. Wasko reported that no detained individuals are receiving the required four hours of daily recreation. ECF 177 at 8. In Adelanto West, detained individuals get only one hour per day, five days per week, in the yard; in Adelanto East, they receive only one and one-half to three hours per day, five days per week. *Id.* The Warden told Ms. Wasko that a plan to comply was still being developed. *Id.* at 8, 25. Meanwhile, one GEO guard told a class member, "We're not doing that four hours thing." Wrench Oct. 7 Decl. ¶ 24.

*h. Visitation (¶ 1(h))*

The Injunction requires no-time-limit visitations so long as they do not interfere with normal operation of the facility, families must be allowed to use the restroom during visits without them being cancelled, and physical contact must be allowed during visitation absent a documented security risk. PI ¶ 1(h). Ms. Wasko reported that the visitation policy permits "a brief kiss and hug at the beginning and end of the visits" but "specifically states that there will be no physical touching between the detainee and adult visitors." ECF 177 at 9. Ms. Wasko noted that while it is "very common to allow visitors to hold hands," the policy does not permit it. *Id.* at 9, 18.

One class member reports that when he attempted to shake hands with another detained man's wife, a GEO guard yelled, "No hand shaking!" Wrench Oct. 7 Decl. ¶ 27.

Ninety days of visitation logs show "many discrepancies": visits "very rarely begin at 8 am" as scheduled, visitors "routinely" wait up to an hour—and in many cases up to three hours—and there are hour-long periods when "the visiting room is empty while there are visitors waiting in the lobby." *Id.* at 9. Visitation is restricted by unit to set days and intervals (for example, three-hour or six-hour blocks on three days per week). *Id.* at 9–10. Although there is a restroom in the visiting area, the policy prohibits visitors from using it and requires detained individuals to return to their cells to use the restroom. *Id.* at 9. Class members report that visits remain capped at one hour and physical contact remains prohibited. Wrench Oct. 7 Decl. ¶¶ 26–27.

*i. Headcounts (¶ 2)*

The Injunction requires a maximum of two headcounts, performed on an "out-count basis" between 9:00 a.m. and 8:00 p.m. and a maximum of two headcounts that do not disrupt the detained individuals' sleep between 8:01 p.m. and 8:59 a.m. PI ¶ (2). Ms. Wasko found that "[t]he facility has not changed its count process according to the injunction." ECF 177 at 11. Adelanto conducts six counts per 24-hour period, at 0630, 1030, 1830, 2300, 0100, and 0300. *Id.* at 10, 26. Four of those counts occur at night, between 8:01 p.m. and 8:59 a.m.—twice the Injunction's limit. *Id.* at 11, 26. Ms. Wasko reported that carceral facilities typically conduct two counts during sleeping hours. *Id.* at 11.

### C. Defendants' Noncompliance is Contemptable

Defendants cannot meet their burden to show they have "taken all reasonable steps" to comply. *Dual-Deck*, 10 F.3d at 695. They have been on notice of the Injunction's requirements for nearly three months. The record shows there are specific steps ICE has *not* taken: Ms. Wasko's report states that the Warden "cannot install anything without the explicit authorization from ICE for a cost approval," and

that an NSF-certified water-filtration system has been prepared but "ICE has not yet authorized the funding necessary to move forward." ECF 177 at 4, 7. GEO staff told class members they had "instructions not to follow" the Order unless ICE directed otherwise. Wrench Oct. 7 Decl. ¶ 5. Where the obstacle to compliance is a defendant's own decision, the defendant has not shown that it is unable to comply. *See Affordable Media*, 179 F.3d at 1239–41.

**D. Coercive Sanctions Are Warranted and Proportionate**

The Ninth Circuit has affirmed per-violation coercive fines to enforce court-ordered conditions-of-confinement obligations. *See Parsons v. Ryan*, 949 F.3d 443, 454–56 (9th Cir. 2020).[1] Here, each factor favors coercive relief. *First*, the "character and magnitude of the harm" from continued noncompliance is serious and ongoing. *United Mine Workers*, 330 U.S. at 304. More than 1,700 people are detained at the facility, with roughly 500 detainees processed in and out each week. ECF 177 at 2. Defendants' failures threaten serious harm to civil detainees: every night, class members are awakened for counts beyond the Court's limit; every day, they are denied the outdoor recreation the Court ordered, go hours without drinking water, and shower in rooms Ms. Wasko describes as "the perfect environment for aggressive mold growth." *Id.* at 7.

