TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PUSHKAL MISHRA (Cal. Bar No. 298695)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (714) 338-3503
E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

L.T., *et al.*,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE), *et al.*,

Defendants.

No. 5:26-cv-00322-SSS-SP

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE (ECF 178)**

Honorable Sunshine Suzanne Sykes
United States District Judge

## I. INTRODUCTION

Defendants hereby respectfully respond to the Court's October 2, 2026 Order to Show Cause (ECF 178), which lists three requests of the Medical Monitor and twenty-one requests of the Conditions Monitor and directs Defendants to show cause in writing why they have not provided responsive documents or answers to each. For each request, this response states what Defendants have provided and what remains outstanding. The answers below relay what U.S. Immigration and Customs Enforcement (ICE) says it has obtained from The GEO Group, Inc. (GEO); the responsive documents, which ICE labeled Exhibits A through I and which contain detainee medical records and identifying information covered by the protective order (ECF 145) and the pseudonym order (ECF 28), were sent to the Conditions Monitor on October 7, 2026.

Defendants previously produced the two patient lists and the Sapphire user manual the Medical Monitor asked for; negotiated and executed a contract modification with GEO so that the Monitors could have remote access to the electronic health record, provisioned that access, and arranged remote orientations; produced GEO's answers to the Conditions Monitor's first data request; and filed a supplemental response on the remedial plan. *See, e.g.*, ECF 156, 159, 163, 165, 167, 170. The Conditions Monitor relies on the first data request's answers throughout her report. ECF 177 at 2 ("responsive documents"), 5 ("menu"), 9 ("visitation logs"), 11–12 ("data that I received for the SMU"), 13 ("ADA – Disability List"), 14 ("Detainee Handbook"). Indeed, several of the items listed in the Order are either those answers, or at a minimum follow-up questions built upon them. *See, e.g.*, ECF 178 at 1–3, items 2 ("caloric values and the substitution reports"), 3 ("dispositions of approved and denied"), 9 ("separate the medium custody classification into medium-low and medium-high"), 11 ("ADA showers"), 12 ("ADA mobility cells"), 13 ("ADA toilets"), 15 ("ADA cells for detainees with serious mental illness"), 16 ("ADA cells with strobe lights for the deaf"), 17 ("ADA cells designated for the blind"), 19 ("38 detainees on the list that were provided"), 20 ("I received the two lists of detainees").

The Conditions Monitor's second data request (nineteen items) and her

supplemental request for four named Plaintiffs' accommodation records were sent to Defendants on September 20 and 21, 2026, nine days before her report, ECF 177 at 2; GEO has now answered each of them, and Defendants will supplement two.

The Medical Monitor's three items concern the scope of the Monitors' Sapphire permissions. ICE maintains that two of the three are available with the Monitors' current credentials: as to dental records, "[t]he monitors have the ability to see dental records that are documented"; and as to critical results, "[t]he monitors have the ability to review comments made by the provider by reviewing the comment bubbles in the lab queue for the patient" and that "was covered during the training conducted on September 21, 2026." ICE is also working with GEO toward read access to the dental module. As to the third, the electronic medication administration record (eMAR): "As of [the morning of October 6, 2026], the monitor's permission is being adjusted to allow viewing of completed medication administration information." As to the photographs the Warden took for the Conditions Monitor on September 8, 2026, "[t]he . . . photos were provided to the conditions monitor Ms. Wasko October 5, 2026, on-site", and after receiving on September 13, 2026 notice of the Court's First Amended Preliminary Injunction, the authorization letter required by § 5(d) of the First Amended Preliminary Injunction was delivered to GEO's Facility Administrator on September 14, 2026, and GEO confirmed its posting on October 2, 2026; Defendants emailed the letter to chambers on October 3, 2026, as the Court directed in ECF 178.[1]

[1] Defendants submit this response without waiving, and expressly preserve, their objections to the Preliminary Injunction (ECF 104) and the orders modifying it (ECF 130, 147), including the Monitor provisions, which are the subject of Defendants' appeal (No. 26-4902); Defendants' compliance is under protest and pending appeal. Defendants have treated the Monitors' data requests as requests for "reasonable access" to records under § 5(d)(3) of the First Amended Preliminary Injunction and have responded to them in that spirit; they note for the record, without argument here, that the order sets no deadline for responding to such requests, and they respectfully ask that any further concern about Defendants' responses be raised on the record so that Defendants may address it.

