TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PUSHKAL MISHRA (Cal. Bar No. 298695)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (714) 338-3503
E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | No. 5:26-cv-00322-SSS-SP<br><br>**DEFENDANTS' EX PARTE APPLICATION FOR STAY PENDING APPEAL OF ECF 130 AND ECF 147**<br><br>Honorable Sunshine S. Sykes<br>United States District Judge |

**EX PARTE APPLICATION FOR A STAY OF ECF 130 AND ECF 147 PENDING APPEAL**

Defendants respectfully apply ex parte, pursuant to Local Rule 7-19, for an order under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1) staying, pending appeal, this Court's Order Modifying Preliminary Injunction Regarding the Independent Monitors entered August 28, 2026 (ECF 130), and its First Amended Preliminary Injunction Order entered September 11, 2026 (ECF 147), in every respect in which those orders add to or change the preliminary injunction entered July 16, 2026 (ECF 104), such that ECF 104 remains the operative preliminary injunction in this case. Defendants have appealed ECF 130 and ECF 147. ECF 183.

This Application is based on this Application; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Pushkal Mishra under Local Rules 7-19 and 7-19.1; the proposed order lodged herewith; and the records and files of this Court and of the Ninth Circuit in No. 26-4902.

Pursuant to Local Rule 7-19, counsel for Defendants orally notified lead counsel for Plaintiffs (Rebecca Brown, Public Counsel, 610 South Ardmore Avenue, Los Angeles, California 90005, (213) 385-2977, rbrown@publiccounsel.org) of the date, substance, and grounds of this Application by telephone on October 9, 2026, at approximately 3:18 p.m., leaving a detailed voicemail message. At approximately 3:30 p.m., Amelia Piazza of Public Counsel, counsel for Plaintiffs, returned the call and conferred with counsel for Defendants about the substance of and grounds for this Application. Ms. Piazza stated that Plaintiffs will oppose the Application. Mishra Decl. ¶¶ 6, 8. This ex parte application complies with Local Rule 7-19's requirements.

Ex parte relief is warranted because the terms ECF 130 and ECF 147 added to the injunction are being enforced on deadlines measured in hours and days, under express warnings of daily sanctions and civil contempt (ECF 146; ECF 155 at 3; ECF 178), the Court has stated that it will continue to amend the injunction as the monitors request (ECF 157 at 3:24–4:7), and Appellate Rule 8(a)(1) requires that Defendants seek relief here

before the Ninth Circuit can act. A regularly noticed motion under Local Rule 6-1 could not be heard until approximately November 10, 2026, after appellate briefing closes in Appeal No. 26-4902. Mishra Decl. ¶ 5.

# TABLE OF CONTENTS

DESCRIPTION PAGE


I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. ECF 104, the appeal, and the Ninth Circuit's rulings ..... 2
B. ECF 130 ..... 2
C. The September 1 and September 4 hearings ..... 3
D. ECF 147 ..... 3
E. Enforcement of the added terms ..... 3
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 4
A. The Court Lacked Jurisdiction to Enter ECF 130 and ECF 147, and Defendants Are Likely to Succeed on Appeal. ..... 4
1. The notice of appeal divested the Court of jurisdiction over the injunction; Rule 62(d) preserves only the power to maintain the status quo. ..... 4
2. The orders are modifications, not clarifications. ..... 7
3. The orders violate Rule 65(d): They state no reasons, and their new terms are not specific. ..... 9
4. The orders adopt ex parte requests and build an ex parte enforcement channel, which is not the "adoption" the Ninth Circuit assumed. ..... 12
5. Defendants preserved their objections, and their participation in implementing the orders is not consent to their entry. ..... 15
B. Defendants Are Suffering, and Will Continue to Suffer, Irreparable Harm From the Added Terms. ..... 15
C. A Stay Will Not Substantially Injure Plaintiffs or the Class. ..... 18
D. The Public Interest Favors a Stay. ..... 18
V. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002) ........ 6, 7

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ........ 15

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ........ 15

*Bell v. Wolfish*,
441 U.S. 520 (1979) ........ 10, 19

*Cobell v. Kempthorne*,
455 F.3d 301 (D.C. Cir. 2006) ........ 14

*Cobell v. Norton*,
334 F.3d 1128 (D.C. Cir. 2003) ........ 12, 13, 14, 17, 19

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ........ 4

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ........ 19

*Firefighters Local Union No. 1784 v. Stotts*,
467 U.S. 561 (1984) ........ 7

*Fraihat v. ICE*,
16 F.4th 613 (9th Cir. 2021) ........ 8

*Gates v. Shinn*,
98 F.3d 463 (9th Cir. 1996) ........ 10

*Gon v. First State Ins. Co.*,
871 F.2d 863 (9th Cir. 1989) ........ 7, 9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*,
415 U.S. 423 (1974) ........ 9

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) ........ 1, 4, 15, 17

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......... 4

*In re Bituminous Coal Operators' Ass'n*,
949 F.2d 1165 (D.C. Cir. 1991) .......... 14

*Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*,
389 U.S. 64 (1967) .......... 9, 11

*LabMD, Inc. v. FTC*,
894 F.3d 1221 (11th Cir. 2018) .......... 9

*Maryland v. King*,
567 U.S. 1301 (2012) .......... 18

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
686 F.2d 731 (9th Cir. 1982) .......... 1, 5, 6

*Meinhold v. U.S. Dep't of Def.*,
34 F.3d 1469 (9th Cir. 1994) .......... 6

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024) .......... 12, 13

*Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*,
242 F.3d 1163 (9th Cir. 2001) .......... 1, 5, 16

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .......... 11

*Newton v. Consol. Gas Co.*,
258 U.S. 165 (1922) .......... 7

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 1, 4, 19

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .......... 14

*Parker v. Hooper*,
171 F.4th 736 (5th Cir. 2026) .......... 10

*Reno Air Racing Ass'n v. McCord*,
452 F.3d 1126 (9th Cir. 2006) .......... 11

*Roman v. Wolf*,
977 F.3d 935 (9th Cir. 2020) .......... 10, 12, 13

*Salazar v. Buono*,
559 U.S. 700 (2010) .......... 7

*Salazar v. District of Columbia*,
896 F.3d 489 (D.C. Cir. 2018) .......... 8, 9

*Sandin v. Conner*,
515 U.S. 472 (1995) .......... 14

*Toussaint v. McCarthy*,
801 F.2d 1080 (9th Cir. 1986) .......... 14

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 18

*United States v. Florida*,
172 F.4th 1201 (11th Cir. 2026) .......... 10

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009) .......... 13

**Federal Statutes**

28 U.S.C. § 1292(a)(1) .......... 4

**Rules**

Fed. R. App. P. 4(a)(1)(B) .......... 4

Fed. R. Civ. P. 53 .......... 14

Fed. R. Civ. P. 62(d) .......... 1, 4, 5

Fed. R. Civ. P. 62.1 .......... 5

Fed. R. Civ. P. 65 .......... 9

Fed. R. Civ. P. 65(c) .......... 3

Fed. R. Civ. P. 65(d) .......... 9, 11, 12, 15

Fed. R. Evid. 706 .......... 12, 13, 14

## I. INTRODUCTION

Defendants appealed this Court's July 16, 2026 preliminary injunction (ECF 104) on July 30. ECF 109. That notice "confer[red] jurisdiction on the court of appeals and divest[ed] the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Twice since—on August 28 (ECF 130) and September 11 (ECF 147)—the Court has rewritten the paragraph at the center of the appeal, adding commands ECF 104 never contained: a privileged ex parte channel from the monitors to the Court; access for the Court, its staff, and the United States Marshals to accompany inspections of a nonparty's facility; an authorization letter approving entry "within 10 minutes of arrival"; a "guarantee" of "read-only, 24/7 access (on-site or remote)" to "any electronic records"; a comment system routed "confidentially to Plaintiffs' counsel"; a class-wide notice; and a charter enlarged from "paragraph 4," ECF 104, to "paragraphs 1 through 4," ECF 147 at 4–9. Neither ECF 130 nor ECF 147 states a reason. ECF 130 at 1; ECF 147 at 1.

The Court had no jurisdiction to do this. The only authority a district court retains over an injunction on appeal is the power Rule 62(d) preserves "to preserve the status quo," and any action under that rule "may not materially alter the status of the case on appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). An order that goes further "was rendered without jurisdiction and must be vacated." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 735 (9th Cir. 1982). ECF 130 and ECF 147 did not preserve the status quo; they changed it—on the monitors' evolving requests—while the Ninth Circuit reviews the very provisions the Court rewrote, then enforced the changes within days under threat of sanctions and contempt. ECF 155 at 1–3; ECF 178. A stay simply suspends judicial alteration of the status quo, *Nken v. Holder*, 556 U.S. 418, 429 (2009), and returns the decree to the form the Ninth Circuit is reviewing. Every term of ECF 104, including unannounced inspections and reasonable access to the facility, records, staff, and detainees, remains in force.

Defendants therefore request a stay of ECF 130 and ECF 147 in every respect in

which they add to or change ECF 104, pending disposition of appeal from those orders.

## II. BACKGROUND

### A. ECF 104, the appeal, and the Ninth Circuit's rulings

ECF 104 enjoined Defendants in four substantive paragraphs (conditions, headcounts, segregation, and a remedial plan) and, in paragraph 5, appointed two "independent, third-party monitors" "[t]o ensure compliance with the remedial plan described in paragraph 4." ECF 104 at 2–5. Paragraph 5 provided that the monitors would "observe and report," submit monthly "findings and recommendations," and conduct "unannounced, independent inspections," with "reasonable access" to the facility, health records, staff, and detainees. *Id.* at 5–6. It established a grievance system routed "directly to the Medical or Conditions Monitors" by a locked box or tablet "only accessible by" them. *Id.* at 6. Defendants appealed on July 30, 2026 (ECF 109) and applied for a stay the same day (ECF 113), which stay the Court denied August 4 (ECF 118). The Ninth Circuit stayed the injunction administratively on August 6 (No. 26-4902, Dkt. 15.1) and, on August 20, denied a stay pending appeal and lifted the administrative stay (No. 26-4902, Dkt. 22.1 at 7).

### B. ECF 130

On August 27, 2026, Plaintiffs applied ex parte for an emergency hearing, telling the Court that "[t]he Monitors cannot fulfill their Court-ordered obligations without further direction from the Court." ECF 123 at 4. The Court set Defendants' response for August 31 and a hearing for September 1 (ECF 128). But on August 28, three days before Defendants' response was due, the Court entered ECF 130 without a hearing, stating only: "Upon further review of the preliminary injunction, the Court modifies the following highlighted language . . . ." ECF 130 at 1.

ECF 130 added: inspections by "any additional persons assisting the monitors" (¶ 5(d)(1)); "the Court and its staff, including the United States Marshals," on inspections "as needed" (¶ 5(d)(2)); a new paragraph 5(h) permitting the monitors "to confer ex parte with the Court," with "[a]ll communications . . . privileged and . . . not subject to

discovery" (¶ 5(h)(1)); a class notice (¶ 5(h)(3)); and quarterly reports of ex parte communications, except those "with the Court" (¶ 5(h)(4)). ECF 130 at 2–4.

**C. The September 1 and September 4 hearings**

At the September 4 status conference the Court explained the amendments' source: "in discussions with [the monitors] about the preliminary injunction, they did have some requests to make their job a little bit easier. And we did amend the preliminary injunction." ECF 157 at 3:19–23. Defendants objected to the scope of electronic-records access (*id.* at 12:15–15:24), to the monitors' use of their own telephones and cameras (*id.* at 22:21–26:8), and to a separate comment system as "unfeasible" (*id.* at 33:22–36:12).

**D. ECF 147**

On September 11, the Court entered ECF 147 "[f]or ease of reference," as "the entire preliminary injunction order with any modifications made at the September 1, 2026, hearing and subsequent amendments." ECF 147 at 1. Beyond re-entering ECF 130's additions, ECF 147: (1) extended the monitors' charter to "this order (namely, paragraphs 1 through 4)" (*id.* at 4); (2) expanded "electronic health records" to "electronic records" (*id.* at 5); (3) required admission of "any materials, items, or equipment needed" (*id.* at 6); (4) required, "[w]ithin 24 hours," an authorization letter approving "entry into the facility within 10 minutes of arrival," posted "at every entrance point" (*id.*); (5) required that "Defendants must guarantee . . . read-only, 24/7 access (on-site or remote) to any electronic records" (*id.*); and (6) replaced the monitor-only grievance system with a "Comment System" routed "confidentially to Plaintiffs' counsel," who "may categorize or prioritize comments for the Monitors' review" (*id.* at 7–8).

**E. Enforcement of the added terms**

The same day it entered ECF 147, the Court, told by the Medical Monitor that remote access to the electronic health records had not been provided, warned that "failure to provide the Medical Monitor with remote access to their system may result in daily monetary sanctions in the amount of $250." ECF 146 at 1. Four days later it issued an order to show cause announcing "daily sanctions . . . in the amount of $500 per violation

($1,500 in total)" unless remote orientation, remote access, and two patient lists were delivered the next day, and "cautioned" that the Court "will consider holding Defendants in civil contempt." ECF 155 at 1–3. To meet the deadline and under the threat of contempt sanctions, ICE negotiated a modification of its contract with GEO under which GEO provided remote access; the Court then discharged the order to show cause. ECF 171 at 1. On October 2, a further order to show cause directed Defendants to answer twenty-four monitor requests by October 7. ECF 178 at 1–4.

Defendants filed their notice of appeal on October 9, 2026 (ECF 183), well within Appellate Rule 4(a)(1)(B)'s sixty days. Mishra Decl. ¶ 3. Both orders are appealable as orders "modifying" an injunction. 28 U.S.C. § 1292(a)(1).

## III. LEGAL STANDARD

A district court may stay an injunction pending appeal under Federal Rule of Civil Procedure 62(d). The standard is *Nken*'s four-factor test—likelihood of success, irreparable injury, injury to other parties, and the public interest. 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the traditional standard are the most critical." *Id.*

## IV. ARGUMENT

### A. The Court Lacked Jurisdiction to Enter ECF 130 and ECF 147, and Defendants Are Likely to Succeed on Appeal.

#### 1. The notice of appeal divested the Court of jurisdiction over the injunction; Rule 62(d) preserves only the power to maintain the status quo.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58; *accord Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" (quoting *Griggs*, 459 U.S. at 58)). The one exception is the inherent power "to

preserve the status quo," codified in Rule 62(d). *Sw. Marine*, 242 F.3d at 1166. "[A]ny action taken pursuant to Rule 62(c) [now Rule 62(d)] 'may not materially alter the status of the case on appeal.'" *Id*.

The Rules supply the procedure for anything more. When a party seeks "relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," Rule 62.1 permits the district court to "defer considering the motion," "deny the motion," or "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). That is the path for amending an injunction under review: an indicative ruling here, and a remand if the Ninth Circuit agrees. No one invoked it, and the Court did not purport to proceed under it.

*McClatchy* marks the line. There, after a notice of appeal, the district court amended the judgment to require reinstatement of striking employees. The Ninth Circuit held that the amendment "was not addressed to maintenance of the status quo during pendency of the appeal; in fact, . . . the amended judgment required a change from the status quo," and so "was rendered without jurisdiction and must be vacated." 686 F.2d at 735. *Southwest Marine*, by contrast, upheld two post-appeal refinements because they "left unchanged the core questions before the appellate panel," would "effectively be reversed" if the core requirements were reversed, and followed "a full and fair hearing on these core issues before the district court." 242 F.3d at 1167.

ECF 130 and ECF 147 fail each part. *First*, they change the subject of the appeal, which as to paragraph 5 is whether a district court may appoint monitors to "ensure compliance" with a remedial plan at a nonparty's facility, with "reasonable access" to it and its health records. No. 26-4902, Dkt. 23.1 at 50–57. The decree now charters the monitors over "paragraphs 1 through 4"; admits the Court, its staff, and the Marshals; licenses privileged ex parte reporting; dictates a ten-minute entry standard; "guarantee[s]" remote access to "any electronic records"; and places Plaintiffs' counsel between detainees and the monitors. ECF 147 at 4–6. None of that is before the Ninth Circuit in No. 26-4902.

*Second*, reversal of ECF 104 would not undo these terms: Ex parte communications shielded from discovery cannot be undone; a class notice cannot be recalled; comments routed to Plaintiffs' counsel cannot be retrieved; a contract modified under threat of sanctions is not restored. *Third*, none of the added terms issued after a full and fair hearing. ECF 130 was entered following e-mails directly from the monitors to chambers, without a hearing, days before Defendants' response was due. ECF 128; ECF 130 at 1; ECF 150 at 4:18–25. The authorization letter, the ten-minute standard, and the Marshals provision were never discussed at any hearing; ECF 147 attributes its further changes to "the Court's conversations with the monitors." ECF 147 at "Page 15 of 19" n.1.

The status-quo exception reaches only the enforcement of an existing decree. A court may act after a notice of appeal "to achieve the same enforcement purpose" when the appeal is from "a contempt order (or other supervisory action) that was issued to force compliance" with a decree already in place, *McClatchy*, 686 F.2d at 735, and it may "clarify its original injunction and . . . supervise compliance," *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir. 1994). Neither happened here. The Court disclaimed enforcement on September 1. ECF 150 at 3:18–21 ("I don't intend to issue any orders enforcing a compliance with the preliminary injunction at this time . . . ."). And it called the amendments responses to the monitors' "requests to make their job a little bit easier." ECF 157 at 3:19–23. An order adding obligations to accommodate the Court's agents does not enforce the existing decree against an adjudicated violation; it is the "change from the status quo" *McClatchy* forbids. 686 F.2d at 735.

*A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), confirms the limit. The modified injunction there already required Napster to "continually search the index and block all files which contain [a] noticed work" and to "adopt reasonable measures to identify variations of the file name." *Id.* at 1095–96. After appeal, and "[a]fter three months of monitoring," the district court found Napster "was not in satisfactory compliance," required a filter that caught the file-name variations the old one missed, and kept the service down until the filter worked. *Id.* at 1096–98. The Ninth Circuit upheld

each step because each enforced the existing command: The new filter "still requires Napster to search files located on the index"; the "zero tolerance" standard "applies only to copyrighted works which plaintiffs have properly noticed"; and the shutdown was "a proper exercise of the district court's power to enforce compliance with the modified preliminary injunction." *Id.* at 1098–99. That is the power "to continue supervising compliance with the injunction," *id.* at 1099, exercised after an adjudicated violation and through a technical advisor who "never unilaterally issued findings of fact or conclusions of law regarding Napster's compliance," *id.* at 1097. The same opinion restates the limit: A district court "lacks jurisdiction to modify the injunction in such manner as to 'finally adjudicate substantial rights directly involved in the appeal.'" *Id.* at 1099 (quoting *Newton v. Consol. Gas Co.*, 258 U.S. 165, 177 (1922)). ECF 130 and ECF 147 fall on the other side of that line. No term they add maps to a term of ECF 104: For example, nothing in ECF 104 corresponds to the ex parte channel, the Marshals, the ten-minute letter, the class notice, or "24/7" remote access to "any electronic records." They followed no adjudicated violation—the Court disclaimed enforcement, ECF 150 at 3:18–21—and their only stated source is the monitors' privileged "conversations" with chambers, ECF 147 at "Page 15 of 19" n.1, the opposite of *Napster*'s advisor.

2. <u>The orders are modifications, not clarifications.</u>

Labels do not control: An order that "substantially changed the terms and force of the injunction as it stood immediately prior" is "a modification, not a mere clarification," even when the district court styles it otherwise. *Gon v. First State Ins. Co.*, 871 F.2d 863, 866 (9th Cir. 1989). "It also makes no difference that the District Court *said* it was merely enforcing its original injunction. The question is whether *in fact* the new order goes beyond the old one." *Salazar v. Buono*, 559 U.S. 700, 734 (2010) (Scalia, J., concurring in the judgment). An order adding obligations "cannot be justified, either as an effort to enforce the consent decree or as a valid modification," and a reservation of power to effectuate a decree's purposes does not authorize commands beyond its "four corners." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574–76 (1984). "Courts may not, under the

guise of modification, impose entirely new injunctive relief." *Salazar v. District of Columbia*, 896 F.3d 489, 498 (D.C. Cir. 2018). The Ninth Circuit applied the same substance-over-label rule to a "clarification" of an ICE detention injunction and set it aside. *Fraihat v. ICE*, 16 F.4th 613, 618, 631 (9th Cir. 2021).

Measured by text, every added term goes beyond ECF 104. "Reasonable access to . . . electronic health records" became "must guarantee . . . read-only, 24/7 access (on-site or remote) to any electronic records," *compare* ECF 104 at 6, *with* ECF 147 at 6, and "on-site or remote" became "remote" the same day, when the Medical Monitor reported to chambers that remote access had not been provided and the Court warned of daily sanctions for "failure to provide the Medical Monitor with remote access," ECF 146 at 1, then ordered it on pain of sanctions amounting to $500 per day, ECF 155 at 3—although, as ICE's declarant had explained, "no court order was in place requiring remote access to the EHR," ECF 148 ¶ 8. The term meant whatever the monitor asked for. "Reasonable access to Adelanto" became a posted letter "approv[ing] expedited security screening and entry into the facility within 10 minutes of arrival." ECF 147 at 6. "To ensure compliance with the remedial plan described in paragraph 4" became "this order (namely, paragraphs 1 through 4)." *Compare* ECF 104 at 5, *with* ECF 147 at 4. A grievance box "only accessible by" the monitors became a system in which Plaintiffs' counsel "categorize or prioritize" what the monitors see. *Compare* ECF 104 at 6, *with* ECF 147 at 7–8. And nothing in ECF 104 corresponds to the ex parte channel, the Marshals, the "additional persons," the class notice, or "any materials, items, or equipment."

Nor are the changes "implementation." The Court distinguished substantive amendments, which require "some sort of motion to amend," from "how it is implemented." ECF 157 at 8:9–18. A term that compels an agency to renegotiate a contract within days under threat of $1,500-per-day sanctions, ECF 155 at 2–3, or admits armed federal officers under the Judiciary's direction into a contractor's facility, is not implementation of "reasonable access." It is new relief, entered without the motion the Court said substantive change requires. Rule 65 forbids that sequence: A show-cause

proceeding determines "whether the alleged contemner has violated the injunctive provision as it stands"; to change the provision, the party "must move the district court," with "notice of the proposed modification and an opportunity to be heard." *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1237 n.44 (11th Cir. 2018). Repeat that cycle—"*x*," then "*y*," then "*z*"—and "the district court is put in the position of managing [the enjoined party's] business," and "this micromanaging is beyond the scope of court oversight contemplated by injunction law." *Id.* at 1237. ECF 178's twenty-four requests are the next "*y*."

3. <u>The orders violate Rule 65(d): They state no reasons, and their new terms are not specific.</u>

"Every order granting an injunction . . . must: (A) state the reasons why it issued." Fed. R. Civ. P. 65(d)(1)(A). An order that "substantially change[s] the terms and force of the injunction" grants injunctive relief, *Gon*, 871 F.2d at 866, and a modification that imposes new commands "without the requisite findings for an injunction . . . crosse[s] the line from permissibly modifying into impermissibly enjoining." *Salazar*, 896 F.3d at 491. ECF 130's entire statement of reasons is "[u]pon further review," ECF 130 at 1; ECF 147's is "[f]or ease of reference" and a footnote attributing its changes to "conversations with the monitors," ECF 147 at 1, 15 n.1. No findings support ECF 130 or ECF 147, and the only reasons in the record are, by the orders' own terms, privileged. When ECF 104 had similarly issued without a statement of reasons, the Ninth Circuit held that it was "unable to review the injunction" and stayed it until the reasons were supplied. No. 26-4902, Dkt. 15.1 at 1.

Rule 65(d) also requires every injunction to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)–(C). "[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 444 (1974). A decree "too vague to be understood" makes the contempt power "a deadly one." *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76

(1967). "If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996).

The Ninth Circuit rejected a specificity challenge only because the monitors' recommendations "must be adopted by the district court before they become effective." No. 26-4902, Dkt. 22.1 at 5. The added terms are the adopted commands, and they are not specific. Defendants must admit "any additional persons assisting the monitors" and "any materials, items, or equipment needed"; admit the Marshals "as needed"; "guarantee" access to "any electronic records that will help facilitate their general duties"; and send a letter approving entry "within 10 minutes of arrival" to "other persons" ICE does not employ. ECF 147 at 5–6. What is "needed," which records "help," and whether ten minutes ran is left to the monitors, whose communications with the Court are privileged. And why ten minutes—not twelve, not twenty, not an hour? No finding explains. A number a court cannot explain is a number the Executive is entitled to set: "[T]hese types of considerations are better left to the 'professional expertise of corrections officials.'" *Roman v. Wolf*, 977 F.3d 935, 946 (9th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979)); *see Parker v. Hooper*, 171 F.4th 736, 761 (5th Cir. 2026) ("[T]he court's micromanagement of the prison's facilities, personnel, procedures, and standards of care require reconsideration.").

The Eleventh Circuit vacated, as overbroad, a monitor's grant of "full access to persons, employees, facilities, buildings, programs, services, documents, records, and any other materials necessary to assess [the defendant's] compliance," because "unfettered access to staff and facilities goes beyond what is necessary for the monitor to accurately assess compliance." *United States v. Florida*, 172 F.4th 1201, 1249 (11th Cir. 2026). Paragraph 5(d)'s "any relevant physical location," "any materials, items, or equipment," and "any additional persons," and paragraph 5(f)'s "read-only, 24/7 access (on-site or remote) to any electronic records," are that grant, enlarged. ECF 147 at 5–6. The Court could not say what the records term covers ("Well, I don't know how their system works . . . ." ECF 157 at 14:10–11), yet days later found noncompliance under threat of daily

sanctions on the say-so of the Monitors. ECF 155 at 2–3; *see also* ECF 176 at 1. An order whose content its enforcers fix after the fact is "too vague to be understood." *Longshoremen's*, 389 U.S. at 76.

Plaintiffs' own positions confirm the point. On August 17, opposing a stay in the Ninth Circuit, they represented that ECF 104 "complies with Rule 65(d)(1)(B)–(C)'s requirements to 'state its terms specifically'" and that "[t]he remedial plan and monitors do not render the order vague." No. 26-4902, Dkt. 20.1 at 11. A week after the panel ruled on that representation, No. 26-4902, Dkt. 22.1 at 5, Plaintiffs ran to this Court claiming that "[t]he Monitors cannot fulfill their Court-ordered obligations without further direction from the Court." ECF 123 at 4. A party "may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Plaintiffs cannot occupy both positions, ECF 127 at 8–9, and neither can the decree: Either ECF 104 stated its terms specifically, as Plaintiffs told the Ninth Circuit, or it needed what the Court has since supplied twice and promised to keep supplying. An injunction that is amended whenever its monitors ask, with a "first amended, second amended, third amended" likely to follow, ECF 157 at 3:24–4:7, is not a decree with specific terms; it is a perpetual one.

The remedial-plan loop shows the decree will never be fixed. ECF 104 ordered a remedial plan within fourteen days and promised that, after monitor and party feedback, "[t]he Court will then enter a separate order adopting a Remedial Plan," which "will be incorporated by reference into this order." ECF 104 ¶¶ 4, 5(b). The plan remains unadopted, and the monitors, Plaintiffs, and Defendants have each proposed a different course. ECF 138; ECF 169; ECF 170. Whatever comes next, the operative content of paragraph 4—the commands that carry the contempt exposure—will be written by the Court, on the monitors' recommendation, on a date and in terms no one can state today. That is not incorporation of an existing document under the "rare exception" that permits incorporation by reference, *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1133 (9th Cir. 2006); it is incorporation of a document that does not exist, which the Ninth Circuit

has already refused to allow at this facility, *Roman*, 977 F.3d at 946. ECF 130 and ECF 147 left paragraph 5(b) untouched. By design, the decree remains open-ended after two amendments and will remain so after the third. Rule 65(d)(1)(C) forbids exactly that.

4. <u>The orders adopt ex parte requests and build an ex parte enforcement channel, which is not the "adoption" the Ninth Circuit assumed.</u>

The motions panel denied a stay of ECF 104 in part because "any recommendations made by the monitors must be adopted by the district court before they become effective." No. 26-4902, Dkt. 22.1 at 5 (citing *Melendres v. Skinner*, 113 F.4th 1126, 1139–40 (9th Cir. 2024)). That premise supposes adoption is a judicial act: notice, the other side's input, the Court's findings, a reviewable order. Instead, the monitors wrote to chambers and the Court promptly amended the terms of the preliminary injunction without a hearing. ECF 150 at 4:18–25; ECF 130 at 1. The monitors then had "requests to make their job a little bit easier"; the Court amended again "based upon [the Court's] discussion with the monitors." ECF 157 at 3:19–23, 8:21–22; ECF 147 at "Page 15 of 19" n.1. The monitors reported noncompliance; the Court issued an order to show cause on what "has come to the Court's attention through its communications with the Medical and Conditions Monitors," with daily sanctions and a contempt warning. ECF 155 at 2–3. And the order makes the predicate communications "privileged and . . . not subject to discovery." ECF 147 at 8. Defendants thus answer, under threat of contempt, to findings whose source they cannot examine or meaningfully oppose.

In *Cobell v. Norton*, the D.C. Circuit vacated the appointment of a monitor "authorized . . . to engage in ex parte communications," holding that such a monitor plays "an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system," and that the ex parte communications "so clearly cast a shadow over [the monitor's] impartiality that the district court abused its discretion." 334 F.3d 1128, 1141–44 (D.C. Cir. 2003). Here, the Court appointed the Medical Monitor "[p]ursuant to Rule 706 of the Federal Rules of Evidence" as "the Court's expert," ECF 119 at 2. A Rule 706 expert is a witness: the rule requires the expert to "advise the parties

of any findings the expert makes" and subjects the expert to deposition and cross-examination. Fed. R. Evid. 706(b). A privileged channel to chambers is the opposite of what Rule 706 contemplates. A court may not invest a monitor with authority to direct a defendant "to take or to refrain from taking any specific action to achieve compliance" with its order "or to adjudicate violations of the order as 'a roving federal district court.'" *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1150 (D.C. Cir. 2009) (quoting *Cobell*, 334 F.3d at 1143). But that is precisely what the monitors now do. The Medical Monitor's first report does not report conditions; it adjudicates "Defendants' failure to fully comply with the Court's order." ECF 176 at 1. The Court's orders to show cause rest on those adjudications. ECF 155 at 1–2; ECF 178 at 1–2.

The monitor in *Melendres* (No. 26-4902, Dkt. 22.1 at 5), exercised "quite narrow" authority after a bench trial, a permanent injunction, "twenty-one days of evidentiary hearings," and two adjudicated contempts, under a decree providing that "[t]he ultimate arbiter of compliance is the Court." 113 F.4th at 1130–31, 1136–37, 1140. The court upheld the order because nothing in it "precludes an emergency motion to the district court for expeditious judicial review of the Monitor's decision." *Id.* at 1139. Here, the monitors' requests became orders without a motion, and the record of how is privileged. *Melendres* presupposes a reviewable record; paragraph 5(j)(1) leaves none.

Reporting is one thing; driving the decree is another. The monitors were appointed to "observe and report." ECF 104 at 5. On this record they have instead set the decree's terms: Their e-mails produced ECF 130, ECF 150 at 4:18–25; their "requests to make their job a little bit easier" produced ECF 147, ECF 157 at 3:19–23; their communications produced the order to show cause, ECF 155 at 2; and their twenty-four requests produced ECF 178. Monitors who write the commands they police exercise "wide-ranging extrajudicial duties," *Melendres*, 113 F.4th at 1135 n.12, and the result is what the Ninth Circuit told district courts to avoid at this facility: "provisions that micromanage the Government's administration of conditions at Adelanto." *Roman*, 977 F.3d at 946. Each added term is one the Court found necessary in August or September, not in July—and

found necessary because a monitor asked.

The record shows how the monitors came to drive the decree. Plaintiffs asked that the monitors be notified of the September 1 hearing "so they may attend," ECF 123-1 at 2; the Court agreed, ECF 135. The monitors—neither of whom had yet set foot in the facility—heard Plaintiffs' one-sided compliance presentation as their first exposure to the case. Defendants objected. ECF 127 at 7. Then the ex parte channel went to work: ECF 130; a tentative rewrite "considering its discussions with the Medical and Conditions Monitors," ECF 136 at 1; ECF 147; ECF 146; ECF 155 at 2; and ECF 178. A monitor who reports to chambers ex parte, whose requests the Court enters as decree, and whose reports trigger sanctions is "an internal investigator, not unlike a departmental Inspector General except that he report[s] not to the Secretary but to the district court." *Cobell*, 334 F.3d at 1141. That is not a judicial office. "[J]udicial monitoring [is] only appropriate to the extent that it [is] based on specific findings of unlawful behavior," and "[a] court cannot order programmatic supervision of an agency's operations." *Cobell v. Kempthorne*, 455 F.3d 301, 306, 317 (D.C. Cir. 2006). The Ninth Circuit draws the same line: A district court "abuse[s] its discretion by allowing the Monitor to substitute his discretion for that of the defendants." *Toussaint v. McCarthy*, 801 F.2d 1080, 1106 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Even a Rule 53 master may not be made "a surrogate judge" over a party's objection, *In re Bituminous Coal Operators' Ass'n*, 949 F.2d 1165, 1168 (D.C. Cir. 1991); these monitors were appointed under Rule 706, with none of Rule 53's protections, and now originate the decree's terms and findings of violation. A "periodic reporting" regime that works "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of" executive affairs is "nothing less than an ongoing federal audit." *O'Shea v. Littleton*, 414 U.S. 488, 500–02 (1974).

The comment system shows how the added content was supplied. The Court described its design as "just my thoughts off the top of my head," ECF 157 at 33:9–10; reconceived the channel as "more of a way for the class members to communicate with

plaintiffs," *id.* at 41:1–3; and directed that the information "be provided directly to plaintiffs' counsel," *id.* at 45:7–10. The remote-access term has the same origin: "the difficulty that wasn't anticipated—or at least I didn't think about it is both of the monitors are not within the Central District of California." *Id.* at 21:15–18. A mechanism designed at a status conference and delegated to one side's counsel, and an access regime born of where the monitors live, are not terms the decree stated when it issued, and neither remedies any constitutional violation found. Rule 65(d) places the duty of specificity on the court and the burden of tailoring on the movant; the terms the Court now supplies by status conference are the terms the Rule required at issuance.

5. Defendants preserved their objections, and their participation in implementing the orders is not consent to their entry.

Defendants appealed ECF 104, then participated in implementing ECF 130 and ECF 147. ECF 109; ECF 144; ECF 157 at 5:13–7:15, 12:22–13:11, 26:10–28:15, 42:4–19. None of that confers jurisdiction to perpetually amend ECF 104. A court's subject matter jurisdiction "can never be forfeited or waived," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); it must exist "at all stages of review," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). The divestiture rule protects the court of appeals' control over the matters on appeal, *Griggs*, 459 U.S. at 58–60; acquiescence in an order the court lacked power to enter does not restore that power. Nor is participation in implementing an appealed order consent to its entry. Defendants objected to the records scope, the equipment term, the comment system, and the charter change, ECF 157 at 12:15–15:24, 20:11–12, 22:21–26:8, 33:22–36:12, 44:4–8; were never heard on the ex parte channel, the Marshals, the class notice, or the authorization letter; and have complied under protest. Only a stay of all the added terms restores the decree the Ninth Circuit is reviewing.

**B. Defendants Are Suffering, and Will Continue to Suffer, Irreparable Harm From the Added Terms.**

The harm is recorded, not predicted. Every injury below rests on a term ECF 104 did not contain and is irreversible or recurs on a schedule the Court announced.

*The sanctions-and-contempt mechanism.* Within four days of ECF 147, the Court ordered Defendants to show cause why they should not be sanctioned $500 per violation per day for not providing remote records access and training on paragraph 5(f)'s clock, and warned of contempt. ECF 155 at 3. A further order to show cause followed October 2. ECF 178. The bond is waived, ECF 147 at 9, so nothing secures Defendants against sanctions or costs under an order later vacated. The Ninth Circuit assumed, when denying the stay, that "the potential, unsecured, cost of implementing certain provisions of the injunction would amount to irreparable injury to the Government," faulting only the lack of a cost analysis for provisions beyond the contract. No. 26-4902, Dkt. 22.1 at 5–6 & n.2. These terms are beyond any contract; one has already cost a modification. The "violation" was of language that did not exist until September 11, enforced on a 24-hour clock against a defendant that cannot itself grant access to a nonparty's system. ECF 155 at 2–3; ECF 148 ¶¶ 6, 8. Serial contempt proceedings under terms entered without jurisdiction are themselves the loss of "the benefit of a successful appeal." *Sw. Marine*, 242 F.3d at 1168.

*The compelled contract modification and remote access to a nonparty's records system.* ECF 104 required only "reasonable access" to health records. By contrast, ECF 147 ¶ 5(f) "guarantee[s]" 24/7 access, "on-site or remote," to "any electronic records," ECF 147 at 6; the Court then demanded remote access on pain of sanctions. ECF 155 at 3. Sapphire, the electronic health record, is GEO's system; ICE "cannot grant access" to it. ECF 148 ¶¶ 5–6. To comply, under threat of contempt sanctions, ICE had to obtain a contract modification admitting third parties remotely into GEO's system—"negotiated without the leverage procurement ordinarily gives the government," No. 26-4902, Dkt. 23.1 at 50 n.8. That is not enforcing an injunction. It is commandeering the Executive's contract—on the Court's clock, under threat of contempt—to compel a term the decree never set, and running the facility GEO operates through GEO's customer. The modification is executed; reversal does not undo it. The term is also continuing: It reaches "any electronic records that will help facilitate their general duties," ECF 147 at 6, so each new request—the twenty-four pending under ECF 178—is a potential order to show cause.

*The privileged ex parte channel.* Paragraph 5(j)(1) permits the monitors "to confer ex parte with the Court regarding any issue arising under or relating to the preliminary injunction order," and makes "[a]ll communications . . . privileged and . . . not subject to discovery." ECF 147 at 8. That channel generated ECF 130, ECF 147's changes, and the order to show cause. ECF 150 at 4:18–25; ECF 147 at 15 n.1; ECF 155 at 2. It can never be reviewed: Communications cannot be unmade, the privilege forecloses discovery, and findings built on them cannot be tested. A defendant made to underwrite an ex parte reporting channel to chambers and a comment system operated by opposing counsel, and to answer under threat of contempt to the privileged reports of agents it is ordered to pay, suffers a harm no judgment repairs. *Cobell*, 334 F.3d at 1142–44.

*The comment system, the Marshals, the letter, the notice, and the charter.* The United States must install opposing counsel's boxes in every housing unit of a nonparty's facility and route class-member communications to opposing counsel, who decide what the monitors see; nothing disclosed to an adversary is recovered. ECF 147 at 7–8. The Marshals provision places armed federal officers under the Judiciary's direction inside an Executive detention facility "as needed." ECF 147 at 5. The authorization letter, sent October 3 under ECF 178, dictates a ten-minute entry standard to "other persons at Adelanto" ICE does not employ. ECF 147 at 6. The class notice, once sent, cannot be withdrawn. ECF 147 at 8–9. And the charter extension makes monitors who "observe and report" on a remedial plan enforcement agents over every paragraph of the decree, ECF 147 at 4—the predicate for the demands under ECF 178.

*Serial amendment.* The Court has said it will keep amending the decree. ECF 157 at 3:24–4:7. The confidential interviews, the ten-minute entry, the comment system, and the remedial-plan adoption are still ahead; without a stay, each is the next order to show cause. A decree its author expects to re-issue serially cannot be obeyed, reviewed, or stayed as a fixed thing; it is the harm *Griggs* named—two courts "simultaneously analyzing the same judgment," 459 U.S. at 59–60—and only a stay prevents it.

These injuries are concrete, completed or recurring, and beyond repair: a modified

contract, an opened records system, a posted letter, privileged communications, comments delivered to an adversary. And because the added terms are not before the merits panel, the only proceeding that can vindicate them is the new appeal, whose object a stay preserves. The Supreme Court has held that the Government suffers irreparable harm from an injunction that exceeds the issuing court's authority. *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025) ("The question before us is whether the Government is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the authority conferred by the Judiciary Act. The answer to that question is yes."). An order entered without jurisdiction is such an order. *See also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (cleaned up)).

**C. A Stay Will Not Substantially Injure Plaintiffs or the Class.**

The stay leaves in force every term of ECF 104: paragraphs 1 through 4; two monitors for the life of the litigation; monthly reports; "unannounced, independent inspections"; "reasonable access" to the facility, health records, staff, and detainees; a monitor-only grievance system; and the monitors' pay. ECF 104 at 5–7. It leaves the anti-retaliation provision, the protective order (ECF 145), and the Court's power to enforce paragraphs 1 through 4 by motion, as the Court prescribed. ECF 150 at 3:18–4:6. The stay removes only what the Court added to ECF 104 after the appeal: who may speak to the Court ex parte, who escorts whom, on what clock a gate opens, who curates detainee comments, and whether a nonparty's records system must open remotely.

This Application makes no claim about conditions; the care standards remain enforceable. The monitors have inspected, received remote access, and filed first reports (ECF 176; ECF 177); whatever those reports say about paragraphs 1 through 4 is enforceable under paragraphs 1 through 4.

**D. The Public Interest Favors a Stay.**

"[T]he public interest lies with maintaining the *status quo* while the appeal is

pending," *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020), and the status quo is the decree under review. The public interest in "careful review and a meaningful decision," *Nken*, 556 U.S. at 427, favors a fixed decree reviewed once. The added terms protect no constitutional right—no one contends the Fifth Amendment requires a ten-minute gate or a privileged channel to chambers—and the terms that protect class members remain in force. The public also has an interest in adversarial adjudication, *Cobell*, 334 F.3d at 1142; in the Executive's administration of detention, *Bell*, 441 U.S. at 548; and in the security of health information in a nonparty's system. The public interest does not favor an enforcement apparatus the Court had no jurisdiction to build.

## V. CONCLUSION

Defendants respectfully request that the Court grant this Application.

Respectfully submitted,

Dated: October 9, 2026

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Assistant United States Attorney

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains approximately 6,992 words, which complies with the word limit of Local Rule 11-6.1.

Dated: October 9, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA