PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
BELINDA ESCOBOSA (SBN 214178)
bescobosa@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,

Defendants.

Case No. 5:26-cv-00322-SSS-SPx

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR STAY PENDING APPEAL OF ECF 130 AND ECF 147**

**CLASS ACTION**

Ctrm: 2, 2nd Floor
3470 12th Street
Riverside, CA 92501
Hon. Sunshine Sykes

Date Filed: January 26, 2026
Trial Date: November 8, 2027

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

VINCENT R. BIAGIOTTI (*pro hac vice*)
vbiagiotti@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
Tel: 212-728-8000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. PROCEDURAL HISTORY .......... 2

III. LEGAL STANDARDS .......... 5

A. Ex Parte Relief Requires Extraordinary Circumstances. .......... 5

B. A Stay Pending Appeal Is Not a Matter of Right. .......... 5

IV. ARGUMENT .......... 5

A. The Government Has Not Justified Extraordinary Ex Parte Relief. .......... 5

B. Defendants Have Not Established Grounds for a Stay Pending Appeal. .......... 7

1. Defendants Are Unlikely to Succeed on Appeal. .......... 7

2. Defendants Have Not Shown Irreparable Harm. .......... 14

3. A Stay Would Substantially Injure Plaintiffs and the Class. .......... 15

4. The Public Interest Favors Effective, Reviewable Supervision. .......... 16

C. Alternatively, Any Relief Should Be Provision-Specific. .......... 17

V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002) .... 1, 8

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) .... 5, 14

*Cobell v. Norton*,
334 F.3d 1128 (D.C. Cir. 2003) .... 13

*Epic Games, Inc. v. Apple Inc.*,
161 F.4th 1162 (9th Cir. 2025) .... 11, 12 16

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004) .... 7

*Hawaii v. Trump*,
871 F.3d 646 (9th Cir. 2017) .... 12

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .... 5

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*,
686 F.2d 731 (9th Cir. 1982) .... 8

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) .... 8

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024) .... 11, 13

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) .... 5, 6

*Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*,
242 F.3d 1163 (9th Cir. 2001) .... 1, 7, 8, 9

*Nken v. Holder*,
556 U.S. 418 (2009) .... 5

*Hoffman ex rel. NLRB v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268 (9th Cir. 1976) ........ 8

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ........ 15

*U.S. v. Florida*, 172 F.4th 1201 (11th Cir. 2026) ........ 13

*United States v. Yacoubian*, 24 F.3d 1 (9th Cir. 1994) ........ 7

**Statutes**

Fifth Amendment ........ 2

The Rehabilitation Act ........ 2

**Rules**

Fed. R. Civ. P. 62(d) ........ 1, 8

Fed. R. Civ. P. 65(d) ........ 11, 12

Fed. R. Evid. 706(b) ........ 14

**Other Rules**

Local Rule 7-19 ........ 6

## I. INTRODUCTION

On July 16, the Court ordered two independent monitors to inspect the Adelanto ICE Processing Center ("Adelanto"), review records, and report on compliance with protections for the approximately 1,800 people detained there. Dkt. 104 (the "Initial Order") ¶ 5; Dkt. 121 at 12. However, the Defendants did not grant the independent monitors the access they needed to carry out the Initial Order. The Court therefore added logistical provisions specifying how the monitors would receive the access to Adelanto the Initial Order required. Dkts. 130, 147 (collectively, "the Amended Orders"). Defendants now seek to suspend those provisions while their appeal proceeds. A stay would restore the very obstacles to the monitors' access the Court sought to remove.

Neither the law nor the equities support that result. First, Defendants have not shown a likelihood of success on their appeal of the Amended Orders. The Ninth Circuit, in denying Defendants' earlier stay request, already found that Defendants are not likely to succeed in their appeal of the Initial Order. No. 26-4902, Dkt. 22.1 at 2–5. The Amended Orders merely clarify and expound on the measures needed to effectuate the relief provided for in the Initial Order. A pending appeal does not strip a district court of authority to supervise compliance with its injunction; Rule 62(d) expressly preserves that authority. Fed. R. Civ. P. 62(d) (court "may suspend, modify, restore, or grant an injunction" while an appeal is pending); *Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166–67 (9th Cir. 2001); *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098–99 (9th Cir. 2002). The challenged orders do not change the conditions the injunction requires Defendants to provide, Initial Order ¶¶ 1–4, or the questions pending on appeal. They specify how the monitors carry out responsibilities paragraph 5 already gave them. The Ninth Circuit previously explained that the monitors' recommendations "must be adopted by the district court before they become effective." No. 26-4902, Dkt. 22.1 at 5. The Amended Orders reflect the Court's continuing supervision of that monitoring framework.

Defendants also cannot show irreparable harm. Their own efforts to comply show that the challenged requirements are workable and that the Court's process is measured. After the Court ordered Defendants to explain delays in providing electronic medical records and warned of potential sanctions, Defendants reported providing access to the records and the requested patient lists, and the Court discharged its Order to Show Cause without imposing sanctions. Dkt. 171 at 1. Meanwhile, the Medical Monitor's first report states that access problems prevented him from assessing medical care at all. Dkt. 176 at 2. The Conditions Monitor documented continuing deficiencies in water, sanitation, recreation, and disability accommodations. Dkt. 177 at 3–8, 13–18, 24–26. Suspending the monitoring provisions in the Amended Orders would make those conditions harder to detect and correct—the very harm the Court's orders address.

Finally, Defendants have shown no emergency warranting ex parte relief. They waited 42 days after the August 28 order and 28 days after the September 11 order to seek a stay. Dkts. 130, 147, 185. Meanwhile, the Ninth Circuit has consolidated their appeals and set an expedited schedule, with Plaintiffs' consolidated answering brief due November 13. No. 26-4902, Dkt. 32.1 at 2. Defendants have not shown why they should be excused from complying with the Court's monitoring orders while their appeals proceed. Their application should be denied.

## II. PROCEDURAL HISTORY

On July 16, 2026, after finding Plaintiffs likely to succeed on their claims that conditions at Adelanto violate the Fifth Amendment and the Rehabilitation Act, this Court entered a preliminary injunction. *See generally* Initial Order. The injunction established two independent monitors and authorized them to inspect the facility without notice, review relevant records, interview staff and detainees, and report monthly on Defendants' compliance. *Id.* ¶ 5. Defendants appealed on July 30, Dkt. 109, and this Court denied a stay on August 4, Dkt. 118. The Ninth Circuit entered an

administrative stay on August 6 and, on August 20, denied Defendants' motion for a stay pending appeal and lifted the administrative stay. No. 26-4902, Dkt. 22.1 at 7.

On August 25, 2026, the Medical Monitor contacted counsel to request a procedure for communicating with the Court, Dkt. 123 at 13–14. On August 27, Plaintiffs sought an emergency status conference to address the monitors' duties following the lifting of the administrative stay, *id.* at 4, 13–14. The next day, the Court made three modifications to the monitoring section of the Preliminary Injunction. It clarified when the monitors' first reports were due (October 1, 2026), provided facility access for "any additional persons assisting the monitors" and "the Court and its staff," and delineated the scope of permissible ex parte communications with the monitors. Dkt. 130 at 2–4. On September 11, after the parties stipulated to replace the grievance provision with a detainee comment system, Dkt. 144, the Court entered a First Amended Preliminary Injunction incorporating those provisions. Dkt. 147. This amended injunction also specified additional procedures governing facility access, electronic records, inspections, and communications with the monitors, as detailed in the comparison chart below. *See infra* § IV.B.1.b. Defendants raised objections to certain provisions at the September 4 hearing but did not seek a stay until October 9. Dkt. 157 at 12:15–15:24, 22:21–26:8, 33:22–36:12; Dkt. 185-1.

On September 15, the Court issued an Order to Show Cause based on Defendants' failures to provide access to the monitors as ordered. First, Defendants had not trained the Medical Monitor on their electronic health-records system, provided remote access to those records, or produced requested patient lists. Dkt. 155 at 2. Second, facility staff had prevented the Conditions Monitor from using her own camera during an inspection. *Id.* at 2–3. The Court ordered Defendants to explain those failures and warned of possible sanctions. *Id.* at 3. Defendants thereafter submitted daily status reports describing their compliance efforts and represented that the monitors had obtained access to their electronic health-records system and the

requested patient lists. Dkts. 156, 159, 163, 165, 167. On September 22, the Court discharged the Order to Show Cause. Dkt. 171 at 1.

The access problems nonetheless persisted. In his October 1 report, the Medical Monitor reported that he could not assess medical care at Adelanto because Defendants had not provided full access to medical records and the facility. Dkt. 176 at 2. The Conditions Monitor reported delays entering the facility, restrictions on photographing conditions, and unanswered requests for information. Dkt. 177 at 2–3. On October 2, the Court directed Defendants to respond in writing by October 7 to three outstanding categories of requests from the Medical Monitor and 21 requests from the Conditions Monitor. The Court also directed Defendants to produce the authorization letter required by the First Amended Preliminary Injunction and scheduled an October 9 status conference. Dkt. 178 at 1–4. In their October 7 response, Defendants described the documents and access they had provided, represented that GEO had answered the Conditions Monitor's requests, and acknowledged that certain responses remained outstanding or required supplementation. Dkt. 181 at 1–2.

On October 9—42 days after the August 28 order and 28 days after the September 11 order—Defendants filed this ex parte application, Dkt. 185, and a second notice of appeal, Dkt. 183. The following day, Defendants filed an emergency motion for a stay pending appeal and an immediate administrative stay in the Ninth Circuit. No. 26-6685, Dkt. 3.1. The Ninth Circuit has since consolidated the appeals and expedited briefing. Defendants' opening brief in the second appeal is due October 23, and Plaintiffs' consolidated answering brief is due November 13. No. 26-4902, Dkt. 32.1 at 2. Plaintiffs' response to the emergency stay motion is due October 14. Id. at 1.

## III. LEGAL STANDARDS

### A. Ex Parte Relief Requires Extraordinary Circumstances.

Ex parte relief is appropriate only when the applicant shows that it will suffer irreparable prejudice if required to proceed by noticed motion and that the claimed emergency did not arise through its own fault. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The ex parte procedure is not a substitute for the ordinary motion calendar or a means of obtaining preferential treatment over other litigants. *Id.* at 490–92.

### B. A Stay Pending Appeal Is Not a Matter of Right.

A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result," but "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). The applicant bears the burden of showing (1) "a strong showing that he is likely to succeed on the merits"; (2) that he "will be irreparably injured absent a stay"; (3) that a stay will not "substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Id.* at 434 (citation omitted). The first two factors are "the most critical." *Id.* (citation omitted). The applicant must show that irreparable harm is probable, not merely possible, *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011), and likely to occur before the appeal is decided, *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).

## IV. ARGUMENT

### A. The Government Has Not Justified Extraordinary Ex Parte Relief.

Ex parte applications are reserved for extraordinary circumstances. Ex parte motions are justified only where (1) the applicant shows it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures;" and (2) the applicant "is without fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co.*, 883 F. Supp. at 492.

First, Defendants have not shown that ordinary motion procedures would cause irreparable prejudice. Defendants waited 42 days after Dkt. 130 was entered and 28

days after Dkt. 147 was entered before seeking a stay. Defendants' only basis for emergency relief is their complaint that the Amended Orders "are being enforced under express warnings of daily sanctions and civil contempt." Dkt. 185 at 2, 19. But those consequences are still hypothetical. Potential enforcement of an injunction is not a basis to stay the underlying order, particularly not on an emergency timeline. Further, Defendants' arguments concerning the Court's retained supervisory authority lack merit. Failure to hear a meritless motion on an expedited schedule "cannot be prejudicial." *Mission Power Eng'g Co.*, 883 F. Supp. at 492.

Second, Defendants' noncompliance prompted the enforcement proceedings they now invoke to justify emergency relief. The Court issued its September 15 Order to Show Cause after Defendants failed to provide the monitors with required access to records and impeded their inspections. Dkt. 155 at 2–3. After Defendants took steps toward compliance, the Court discharged that order without sanctions. Dkt. 171 at 1. When access and information requests remained outstanding, the Court again directed Defendants to respond in writing. Dkt. 178 at 1–4. These proceedings show that the Court has provided a forum for resolving implementation disputes, not that an emergency warrants a stay.

If Defendants believed a particular monitoring requirement was impracticable or required clarification, they could have raised that concern with the Court. Instead, they seek to disrupt the monitoring framework, without explaining why targeted relief would be inadequate. *See Mission Power Eng'g Co.*, 883 F. Supp. at 492.

Defendants' delay and their role in precipitating the enforcement proceedings defeat their request for exceptional treatment. Ex parte applications deprive opposing counsel of the ordinary briefing schedule and require the Court to act without the benefit of full adversarial presentation. Defendants' application is the kind of procedural shortcut that Local Rule 7-19, this Court's Standing Order, and *Mission Power* are designed to prevent. The Court may deny the application on this procedural ground alone. It should also deny the requested stay on the merits.

**B. Defendants Have Not Established Grounds for a Stay Pending Appeal.**

Defendants cannot satisfy any of the four factors governing a stay pending appeal. They are unlikely to succeed on their challenges to the Amended Orders, identify no irreparable injury from continued monitoring, and overlook the substantial harm a stay would impose on the certified classes. The public interest likewise favors maintaining effective oversight while appellate review proceeds.

**1. Defendants Are Unlikely to Succeed on Appeal.**

This Court has "inherent power to enforce compliance with [its] lawful orders." *United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) (citation omitted). It is "not reduced to issuing injunctions . . . and hoping for compliance." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004) (citation omitted). Here, this Court and the Ninth Circuit have already found that Defendants are unlikely to succeed in their appeal of the Initial Order. No. 26-4902, Dkt. 22.1 at 2–5; Dkt. 118 at 2. Following Defendants' failures to provide the monitors the access needed to comply with the Initial Order, the Court added logistical provisions to ensure that the monitors received the access the Initial Order already required. *See Sw. Marine*, 242 F.3d at 1166. Further, this Court explicitly retained authority to supervise the implementation of its Initial Order—the Preliminary Injunction created a review process for Defendants' remedial plan and ordered the appointment of two independent monitors to ensure compliance with its injunction throughout the litigation. *See* Initial Order ¶ 5. Contrary to Defendants' characterization, neither of the Amended Orders "change[s] the subject of the appeal" of the Initial Order. Dkt. 185. For the reasons below, Defendants are unlikely to succeed on their appeal of the Amended Orders.

**a. This Court Retained Authority to Supervise Implementation of the Preliminary Injunction.**

Defendants' appeal of the Initial Order did not freeze this Court's supervision of the injunction. Although a notice of appeal ordinarily divests a district court of

jurisdiction over matters involved in the appeal, that rule "is not absolute." *Sw. Marine, Inc.*, 242 F.3d at 1166. Rule 62(d) expressly authorizes a district court to "suspend, modify, restore, or grant an injunction" while an appeal is pending. Fed. R. Civ. P. 62(d). The limit is whether the modification preserves the status quo without materially altering the issues on appeal. *Sw. Marine*, 242 F.3d at 1166–68; *Napster*, 284 F.3d at 1098–99 (9th Cir. 2002). Where an injunction governs ongoing conduct, preserving the status quo may require further judicial action as new facts emerge. *Hoffman ex rel. NLRB v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976). That flexibility is especially important in institutional-reform litigation, where district courts confront the "flinty, intractable realities of day-to-day implementation." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (citation omitted).

The distinction is between implementing existing obligations and adjudicating new rights. In *Sw. Marine*, the Ninth Circuit upheld modifications specifying a testing method and an eighteen-month construction deadline because they effectuated the original injunction. 242 F.3d at 1166–68. Similarly, *A&M Records,* 284 F.3d at 1098–99, permitted revised filtering procedures to enforce an existing injunction. *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734–35 (9th Cir. 1982), illustrates the limit. There, the district court ordered employees reinstated when the original judgment had decided only whether their contractual job guarantees survived a strike. The Ninth Circuit vacated the new order because it adjudicated a remedy not previously decided and affected substantial rights beyond the appeal. *Id.* at 735.

This case falls on the implementation side of that line. The Initial Order established independent monitoring, including unannounced inspections, reasonable access to detainees and records, monthly reports, and judicial consideration of a remedial plan. Initial Order ¶ 5(a)–(g). The Amended Orders did not revisit the Court's constitutional findings or change the substantive protections afforded the

class. They specified how the monitoring already ordered would operate. Defendants may challenge those specifications on appeal, but the original appeal did not deprive this Court of authority to make its injunction effective.

**b. The Challenged Provisions Implement Obligations Already Contained in the Initial Order.**

The Court ordered independent monitoring on July 16—not August 28 or September 11. The Initial Order required Defendants to permit unannounced inspections, provide the monitors "reasonable access" to the facility, records, staff, and detainees, establish channels for detainee comments, and facilitate monthly reports. Initial Order ¶ 5(c)–(f). The Amended Orders specified how those obligations would operate in practice. That is the kind of modification *Sw. Marine* approved: there, the district court converted "reasonably expeditious" construction into an eighteen-month deadline and clarified that testing "at the surface" required sampling the surface microlayer; the Ninth Circuit upheld these changes as "minor adjustments that effectuated the underlying purposes of the original requirements." 242 F.3d at 1166–68. The same relationship between existing duties and implementing procedures appears here:

| Initial Order | Amended Orders | Basis for Clarification |
|---|---|---|
| **Inspections.** Unannounced inspections and reasonable access to the facility, staff, detainees, and records. ¶ 5(d). | Assisting personnel, inspection equipment, confidential interviews, and accompaniment by Court staff or Marshals "as needed." Dkt. 147 ¶ 5(d). | The Conditions Monitor was prevented from using her camera and had to rely on photographs taken by the warden, which required ICE approval before release. Dkt. 155 at 2–3. |

| Initial Order | Amended Orders | Basis for Clarification |
| --- | --- | --- |
| **Electronic records.** Reasonable access to relevant physical and electronic health records. ¶ 5(d). | Read-only, 24/7 access, on-site or remote, and training on electronic-records systems. Dkt. 147 ¶ 5(f). | Defendants had not provided the Medical Monitor with system orientation, remote access, or requested patient lists. Dkt. 155 at 2. Those deficiencies continued to impair his work in October. Dkt. 176 at 2. |
| **Facility entry.** Access sufficient to conduct unannounced inspections. ¶ 5(d). | Authorization letter directing expedited security screening and entry within ten minutes, subject to applicable security protocols. Dkt. 147 ¶ 5(d). | Gives effect to the existing requirement of unannounced inspections by establishing a definite entry procedure. |
| **Detainee comments.** Free physical and electronic channels for detainees to communicate directly with monitors. ¶ 5(f). | Locked boxes, tablet submissions through Plaintiffs' counsel, confidentiality protections, and explanatory notices. Dkt. 147 ¶ 5(h). | Makes the comment system operational and establishes procedures for transmitting information to the monitors and both sides' counsel. |
| **Reporting and communications.** Monthly reports to the Court and parties containing findings and recommendations. ¶ 5(c). | Supplemental reports; communications with the Court, counsel, and class members; quarterly reporting of specified ex parte contacts. Dkts. 130, 147 ¶ 5(c), (j). | Allows monitors to raise time-sensitive compliance issues between monthly reports while preserving the Court's authority to resolve disputes. |

| Initial Order | Amended Orders | Basis for Clarification |
|---|---|---|
| **Monitoring scope.** Independent monitoring of medical care, disability accommodations, and conditions of confinement, including review of the remedial plan. ¶ 5. | Expressly includes compliance with paragraphs 1–4 of the injunction. Dkt. 147 ¶ 5. | Connects the monitors' work to the substantive obligations the Court imposed in July. |

**c. Defendants' Rule 65(d) Arguments Do Not Establish Likely Success.**

The Court has already made extensive findings establishing systemic medical-care and inspection-access deficiencies at Adelanto, and the monitoring provisions in the Initial Order were tailored to those findings. Dkt. 121 at 12–18, 23–37; 1-ER-2–43. The Initial Order authorized unannounced inspections, access to relevant records, and independent reporting. Initial Order ¶ 5. The challenged orders make those responsibilities workable. They specify entry procedures, electronic-records access, and the monitors' authority to use appropriate inspection equipment. Dkt. 147 ¶ 5(d), (f). These measures implement the Court's monitoring requirements rather than impose new standards for detention conditions. In *Melendres v. Skinner*, 113 F.4th 1126, 1132–33 (9th Cir. 2024), the Ninth Circuit upheld supplemental monitoring procedures imposed to address deficiencies in an existing prison-compliance regime, finding that modification was warranted by the defendants' failures to fully implement prior court orders. Defendants' narrow reading of the Initial Order also conflicts with the Ninth Circuit's instruction that injunctions must not be interpreted with "narrow literalism" that creates loopholes. *See Epic Games, Inc. v. Apple Inc.*,

161 F.4th 1162, 1177 (9th Cir. 2025) (quoting *Schering Corp. v. Ill. Antibiotics Co.*, 62 F.3d 903, 906 (7th Cir. 1995)).

Defendants' procedural objection also fails on the record. The Court circulated proposed amendments before the September 4 hearing, at which Defendants objected to several provisions on the record. No. 26-6685, Dkt. 3.3, Ex. A at 2; Dkt. 157 at 12:15–15:24, 22:21–26:8, 33:22–36:12. That is the notice and opportunity *Armstrong v. Brown* contemplated. 768 F.3d 975, 980–81 (9th Cir. 2014); *see also Hawaii v. Trump*, 871 F.3d 646, 659 n.8 (9th Cir. 2017) (upholding district court's modification of preliminary injunction and noting that arguments not raised before the district court during the modification process were waived).

The orders also satisfy Rule 65(d)'s specificity requirement. The First Amended Preliminary Injunction identifies concrete obligations: Defendants must authorize entry within ten minutes; provide read-only electronic-records access; and permit inspections with appropriate personnel and equipment, subject to security protocols. Dkt. 147 ¶ 5(d), (f). Those directives tell Defendants what they must provide. Their objection concerns the breadth of the requirements, not their clarity. Fed. R. Civ. P. 65(d)(1)(B)–(C).

Defendants' argument that Plaintiffs contradicted themselves by defending the Initial Order while seeking implementation guidance also fails. An injunction can define Defendants' obligations without prescribing every possible step needed to fulfill them. Plaintiffs' request for implementation guidance was therefore entirely consistent with their position that the Initial Order satisfied Rule 65(d).

**d. Monitor Communications Do Not Supplant Judicial Decision-Making.**

Defendants conflate monitoring with adjudication. The monitors gather information and make recommendations; the Court decides whether to adopt them. Dkt. 147 ¶ 5. The Ninth Circuit recognized precisely that distinction when it denied Defendants' earlier stay request, explaining that the monitors' recommendations

"must be adopted by the district court before they become effective." No. 26-4902, Dkt. 22.1 at 5 (citing *Skinner*, 113 F.4th at 1139–40). The Amended Orders preserve that allocation of authority.

In *Skinner*, 113 F.4th at 1135–39, the Ninth Circuit upheld a monitor's authority to implement remedial measures because the district court retained authority to review the monitor's decisions. Indeed, the monitor there exercised greater operational authority than the monitors here, who cannot finally adjudicate compliance disputes.

By contrast, *Armstrong* invalidated a provision allowing a court-appointed expert to resolve compliance disputes without judicial review. 768 F.3d at 987–88. But the court expressly permitted experts to "make recommendations . . . subject to review by the district court." *Id.* at 987. That is precisely the arrangement here. The monitors may investigate and recommend corrective measures, but only this Court may determine noncompliance or order relief. Dkt. 147 ¶ 5. And the Court has exercised that authority: when the monitors reported compliance problems, it required Defendants to respond and ultimately discharged its Order to Show Cause without sanctions. Dkts. 155, 171. The monitors inform the Court's decisions; they do not make them.

Nor do confidential communications transfer judicial authority to the monitors. *Cobell v. Norton*, 334 F.3d 1128, 1141–44 (D.C. Cir. 2003) concerned a monitor whose expansive investigative role raised questions about impartiality. *Skinner* distinguished *Cobell* on that basis. 113 F.4th at 1135 n.12. And *U.S. v. Florida*, 172 F.4th 1201, 1248–49 (11th Cir. 2026), held that authorizing ex parte monitor communications is not inherently improper.

The Court's proceedings confirm that Defendants retain an opportunity to be heard. The monitors' reports go to both sides. Dkt. 147 ¶ 5(c). When the monitors reported access problems, the Court ordered Defendants to respond, considered their submissions, and discharged the September Order to Show Cause without sanctions.

Dkts. 155–171. Rule 706 likewise requires disclosure of the Medical Monitor's findings and permits examination of the expert. Fed. R. Evid. 706(b). Confidential communications do not displace those safeguards or permit coercive relief based on material factual assertions Defendants cannot contest. The record shows judicial supervision, not adjudication by the monitors.

**2. Defendants Have Not Shown Irreparable Harm.**

Defendants identify no irreparable injury that a stay would prevent. They waited 42 days after Dkt. 130 and 28 days after Dkt. 147 before seeking relief. As the Ninth Circuit explained in *Al Otro Lado*, a government that has operated under an injunction for weeks possesses "the best evidence of harms likely to occur": evidence of what actually happened. 952 F.3d at 1007. Yet Defendants point principally to acts already completed, including modifying ICE's agreement with GEO, providing access to electronic medical records, and disclosing information through the monitoring process. Dkt. 185 at 16–17. A stay cannot undo those acts. And Defendants offer no concrete evidence that continued monitoring before the appeal is decided will cause irreparable harm.

The remaining harms are speculative or unsubstantiated. Defendants identify no quantified costs attributable to the challenged provisions, a deficiency the Ninth Circuit noted when denying their earlier stay request. No. 26-4902, Dkt. 22.1 at 5–6 & n.2. Burdens of "money, time and energy," however real, "are not enough." *Al Otro Lado*, 952 F.3d at 1007–08 (citation omitted). Admitting monitors within ten minutes and providing read-only access to records impose administrative burdens, not irreparable injury. Defendants' objections to future inspections, class notices, and confidential monitor communications largely repeat their merits arguments, addressed above. Nor does the prospect of contempt establish likely irreparable harm. When Defendants reported progress in providing medical-records access and patient lists, the Court discharged its September Order to Show Cause without sanctions. Dkt. 171 at 1. Its October 2 order likewise required written responses to outstanding

monitoring requests—not sanctions or a finding of contempt. Dkt. 178 at 1–4. Defendants offer no reason to expect a different approach going forward.

Nor does *Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025), establish irreparable harm here. There, the Supreme Court found irreparable harm because the challenged injunctions likely exceeded the district courts' authority and prevented the Government from enforcing its policies against nonparties. The Ninth Circuit has already held that the Initial Order in this case "does not implicate" *CASA*, because it prescribes Defendants' obligations "to a certified class of detainees in a single detention facility." No. 26-4902, Dkt. 22.1 at 3–4. The subsequent monitoring provisions do not change that essential distinction. They do not enjoin enforcement of any statute or executive policy against nonparties; they implement the Court's existing injunction through access to the facility and its records. Defendants have not shown that those provisions exceed the Court's authority, much less that their continued operation will cause the irreparable harm recognized in *CASA*.

**3. A Stay Would Substantially Injure Plaintiffs and the Class.**

Defendants insist the class loses nothing because the Initial Order's "reasonable access" terms would remain in force. Dkt. 185 at 18. But those provisions were already in force when Defendants obstructed the monitors' access. *See* Initial Order ¶ 5(d); Dkt. 155 at 2–3; Dkts. 176–177. The additional logistical provisions in the Amended Orders ensure that the monitors actually have the access necessary to fulfill their duties.

The Amended Orders did not expand the substantive scope of the monitors' responsibilities; they specified procedures for exercising the access the Initial Order already authorized. Initial Order ¶ 5(d). That became necessary because Defendants treated every gap in the Initial Order as a reason not to act. Staff held the Conditions Monitor in the lobby for 45 minutes for lack of "authority" from ICE and refused her access to her camera, Dkt. 177 at 2, and ICE delayed records access because "no court order was in place requiring remote access," Dkt. 148 ¶ 8. The Medical Monitor could

not assess medical care records at all. Dkt. 176 at 2. Only after the obligations were spelled out did Defendants provide remote access and send the authorization letter. Dkt. 185 at 4, 17; Dkt. 181 at 1–2.

A stay would reopen those gaps while serious problems remain unverified. Even on her abbreviated first visit, the Conditions Monitor found mold throughout the West-building shower rooms, which staff had been painting over rather than remediating, and live larvae on the floors. Dkt. 177 at 6–7. She also found worn, cracked mattresses; recreation and visitation falling short of the injunction; excessive nighttime headcounts; and no system for identifying or accommodating detainees with disabilities. *Id.* at 8–14, 24–26. Medical care remains entirely unassessed. Dkt. 176 at 2. Defendants answer that paragraphs 1 through 4 remain enforceable "by motion." Dkt. 185 at 18. Defendants' answer presents the solution that the Ninth Circuit has expressly sought to avoid: a strict reading and constant motion practice to dispute interpretations that run contrary to the spirit of the injunction. *See Epic Games*, 161 F.4th at 1177. Even if such practice were allowed, enforcement requires evidence, and the Court appointed independent monitors to gather it. Nor has ICE's on-site presence filled the gap; the warden told the Conditions Monitor that fixes such as certified water filtration were waiting on ICE approval. Dkt. 177 at 4, 7. The Amended Orders' explicit terms are what allow monitoring to function as the Court intended when it entered the Initial Order, and Defendants should not be permitted to use a stay to hinder monitor access.

**4. The Public Interest Favors Effective, Reviewable Supervision.**

"It is always in the public interest to prevent the violation of a party's constitutional rights." No. 26-4902, Dkt. 22.1 at 6 (quoting *Youth 71Five Ministries v. Williams*, 160 F.4th 964, 978 (9th Cir. 2025)). The Ninth Circuit applied that principle to this injunction in August, and it applies with equal force to the procedures necessary to verify compliance. A stay would leave the injunction in force while depriving the Court of its independent means of assessing whether Defendants obey

it. The public also has an interest in orderly appellate review, but a stay is not necessary to protect it. The Ninth Circuit has consolidated and expedited Defendants' appeals, with briefing scheduled to conclude November 20. No. 26-4902, Dkt. 32.1 at 1–2. That review can proceed while the monitors continue their work. Nothing in the public interest favors disabling independent oversight of a detention facility while the legality of that oversight is reviewed.

### C. Alternatively, Any Relief Should Be Provision-Specific.

Even if the Court finds that a particular provision requires clarification or narrowing, a blanket stay is unwarranted. The Amended Orders contain distinct measures governing facility access, records, detainee comments, and reporting, each designed to address obstacles to effective monitoring. Any concern about one provision can be addressed through clarification or narrowly tailored relief as to that provision while preserving the others. Such an approach would preserve measures necessary to verify compliance with an injunction that remains in force.

## V. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' application.

Dated: October 13, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim
Vincent R. Biagiotti (*pro hac vice*)

PUBLIC COUNSEL

By: */s/ Rebecca Brown*
Rebecca Brown
Sophia Wrench
Amelia Piazza
Belinda Escobosa

IMMIGRANT DEFENDERS LAW CENTER

By: */s/ Alvaro M. Huerta*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By: */s/ Carl Bergquist*
Carl Bergquist (*pro hac vice*)
Adam Reese

**WORD COUNT CERTIFICATE**

The undersigned counsel of record for Plaintiffs certifies that this Opposition contains 5,100 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 13, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Nicholas Reddick*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim
Vincent R. Biagiotti (*pro hac vice*)