PUBLIC COUNSEL
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
AMELIA PIAZZA (SBN 342473)
apiazza@publiccounsel.org
BELINDA ESCOBOSA (SBN 214178)
bescobosa@publiccounsel.org
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Attorneys for Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

L.T., SEVAK MESROBIAN, JOSE MAURO SALAZAR GARZA, AND J.M., on behalf of themselves and all others similarly situated; COALITION FOR HUMANE IMMIGRANT RIGHTS,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director; JAIME RIOS, Acting Director of Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,

Defendants.

Case No. 5:26-cv-00322-SSS-SPx

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO ENFORCE THE FIRST AMENDED PRELIMINARY INJUNCTION (ECF 147)**

**CLASS ACTION**

Ctrm: 2, 2nd Floor
3470 12th Street
Riverside, CA 92501
Hon. Sunshine Sykes

Date Filed: January 26, 2026
Trial Date: November 8, 2027

IMMIGRANT DEFENDERS LAW CENTER
ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
CARSON ADRIANNA SCOTT (SBN 337102)
cscott@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

COALITION FOR HUMANE IMMIGRANT RIGHTS
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Tel: 213-353-1333

WILLKIE FARR & GALLAGHER LLP
NICHOLAS REDDICK (SBN 288779)
nreddick@willkie.com
STEPHEN HENRICK (SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON (SBN 327699)
avernon@willkie.com
JACOB KARIM (SBN 340376)
jkarim@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Tel: 415-858-7400

VINCENT R. BIAGIOTTI (*pro hac vice*)
vbiagiotti@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
Tel: 212-728-8000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 3

- A. The First Amended Preliminary Injunction Imposes Specific, Operative Requirements as to Conditions ..... 3
- B. The Record Documents Substantive Noncompliance ..... 5

III. LEGAL STANDARD ..... 6

- A. Enforcement of the Injunction ..... 6
- B. Civil Contempt ..... 7
- C. Coercive Civil Contempt Sanctions ..... 8

IV. ARGUMENT ..... 8

- A. The Preliminary Injunction Is Clear and Definite ..... 8
- B. Clear and Convincing Evidence Demonstrates Defendants' Noncompliance ..... 9
- C. Defendants' Noncompliance Warrants Civil Contempt Proceedings ..... 15
- D. Coercive Sanctions Are Warranted and Proportionate ..... 15

V. REQUESTED RELIEF ..... 16

VI. CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Brown*,
939 F. Supp. 2d 1012 (N.D. Cal. 2013) ........ 7

*Crawford v. Honig*,
37 F.3d 485 (9th Cir. 1994) ........ 7

*Douglas v. City of L.A.*,
No. 2:20-cv-07439-MEMF-PDx, 2026 U.S. Dist. LEXIS 202865 (C.D. Cal. Sep. 1, 2026) ........ 7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ........ 7, 15

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004) ........ 6

*FTC v. Affordable Media, LLC*,
179 F.3d 1228 (9th Cir. 1999) ........ 7, 15

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994) ........ 8, 16

*Kia Am., Inc. v. Rally Auto Grp., Inc.*,
No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 (C.D. Cal. Oct. 20, 2022) ........ 7

*L.T. v. U.S. Immigr. & Customs Enf't*,
No. 26-4902, Dkt. 22.1 (9th Cir. Aug. 20, 2026) ........ 8

*Nat'l Res. Def. Council v. Sw. Marine Inc.*,
242 F.3d 1163 (9th Cir. 2001) ........ 7

*Parsons v. Ryan*,
949 F.3d 443 (9th Cir. 2020) ........ 15

*Shillitani v. United States*,
384 U.S. 364 (1966) ........ 7

*Stone v. City & Cnty. of San Francisco*,
968 F.2d 850 (9th Cir. 1992) ........ 7

*Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 647 (1961) .......... 7

*U. S. v. Ayres*, 166 F.3d 991 (1999) .......... 16

*U.S. v. Yacoubian*, 24 F.3d 1 (9th Cir. 1994) .......... 6

*United States v. Cloud*, 102 F.4th 968 (9th Cir. 2024) .......... 15

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) .......... 8, 15, 16

*United States v. Woodley*, 9 F.3d 774 (9th Cir. 1993) .......... 15

*Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992) .......... 8

**Statutes**

18 U.S.C. § 401(3) .......... 7

**Rules**

Federal Rule of Civil Procedure 62(d) .......... 1, 7

**Other Authorities**

*Garrett Hottle, "California Democrats visit Adelanto ICE detention facility,"* KESQ (Oct. 16, 2026), https://kesq.com/news/2026/10/16/california-democrats-visit-adelanto-ice-detention-facility .......... 10

Press Release, Congresswoman Luz Rivas, "Congresswoman Luz Rivas Joins Colleagues for Unannounced Oversight Visit at Adelanto, Raises Concerns About Inhumane Conditions" (Oct. 16, 2026), https://rivas.house.gov/media/press-releases/congresswoman-luz-rivas-joins-colleagues-unannounced-oversight-visit-adelanto .......... 1

Pursuant to this Court's inherent power to enforce its orders and Federal Rule of Civil Procedure 62(d), Plaintiffs respectfully move the Court to enforce its September 11, 2026 First Amended Preliminary Injunction Order (ECF 147).

## I. INTRODUCTION

On July 16, 2026, this Court entered a preliminary injunction ordering Defendants and their agents to, *inter alia*, immediately provide Plaintiffs with safe and sanitary living conditions. The Court appointed two independent monitors to ensure Defendants' compliance, one of whom was to observe and report on the conditions of confinement ("Conditions Monitor"). ECF 117. On September 11, 2026, the Court entered a First Amended Preliminary Injunction Order ("Injunction") to clarify the provisions related to the independent monitors. ECF 147.

Undeterred by this Court's injunction and its two subsequent orders to show cause, Defendants continue to subject Plaintiffs to inhumane conditions of confinement. On October 2, 2026, Conditions Monitor Kellie R. Wasko documented Defendants' ongoing noncompliance with nearly every conditions provision—water, meals, sanitation, privacy, clothing, bedding, outdoor recreation, visitation, and headcounts. ECF 177 at 3–11. Since October 11, 2026, at least two housing units in Adelanto East have been flooding with sewage water containing fecal matter, with inadequate efforts to clean or remediate the flooding. *See* Declaration of Alison Steffel in Support of Renewed Motion to Enforce the First Amended Preliminary Injunction ("Steffel Decl.") ¶¶ 4–26. When seven Congressmembers toured the facility on October 16, 2026, they saw "mold and food that looked inedible."[1]

---

[1] Press Release, Congresswoman Luz Rivas, "Congresswoman Luz Rivas Joins Colleagues for Unannounced Oversight Visit at Adelanto, Raises Concerns About Inhumane Conditions" (Oct. 16, 2026), https://rivas.house.gov/media/press-releases/congresswoman-luz-rivas-joins-colleagues-unannounced-oversight-visit-adelanto.

These are not inadvertent implementation failures. Class members report that GEO staff told them they had "instructions not to follow" the Court's Order unless ICE directed them to do so. *See* Declaration of Sophia Wrench in Support of Renewed Motion to Enforce the First Amended Preliminary Injunction, dated October 21, 2026 ("Wrench Oct. 21 Decl.") ¶ 5. And those who speak up about conditions reported being placed in solitary confinement and denied religious food and holiday meals. *Id.* ¶¶ 31, 33. Plaintiff L.T. reported that officers have raided his unit, taken his belongings, and taunted him. Steffel Decl. ¶ 49. He is fearful of further retaliation. *Id.*

Plaintiffs therefore respectfully request that the Court grant this Motion and enforce Paragraphs 1(a)–(h) and 2 of the Injunction by ordering Defendants to take the specific compliance measures set out in Part V, which are grounded in the Conditions Monitor's findings and recommendations, and to account for their compliance under oath. Plaintiffs further request that the Court issue an order to show cause why Defendants should not be held in civil contempt for any continuing violations. The Court has previously warned Defendants that continued violations of its monitoring-access requirements may warrant coercive sanctions and civil contempt. ECF 155 at 3; ECF 193 at 1. Plaintiffs do not request duplicative enforcement orders concerning the photographs, electronic-records modules, or segregation records addressed in the Court's recent proceedings. Rather, Plaintiffs request comparable relief for the distinct substantive violations established here, subject to the requisite contempt findings. Upon a finding of contempt, Plaintiffs request that the Court impose prospective, purgeable coercive sanctions to secure compliance.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The First Amended Preliminary Injunction Imposes Specific, Operative Requirements as to Conditions

On July 16, 2026, the Court granted in part Plaintiffs' renewed motion for a preliminary injunction and provisionally certified the classes. ECF 104. The Court issued the First Amended Preliminary Injunction Order on September 11, 2026, which "includes the entire preliminary injunction order with any modifications made at the September 1, 2026, hearing and subsequent amendments." ECF 147 ("PI") at 1. The amendments clarified the monitoring provisions; the substantive conditions requirements at issue here remained unchanged.

The Court ordered Defendants to *immediately* provide 24-hour access to basic necessities: clean potable drinking water; nutritious and sanitary meals with sufficient calories; adequate sanitation, including daily cleaning, consistently available hygiene products, and mold remediation; adequate bathroom and shower privacy; clean and sanitary clothing and bedding; and at least four hours of daily yard access absent documented security reasons. *Id.* ¶ 1(a)–(g). The Court prohibited arbitrary limits on visits with family and loved ones and required Defendants to allow physical contact during visitation absent a documented security risk. *Id.* ¶ 1(h). The Injunction requires that daytime headcounts generally occur on an out-count basis and that Defendants conduct no more than two daytime and two nighttime counts. *Id.* ¶ 2.

The Injunction also orders independent monitoring. Paragraph 5 orders Defendants to provide access to two court-appointed monitors "[t]o ensure compliance with this order (namely, paragraphs 1 through 4)." *Id.* ¶ 5. Defendants must ensure the Monitors can conduct "unannounced, independent inspections"; have "reasonable access to . . . any physical and electronic records relevant to the implementation of this order"; and "be allowed to bring into the facility any materials, items, or equipment needed to facilitate their inspections." *Id.* ¶ 5(d).

Despite this Court's order, the Conditions Monitor and the Medical Monitor have repeatedly encountered difficulty in obtaining the records and information necessary to perform their duties.[2] The Court has twice ordered Defendants to show cause regarding Defendants' noncompliance with the monitor-access requirements. On September 15, 2026, this Court issued an order to show cause after Defendants had not provided the Medical Monitor with an orientation for the electronic health record ("EHR") system, remote access to the records, or the promised patient lists, and that the Warden had prevented the Conditions Monitor from using the equipment she brought, instead took photographs on her behalf, and then withheld those photographs pending ICE approval. ECF 155 at 1–3. On October 2, 2026 the Court issued a further Order to Show Cause ("October 2 OSC") concerning Defendants' failure to provide numerous documents and answers requested by the Monitors. ECF 178. This Motion presents a related but distinct issue: continuing violations of the Injunction's substantive conditions-of-confinement requirements in Paragraphs 1(a)–(h) and 2.

---

[2] Monitor access issues have also slowed the portion of the Injunction ordering creation of a remedial plan regarding medical care and disability accommodations. Defendants were ordered to file a remedial plan subject to Monitor review. *Id.* ¶ 4. However, as of October 1, 2026, the Medical Monitor was unable to conduct any analysis of medical conditions or necessary remedial measures because Defendants failed to fully comply with the Court's order to provide him access to medical records and to guarantee physical access to the facility. ECF 176. Lack of medical care and disability accommodations remain urgent problems at Adelanto. For example, one elderly man with cancer and diabetes is unable to care for himself, and the ADA accessible shower in his unit has been turned off, so he cannot shower. Wrench Oct. 21 Decl. ¶ 43. One woman is not getting adequate medical care for an eye infection; she is desperate to see the specialist and fears she will lose her eye if she does not get adequate treatment soon, Steffel Decl. ¶ 50. One man has gone without glasses for months; another man has reportedly fallen several times, but has not been given any accommodations to assist him with mobility to prevent future falls. Wrench Oct. 21 Decl. ¶¶ 42, 45.

**B. The Record Documents Substantive Noncompliance**

The Court is familiar with Defendants' noncompliance history. On August 27, 2026, Plaintiffs filed an Ex Parte Application for Emergency Hearing re: Injunction Compliance and Court-Appointed Monitors, which described ongoing violations of the Injunction and obstacles to the Monitors' work. *See* ECF 123. The application was supported by declarations from class members and counsel documenting, among other things, continued restrictions on yard time, unchanged headcount practices, and limits on contact visitation. *See generally* ECF 123-2–123-7. The Court heard the application on September 1, and thereafter amended the Injunction's monitoring provisions. ECF 147.

On October 1, 2026, Ms. Wasko's first monthly report was filed with the Court. ECF 177. Covering September 2 through September 30, 2026, Ms. Wasko's report is based on an unannounced site visit that spanned two days, along with documents obtained from Defendants' counsel. *Id.* at 2, 6–7, 20. Ms. Wasko found Defendants noncompliant with the Injunction's headcount, outdoor-recreation, visitation, and mold-remediation requirements, and noncompliant or only partially compliant with other requirements, regarding water, sanitation, privacy, and bedding. *Id.* at 3–11. Specifically, she found that the facility had not changed its headcount process to conform to the Injunction, that detained individuals were not receiving the required four hours of daily yard time, that the visitation policy continued to prohibit ordinary physical contact, and that mold remained widespread in the shower areas she inspected. *Id.* at 6–11. Reports from detained individuals corroborate Ms. Wasko's findings. *See generally* Wrench Oct. 21 Decl., Steffel Decl. ¶¶ 4–48. Plaintiffs' counsel met and conferred with Defendants' counsel on October 13, 2026 regarding these issues and asked for status updates from Defendants; Defendants have not provided any information or assurances. *See* Declaration of Amelia Piazza in Support of Renewed Motion to Enforce the First Amended Preliminary Injunction ("Piazza Decl.") ¶¶ 2, 16.

Significant health and safety problems continue to arise. During a facility visit on October 16, 2026, Plaintiffs' counsel Alison Steffel spoke with three women detained there. Each described repeated sewage water flooding in their housing unit beginning October 11, 2026; they reported that water appearing to contain fecal matter emerged from drains, sometimes reached one to two inches in depth throughout their entire unit, interfered with eating and movement in the unit, and persisted for over ten days despite intermittent maintenance efforts. Steffel Decl. ¶¶ 4–22. The women also reported slipping and falling in the water; that officers instructed them to clean the flooding themselves; and that they lacked appropriate cleaning chemicals, resorting to shampoo and a broom. *Id.* ¶¶ 12–14.

Plaintiffs' counsel notified Defendants' counsel of the sewage water flooding reports on October 16, 2026, and asked for an update on remediation within 24 hours. *See* Piazza Decl. ¶ 7. On October 19, 2026, Plaintiffs' counsel sent a follow-up email requesting an update. *Id.* ¶ 8. That evening, Defendants' counsel Mr. Mishra replied, stating in part: "Defendants received the following response from GEO regarding this issue: '[A] sewer line clog resulted in a backup within the facility. The incident occurred after regular business hours, and on-call staff were contacted and responded to address the issue. From the initial response through remediation, including clearing the clog and addressing the affected area, the incident lasted approximately two and a half hours.'" *Id.* ¶ 9. The following evening, class members messaged Plaintiffs' counsel regarding more sewage flooding in Adelanto East, which remained unresolved on October 21. Steffel Decl. ¶ 22–25.

## III. LEGAL STANDARD

### A. Enforcement of the Injunction

Federal courts "have inherent power to enforce compliance with their lawful orders." *U.S. v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) (citation omitted). They "are not reduced to issuing injunctions . . . and hoping for compliance." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004) (citation omitted). On the contrary, "[o]nce

issued, an injunction may be enforced," *id.*, and district courts retain "continuing jurisdiction to enforce their injunctions," *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994)—including during the pendency of an interlocutory appeal, Fed. R. Civ. P. 62(d). *See Nat'l Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *Douglas v. City of L.A.*, No. 2:20-cv-07439-MEMF-PDx, 2026 U.S. Dist. LEXIS 202865 (C.D. Cal. Sep. 1, 2026).

Where a party fails to comply with an injunction, the Court may enter further orders requiring compliance. *See Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013); *Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 647 (1961). An order is sufficiently definite to support enforcement where its terms clearly and specifically proscribe the conduct at issue, considering both the order's language and the objective circumstances surrounding its issuance. *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022).

**B. Civil Contempt**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citation omitted); *see also* 18 U.S.C. § 401(3). In the Ninth Circuit, "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). "[T]here is no good faith exception to the requirement of obedience to a court order," and contempt "need not be willful." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A party is in substantial compliance only if it has "take[n] all reasonable steps" to comply. *Id.*; *Stone*, 968 F.2d at 856.

### C. Coercive Civil Contempt Sanctions

Civil contempt sanctions may serve to "coerce the defendant into compliance with the court's order, [or] to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). A per diem fine imposed for each day a contemnor fails to comply with an affirmative court order is a classic coercive civil sanction because the contemnor can purge it through compliance. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–29 (1994). In fashioning a coercive sanction, the Court considers "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers*, 330 U.S. at 304; *see Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516–17 (9th Cir. 1992).

## IV. ARGUMENT

### A. The Preliminary Injunction Is Clear and Definite

The Preliminary Injunction imposes concrete, measurable requirements in plain terms: 24-hour access to clean potable drinking water; daily cleaning; free soap and hygiene products; mold remediation; privacy in bathrooms and showers; clean and temperature-appropriate clothing and bedding; at least four hours of individual yard access daily; contact visitation not subject to arbitrary time limits; and no more than two headcounts in each defined window. ECF 147 ¶¶ 1–2. Defendants have never sought clarification of any obligation; to the contrary, their objections to the Order show they understand its provisions perfectly well. *See, e.g.*, ECF 113 at 14–16. The Ninth Circuit agreed, finding that Defendants had not shown that the Injunction lacked "specific directives with which to comply," that its terms were ambiguous, or that the Monitors rendered those terms unclear. *L.T. v. U.S. Immigr. & Customs Enf't*, No. 26-4902, Dkt. 22.1 at 5 (9th Cir. Aug. 20, 2026). Both predicates for enforcement—a specific order and actual notice—are therefore satisfied.

### B. Clear and Convincing Evidence Demonstrates Defendants' Noncompliance

The Court appointed Ms. Wasko as Conditions Monitor based on the parties' joint stipulation, which proposed Ms. Wasko based on "[h]er independence as a current consultant" and "her deep operational expertise and national leadership in correctional standards." ECF 117; ECF 112 at 3. Ms. Wasko's first report rests on first-hand observations from an unannounced two-day inspection and on Defendants' own records. ECF 177 at 2, 6–7, 20. It identifies noncompliance with multiple substantive provisions of the Injunction. Those findings are corroborated by contemporaneous sworn reports from detained individuals. *See generally* Wrench Oct. 21 Decl. The resulting record documents continuing violations of Paragraphs 1(a)–(h) and 2, warranting an order enforcing the Injunction and requiring Defendants to cure the violations described below.

*a. Water (¶ 1(a))*

The Injunction requires 24-hour access to clean potable water. ECF 147 ¶ 1(a). On July 29, 2026, individuals in one housing unit found worms or larvae in water jugs serving approximately 75 to 80 people; replacement water contained the same contamination. ECF 120-1, Hellerstein Decl. ¶¶ 6–11. In her October 2, 2026 report, Ms. Wasko identified continuing concerns about water quality. Although the City of Adelanto's most recent water report found three contaminants "above health goals" and recommends NSF-certified filters for residents, in Adelanto West, only a temporary "simple" filtration system had been installed, and the Adelanto East igloo-filling spigot "was not on a filtration system." ECF 177 at 4–5. At the time, a NSF-certified system had been prepared for at least some water sources at Adelanto, but ICE had not authorized the funding necessary to implement it. *Id.* at 4.

Since Ms. Wasko's report, new filtering water dispensers have been installed in at least some housing units. Steffel Decl. ¶ 27; Wrench Oct. 21 Decl. ¶ 8. However, as recently as October 16, 2026, people detained in both buildings told Plaintiffs'

counsel that they continued to have difficulty drinking the water from the filtration system because of its taste and reported that the water is off-color or has white residue in it. Steffel Decl. ¶ 27; Wrench Oct. 21 Decl. ¶ 8. These reports underscore the need for reliable verification of compliance with Paragraph 1(a).

*b. Food (¶ 1(b))*

The Injunction requires nutritious and sanitary meals that contain a sufficient number of calories. PI ¶ 1(b). Ms. Wasko was unable to meaningfully assess whether meals are nutritious and sanitary because Defendants failed to provide the caloric values and substitution report for the menus. ECF 177 at 5. Detained individuals, however, report the same problems as before the Injunction: small portions, foods piled together, and breakfast served as early as 4:00 a.m., causing many to miss the meal. Wrench Oct. 21 Decl. ¶¶ 9–11. On October 16, 2026, women detained at Adelanto East reported insufficient portions, dirty meal trays, hair in food, and infrequent fresh fruits or vegetables. One woman reported that she frequently does not receive food consistent with her approved allergy diet. Steffel Decl. ¶¶ 29–31. Congressman Dave Min reported from his visit on October 16, 2026, "[y]ou could see that the ovens, the cookware, the pots and pans that they were using were filthy, were not cleaned."[3]

*c. Sanitation and Mold Remediation (¶ 1(c))*

The Injunction requires daily cleaning, free and consistently available hygiene products, and mold treatment and remediation. PI ¶ 1(c). Ms. Wasko "observed mold in every General Population shower room" in Units 2, 3, 4, and 5 of Adelanto West—each with four pods—finding "a large amount of mold growing throughout the shower room." ECF 177 at 6. She found walls "soaking wet," ceilings "dripping water," and paint "saturated and separating from the wall," with ceilings still dripping

---

[3] Garrett Hottle, "California Democrats visit Adelanto ICE detention facility," *KESQ* (Oct. 16, 2026), https://kesq.com/news/2026/10/16/california-democrats-visit-adelanto-ice-detention-facility.

the next morning. *Id.* at 6–7. Facility staff reported that their response "has generally involved applying Kilz and/or painting over affected surfaces," an approach that "does not address the underlying condition and has not resulted in a sustained resolution." *Id.* Detained individuals also report that mold painted over approximately six weeks earlier has returned and shower mold has worsened. Wrench Oct. 21 Decl. ¶ 14.

Ms. Wasko also discovered live larvae on the shower-room floors. ECF 177 at 6. In Adelanto East, shower curtains were torn, dragging on wet floors, and had "developed mold and mildew and an odor." *Id.* at 7. In Adelanto East Unit 2A, cracked air-conditioning ducts were blowing "quite a bit of airborne debris" into the dorm, a condition the Conditions Monitor deemed "significant" and in need of remediation; cracked, dirty ductwork was evident in both buildings. *Id.* at 6, 24. Women detained at Adelanto East also told counsel that their housing unit and restrooms were not regularly cleaned by staff and that they were left to clean with little or no appropriate supplies. Steffel Decl. ¶¶ 13, 20.

*d. Privacy in Restrooms and Showers (¶ 1(d))*

The Injunction requires adequate privacy for detained people when using the restroom or shower, consistent with the safety needs of the facility. PI ¶ 1(d). Ms. Wasko reports that the shower stalls in Adelanto West face each other directly, without any privacy barrier, which is "not typical in any carceral setting." ECF 177 at 7. Although the Warden reported after the visit that showers in Adelanto West now have privacy curtains, *id.*, class members report that privacy curtains remain absent from the toilets and the ADA-accessible shower. Wrench Oct. 21 Decl. ¶ 18. Women at Adelanto East also reported that, although curtains provide privacy from others in their housing unit, surveillance cameras are positioned directly above the toilets and point downward toward them. The curtains do not obstruct the cameras' view, leaving the women without privacy from surveillance while using the restroom. Steffel Decl. ¶ 33.

Also in Adelanto West, up to eight people share the same in-cell toilet without any privacy barrier, and staff remove barriers that detained individuals construct out of bed sheets. Wrench Oct. 21 Decl. ¶¶ 18–19. One Plaintiff reports that the toilet in his unit is visible from the doorway to the entire unit. *Id.* ¶¶ 19–20. A man detained at Adelanto West likewise told counsel that his housing unit still lacked toilet privacy curtains and that detained individuals improvised barriers with bedsheets. Steffel Decl. ¶ 34. Ms. Wasko opined that a quick-release privacy barrier around in-cell toilets would be feasible and safe. ECF 177 at 18.

*e. Clothing (¶ 1(e))*

The Injunction requires clean, sanitary, and temperature-appropriate clothing. ECF 147 ¶ 1(e). Detained individuals told Ms. Wasko that the air conditioning is so cold that they need additional sweatshirts and blankets. ECF 177 at 8. Plaintiff Salazar reported that no shorts are issued with uniforms, requiring people to wear long pants outside in 90-plus-degree weather unless they can afford commissary shorts. Wrench Oct. 21 Decl. ¶ 20. Detained individuals reported that they receive only one sweatshirt and are left cold while it is being laundered, and women at Adelanto East reported clothing inadequate for the low temperatures in their unit. Steffel Decl. ¶¶ 40–41.

*f. Bedding (¶ 1(f))*

The Injunction requires clean, sanitary, and temperature appropriate mattresses, pillows, and blankets. ECF 147 ¶ 1(f). Ms. Wasko found that mattresses "are very thin, and many of them had cracks and holes in them on both the West and East sides," with some Adelanto East mattresses "as thin as 2 inches." ECF 177 at 8. "The majority of complaints [she] received were about the mattresses," and in numerous Adelanto West cells, detained individuals were stacking two or three mattresses per bunk. *Id.* Detained individuals in both buildings reported being cold and needing additional blankets. *Id.* at 8, 25. Women detained at Adelanto East also reported that laundry, including blankets, was sometimes returned wet. Steffel Decl. ¶ 42.

*g. Outdoor Recreation (¶ 1(g))*

The Injunction requires four hours per day, seven days a week of outdoor time (not in the "mini yard"), absent documented security risks or reasons necessitating otherwise. ECF 147 ¶ 1(g). Ms. Wasko reported that no detained individuals are receiving the required four hours of daily recreation. ECF 177 at 8. At the time of her inspection, detained individuals at Adelanto West received only one hour per day, five days per week, in the main yard, while those at Adelanto East received between one and one-half and three hours per day, five days per week. *Id.*

Class member accounts from the past week confirm continued noncompliance. Women at Adelanto East reported that they are scheduled for only two hours in the main yard on Mondays, Wednesdays, and Saturdays, with additional time in the mini yard on other days. Even that limited main yard access is sometimes canceled entirely; the women in Adelanto East reported that they have not been to the main yard for around two weeks. Steffel Decl. ¶ 37. One man at Adelanto West reported receiving only one hour in the main yard twice weekly. *Id.* ¶ 38. Plaintiff L.T. also reported that staff spend approximately 30 minutes determining who may use the main yard, which reduces scheduled two-hour sessions to approximately 90 minutes. *Id.* ¶ 39.

The Warden told Ms. Wasko that a plan to comply was still being developed. ECF 177 at 8, 25. Meanwhile, one GEO guard told a class member, "We're not doing that four hours thing." Wrench Oct. 21 Decl. ¶ 23.

*h. Visitation (¶ 1(h))*

The Injunction requires no-time-limit visitations so long as they do not interfere with normal operation of the facility, families must be allowed to use the restroom during visits without them being cancelled, and physical contact must be allowed during visitation absent a documented security risk. PI ¶ 1(h). Ms. Wasko reported that the visitation policy permits "a brief kiss and hug at the beginning and end of the visits" but "specifically states that there will be no physical touching between the detainee and adult visitors." ECF 177 at 9. Ms. Wasko noted that while it is "very

common to allow visitors to hold hands," the policy does not permit it. *Id.* at 9, 18. One class member reported that when he attempted to shake hands with another detained man's wife, a GEO guard yelled, "No hand shaking!" Wrench Oct. 21 Decl. ¶ 26. During a recent visit, counsel observed visitors seated several feet apart without touching, and one woman reported being reprimanded for leaning toward an elderly visitor. Steffel Decl. ¶¶ 47–48.

Ninety days of visitation logs show "many discrepancies": visits "very rarely begin at 8 a.m." as scheduled, visitors "routinely" wait up to an hour—and in many cases up to three hours—and there are hour-long periods when "the visiting room is empty while there are visitors waiting in the lobby." ECF 177 at 9. Visitation is restricted by unit to set days and intervals (for example, three-hour or six-hour blocks on three days per week). *Id.* at 9–10. Although there is a restroom in the visiting area, the policy prohibits visitors from using it and requires detained individuals to return to their cells to use the restroom. *Id.* at 9. Class members report that visits remain capped at one hour and physical contact remains prohibited. Wrench Oct. 21 Decl. ¶¶ 25–26.

*i. Headcounts (¶ 2)*

The Injunction requires a maximum of two headcounts, performed on an "out-count basis" between 9:00 a.m. and 8:00 p.m. and a maximum of two headcounts that do not disrupt the detained individuals' sleep between 8:01 p.m. and 8:59 a.m. PI ¶ (2). Ms. Wasko found that "[t]he facility has not changed its count process according to the injunction." ECF 177 at 11. Adelanto conducts six counts per 24-hour period, at 0630, 1030, 1830, 2300, 0100, and 0300. *Id.* at 10, 25. Four of those counts occur at night, between 8:01 p.m. and 8:59 a.m.—twice the Injunction's limit. *Id.* at 11, 25. Ms. Wasko reported that carceral facilities typically conduct two counts during sleeping hours. *Id.* at 11. In the past week, class members reported at least five counts per day, including evening counts during which women in the open housing unit are

required to remain on their beds and the men are required to return to their cells. Steffel Decl. ¶¶ 44–45.

**C. Defendants' Noncompliance Warrants Civil Contempt Proceedings**

Defendants have been on notice of the Injunction's requirements for over three months. The Conditions Monitor's findings, reinforced by more recent reports from detained individuals, warrant a sworn accounting of the steps Defendants have taken to achieve compliance. Defendants' response—or lack thereof—to well-documented conditions issues bears directly on whether they took all reasonable steps to comply with Paragraph 1(c). *See In re Dual-Deck Video*, 10 F.3d at 695.

The record shows there are specific steps ICE has *not* taken: Ms. Wasko's report states that the Warden "cannot install anything without the explicit authorization from ICE for a cost approval," and had to wait to install an NSF-certified water-filtration system until ICE "authorized the funding necessary to move forward." ECF 177 at 4, 7. GEO staff told class members they had "instructions not to follow" the Order unless ICE directed otherwise. Wrench Oct. 21 Decl. ¶ 5. Where the obstacle to compliance is a defendant's own decision, the defendant has not shown that it is unable to comply. *See Affordable Media*, 179 F.3d at 1239–41.

**D. Coercive Sanctions Are Warranted and Proportionate**

The Ninth Circuit has affirmed per-violation coercive fines to enforce court-ordered conditions-of-confinement obligations. *See Parsons v. Ryan*, 949 F.3d 443, 454–56 (9th Cir. 2020).[4] Here, each factor favors coercive relief. *First*, the "character and magnitude of the harm" from continued noncompliance is serious and ongoing. *United Mine Workers*, 330 U.S. at 304. More than 1,700 people are detained at the facility, with roughly 500 detained individuals processed in and out each week. ECF

[4] Sovereign immunity does not categorically preclude monetary sanctions imposed pursuant to a court's supervisory authority. *United States v. Cloud*, 102 F.4th 968, 981–82 (9th Cir. 2024) (relying on *United States v. Woodley*, 9 F.3d 774 (9th Cir. 1993)).

177 at 2. Defendants' failures threaten serious harm to individuals in civil detention: every night, class members are awakened for counts beyond the Court's limit; every day, they are denied the outdoor recreation the Court ordered, live in unsanitary conditions, and shower in rooms Ms. Wasko describes as "the perfect environment for aggressive mold growth." *Id.* at 7.

*Second*, the requested sanctions are likely to be effective. *United Mine Workers*, 330 U.S. at 304. Several violations require only a policy change, such as revising the count schedule or permitting hand-holding. ECF 177 at 7, 9, 11. Consistent with the Court's September 15, 2026 Order (ECF 155), Plaintiffs propose a fine of $500 per day for each provision with which Defendants remain out of compliance. The fines would cease upon a sworn showing of cure by a responsible ICE official, verified by the Court's Monitors. The sanction is thus prospective, conditional, and entirely within Defendants' control. *See U. S. v. Ayres*, 166 F.3d 991, 995 (1999); *Bagwell*, 512 U.S. at 829.

## V. REQUESTED RELIEF

To enforce compliance with the Injunction, Plaintiffs respectfully request that the Court:

1) Enter an Order enforcing Defendants' immediate compliance with Paragraphs 1(a)–(h) and 2 of the Injunction and directing Defendants to take the following measures, or such other measures as achieve compliance with the identified provision, subject to the Monitors' verification:

**Within three (3) days of the Court's Order:**

(a) Conform the headcount schedule to Paragraph 2, including no more than two counts between 8:01 p.m. and 8:59 a.m. and out-count daytime counts absent a documented security risk;

(b) Implement a visitation policy that permits physical contact with adult visitors absent a documented, individualized security risk;

begins visitation at the posted time and with unlimited duration pending availability; and permits visitors to use the restroom in the visiting area without cancellation of the visit;

(c) Ensure that the new filtration system provides 24-hour access to clean drinking water;

(d) Serve nutritious meals prepared and delivered in a sanitary manner at times that permit detained individuals to receive them, including breakfast no earlier than 6:00 a.m.;

(e) Provide temperature-appropriate clothing, including shorts and sweatshirts, to class members upon request and at no cost; and

(f) Implement a schedule providing all class members four hours of outdoor recreation in the main yard, seven days per week.

**Within fourteen (14) days of the Court's Order:**

(a) Complete installation in all units of the NSF-certified water-filtration system Defendants have prepared, and attest that the system is up to proper standard, ECF 177 at 4;

(b) Install quick-release privacy barriers around in-cell toilets in general-population housing, beginning with cells housing more than two occupants, and remove surveillance cameras pointing directly toward toilets;

(c) Replace worn, cracked, or thin mattresses with new mattresses; and

(d) File a mold-remediation plan addressing the underlying moisture conditions in the Adelanto West shower rooms and the repair of cracked ductwork in both buildings, and complete the remediation within thirty (30) days, subject to the Conditions Monitor's verification, unless the Court orders otherwise for good cause.

**Within one (1) court day after each deadline above, Defendants should file a status report confirming completion of each item or explaining any item not completed.**

(a) Issue an order directing Defendants to show cause in writing, on a schedule set by the Court, why they should not be held in civil contempt for violating Paragraphs 1(a)–(h) and 2 of the First Amended Preliminary Injunction (ECF 147), with Plaintiffs permitted to respond before the Court determines whether contempt is warranted;

(b) Upon a finding of contempt, impose a coercive fine of $500 per day for each violated provision that remains uncured, accruing from a date set by the Court, payable to the registry of the Court, and purgeable upon a sworn showing of compliance by a responsible ICE official verified by the Monitors; and, if coercive sanctions are imposed, require Defendants to file daily sworn compliance reports as to each provision subject to sanctions until the sanctions are purged;

(c) Order Defendants to file sworn compliance reports every seven (7) days until the Court finds them in compliance or orders otherwise. Each report should address Paragraphs 1(a)–(h) and 2 of the Injunction separately and under oath. For each provision, Defendants should state whether they are presently in compliance, identify the specific steps taken to achieve and verify compliance, and explain any remaining deficiency or claimed inability to comply. Defendants should attach the principal records supporting their account. The reports should be served on the Monitors, who may file a response; and

(d) Grant such further relief as the Court deems just and proper.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion, order Defendants to show cause why they should not be held in civil contempt for their violations of Paragraphs 1(a)–(h) and 2, and grant the relief requested above.

Dated: October 22, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: *<u>/s/ Nicholas Reddick</u>*
Nicholas Reddick
Stephen Henrick
Alyxandra Vernon
Jacob Karim
Vincent R. Biagiotti (*pro hac vice*)

PUBLIC COUNSEL

By: *<u>/s/ Rebecca Brown</u>*
Rebecca Brown
Sophia Wrench
Amelia Piazza
Belinda Escobosa

IMMIGRANT DEFENDERS LAW CENTER

By: *<u>/s/ Alvaro M. Huerta</u>*
Alvaro M. Huerta
Carson Adrianna Scott
Alison Steffel

COALITION FOR HUMANE IMMIGRANT RIGHTS

By: *<u>/s/ Carl Bergquist</u>*
Carl Bergquist (*pro hac vice*)
Adam Reese

**WORD COUNT CERTIFICATE**

The undersigned counsel of record for Plaintiffs certified that this Memorandum of Points and Authorities contains 5, 697 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 22, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Nicholas Reddick*
Nicholas Reddick