TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PUSHKAL MISHRA (Cal. Bar No. 298695)
Assistant United States Attorney
CHRISTOPHER M. BUTLER (Cal. Bar No. 318219)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-0885
E-mail: christopher.butler@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

L.T., *et al.*,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE), *et al.*,

Defendants.

No. 5:26-cv-00322-SSS-SP

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' LATEST EX PARTE APPLICATION TO SHORTEN TIME FOR HEARING ON PLAINTIFFS' MOTION TO ENFORCE THE FIRST AMENDED PRELIMINARY INJUNCTION (ECF 201)**

[Declarations of Rosa Quevedo and Christopher M. Butler filed concurrently]

Honorable Sunshine Suzanne Sykes
United States District Judge

# TABLE OF CONTENTS

DESCRIPTION PAGE

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Plaintiffs' template: prepare at their counsel's leisure and preferred schedule, then file on an "emergency" to prejudice the Defendants ..... 3

B. After being required to confer, the schedule Plaintiffs proposed, Defendants accepted, and Plaintiffs then abandoned ..... 4

C. The sewage reports and the Defendants' response ..... 6

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 9

A. Plaintiffs manufactured the exigency they now invoke, and the schedule they attack is their own ..... 9

B. Plaintiffs again violated Local Rule 7-3: The single issue they use to justify an emergency hearing on their entire motion, an alleged sewage leak, was never the subject of a conference, is not in the motion, and was answered ..... 10

C. Plaintiffs' own declarations contradict their Application ..... 14

D. Having failed to be diligent on their end, the Plaintiffs also have not shown they will be irreparably injured by regular notice; four days would prejudice both the Defendants and the Court ..... 14

E. The pattern is the point, and the Court should end it ..... 16

F. Alternatively, the Court should adopt the schedule Plaintiffs proposed on October 20 ..... 18

V. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J.P. v. Cnty. of San Bernardino*,
No. 5:22-cv-01291-SSS-SHK, 2024 U.S. Dist. LEXIS 125405 (C.D. Cal. July 16, 2024) ........ 9

*Barragan Ayala v. Semaia*,
No. 5:26-cv-02429-AJR (C.D. Cal.), ECF 18 (Aug. 17, 2026) ........ 17

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
94 F. Supp. 3d 1078 (C.D. Cal. 2015) ........ 12

*Coleman v. Newsom*,
131 F.4th 948 (9th Cir. 2025) ........ 16

*Hilton v. Weber*,
No. SACV 25-1988-KK, 2025 WL 3248706 (C.D. Cal. Oct. 15, 2025) ........ 8

*L.T. v. ICE*,
No. 26-4902, Dkt. 23.1 (9th Cir.) ........ 17

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ........ passim

*Paige, LLC v. Shop Paige LLC*,
No. 2:22-cv-07800-HDV, 2024 WL 4436899 (C.D. Cal. Aug. 1, 2024) ........ 8, 11, 15

*Reno Air Racing Ass'n v. McCord*,
452 F.3d 1126 (9th Cir. 2006) ........ 8

*Taggart v. Lorenzen*,
587 U.S. 554 (2019) ........ 16

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
671 F.3d 1113 (9th Cir. 2012) ........ 12

*United States v. Ayres*,
166 F.3d 991 (9th Cir. 1999) ........ 16

*United States v. Whittemore*,
776 F.3d 1074 (9th Cir. 2015) ........ 13

**Rules**

Fed. R. Evid. 602 .......... 13
Fed. R. Evid. 805 .......... 13
C.D. Cal. L.R. 6-1 .......... 9
C.D. Cal. L.R. 7-3 .......... passim
C.D. Cal. L.R. 7-9 .......... 9, 10
C.D. Cal. L.R. 7-19 .......... 8, 11
C.D. Cal. L.R. 7-19.1 .......... 9

## I. INTRODUCTION

Once again, Plaintiffs have disregarded Local Rule 7-3.[1] On this occasion, Plaintiffs justify their refusal to comply with the Local Rules by raising an emergency: sewage purportedly flooding the Adelanto Facility. Plaintiffs fail to mention that this "emergency" consists of two brief episodes of flooding on October 9th and October 13th caused by detainees blocking toilets that were both promptly resolved the same day, even when one occurred after-hours. Not only is this a textbook example of Plaintiffs manufacturing their own emergency, Plaintiffs have not met and conferred with Defendants regarding it. And instead of bringing this claimed emergency on a separate issue as a separate *ex parte* application, Plaintiffs bootstrapped it to their ("Preliminary Injunction") PI Motion to justify their reneging on Plaintiffs' own proposed PI Motion briefing schedule—so that Defendants would only have two business days to prepare an opposition.

The Application should be denied for four independent reasons. *First*, Plaintiffs failed to adhere to Local Rule 7-3 as it pertains to the purported emergent issue justifying this *ex parte* application: the sewage issue.

*Second*, Plaintiffs' gamesmanship in an eleventh-hour demand to advance the briefing schedule. The schedule Plaintiffs now disavow as an emergency is the schedule Plaintiffs themselves wrote. The Application reneges on it in an apparent effort to deny Defendants time to investigate and present the Court with a fuller picture of conditions at Adelanto. On October 16, Plaintiffs proposed that Defendants' opposition be due October 27 and the motion heard November 6; Defendants agreed that afternoon, with the opposition due October 30; and on October 20 Plaintiffs themselves proposed October 30. ECF 200-3 ¶¶ 5–6, 10; ECF 200-4 at 5–6 ("Plaintiffs can agree that Defendants'

---

[1] On October 9, the Court denied Plaintiffs' last motion to enforce "for counsel's failure to comply with Local Rule 7-3" and its companion application to shorten time as moot. ECF 193 ¶¶ 3–4. The Court then told Plaintiffs, in terms, that "a meet-and-confer needs to take place before I'm going to consider setting an ex parte or hearing the matter short." ECF 191 at 19:21–23.

opposition will be due by October 30.”). Plaintiffs are not asking the Court to expedite anything. They are asking it to take back, *ex parte*, the opposition date Defendants proposed on October 16 and Plaintiffs adopted on October 20.

*Third*, the “urgency” is contrived, and Plaintiffs’ own papers say so. The only new fact in the Application to support an emergency is a set of sewage reports, ECF 201 at 2–3. Yet Plaintiffs’ counsel avers that Plaintiffs “would not seek relief on the sewage water issue” in the motion, ECF 200-3 ¶ 14 and the motion’s itemized demands contain no sewage item. ECF 200-1 at 16–18. An issue Plaintiffs disclaimed as a ground for relief cannot justify hearing their motion early. And the “emergency” consists of a wastewater-line clog in East 1C on or about October 9, cleared in about two and a half hours, and a toilet clog in West 1B on October 20, cleared the same night. Quevedo Decl. ¶¶ 5–6; ECF 200-6 at 2; Butler Decl. ¶¶ 9, 16.

*Fourth*, there is a pattern in this case of Plaintiffs taking ample time to investigate facts and prepare extensive briefing, to their own preferences, and on their own preferred schedule—before suddenly invoking an asserted emergency to hamstring Defendants’ opportunity to respond. This Application is their fifth such filing. *See* Part E, *infra*.

What Plaintiffs seek is not an accommodation but an unjust advantage: three weeks of their own preparation time against four days that they ask to force on the Defendants—for a motion that asks the Court to hold the United States in contempt, fine it $500 per day per provision, and put it on sworn weekly reports. ECF 200-1 at 15–18. Plaintiffs’ piecemeal motion practice, which appears closely tied to servicing their counsel’s press publicity campaign[2], is a distraction from the neutral monitor process the Court put in

[2] *See, e.g.*, Press Release, Immigrant Defenders Law Ctr., Advocates Demand Enforcement of Federal Court Order at Adelanto as Guards Say They Were Told Not to Comply (Oct. 8, 2026), https://www.immdef.org/blog/ltvice-mte-oct26; Press Release, Public Counsel, Advocates Demand Enforcement of Federal Court Order at Adelanto as Guards Say They Were Told Not to Comply (Oct. 9, 2026), https://publiccounsel.org/https/publiccounselorg/press-releases/federal-district-court-rules-in-favor-of-young-plaintiffs-allowing-their-civil-rights-lawsuit-to-proceed-2/ (joint release by Plaintiffs’ counsel announcing the October 7 motion and its request for contempt sanctions).

place, and the Court should treat it as such. The Court should deny the Application as a matter of fundamental fairness and leave the motion on the calendar Plaintiffs chose—or, at most, adopt the schedule Plaintiffs themselves proposed on October 20, and which Defendants accepted prior to the Plaintiffs' reneging.

## II. BACKGROUND

### A. Plaintiffs' template: prepare at their counsel's leisure and preferred schedule, then file on an "emergency" to prejudice the Defendants

*March*. Plaintiffs filed their preliminary injunction motion on March 6, ECF 34, with no conference. As Defendants explained then, the motion was "filed, without an advance meet and confer, after the moving party spends many weeks drafting its complaint and supporting papers for the motion, while the opposing party is given only a comparatively brief time to gather opposing evidence and respond to the filing." ECF 54 at 3.

*August*. On August 6, the day that the Ninth Circuit administratively stayed the injunction, Plaintiffs filed a seven-page "Status Report." ECF 120. The declaration supporting it was not written for a status report, however: counsel declared, "I submit this declaration in support of Plaintiffs' Motion to Enforce the Preliminary Injunction." ECF 120-2 ¶ 1. The motion to enforce, in other words, was drafted by August 5—and held. *See* ECF 127 at 1 (making that point). Three weeks later, within two hours of learning that Defendants opposed and had asked until the following Monday to respond, Plaintiffs filed an "Ex Parte Application for Emergency Hearing" and asked that it be heard the next day. ECF 123; ECF 127 at 2, 5. Plaintiffs' declarations were again submitted "in support of Plaintiffs' Motion to Enforce the Preliminary Injunction." ECF 123-4 ¶ 1.

The Court heard the matter on September 1 and declined to enforce anything, because "I do agree with counsel for the defense that the proper procedure would be to file a motion to enforce." ECF 150 at 4:4–6. A motion to enforce, the Court explained, "would either be set as a noticed hearing or," if Plaintiffs could meet "the ex parte standard," by "a notice motion and request an order shortening time." *Id.* at 3:23–4:3. The Court also

stated what compliance looks like under this injunction: The government "is ensuring that they are complying by virtue of informing [GEO] of the injunction and the parameters of that injunction which it appears at least based upon my review of the opposition has been done." *Id.* at 4:13–17.

October. On Friday, October 2, at 11:00 a.m., the day after the Conditions Monitor's first report was filed, ECF 177, Plaintiffs' counsel wrote that Plaintiffs were "preparing to file an ex parte application to enforce the Preliminary Injunction" and demanded Defendants' position "by 4pm today." ECF 182-2 at 2. Plaintiffs did not call until October 6; on that call Defendants asked for a stipulated schedule and 48 hours to oppose any ex parte application, and counsel said the application "is intended to bypass" Local Rule 7-3. ECF 182-1 ¶¶ 4–6. Plaintiffs filed the next day, ECF 179, 180, without the conference. On October 9, the Court denied the motion "for counsel's failure to comply with Local Rule 7-3" and the application as moot. ECF 193 ¶¶ 3–4. The Court explained that "[a] meet-and-confer needs to take place before I'm going to consider setting an ex parte or hearing the matter short." ECF 191 at 19:21–23. If something were "so urgent" that a conference "would not be in order, that's something that could be addressed in the motion itself." *Id.* at 19:24–20:2. And the sequence was to be conference first, answers second, and "then, if the answers were not satisfying, then file the motion to enforce." *Id.* at 20:5–9.

**B. After being required to confer, the schedule Plaintiffs proposed, Defendants accepted, and Plaintiffs then abandoned**

The parties conferred on October 13. ECF 200-3 ¶ 2; Butler Decl. ¶ 2. Plaintiffs provided no substantive detail beyond naming the topics they planned to move on and referring Defendants to the motion they had filed on October 7, notably omitting any sewage issue. Butler Decl. ¶ 2. Given Plaintiffs' desire for exigency, Defendants said they would consider stipulating to an accelerated schedule if the shortened time came out of Plaintiffs' optional reply or the Court's time to analyze the papers, as long as the Defendants had at least seven days to oppose and the schedule worked for the Court. ECF 200-3 ¶ 4; Butler Decl. ¶ 2.

On Friday, October 16, at 1:19 p.m., Plaintiffs' counsel proposed a schedule: motion October 20, opposition October 27, reply November 3, hearing November 6. ECF 200-3 ¶ 5; ECF 200-4 at 6; Butler Decl. ¶ 3. Defendants agreed at 2:02 p.m., with one change: that the opposition be due October 30. ECF 200-3 ¶ 6; ECF 200-4 at 6; Butler Decl. ¶ 4. Plaintiffs did not file on October 20. Instead, at 10:58 a.m. that day, counsel wrote: "Plaintiffs can agree that Defendants' opposition will be due by October 30," and proposed motion October 23, opposition October 30, reply November 3, hearing November 6. ECF 200-3 ¶ 10; ECF 200-4 at 5; Butler Decl. ¶ 10. On October 21 at 9:51 a.m., counsel set a 3:00 p.m. deadline for a stipulation, failing which "Plaintiffs will proceed with an ex parte application to shorten time, based on the same schedule." ECF 200-3 ¶ 11; ECF 200-4 at 4–5; Butler Decl. ¶ 11.

Two hours and twenty-two minutes later, Plaintiffs suddenly changed course. At 12:13 p.m., counsel wrote that Plaintiffs had "received new reports of sewage flooding in at least one Adelanto unit," and would now seek an October 30 hearing with Defendants' opposition due Monday, October 26, while Plaintiffs kept time for a reply. ECF 200-3 ¶ 12; ECF 200-4 at 4; ECF 201 at 2; Butler Decl. ¶ 12. Defendants responded that the sewage reports were "a separate issue" on which "we have not had a Rule 7-3 conference," that "counsel can arrange a time to meet and confer regarding this subject," and that the issue was not part of the proposed motion; Mr. Beck added that a new flooding report "should be resolved in accordance with its own expediency—not folded into another unrelated motion on a different schedule." ECF 200-3 ¶ 13; ECF 200-4 at 3–4; Butler Decl. ¶¶ 13–14. At 7:09 p.m., Plaintiffs' counsel tacitly acknowledged the flaw, agreeing on the first point and ignoring the second: "Plaintiffs will not be seeking relief on the sewage issue in the forthcoming motion to enforce, but we will proceed with an ex parte application seeking a 10/30 hearing on the motion." ECF 200-4 at 2; ECF 200-3 ¶ 14; Butler Decl. ¶ 15.

At 12:32 p.m. on October 22, Defendants stated their opposition and the reason for it: "The contrived urgency Plaintiffs cited yesterday to justify an October 30 arbitrary

hearing date was the sewage report, which Plaintiffs now say will not be part of the motion. On October 16, Defendants agreed to the schedule Plaintiffs proposed, and Plaintiffs' October 20 proposal kept the same dates: opposition October 30, hearing November 6." ECF 200-4 at 2; Butler Decl. ¶ 17. Instead of responding further, Plaintiffs reversed field a third time, reintroducing the sewage issue as their claimed hook for an emergency application, and filed the motion and this Application that day. ECF 200, 201. The motion is noticed for November 20. ECF 200 at 1. The Application asks that Defendants' opposition be due October 26 at 9:00 p.m. ECF 201 at 1; ECF 201-1 at 2.

**C. The sewage reports and the Defendants' response**

Plaintiffs' counsel "were informed" of a sewage problem in the East women's unit "[o]n or about Wednesday, October 14," the day after the Rule 7-3 conference. ECF 200-7 ¶ 4. Yet Plaintiffs then said ***nothing*** to Defendants until Friday, October 16, at 8:14 p.m., when counsel emailed that the unit had been flooding "on a daily basis since Sunday, October 9," copied the Conditions Monitor, and demanded an update "within 24 hours." ECF 200-5 at 3; ECF 200-3 ¶ 7; Butler Decl. ¶ 5. Defendants forwarded the report to ICE at 8:18 p.m., just four minutes later. Butler Decl. ¶ 6. The Conditions Monitor replied to all counsel at 12:44 a.m. on October 17 that she had seen plumbing problems in the East building on her site visit the week before, that she "was assured it was a new development and would be corrected," and that the matter is "included in my upcoming report." ECF 200-5 at 2–3; Butler Decl. ¶ 7. Defendants forwarded that message to ICE at 2:55 a.m. *Id.*

On Monday, October 19, at 4:58 p.m., Plaintiffs' counsel asked for an update "ASAP but no later than tomorrow by 1pm." ECF 200-5 at 2. Defendants relayed the request to ICE at 5:06 p.m., ICE reported GEO's response at 6:28 p.m., and at 7:02 p.m., two hours after the request and well before Plaintiffs' own deadline, Defendants relayed it to the Monitor and to Plaintiffs' counsel: a sewer line clog after business hours, on-call staff called in, and the incident "lasted approximately two and a half hours" from response through remediation. ECF 200-3 ¶ 9; ECF 200-6 at 2; Butler Decl. ¶¶ 8–9. That clog, in East 1C, occurred on or about October 9 and was cleaned up the same day; on October 16,

the day Plaintiffs' counsel wrote that the unit was flooding daily, ICE's Assistant Field Office Director walked the unit with a Congressional representative and found it clean. Quevedo Decl. ¶ 5.

Plaintiffs' "new reports" came at about 11:00 p.m. on October 20. ECF 200-7 ¶ 22. By Plaintiffs' own account, a maintenance worker arrived with a machine at about 2:00 a.m. and "the sewage water started to slowly go down." *Id.* ¶ 23. Plaintiffs waited until 12:13 p.m. the next day, more than thirteen hours after the reports came in, to tell Defendants, and then said only that counsel had "received new reports of sewage flooding in at least one Adelanto unit." Butler Decl. ¶ 12. None of the specifics Plaintiffs now put before the Court, the units, the hours, the symptoms, the nurse, the fire department, ECF 200-7 ¶¶ 22–26, was given to Defendants' counsel. ECF 200-4 at 4; Butler Decl. ¶ 12.

It is not accurate to suggest that the Adelanto facility is flooded with sewage; the record shows isolated incidents, each resolved the night it was reported. Defendants' counsel forwarded the October 21 report to ICE the same day. Butler Decl. ¶ 13. ICE reported back that evening on the overflow its on-site officers located: It was in housing unit West 1B, on the night of October 20, where GEO believes a detainee clogged the toilet; GEO personnel called back after hours responded at about 7:50 p.m. and cleared the clog by 10:15 p.m.; GEO's facilities manager has since confirmed that clothing caused the blockage; and photographs reviewed by ICE Enforcement and Removal Operations showed no continued flooding. Butler Decl. ¶ 16 & Ex. C; Quevedo Decl. ¶ 6. Plaintiffs' declarant now places the October 20 reports in two East units, ECF 200-7 ¶ 22, in the building whose plumbing the Conditions Monitor had already observed and is reporting on, ECF 200-5 at 2; by the declarant's own account, a maintenance worker with a machine was in the unit by about 2:00 a.m. ECF 200-7 ¶ 23. As of October 23, every reported wastewater clog at the facility has been remediated, and there is no sewage flooding at Adelanto. Quevedo Decl. ¶¶ 4, 6. Defendants relayed that report, with the photographs, to Plaintiffs' counsel at 12:32 p.m. on October 22. ECF 200-4 at 2; Butler Decl. ¶ 17. Plaintiffs' counsel then declared that "[a]s of October 22, 2026, at 12:00 p.m., Defendants

have not provided any updates to Plaintiffs regarding the sewage water flooding." ECF 200-3 ¶ 15. The same paragraph acknowledges the 12:33 p.m. update. *Id.* The declaration was executed later that day, and the motion filed after that. ECF 200-3 at 4.

## III. LEGAL STANDARD

The well-recognized standard for *ex parte* applications in this District is *Mission Power*, and this Court's Standing Order adopts it: "ex parte applications are solely for extraordinary relief," and the applicant "must make two showings." ECF 25 at 5 & n.3 (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)). First, "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Mission Power*, 883 F. Supp. at 492. Second, "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* The showing must rest on evidence that "would be admissible if the deponents, affiants, or declarants were testifying in court"; "[a] statement 'on information and belief' by the lawyer preparing the papers is insufficient." *Id*. at 492. The Ninth Circuit likewise rejects conclusory assertions as a basis to bypass notice: were "a single conclusory statement by counsel" enough, "ex parte orders without notice would be the norm and this practice would essentially gut Rule 65's notice requirements." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006).

"Applications that do not explain why ex parte relief is justified and/or fail to satisfy the requirements established under Local Rule 7-19 will not be considered." ECF 25 at 5. As Judge Vera summarized the rule, *ex parte* applications are "rarely justified"; their abbreviated procedures circumvent the "safeguards that have evolved over many decades [ ] built into the Federal Rules of Civil Procedure and the Local Rules," including the timelines for "submission of responding papers and for the setting of hearings [ ] intended to provide a framework for the fair, orderly, and efficient resolution of disputes." *Paige, LLC v. Shop Paige LLC*, No. 2:22-cv-07800-HDV, 2024 WL 4436899, at *1 (C.D. Cal. Aug. 1, 2024) (citations omitted); *id.* at *1–2; *Hilton v. Weber*, No. SACV 25-1988-KK,

2025 WL 3248706, at *2 (C.D. Cal. Oct. 15, 2025).

The Local Rules require that a motion must be noticed at least 28 days before the hearing, L.R. 6-1; the opposition is due "not later than twenty-one (21) days before the date designated for the hearing," L.R. 7-9; and the conference of counsel "must take place . . . at least 7 days prior to the filing of the motion," L.R. 7-3. Counsel applying ex parte must also advise the Court, under oath, of the opposing party's position. L.R. 7-19.1.

## IV. ARGUMENT

### A. Plaintiffs manufactured the exigency they now invoke, and the schedule they attack is their own

Plaintiffs have been preparing this motion since at least October 2. The motion filed October 22 seeks what ECF 179 sought: enforcement of ¶¶ 1(a)–(h) and 2 of the First Amended Preliminary Injunction, an order to show cause re civil contempt, a $500-per-day, per-provision coercive fine, and sworn weekly reports. *Compare* ECF 200-1 at 16–18, *with* ECF 179-1 at 15–17; Butler Decl. ¶ 20. Plaintiffs conferred on October 13, which made October 20 the earliest filing date under Local Rule 7-3. They let it pass. Their own October 21 email counts the time: nineteen days since October 2, fourteen since ECF 179, eight since the conference. ECF 200-4 at 2.

"It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation," *Mission Power*, 883 F. Supp. at 493, and the Application offers none, because none exists: The delay was Plaintiffs', and the time it consumed was the time they now want to take away from Defendants. This Court has applied that rule to deny ex parte relief twice in a single case, even on an unopposed application, where the applicant was "needlessly vague" about its own diligence and, in any event, "ex parte relief is still not justified because this matter could have been filed as a regularly noticed motion." *A.J.P.*, 2024 U.S. Dist. LEXIS 125405, at *3–4. Plaintiffs cannot plausibly claim to have acted with urgency in bringing this Application; any prejudice to them is self-inflicted and results from their own lack of diligence.

Plaintiffs' exigency is manufactured. If the issues in the motion were genuinely

urgent, Plaintiffs' counsel should have raised their requested relief with Defendants and the Court much earlier. Instead, they waited three weeks, then asked that Defendants answer in four days—two of them a weekend.

Plaintiffs have reversed field three times in two days. Their Application is not about the hearing date. As recently as the morning of October 22, the parties were aligned on a briefing schedule under which Defendants would have until October 30 to prepare an opposition and the reply and hearing would occur on an expedited basis. ECF 200-4 at 4–5; Butler Decl. ¶ 11. What the Application seeks to change is one thing only: **Defendants' opposition date**, from the October 30 that Defendants proposed, Plaintiffs adopted, and Local Rule 7-9 independently provides, to October 26, a Monday, with the Application served Thursday: two business days.

Plaintiffs knew how to proceed. The Court told them on September 1 that the vehicle is a motion to enforce, heard on regular notice or on shortened time only if the ex parte standard is met, ECF 150 at 3:22–4:6, and on October 9 that any genuine urgency "could be addressed in the motion itself," ECF 191 at 19:24–20:2. The noticed motion is on file.

### B. Plaintiffs again violated Local Rule 7-3: The single issue they use to justify an emergency hearing on their entire motion, an alleged sewage leak, was never the subject of a conference, is not in the motion, and was answered

This time, Plaintiffs justify their newest refusal to comply with the Local Rules by raising an emergency: sewage purportedly flooding the Adelanto facility. The Application's only new fact is sewage. ECF 201 at 2–3. Plaintiffs' counsel declared that Plaintiffs "would not seek relief on the sewage water issue in their forthcoming motion." ECF 200-3 ¶ 14. Yet that is also their excuse for forgoing a Rule 7-3 conference on the issue. ECF 200-3 ¶ 14; ECF 200-4 at 2–3.[3] The motion's three pages of itemized demands

[3] "This Court really emphasizes and stresses the importance of meeting and conferring." ECF 191 at 18:3–4. The conference was required so that Defendants' counsel could "speak to his clients, speak to GEO Group and then provide information on the status

*(footnote cont'd on next page)*

contain no sewage item. ECF 200-1 at 16–18. The proposed order would nonetheless have the Court find a sanitation violation based on "repeated sewage water flooding in Adelanto East," ECF 200-2 at 2, the very relief Plaintiffs stated they would not seek. It would also be new relief: neither complaint mentions sewage or plumbing, *see generally* ECF 1; ECF 74, and the injunction's sanitation provision requires "[a]dequate sanitation," with daily cleaning, hygiene supplies, and mold remediation as its stated minimums, ECF 147 at 1–2; it is not a warranty against a clogged toilet. Whether an overflow cleared the same night could violate that provision is a question for a conferred, noticed motion, not for an application to shorten time. An issue Plaintiffs disclaimed to opposing counsel cannot supply the irreparable prejudice from hearing the motion on regular notice. *Paige*, 2024 WL 4436899, at *1–2. Whatever the Court does about headcounts, yard time, and visitation will neither clean a floor nor clear a drain, by Plaintiffs' own motion. If Plaintiffs believed the sewage reports required judicial intervention on their own, Local Rule 7-19 gave them a vehicle, and Defendants offered a Rule 7-3 conference. They chose instead to disclaim the issue to Defendants, leave it out of the motion's demands, yet put it at the center of the Application, where it need only be asserted. Plaintiffs' own response made clear that the sewage issue was a pretext, a means of applying pressure to Defendants rather than a ground for relief. The Application should be denied on this basis alone.

That choice also disposes of Plaintiffs' reliance on the issue as "urgency." Plaintiffs learned of the East unit problem on October 14, ECF 200-7 ¶ 4, the day after the Rule 7-3 conference, and raised it with no one on Defendants' side ***for two and a half days***. ECF 200-5 at 3. Plaintiffs' counsel did not treat the issue as an emergency—when their own time to prepare was not at risk. Even then, they provided only sparse detail. *Id*. Having proposed a schedule that set Defendants' opposition for October 30, Plaintiffs did not notify Defendants of their intent to drastically accelerate it until October 21. They cannot justify waiting eight days after learning of this ostensible emergency to bring an

---

of many of those items," *id.* at 18:9–14, because counsel "can only provide as much as his clients are giving him," *id.* at 19:4–5.

application that demands Defendants oppose the entire motion in two business days. ECF 200-7 ¶ 4; ECF 200-4 at 4. They never requested a conference on it. When Defendants noted on October 21 that "we have not had a Rule 7-3 conference" on sewage and invited one, ECF 200-4 at 4, Plaintiffs proposed a window that evening for the next morning, held no conference, and filed that night. Butler Decl. ¶¶ 15, 18.

Even if the sewage reports were a genuine emergency, Plaintiffs also have not explained why that single, separate issue justifies jettisoning the schedule they themselves proposed and treating *every other topic in the motion* as an emergency. Local Rule 7-3 requires counsel "to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution" at least seven days before filing. Denial for noncompliance is within the Court's discretion. *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."); *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087 (C.D. Cal. 2015) ("When a party fails to comply with Local Rule 7-3, the court can, in its discretion, refuse to consider the motion."); *see* ECF 182 at 4 n.2 (collecting cases). It would be entirely appropriate for the Court to deny outright any part of the motion that rests on the sewage reports, ECF 200-2 at 2, for failure to meet and confer, as it did on October 9. ECF 193 ¶ 3.

The sewage reports ***were*** answered, each within a business day of being raised. Plaintiffs' email arrived at 8:14 p.m. on Friday, October 16, and went to ICE at 8:18 p.m. Butler Decl. ¶¶ 5–6. The Conditions Monitor's message arrived at 12:44 a.m. on October 17 and went to ICE at 2:55 a.m. *Id.* ¶ 7. Plaintiffs' Monday request at 4:58 p.m. was answered at 7:02 p.m., ECF 200-6 at 2; Butler Decl. ¶¶ 8–9, the same afternoon Plaintiffs' declarant was told the unit "had stopped flooding." ECF 200-7 ¶ 21. GEO reported that, "[f]rom the initial response through remediation, including clearing the clog and addressing the affected area, the incident lasted ***approximately two and a half hours***." ECF 200-6 at 2 (emphasis added); Butler Decl. ¶ 9.

The October 20 report was likewise forwarded the day it was raised and answered the same evening with ICE's account of the West 1B clog, cleared within hours, and photographs showing no continued flooding. Butler Decl. ¶¶ 12, 16 & Ex. C; Quevedo Decl. ¶ 6. To the extent Plaintiffs' declarant describes a separate overflow in the East building, ECF 200-7 ¶ 22, her own account corroborates the response: a nurse checking on the women at about 1:30 a.m., and a maintenance worker with a machine at about 2:00 a.m., after which "the sewage water started to slowly go down." *Id.* ¶ 23. Each time, then, a problem reported at night drew a response the same night, and each time it was documented. ICE did what the Court has described as compliance, informing GEO of the injunction and its parameters, ECF 150 at 4:13–17, within minutes each time, and GEO responded within hours. To the extent the flooding that did occur frustrates Plaintiffs, its cause on the one documented occasion, a toilet GEO believes a detainee blocked, with clothing according to GEO, Butler Decl. ¶ 16; Quevedo Decl. ¶ 6, is within the detainees' own control to stop. None of this is a reason to shorten Defendants' time to answer a motion whose demands do not include it.

What remains is counsel's account of what unnamed detainees told her. ECF 200-7 ¶¶ 4–26. That is not the competent evidence *Mission Power* requires for ex parte relief: It is not evidence that "would be admissible if the . . . declarants were testifying in court." 883 F. Supp. at 492; *see* Fed. R. Evid. 602, 805; *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015); ECF 127 at 9–10. It is also internally inconsistent: the October 16 email put the onset on "Sunday, October 9," a Friday, and described flooding of "roughly the entire building," ECF 200-5 at 3; the declaration puts it on October 11, in one unit, ECF 200-7 ¶ 6; the warden told the women on October 15 that "it was fixed," *id.* ¶ 16; and the flooding had stopped by October 19, id. ¶ 21. ICE's one documented East-building clog, on or about October 9, was cleaned up the same day. Quevedo Decl. ¶ 5. Reports like these warrant investigation and a response, and they got both. The conditions Plaintiffs allege are disputed and do not accurately describe current conditions. Quevedo Decl. ¶¶ 4–6; Butler Decl. ¶ 16 & Ex. C. It belies belief that, if there were a pervasive

sewage leak at Adelanto, the court-appointed Conditions Monitor would not already have brought it to the parties' and the Court's attention. The Monitor, copied on every message, did not treat the reports as an emergency. ECF 200-5 at 2–3. They do not warrant stripping the opposing party of the time the Rules provide for a fair defense.

### C. Plaintiffs' own declarations contradict their Application

The Piazza declaration does not support the Application. It records Defendants' October 30 opposition date and Plaintiffs' adoption of it, ECF 200-3 ¶¶ 4–6, 10, yet the Application asks for October 26. ECF 201 at 3. The motion says Defendants "have not provided any information or assurances," ECF 200-1 at 5 (citing ECF 200-3 ¶¶ 2, 16), but the cited paragraphs say nothing of the kind, and the declaration itself records Defendants' October 22 report of what ICE and GEO had found. ECF 200-3 ¶ 15; Butler Decl. ¶ 17.

The Application's account of prejudice is recycled. Its Part I.A is lifted, sentence for sentence, from the application the Court denied as moot on October 9: "[a] later hearing cannot restore sleep already interrupted, outdoor time already denied, or physical contact already withheld." *Compare* ECF 201 at 1–2, *with* ECF 180 at 1–2. Prejudice that was asserted in the same words on October 7, for a motion Plaintiffs then took fifteen more days to refile, is not the kind of prejudice that regular notice would cause. It is the ordinary posture of every enforcement motion, and the Rules already account for it.

### D. Having failed to be diligent on their end, the Plaintiffs also have not shown they will be irreparably injured by regular notice; four days would prejudice both the Defendants and the Court

Plaintiffs cannot show, as they must, that they "will be irreparably prejudiced" if the motion is "heard according to regular noticed motion procedures." *Mission Power*, 883 F. Supp. at 492. The motion is built on the Conditions Monitor's report dated September 29 and filed October 1, ECF 177, on the July 29 water-contamination report, ECF 120 at 2; ECF 120-1, and on the headcount, yard, and visitation complaints Plaintiffs first raised in August, ECF 123. Facts known for three to twelve weeks are not an emergency, and the relief the motion requests is not either: It asks for compliance measures on three-day,

fourteen-day, and thirty-day clocks after an order, a written order to show cause "on a schedule set by the Court," and weekly reports. ECF 200-1 at 16–18. Nothing in that relief requires an urgent hearing. Nor does regular notice condone anything: In denying expedition of a contempt motion, Judge Vera observed that "strict compliance with the Court's Order is necessary at all times" and that the court "will review the request for sanctions—and consider any remedies, if appropriate—at the" noticed hearing. *Paige*, 2024 WL 4436899, at *2. And the Court already has its own compliance machinery in motion. The First Amended Preliminary Injunction expanded the monitors' charge to "ensure compliance with this order (namely, paragraphs 1 through 4)," ECF 147 at 4, which covers every conditions provision the motion invokes; it requires monthly reports and additional reports whenever the monitors "deem it necessary to apprise the Court of a particular situation," *id.* at 5. The Conditions Monitor has told the parties that the East building plumbing is "included in my upcoming report as well." ECF 200-5 at 2. That report is due November 1, ECF 147 at 5, before the November hearing dates Plaintiffs contemplate. Procedural violations and meritless flooding allegations aside, the Court appointed neutral Conditions and Medical Monitors who will imminently provide an objective, unbiased assessment of conditions at Adelanto and of Defendants' compliance with the First Amended Preliminary Injunction. ECF 147 at 4–5. The Application asks the Court to short-circuit its own plan: to adjudicate contempt in four days on counsel's secondhand account rather than on the report of the officer the Court appointed to tell it what is happening at Adelanto. Defendants have no desire to hold detainees in substandard conditions and welcome the transparency of that report; Plaintiffs' piecemeal motion practice, which appears designed to sanction Defendants to draw publicity, is a distraction from the neutral monitor process.[4]

Four days, by contrast, would prejudice Defendants and the Court alike. Contempt

[4] The Monitor's first report covered September 2 through September 30 and was filed October 1. ECF 177 at 2. On the same cadence, her second report will be filed at the beginning of November, before either the November 6 or the November 20 hearing date.

requires a provision-by-provision record tied to a specific command, act, and responsible actor, and it "should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (cleaned up); *see* ECF 127 at 4–5. Plaintiffs are well aware that Defendants' counsel cannot investigate instantaneously: counsel must contact ICE, ICE must contact GEO, which operates the facility day to day, ECF 68 at 5:12–15; ECF 105 at 13:1–4, GEO must investigate and respond to ICE, and ICE must relay the answer to counsel before responsive briefing can begin. That cannot be done over a weekend. Butler Decl. ¶ 21. The Application itself required Defendants to prepare this opposition within 24 hours, ECF 25 at 5–6, leaving one additional business day to investigate the facts alleged and oppose the entire motion. A contempt motion against the United States answered on four days' notice would produce exactly the record the Court said on October 9 it did not want: one on which it cannot tell whether the problem is the government's good faith or its contractor's performance. ECF 191 at 19:6–13.

Plaintiffs' own authority shows what that record must contain. They cite *United States v. Ayres* for the proposition that their proposed fine would be "entirely within Defendants' control." ECF 200-1 at 16 (citing 166 F.3d 991, 995 (9th Cir. 1999)). *Ayres* reversed three days of $500 fines because the contemnor's ability to purge turned on the opposing party's schedule: "A contemnor's ability to purge civil contempt, therefore, cannot be contingent upon the acquiescence of an opposing party because such an arrangement effectively renders the contempt punitive, rather than civil." 166 F.3d at 997. And a party asserting inability "must show 'categorically and in detail' why he is unable to comply." *Coleman v. Newsom*, 131 F.4th 948, 959–60 (9th Cir. 2025) (citation omitted). Each of those showings is evidence: which provision, which act, which actor, what was asked of GEO and when, and what GEO answered. Plaintiffs took three weeks to assemble their side of that record. Four days is not enough to assemble the other.

**E. The pattern is the point, and the Court should end it**

Every compliance filing Plaintiffs have made in this case has sought to sacrifice the

Defendants' time while preserving the Plaintiffs' own extended schedule: (1) the preliminary injunction motion, filed after weeks of drafting and no conference, ECF 54 at 3; (2) the August 6 "Status Report," a motion to enforce in all but name, ECF 120-2 ¶ 1; (3) the August 27 application for a next-day hearing, ECF 123 at 15; ECF 127 at 2, 5; (4) the October 7 motion, filed without the conference the Court had told Plaintiffs to hold, with an application "intended to bypass" Local Rule 7-3, ECF 182-1 ¶ 5; ECF 193 ¶ 3; and (5) now this Application, which asks for four days on the strength of an issue Plaintiffs say is not even in the motion. Plaintiffs held the conference, waited nine days, kept the urgent issue out of the motion, and used it to shorten time, the reverse of what the Court directed on October 9. ECF 191 at 19:21–20:2. Every time, the 'emergency' arises the moment the Plaintiffs' counsel finish their drafting and file on their own preferred schedule—and then attempt to divest the opposition of its fair time to respond. This is paired with a concerning focus on issuing press releases; Plaintiffs appear predetermined to pursue sanctions as their central litigation strategy and design from the outset.[5]

The problem is aggravated by the fact that Plaintiffs sued ICE and not GEO, which "is essentially the group managing the day-to-day operations of the Adelanto facility," ECF 68 at 5:12–15; *see* Part D, *supra*. At the April 28 hearing, the Court itself asked Plaintiffs why they had not sued GEO: "[W]ouldn't it be more efficient for this Court to be able to *directly* order the individuals who are running the institution to do something as opposed to ordering the Government who then has to then go to GEO Group?" ECF 68 at 27:8–13 (emphasis added). Plaintiffs' counsel answered that "plaintiffs have found that it's more efficient to just be able to order the Government to make those changes, I think, because of the particular defenses that GEO Group might have to claims against it." *Id.* at 27:21–24. Desiring to litigate an easier case for tactical reasons even if that meant

[5] Unfortunately, this has become common practice and strategy, tied to funding. Co-counsel CHIRLA has told another court of this District that "[n]on-profit legal aid organizations rely heavily on timely EAJA fee recoveries to maintain operational liquidity," under "a valid contractual assignment of all EAJA fees directly to CHIRLA." *Barragan Ayala v. Semaia*, No. 5:26-cv-02429-AJR (C.D. Cal.), ECF 18 at 5 (Aug. 17, 2026); *see* ECF 127 at 13–14; *L.T. v. ICE*, No. 26-4902, Dkt. 23.1 at 24 & n.5 (9th Cir.).

deliberately excluding the facility's actual operator, Plaintiffs thus chose, with the Court's question in front of them, a structure in which every conditions complaint travels from counsel to Defendants' counsel, to ICE, to GEO, and back to ICE, then back to Defendants' counsel. ECF 150 at 4:7–17; ECF 200-4 at 2–4. That was a strategic choice to avoid a faster process, in order to make their case easier by avoiding defenses they did not want to address. Plaintiffs cannot have it both ways: content to route a flooded floor through a go-between when the alternative is suing the actual operator, and too pressed for time to give the go-between the eight days to October 30 that the Rules allow when the alternative is a noticed motion. A party that builds delay into its own case design, because they feel their claims will be easier to prove that way, cannot claim that same delay as the emergency that excuses regular notice. *Mission Power*, 883 F. Supp. at 492–93.

### F. Alternatively, the Court should adopt the schedule Plaintiffs proposed on October 20

If the Court is inclined to advance the November 20 hearing, Defendants ask that it adopt the schedule Plaintiffs themselves proposed on October 20, built on the opposition date Defendants had proposed on October 16: opposition October 30, reply November 3, hearing November 6. ECF 200-3 ¶ 10; ECF 200-4 at 5; Butler Decl. ¶ 19.

## V. CONCLUSION

The Application should be denied. Plaintiffs' piecemeal motion practice is a distraction from the neutral monitor process the Court built into its injunction. The Court should not let the prejudicial tactics discussed above shorten the Defendants' time to answer and defend against a contempt motion.

Respectfully submitted,

Dated: October 23, 2026

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*[/s/ Christopher M. Butler]*
CHRISTOPHER M. BUTLER
Assistant United States Attorney
PUSHKAL MISHRA
Assistant United States Attorney

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains 6,993 words, which complies with the word limit of Local Rule 11-6.1.

Dated: October 23, 2026

*/s/ Christopher M. Butler*
CHRISTOPHER M. BUTLER