*Second*, the requested sanctions are likely to be effective. *United Mine Workers*, 330 U.S. at 304. Several violations require only a policy change, such as revising the count schedule or permitting hand-holding, and others are stalled awaiting ICE authorization. ECF 177 at 4, 7, 9, 11. Consistent with the Court's September 15, 2026 Order (ECF 155), Plaintiffs propose a fine of $500 per day for each provision with which Defendants remain out of compliance. The fines would

[1] Sovereign immunity does not categorically preclude monetary sanctions imposed pursuant to a court's supervisory authority. *United States v. Cloud*, 102 F.4th 968, 981–82 (9th Cir. 2024) (relying on *United States v. Woodley*, 9 F.3d 774 (9th Cir. 1993)).

cease upon a sworn showing of cure by a responsible ICE official, verified by the Court's Monitors. The sanction is thus prospective, conditional, and entirely within Defendants' control. *See U. S. v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999); *Bagwell*, 512 U.S. at 829.

## V. REQUESTED RELIEF

Courts have "inherent power to enforce compliance with their lawful orders." *U.S. v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). To enforce compliance with the Injunction, Plaintiffs respectfully request that the Court:

(1) Enter an Order enforcing Defendants' immediate compliance with Paragraphs 1(a)–(h) and 2 of the Injunction and directing Defendants to take the following measures, or such other measures as achieve compliance with the identified provision, subject to the Monitors' verification:

**Within three (3) days of the Court's Order:**

(a) Conform the headcount schedule to Paragraph 2, including no more than two counts between 8:01 p.m. and 8:59 a.m. and out-count daytime counts absent a documented security risk;

(b) Revise and implement a visitation policy that permits physical contact with adult visitors absent a documented, individualized security risk; begins visitation at the posted time; and permits visitors to use the restroom in the visiting area without cancellation of the visit;

(c) Ensure that drinking-water dispensers in every housing unit are refilled whenever depleted so that no unit is without potable water at any time;

(d) Serve meals at times that permit detained individuals to receive them, including breakfast no earlier than 6:00 a.m.;

(e) Provide temperature-appropriate clothing, including shorts and sweatshirts, to class members upon request and at no cost; and

(f) Implement a schedule providing all class members four hours of outdoor recreation in the main yard, seven days per week.

**Within fourteen (14) days of the Court's Order:**

(a) Complete installation of the NSF-certified water-filtration system Defendants have prepared, ECF 177 at 4;

(b) Install quick-release privacy barriers around in-cell toilets in general-population housing, beginning with cells housing more than two occupants;

(c) Replace worn, cracked, or thin mattresses with new mattresses; and

(d) File a mold-remediation plan addressing the underlying moisture conditions in the Adelanto West shower rooms and the repair of cracked ductwork in both buildings, and complete the remediation within thirty (30) days, subject to the Conditions Monitor's verification, unless the Court orders otherwise for good cause.

Within one (1) court day after each deadline above, Defendants should file a status report confirming completion of each item or explaining any item not completed.

(2) Issue an order directing Defendants to show cause in writing, on a schedule set by the Court, why they should not be held in civil contempt for violating Paragraphs 1(a)–(h) and 2 of the First Amended Preliminary Injunction (ECF 147), with Plaintiffs permitted to respond before the Court determines whether contempt is warranted;

(3) Upon a finding of contempt, impose a coercive fine of $500 per day for each violated provision that remains uncured, accruing from a date set by the Court, payable to the registry of the Court, and purgeable upon a sworn showing of compliance by a responsible ICE official verified by the Monitors; and, if coercive sanctions are imposed, require Defendants

to file daily sworn compliance reports as to each provision subject to sanctions until the sanctions are purged;

(4) Order Defendants to file sworn compliance reports every seven (7) days until the Court finds them in compliance or orders otherwise. Each report should address Paragraphs 1(a)–(h) and 2 of the Injunction separately and under oath. For each provision, Defendants should state whether they are presently in compliance, identify the specific steps taken to achieve and verify compliance, and explain any remaining deficiency or claimed inability to comply. Defendants should attach the principal records supporting their account. The reports should be served on the Monitors, who may file a response; and

(5) Grant such further relief as the Court deems just and proper.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion, order Defendants to show cause why they should not be held in civil contempt for their violations of Paragraphs 1(a)–(h) and 2, and grant the relief requested above.

Dated: October 7, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim
Vincent R. Biagiotti (*pro hac vice*)

PUBLIC COUNSEL

By: */s/ Rebecca Brown*
Rebecca Brown

Sophia Wrench
Amelia Piazza
Belinda Escobosa
IMMIGRANT DEFENDERS LAW CENTER

By: */s/ Alvaro M. Huerta*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By: */s/ Carl Bergquist*
Carl Bergquist (*pro hac vice*)
Adam Reese

**WORD COUNT CERTIFICATE**

The undersigned counsel of record for Plaintiffs certifies that this Memorandum of Points and Authorities contains 5,274 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 7, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim
Vincent R. Biagiotti (*pro hac vice*)