## II. BACKGROUND

### A. How the Monitors' requests reach Defendants and are answered

Adelanto is operated by GEO under contract with ICE. ECF 148 ¶¶ 5–6; ECF 80-1 ¶ 4 ("GEO Group's facility administrator or warden is in charge of APC and is contractually responsible for managing and operating the detention facility at all times."); ECF 113-2 ¶ 7 ("ICE provides oversight to ensure applicable detention standards and conditions of confinement are met."); ECF 177 at 2 ("Adelanto is operated by the GEO Group, with oversight and case management of all detainees provided by ICE agents."). The electronic health record, Sapphire, is a GEO system. ECF 148 ¶¶ 5–6 ("GEO Group uses an EHR system called Sapphire for medical records of detainees at the Adelanto ICE Processing Center ('APC'). . . . ICE officers at APC do not have access to Sapphire and cannot grant access to Sapphire."). Requests from the Monitors come to Defendants' counsel, who transmits them to ICE; ICE obtains the information from GEO; and where ICE reverts to counsel with that information, counsel then relays it to the Monitors.

### B. The Conditions Monitor's requests

The Conditions Monitor sent her first data request, twenty-two items, on September 7, 2026. On September 18, 2026, the undersigned was informed by Defendants that GEO had answered all twenty-two items, with an index keyed to each item, and transmitted the answers to the Conditions Monitor; she acknowledged receipt. Her report also confirms receipt and relies on that production. ECF 177 at 2 ("I submitted a data request to the representing attorneys and have received some responsive documents."), 5 ("I received the menu . . . ."), 9 ("I received visitation logs for the last 90 days . . . ."), 11–13 (segregation and classification data), 13 ("the 'ADA – Disability List' that I was provided"), 14 (Detainee Handbook).

On September 20, 2026, the Conditions Monitor sent a second data request of nineteen items, with a follow-up on item 21 of the first request, and on September 21, 2026 she sent a supplemental request for the accommodation records of four named Plaintiffs. The undersigned transmitted both to Defendants, who acknowledged them on September

21, 2026 and advised that they would respond once the information was obtained. The Conditions Monitor filed her report on October 1, 2026. ECF 177 at 2 ("I have submitted a second data request and have not received that information yet.").

### C. The Medical Monitor's requests

On September 16, 2026, Defendants produced the two patient lists and GEO's Sapphire user manual the Medical Monitor had requested, and the Medical Monitor confirmed that they "appear to be responsive to my request for the 2 lists." Defendants negotiated and executed with GEO the contract modification that remote third-party access to Sapphire required, provisioned Sapphire accounts for the Monitors on September 18, 2026, and arranged remote orientations, which GEO conducted for Dr. Stern and Dr. Strick on September 21, 2026 and for Ms. Wasko on September 22, 2026. ECF 163; ECF 165; ECF 167. The Conditions Monitor also reports that she "completed the electronic health record (EHR) training so that I can review specific medical assessment notes . . . ." ECF 177 at 17.

On the evening of September 21, 2026, after the orientation, the Medical Monitor reported that his and Dr. Strick's credentials "do not provide us access to the entire EHR," identifying three components: the electronic medication administration record (eMAR), dental records, and "the laboratory test result files in which practitioners document acknowledgment that they are aware of, and have addressed, critically abnormal test results." On September 22, 2026, the Conditions Monitor reported the same gap after her orientation, adding that GEO's trainers "had already elevated" the dental and laboratory permissions and had told her that the eMAR "belongs to CorrextRX [*sic*] and not Sapphire." The same day, Defendants informed the undersigned that ICE had "reached out to request that GEO review and provide read-only access to the Monitors." Those are the three medical items in the Order. ECF 178 at 1.

## III. RESPONSE TO THE ORDER TO SHOW CAUSE

### A. The Medical Monitor's requests

The three medical items are requests to provision access to additional components

of the electronic health record, not requests for documents. Section 5(f) of the First Amended Preliminary Injunction requires "read-only, 24/7 access (on-site or remote) to any electronic records that will help facilitate [the Monitors'] general duties." ECF 147 at 6. Defendants maintain that "[m]edical monitors were granted electronic health records access via Sapphire on September 18, 2026, and on September 21, 2026, GEO provided over two hours of training." As set out below, two of the three components were accessible through the Monitors' existing credentials, ICE is pursuing read access to the dental module, and the third component was being adjusted as of October 6, 2026.

1. Electronic medication administration records (eMAR)

GEO's trainers told the Conditions Monitor that the eMAR is maintained by GEO's pharmacy vendor rather than within Sapphire. Defendants respond as follows: "The original permissions did limit medication administration record views as standard access to the eMAR module allows an individual to be able to alter documented medication administration and that was the reason for the initial limitation. As of [the morning of October 6, 2026], the monitor's permission is being adjusted to allow viewing of completed medication administration information."

2. Dental records

Defendants respond as follows: "The monitors have the ability to see dental records that are documented. They do not have the ability to access the Dental Module where the dental staff document care. By providing that access, it would allow the monitors to create, alter, or document care as though they were a provider." The records the Monitors need to review are available to them, per Defendants; the charting function is not. Defendants further informed the undersigned on October 7, 2026: "ICE is still working towards read access for the monitors on the dental module which involves further discussion with GEO in relation to Sapphire. ICE will advise of any developments in that regard. On-site access remains available."

3. Acknowledgment of critically abnormal diagnostic results

Defendants respond as follows: "The monitors have the ability to review comments

made by the provider by reviewing the comment bubbles in the lab queue for the patient. This was covered during the training conducted on September 21, 2026."

**B. The Conditions Monitor's requests**

1. Item 1: Photographs from the September 2026 visit

Defendants respond as follows: "The following photos were provided to the conditions monitor Ms. Wasko October 5, 2026, on-site. Two photos were retained due to photos taken of the detainees' faces. Ms. Wasko was escorted October 5, 2026, and permitted to continue to take photos of the facility. *See* Attached Exhibit A, Condition Monitor Photos."

2. Item 2: Master menu with caloric values and substitution reports

Defendants produced the six-month master menu with the first data request answers on September 18, 2026, and the Conditions Monitor acknowledges receipt. ECF 177 at 5 ("I received the menu, but it lacked the caloric values as well as a substitution report."). Defendants respond as follows: "*See* Attached Exhibit B, For Monthly and Weekly Caloric Intakes. There are no reports on substitutions but will supplement should additional information be obtained."

3. Item 3: Accommodation requests with dispositions, last six months

Defendants produced with the first data request responses the list GEO maintains, which records the accommodations provided but not the underlying requests or dispositions; the Conditions Monitor identified that limitation on September 20, 2026. *See* ECF 177 at 13–14. Defendants respond as follows: "*See* Attached Exhibit C, January 2026 Disability Accommodations List Excel Spreadsheet and supplemental ADA information to include DAN Forms utilized to track ADA requests."

4. Item 4: The four named Plaintiffs' accommodation records

The Conditions Monitor made this request on September 21, 2026. (The Order repeats her reference to the four individuals as "Defendants," ECF 178 at 2; they are the named Plaintiffs.) Defendants respond as follows: "*See* Attached Exhibit D, Up to Date Initial Medical Records for three Plaintiff(s) was received by GEO Group late in the

afternoon on October 7, 2026. The following responses will be supplemented based on further review and any required coordination with GEO Group."

5. Items 5 through 21

Each of the remaining items was first asked in the Conditions Monitor's September 20, 2026 request. Several restate or refine questions answered on September 18, 2026, as the table shows; the others ask for facility counts, locations, staffing, and records that GEO must compile. GEO has now answered each of them; the table quotes each answer and identifies the exhibit.

| **No.** | **Item (ECF 178)** | **Defendants' Response** |
|---|---|---|
| 5 | Beds in E1A–E1D, E2A–E2C | "The number of beds for each section are as follows: E1A has 118; E1B has 29; E1C has 52; E1D has 118; E2A has 114; E2B has 114; and E2C has 115." |
| 6 | Visitation staff by day and time, East and West | "Visitation staff are assigned to the visiting room for each day as follows: i) on Monday the West has 2 staff and the East has 2 staff; ii) on Tuesday the West has 2 staff and East has 2 staff; iii) on Wednesday the West has 3 staff and the East has 2; iii) [*sic*] on Thursday the West has 2 staff and the East has 2 staff; iv) on Friday the West has 3 staff and the East has 2 staff; v) on Saturday the West has 4 staff and the East has 2 staff; iv) [*sic*] on Sunday the West has 4 Staff and the East has 2 staff. *See* Attached Exhibit I, Visitation Schedule for Times." |
| 7 | Number of non-contact visitation rooms | "The East has 1 non-contact visitation room." |
| 8 | Maximum occupancy, contact visits | "The maximum occupancy for the West is 48 and East is 32 for contact visits." |
| 9 | Split medium custody into medium-low and medium-high | "The Medium-Low custody classification is 156 and the Medium-High custody classification is 423." |
| 10 | ADA policy | "*See* Attached Exhibits E, GEO Policies 901-A and 906-A for ADA and 11.1.5." |

| No. | Item (ECF 178) | Defendants' Response |
|---|---|---|
| 11 | ADA showers: number and locations | "The number of ADA showers and locations are as follows: for the WEST there are 19 units; special management unit has 1 unit and medical has 2 units; and for the EAST there are 7 units and medical has 1 unit." |
| 12 | ADA mobility cells: number and locations | "The number of ADA mobility cells and locations are as follows: for the WEST there are 18 units located in dorms 103 and 108." |
| 13 | ADA toilets: number and locations | "The number of ADA toilets and locations are as follows: for the WEST there are 18 units located in dorms 103 and 108; and for the EAST there are 7 units." |
| 14 | ADA sinks: number and locations | "The number of ADA sinks and locations are as follows: for the WEST there are 18 units located in dorms 103 and 108; and for the East there are 7 units and medical has 1 unit." |
| 15 | ADA cells for serious mental illness | "The number of ADA cells for detainees with serious mental illness are as follows: for the WEST located in dorms 549, 550, 115, and 116; and the EAST has none." |
| 16 | ADA cells with strobe lights (deaf) | "There are no ADA cells with strobe lights for the deaf." |
| 17 | ADA cells for the blind | "The number of ADA cells designated for the blind and locations are as follows: for the WEST there are 18 units located in dorms 103 and 108." |
| 18 | All ADA requests since January 2026 | "*See* Attached Exhibit C, January 2026 Disability Accommodations List Excel Spreadsheet and supplemental ADA information to include DAN Forms utilized to track ADA requests." |
| 19 | Proof of practice for three names from the ADA list | "*See* Attached Exhibit F, DAN forms for the Detainees at Part C and D; *See* also, Exhibit C." |
| 20 | Segregation lists with dates in and out, PC designation, repeat placements | "*See* Attached Exhibit G, Excel Spreadsheet Detainee List for Administrative Segregation and Disciplinary Segregation for the last 6 months." Ex. G. |
| 21 | Dietitian report | "On October 6, 2026, GEO had a dietitian report completed by Angela Bartolotti, RDN, LN, Manager Corporate Food Service Menu Systems. *See* Attached Exhibit H, GEO Dietitian Report." |

### C. The authorization letter under § 5(d)

Section 5(d) of the First Amended Preliminary Injunction provides that "[w]ithin 24 hours of this order, Defendants must send an authorization letter to its officers, agents, employees, attorneys, and other persons at Adelanto Processing Center East and West that approves expedited security screening and entry into the facility within 10 minutes of arrival for any person authorized in this subsection," and that "[a] copy of this letter must be placed at every entrance point." ECF 147 at 6. On October 3, 2026, Defendants provided the undersigned the authorization letter, and Defendants emailed it to chambers the same day, as the Court directed.

## IV. CONCLUSION

Defendants respectfully request that the Court discharge the Order to Show Cause.

Respectfully submitted,

Dated: October 7, 2026

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Assistant United States Attorney

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains approximately 2,795 words, which complies with the word limit of Local Rule 11-6.1.

Dated: October 7, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA